**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| THE NATIONAL BEN GAMLA JEWISH CHARTER SCHOOL FOUNDATION, INC., *et al.*,<br><br>          *Plaintiffs*,<br><br>   v.<br><br>GENTNER DRUMMOND, in his official capacity as Attorney General of Oklahoma, *et al.*,<br><br>          *Defendants*. | Case No. 5:26-cv-00582-R<br><br>**PLAINTIFFS' OPENING BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**<br><br>**Hearing and Ruling Requested by May 22, 2026** |

Robert G. McCampbell
  OBA No. 10390
David A. Herber
  OBA No. 33527
GABLEGOTWALS
499 W. Sheridan Ave., Suite 2200
Oklahoma City, OK 73102
Tel 405-235-5500
*RMcCampbell@Gablelaw.com*

Eric S. Baxter
  DC Bar No. 479221
Eric C. Rassbach
  TX Bar No. 24013375
Daniel L. Chen
  DC Bar No. 1781783
Phillip J. Allevato\*†
  CA Bar No. 362581
THE BECKET FUND FOR RELIGIOUS LIBERTY
1919 Pennsylvania Ave. NW, Ste. 400
Washington, DC 20006
(202) 955-0095
*ebaxter@becketfund.org*

\*Application pro hac vice to the Western District of Oklahoma pending.

†Not a member of the DC Bar; admitted in California. Practice limited to cases in federal court.

*Attorneys for Plaintiffs*

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES...................................................................................ii

INTRODUCTION ............................................................................................. 1

FACTS ........................................................................................................... 2

    A. Oklahoma's Charter School Act................................................................ 2

    B. The National Ben Gamla Jewish Charter School Foundation................................ 4

    C. *Drummond* and the OCSA's nonsectarian requirement ........................................ 6

    D. The Board denies Ben Gamla's application based on *Drummond*........................... 7

LEGAL STANDARD ...................................................................................... 10

ARGUMENT................................................................................................. 10

I. Ben Gamla is likely to succeed on the merits. ............................................... 10

    A. The Board's denial violates the Free Exercise Clause. ......................................... 10

        1. The Board's denial violates *Carson*.................................................... 10

        2. The Board's denial fails strict scrutiny. ............................................. 12

        3. Ben Gamla is not a state actor. ........................................................ 13

            a. Binding precedent holds that Ben Gamla is not a state actor...................... 13

            b. *Drummond* is wrong and does not control. ................................................. 17

            c. Multiple circuit courts have rejected *Drummond's* reasoning. ................... 19

II. The remaining factors favor granting a preliminary injunction.................................. 21

CONCLUSION ............................................................................................... 23

CERTIFICATE OF SERVICE............................................................................ 25

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Am. All. for Equal Rts. v. Fearless Fund Mgmt., LLC,*
103 F.4th 765 (11th Cir. 2024) ................................................................................22

*Am. Mfrs. Mut. Ins. Co. v. Sullivan,*
526 U.S. 40 (1999) .............................................................................................. 15, 16

*Ark. Writers' Project, Inc. v. Ragland,*
481 U.S. 221 (1987) ................................................................................................... 7

*Awad v. Ziriax,*
670 F.3d 1111 (10th Cir. 2012) ...............................................................................22

*Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n,*
531 U.S. 288 (2001)...................................................................................... 14, 15, 18

*Carson v. Makin,*
596 U.S. 767 (2022)...................................................................................10, 11, 12, 19

*Catholic Benefits Ass'n LCA v. Sebelius,*
24 F. Supp. 3d 1094 (W.D. Okla. 2014) .................................................................. 10

*Caviness v. Horizon Cmty. Learning Ctr., Inc.,*
590 F.3d 806 (9th Cir. 2010) ............................................................................... 19, 20

*Church of Lukumi Babalu Aye, Inc. v. City of Hialeah,*
508 U.S. 520 (1993)................................................................................................. 12

*Diocese of Brooklyn v. Cuomo,*
592 U.S. 14 (2020).............................................................................................22, 23

*Does 1-11 v. Bd. of Regents of Univ. of Colo.,*
100 F.4th 1251 (10th Cir. 2024) .................................................................... 10, 22, 23

*Dominion Video Satellite, Inc. v. Echostar Satellite Corp.,*
356 F.3d 1256 (10th Cir. 2004) ...............................................................................22

*Dutcher v. Matheson,*
840 F.3d 1183 (10th Cir. 2016) ........................................................................... 13, 17

*Espinoza v. Mont. Dep't of Revenue,*
    591 U.S. 464 (2020)................................................................................................ 11

*Fulton v. City of Philadelphia,*
    593 U.S. 522 (2021)................................................................................................ 12

*Giri v. Nat'l Bd. of Med. Examiners,*
    718 F. Supp. 3d 30 (D.D.C. 2024).......................................................................... 23

*Hobby Lobby Stores, Inc. v. Sebelius,*
    723 F.3d 1114 (10th Cir. 2013) ...................................................................... 10, 21, 23

*Jackson v. Metro. Edison Co.,*
    419 U.S. 345 (1974)........................................................................................ 15, 18, 19

*Lebron v. Nat'l R.R. Passenger Corp.,*
    513 U.S. 374 (1995)............................................................................................... 17-18

*Lindke v. Freed,*
    601 U.S. 187 (2024)................................................................................................ 17

*Logiodice v. Trs. of Me. Cent. Inst.,*
    296 F.3d 22 (1st Cir. 2002)............................................................................. 16, 20, 21

*Mahmoud v. Taylor,*
    606 U.S. 522 (2025)................................................................................................ 22

*Manhattan Cmty. Access Corp. v. Halleck,*
    587 U.S. 802 (2019)...........................................................................................*passim*

*Nken v. Holder,*
    556 U.S. 418 (2009)................................................................................................ 23

*Oklahoma Statewide Charter Sch. Bd. v. Drummond,*
    605 U.S. 165 (2025).................................................................................................. 7

*Polk County v. Dodson,*
    454 U.S. 312, 317-20 (1981) ................................................................................. 18

*Rendell-Baker v. Kohn,*
    457 U.S. 830 (1982)...........................................................................................*passim*

*Robert S. v. Stetson Sch., Inc.,*
    256 F.3d 159 (3d Cir. 2001)................................................................................ 16, 21

iii

*RoDa Drilling Co. v. Siegal,*
  552 F.3d 1203 (10th Cir. 2009) ..........................................................................22

*Santiago v. Puerto Rico,*
  655 F.3d 61 (1st Cir. 2011).................................................................................16

*St. Isidore of Seville Catholic Virtual Sch. v. Drummond,*
  145 S. Ct. 1134 (2025).........................................................................................7

*Drummond ex rel. State v. Oklahoma Statewide*
  *Virtual Charter Sch. Bd.,*
  558 P.3d 1 (Okla. 2024).................................................................................*passim*

*TMJ Implants, Inc. v. Aetna, Inc.,*
  498 F.3d 1175 (10th Cir. 2007) .................................................................... 13, 17

*Trinity Lutheran Church of Columbia, Inc. v. Comer,*
  582 U.S. 449 (2017)............................................................................................ 11

*West v. Atkins,*
  487 U.S. 42 (1988)....................................................................................... 15, 16

*Zelman v. Simmons-Harris,*
  536 U.S. 639 (2002)............................................................................................ 12

## Statutes & Constitutions

Okla. Stat. Ann. tit. 70, § 3-130.............................................................................. 2

Okla. Stat. Ann. tit. 70, § 3-131........................................................................... 2, 3

Okla. Stat. Ann. tit. 70, § 3-132............................................................................. 15

Okla. Stat. Ann. tit. 70, § 3-134.............................................................................. 2

Okla. Stat. Ann. tit. 70, § 3-136......................................................................... 2, 3, 4

Okla. Stat. Ann. tit. 70, § 3-142........................................................................ 3, 12-13

U.S. Const. amend. XIV, § 1 ................................................................................. 13

## Other Authorities

Okla. Statewide Charter Sch. Bd., *OKSCSB Meeting:*
  *01/12/26* (Jan. 12, 2026) ...................................................................................7

Okla. Statewide Charter Sch. Bd., *OKSCSB Meeting: 02/09/26* (Feb. 9, 2026)............................................................................................ 8

Okla. Statewide Charter Sch. Bd., *OKSCSB Meeting: 03/09/2026* (Mar. 9, 2026) ......................................................................................... 9

## INTRODUCTION

This case poses a simple yet recurring question: can the government exclude religious institutions from a public benefit because of their religion? The Supreme Court has repeatedly said no, rejecting states' attempts to exclude religious schools, parents, and students from publicly available benefits solely based on their religion. Yet after each ruling, many states have sought to continue excluding religious schools.

Following *Trinity Lutheran*, Montana claimed it could exclude schools based on their religious use of state funds, shuttering its entire scholarship program to accomplish that goal. The Supreme Court reversed in *Espinoza*. Following *Espinoza*, Maine asserted that it could exclude religious schools because they were functionally part of Maine's public-school system. The Supreme Court rejected that argument in *Carson*. And now, Oklahoma contends that it must exclude religious schools because by contracting with the state to provide a free education with public funds, these privately owned and operated religious schools somehow become state actors engaged in state action.

Defendant Oklahoma Statewide Charter School Board felt constrained by the Oklahoma Supreme Court's decision in *Drummond ex rel. State v. Oklahoma Statewide Virtual Charter School Board*, 558 P.3d 1 (Okla. 2024), which forbade religious charter schools from receiving funding. So it denied the application of Plaintiff National Ben Gamla Jewish Charter School Foundation, Inc. to form an Oklahoma charter school, arguing that a private, religious school formed around the Jewish faith would be engaged in state action.

But *Drummond* was wrongly decided and is not binding on this Court. The decision violates U.S. Supreme Court precedent on the Free Exercise Clause, the Establishment Clause, and the state-action doctrine. The proposed private Jewish school would in no way be engaged in state action merely because state law labels its conduct "public." Nor does the fact that the school would contract with Oklahoma to provide educational services transform it into an arm of the government.

Constitutional analysis turns on substance, not labels, and the state-action doctrine must not be extended to trample religious liberty. The Establishment Clause does not apply to Ben Gamla, and the Free Exercise Clause protects it. This Court should therefore grant a preliminary injunction and allow Ben Gamla to participate in Oklahoma's charter school program.

## FACTS

### A. Oklahoma's Charter School Act

In 1999, the Oklahoma Legislature passed the Oklahoma Charter Schools Act ("OCSA" or "the Act"). Okla. Stat. Ann. tit. 70, § 3-130. The Act invites any qualified "private college or university, private person, or private organization" to apply for state funding to operate a charter or virtual charter school. *Id.* § 3-134(C). The OCSA's express purposes are, in part, to "[e]ncourage the use of different and innovative teaching methods," "[p]rovide additional academic choices for parents and students," and "[e]stablish new forms of accountability for schools." *Id.* § 3-131. For these reasons, Oklahoma allows private institutions substantial flexibility to run charter schools. *Id*. § 3-136(A)(1), (3). Indeed, subject to some exceptions, virtual charter schools in Oklahoma are "exempt from

2

all statutes and rules relating to schools, boards of education, and school districts." *Id*. § 3-136(A)(1).

Practically, this means charter schools need not follow Oklahoma's core curriculum requirements and may instead craft "a curriculum which emphasizes a specific learning philosophy or style or certain subject areas." *Id*. § 3-136(A)(3). Instead of being subject to a publicly appointed school board, a charter school is run by a private "governing board" "which shall be responsible for the policies and operational decisions of the charter school." *Id*. § 3-136(A)(7). And charter schools are also free to adopt their own "personnel policies, personnel qualifications, and method of school governance." *Id*. § 3-136(C). State funding of charter schools is directly tied to enrollment. *Id.* § 3-142(A), (C). A charter school "receive[s] the State Aid allocation … and any other state-appropriated revenue generated by its students for the applicable year." *Id*. § 3-142(A).

The OCSA characterizes charter schools as "public" in the sense that they are "free" to all students and "supported by public taxation." *Id.* § 3-136(A)(9); *id.* § 1-106. But charter schools are not "public" in the sense that the government operates and runs them, as it does with traditional public schools. Indeed, Oklahoma does not require any student to attend a charter school. And because charter schools are owned and operated by private parties, they are not traditional public schools. In fact, the whole purpose of creating charter schools is to provide alternatives to the public schools. *Id.* § 3-131. And the OCSA has successfully done just that, sparking innovation and expanding parental choice by funding a diverse range of private institutions. Publicly funded charter schools include those focused on

science, the fine arts, language immersion, cultural awareness, tribal identity, classical education, and more. Ex. 1 ("Baxter Decl.") ¶ 7; Ex. 1-C.

The state, however, has categorically forbidden one type of private entity from participating in the charter school program: religious groups. The OCSA expressly requires that a charter school be "nonsectarian in its programs, admission policies, employment practices, and all other operations." Okla. Stat. Ann. tit. 70, § 3-136(A)(2). This "nonsectarian" requirement means that "[a] sponsor may not authorize a charter school or program that is affiliated with a nonpublic sectarian school or religious institution." *Id.*

**B.  The National Ben Gamla Jewish Charter School Foundation**

In December 2025, Plaintiff Peter Deutsch, a former Democratic congressman from Florida, founded the National Ben Gamla Jewish Charter School Foundation, Inc. ("Ben Gamla") in Oklahoma. Deutsch is a member of Ben Gamla's board. Shortly after it was formed, Ben Gamla applied to charter the Ben Gamla Jewish Charter School ("Ben Gamla School" or "the School"). Ben Gamla School is designed to be a private religious school organized under Oklahoma law for exclusively educational, charitable, and religious purposes. Although Ben Gamla is the charter sponsor, the School would contract with an educational management agency to oversee the establishment and ongoing operations of the school.

As part of Ben Gamla's distinctive religious mission, students will receive instruction in Jewish religion, culture, values, rituals, texts, holidays, and practices. Ex. 2 ("Deutsch Decl.") ¶¶ 26, 30; Ex. 2-A at 4. This includes the study of *mitzvot* (commandments), the call of *tikkun olam* (shaping the world toward justice, compassion, and godliness), and

4

other Jewish traditions and religious practices. Deutsch Decl. ¶ 30; *see also* Ex. 2-A at 3-4. Furthermore, Ben Gamla's academic and co-curricular programs are grounded in the enduring Jewish values of truth (*emet*), beauty (*yofi*), and goodness (*tov*), and the School is committed to preparing students to engage thoughtfully and confidently in contemporary society. Deutsch Decl. ¶ 29; *see also* Ex. 2-A at 5. Ben Gamla believes that because G-d created the universe and orders all within it, a Jewish perspective permeates all subjects, including academics, and unifies all knowledge. Deutsch Decl. ¶ 27; *see also* Ex. 2-A at 3.

Ben Gamla's application explained that while also furthering its religious mission, the School will promote academic excellence using best practices in general and virtual education. Ex. 2-A at 4. Ben Gamla noted that it will abide by and satisfy all the OCSA's requirements, except the condition that Ben Gamla abandon its religious identity and mission to qualify as a charter school. Deutsch Decl. ¶ 36.

This is not Deutsch's first venture into the charter school space. In 2006, Deutsch founded the National Ben Gamla Charter School Foundation in Florida ("Ben Gamla Florida"). Ben Gamla Florida's mission is to "provide a safe environment for innovative instructional practices that continuously light the path toward maximum student achievement and personal growth." Deutsch Decl. ¶¶ 11, 14.

Ben Gamla Florida opened its first charter school in Florida in 2007 and now operates a network of four charter schools across the state. *Id.* ¶¶ 11-12. These schools were the first English-Hebrew charter schools in the United States and integrate instruction in Hebrew language, culture, and history throughout their curricula to give all students a useful tool in our global society. *Id.* ¶ 14. The Ben Gamla Florida schools are dedicated to the driving

principle of charter schools: to exercise autonomy and choice related to curriculum delivery, parent involvement, discipline, and special programs in order to reach maximum student achievement and personal growth. *Id.* The schools have been widely recognized for the quality of their education, and many students remain on their waiting lists each year. *Id.* ¶¶ 18-22. The Ben Gamla Florida schools, however, do not integrate Jewish religious values into their curriculum. *Id.* ¶ 17.

### C. *Drummond* and the OCSA's nonsectarian requirement

In 2023, the predecessor to the Statewide Charter School Board approved an application for a Catholic school, St. Isidore of Seville Catholic Virtual School. *Drummond*, 558 P.3d at 6-7 ¶ 5. In approving the application, the Board relied on earlier guidance from the Oklahoma Attorney General that the OCSA's nonsectarian requirement violated the federal Constitution. But upon taking office, the new Attorney General—Defendant Drummond—sought a writ of mandamus from the Oklahoma Supreme Court to bar St. Isidore's charter, claiming that chartering St. Isidore would violate the OCSA, the Oklahoma Constitution, and the federal Constitution. *Id.* at 7 ¶ 8.

In a split decision, the Oklahoma Supreme Court agreed. *Id.* It concluded that—by contracting with the state to provide a "*free public* education"—St. Isidore became a state actor. *Id.* at 12 ¶ 30. That, according to the Court, meant that St. Isidore's religious mission, beliefs, and practices violated the OCSA and the Oklahoma Constitution's bar on aid to "sectarian" institutions, as well as the federal Constitution's Establishment Clause. *Id.* at 9-14 ¶¶ 15, 27, 29-31, 34, 37, 41. And because the Court found St. Isidore to be engaged

6

in state action, it held that the United States Supreme Court's free exercise cases like *Carson, Espinoza*, and *Trinity Lutheran* were irrelevant. *Id*. at 14-15 ¶¶ 42-44.

St. Isidore and the Board sought writs of certiorari from the United States Supreme Court. *St. Isidore of Seville Catholic Virtual Sch. v. Drummond*, 145 S. Ct. 1134 (2025); *Okla. Statewide Charter Sch. Bd. v. Drummond*, 145 S. Ct. 1134 (2025). The Supreme Court granted and consolidated the cases and received full briefing and oral argument. But after a recusal from Justice Barrett, the Supreme Court affirmed the Oklahoma Supreme Court in a split 4-4 *per curiam* decision. *Oklahoma Statewide Charter Sch. Bd. v. Drummond*, 605 U.S. 165 (2025). Under longstanding Supreme Court precedent, a split decision of this sort does not constitute precedent. *Ark. Writers' Project, Inc. v. Ragland*, 481 U.S. 221, 234 n.7 (1987) ("Of course, an affirmance by an equally divided Court is not entitled to precedential weight.").

**D. The Board denies Ben Gamla's application based on *Drummond***

The Board held a hearing on January 12, 2026, where Deutsch made an oral presentation in support of Ben Gamla's application, explained his expertise in running successful charter schools, and noted how he wanted to bring that experience to Oklahoma. Okla. Statewide Charter Sch. Bd., *OKSCSB Meeting: 01/12/26*, at 1:42:38-1:59:22 (Jan. 12, 2026), https://www.youtube.com/live/AknrUunlTIY; Baxter Decl. ¶ 2.

On February 9, the Board held a hearing and rejected Ben Gamla's application. Board members explained that they felt compelled to do so because of the *Drummond* decision and Ben Gamla's religious character. For example, Defendant Gardenhire remarked that the Board's "hands are tied" by the "writ of mandamus from the state Supreme Court," so

any other potential issues with Ben Gamla's application were "immaterial to the discussion." Okla. Statewide Charter Sch. Bd., *OKSCSB Meeting: 02/09/26*, at 2:20:03-18 (Feb. 9, 2026), https://www.youtube.com/watch?v=_CxrYka29tY; Baxter Decl. ¶ 3. Gardenhire also noted that other publicly-funded schools, specifically one focused on Native American culture, "[also] had essentially a cultural-spiritual component embedded within it to honor the culture and spirituality of Native Americans, and the school operated that way, and nobody raised any concerns at that point." *Id.* at 2:20:51-2:21:39. He explained that he didn't think Ben Gamla was "materially different," and he was "troubled" by that unequal treatment. *Id.*

Other Board members agreed with Gardenhire. Defendant Rutkauskas stated that even though "the Ben Gamla Jewish Charter School has an excellent reputation in Florida" and "do[es] a fantastic job," "our hands are tied most definitely." *Id.* at 2:21:49-2:22:18. "The decision today won't be because they are not a good candidate or qualified or a school that I think would bring tremendous assets to the State of Oklahoma." *Id.* Defendant Tomcho similarly said, "Regardless of this school's reputation or whatever strengths that it has, we have to follow the law and right now the law says no." *Id.* at 2:29:44-52.

The Board then unanimously denied the application, citing the reasons stated on the record, namely the Oklahoma's Supreme Court's decision in *Drummond*. *Id.* at 2:30:20-2:31:03. The Board issued a press release stating that the Board's "decision primarily was based on binding legal precedent established by the Oklahoma Supreme Court in 2024, which held that a religious charter school would be unlawful under the state's Constitution." Ex. 1-A at 1; Baxter Decl. ¶ 5. On February 13, 2026, the Board formally

8

denied the charter, citing a handful of minor deficiencies, as well as the Oklahoma's Supreme Court's decision in *Drummond*. Ex. 2-B; Deutsch Decl. ¶ 40.

On February 27, Ben Gamla filed a revised application with the Board, curing all deficiencies noted by the Board, except its noncompliance with the OCSA's nonsectarian requirement. At its regular meeting on March 9, the Board discussed the revised application. The Board's staff noted that Ben Gamla "was found to have sufficiently resolved 9 out of the Board's 10 concerns." Okla. Statewide Charter Sch. Bd., *OKSCSB Meeting: 03/09/2026*, at 1:10:08-1:11:26 (Mar. 9, 2026), https://www.youtube.com/watch?v=6hd17f_KoIw; Baxter Decl. ¶ 4. But "there is one item—the requirement to be nonsectarian—that the revised application does not resolve." *Id.* The Board therefore voted unanimously to deny Ben Gamla's application based solely on the religious character of the proposed School. *Id*. at 1:16:20-1:19:20. On March 10, Defendant Lusnia sent an official letter formally denying Ben Gamla's application due to the School's religious character. Ex. 2-D; Deutsch Decl. ¶ 43.

On March 24, Ben Gamla filed this lawsuit. Dkt. 1. Ben Gamla now moves for a preliminary injunction allowing it to participate in Oklahoma's charter school program without having to surrender its religious mission. Ben Gamla respectfully requests that this Court set a hearing date as soon as practicable and issue an order by May 22, 2026—before the end of the public school year. A decision on this timeline would give parents time to make plans for the upcoming school year and allow Ben Gamla adequate time to prepare and start operations.

9

## LEGAL STANDARD

A preliminary injunction is warranted when a plaintiff shows (1) a likelihood of success on the merits, (2) a likelihood of irreparable harm absent relief, (3) that equities favor relief, and (4) that relief is in the public interest. *Does 1-11 v. Bd. of Regents of Univ. of Colo.*, 100 F.4th 1251, 1267 (10th Cir. 2024); *see also Catholic Benefits Ass'n LCA v. Sebelius*, 24 F. Supp. 3d 1094, 1102 (W.D. Okla. 2014). All four requirements are met here.

## ARGUMENT

### I.   Ben Gamla is likely to succeed on the merits.

This Court should grant preliminary relief because Ben Gamla is likely to succeed on the merits of its Free Exercise claim. Indeed, "in First Amendment cases, the likelihood of success on the merits will often be the determinative factor." *Hobby Lobby Stores, Inc. v. Sebelius*, 723 F.3d 1114, 1145 (10th Cir. 2013) (en banc), *aff'd sub nom. Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682 (2014).

#### A.  The Board's denial violates the Free Exercise Clause.

##### 1.  The Board's denial violates *Carson*.

Denying Ben Gamla access to a publicly available benefit—here, the right to form and operate a publicly-funded private charter school—violates *Carson v. Makin*, 596 U.S. 767 (2022). In *Carson*, Maine offered a "tuition assistance" program to families in rural areas without access to public high schools, allowing those families to choose a private school for their children at state expense. *Id.* at 771-73. Citing the Establishment Clause, however, Maine limited parents to using the tuition assistance at "nonsectarian school[s]."

10

The Supreme Court rejected Maine's arguments, holding that disqualifying religious schools "solely because of their religious character" violated the Free Exercise Clause. *Id.* at 780 (quoting *Trinity Lutheran Church of Columbia, Inc. v. Comer*, 582 U.S. 449, 462 (2017)). By "'condition[ing] the availability of benefits' in that manner, Maine's tuition assistance program … 'effectively penalize[d] the free exercise' of religion." *Id.* The Court further held that "a State violates the Free Exercise Clause when it excludes religious observers from otherwise available public benefits." *Id.* at 778. The cases *Carson* relied upon, *Trinity Lutheran* and *Espinoza v. Montana Department of Revenue*, both stand for the "unremarkable" principle that conditioning public benefits based on religion violates the Free Exercise Clause. *Id.* at 779.

In *Trinity Lutheran*, Missouri denied a religious school generally available funds for rubber playground resurfacing because of the school's "religious status." 582 U.S. at 458. In *Espinoza*, Montana prohibited parents from using a state scholarship program to send their children to any school controlled by a "church, sect, or denomination." *Espinoza v. Mont. Dep't of Revenue*, 591 U.S. 464, 468 (2020). In both cases, the Court held that "laws that impose special disabilities on the basis of religious status" also impose "a penalty on the free exercise of religion that triggers the most exacting scrutiny." *Id.* at 475 (quoting *Trinity Lutheran*, 582 U.S. at 462).

This "unremarkable" principle applies with equal force here. Oklahoma has chosen to partner with private organizations through a generally available government program. As in *Carson*, this program is open to a "wide range" of private entities. 596 U.S. at 780. Yet, also as in *Carson*, the state here conditions this benefit on an applicant's religious status

11

and exercise. *Id.* at 781. Because this "special disability" disqualifies religious entities "solely because they are religious," it "must be subjected to 'the strictest scrutiny.'" *Id.* at 780.

### 2.  The Board's denial fails strict scrutiny.

To survive strict scrutiny, a government policy must advance "interests of the highest order" and be "narrowly tailored to achieve those interests." *Fulton v. City of Philadelphia*, 593 U.S. 522, 541 (2021) (quoting *Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 546 (1993)). The Board's potential governmental interests include (1) enforcing the no-aid provisions in the OCSA and Oklahoma's Constitution, and (2) not violating the Establishment Clause. Neither interest is compelling, so Oklahoma fails strict scrutiny.

As to the interest in enforcing the no-aid provisions, the Supreme Court has repeatedly held that "such an interest in separating church and state more fiercely than the Federal Constitution cannot qualify as compelling in the face of the infringement of free exercise." *Carson*, 596 U.S. at 781 (cleaned up) (collecting cases). "A State's antiestablishment interest does not justify enactments that exclude some members of the community from an otherwise generally available public benefit because of their religious exercise." *Id.*

Nor does the second interest fare any better. "[A] neutral benefit program in which public funds flow to religious organizations through the independent choices of private benefit recipients does not offend the Establishment Clause." *Id.* (citing *Zelman v. Simmons-Harris*, 536 U.S. 639, 652-53 (2002)). Here, any public funds flow to Ben Gamla only through the individual choices of families, as in *Zelman*. *See* Okla. Stat. Ann. tit. 70,

12

§ 3-142(A), (C). No parent is required to send their child to Ben Gamla or any Oklahoma charter school. Thus, this phantom Establishment Clause interest cannot justify Ben Gamla's religious exclusion.

### 3. Ben Gamla is not a state actor.

#### a. Binding precedent holds that Ben Gamla is not a state actor.

The Free Exercise Clause thus forbids excluding Ben Gamla from Oklahoma's charter school program. Previously, the Oklahoma Supreme Court relied on the state-action doctrine to do just that. *Drummond*, 558 P.3d at 9. But controlling precedent establishes that the Ben Gamla School and other Oklahoma charter schools are not engaged in state action. The Oklahoma Supreme Court was thus wrong in *Drummond*. And "[i]t is beyond cavil that [federal courts] are not bound by a state court interpretation of federal law." *Dutcher v. Matheson*, 840 F.3d 1183, 1195 (10th Cir. 2016) (collecting cases). Indeed, "[a] federal court … owes no deference to state-court interpretation of the United States Constitution." *TMJ Implants, Inc. v. Aetna, Inc.*, 498 F.3d 1175, 1181 (10th Cir. 2007).

The Fourteenth Amendment applies to actions of a "State." U.S. Const. amend. XIV, § 1. Thus, the "state-action doctrine distinguishes the government from individuals and private entities." *Manhattan Cmty. Access Corp. v. Halleck*, 587 U.S. 802, 808 (2019). That doctrine, when properly applied, "protects a robust sphere of individual liberty." *Id.*

The controlling case is *Rendell-Baker v. Kohn*, 457 U.S. 830 (1982). There, the Supreme Court concluded that a privately operated school that contracted with the state to educate troubled high school students was not a state actor. *Id.* at 839-43. Even though the state provided "virtually all" of the school's funding and subjected the school to "detailed

13

regulations concerning" anything from "recordkeeping to student-teacher ratios" to "personnel policies," the school was not a governmental actor. *Id.* at 831-36, 840. Rather, the school was a "private institution … operated by a board of directors, none of whom are public officials or are chosen by public officials." *Id.* at 832, 840-41. The presence of government contracts did not transform the school into a state actor, and it didn't matter that the school performed a "public function" of helping educate students that the state itself couldn't educate. *Id.* at 842.

Those facts all apply here as well. Ben Gamla School would be a privately operated school with an independent, non-government appointed board of directors. And though it would contract with Oklahoma and be subject to some state regulation, under *Rendell-Baker*, that would be insufficient to render Ben Gamla School a state actor. Moreover, although the School would be educating students, that is in no way an exclusive public function. Oklahoma's charter schools do not supplant the state's actual, government-run public schools. And no student would be required by the state to attend Ben Gamla School or any other charter school.

Indeed, under Supreme Court precedent, "a private entity can qualify as a state actor" in only "a few limited circumstances." *Halleck*, 587 U.S. at 809. As relevant here, those limited circumstances include:

1.  When a private organization is "entwine[d]" with the state "to the point of largely overlapping identity." *Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 303 (2001).

2. "[W]hen the government compels" or significantly encourages a "private entity to take a particular action." *Halleck*, 587 U.S. at 809.

3. When a "private entity performs a traditional, exclusive public function." *Id.*

4. When "the government has outsourced one of its constitutional obligations to a private entity." *Id.* at 810 n.1 (discussing *West v. Atkins*, 487 U.S. 42, 56 (1988)).

None apply here.

First, the state is not entwined with Ben Gamla School. In *Brentwood*, the Supreme Court held that there was state action because government officials ran the ostensibly private athletic association to the point where they were part of its "management," "composition," and "workings." 531 U.S. at 297-98. Here, there is no organizational overlap between the state and Ben Gamla School. No Ben Gamla School member or board member is a government official or employee acting in that capacity. And the state doesn't otherwise run Ben Gamla School. In fact, the OCSA allows charter schools to contract with non-governmental sponsors, Okla. Stat. Ann. tit. 70, § 3-132(A)(2),—and Ben Gamla School intends to do so—thereby demonstrating that the Oklahoma Legislature did not intend for organizational entwinement between the state and charter schools.

Second, the state doesn't compel or encourage Ben Gamla School's religious conduct. State action can arise when a government "has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 52 (1999). The relevant "choice" in this analysis is "the challenged action of the regulated entity." *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974). Here, the challenged action is

15

Ben Gamla School's religious status and conduct, which is established not through the state but through the school's independent decisions. The state has not coerced or even encouraged those decisions. Those religious decisions are thus private, and even "with the mere approval or acquiescence of the State," they are "not state action." *Am. Mfrs.*, 526 U.S. at 52.

Third, "the education of children does not … fall within the narrow range of exclusive state functions." *Santiago v. Puerto Rico*, 655 F.3d 61, 69 (1st Cir. 2011); *see also Logiodice v. Trs. of Me. Cent. Inst.*, 296 F.3d 22, 27 (1st Cir. 2002) ("Accordingly, the Supreme Court, in *Rendell-Baker v. Kohn*, and lower courts, including this one, have declined to describe private schools as performing an exclusive public function." (citations omitted) (collecting cases)); *see also Robert S. v. Stetson Sch., Inc.*, 256 F.3d 159, 165-66 (3d Cir. 2001). As a result, Ben Gamla School is not engaged in state action merely because it is educating students.

Fourth, the state has not outsourced any constitutional obligations to Ben Gamla School. In *West v. Atkins*, the Supreme Court held that a doctor engaged in state action when he contracted with the government to fulfill its Eighth Amendment obligations to provide adequate medical care to incarcerated individuals. 487 U.S. at 54. The Court found state action because inmates could turn only to "those physicians authorized by the State." *Id.* at 55. The inmate was left without any recourse except to "rely on prison authorities to treat his medical needs." *Id.* at 54.

That's a far cry from the situation here. Unlike *West*, where the government fully outsourced its medical obligations to inmates to a private contractor, Oklahoma has not

fully delegated its duty to provide free education to the Ben Gamla School. The state continues to run public schools for all families, and no student or family is required to attend Ben Gamla School (or any charter school for that matter). Simply put, contracting with private actors to provide educational alternatives is not the wholesale delegation of a government function. So Ben Gamla School is not engaged in state action.

### b. *Drummond* is wrong and does not control.

The Oklahoma Supreme Court's decision in *Drummond* reached the opposite conclusion. But that decision badly botched the state-action analysis and is not binding on this question of federal law. *See, e.g., Dutcher*, 840 F.3d at 1195; *TMJ Implants*, 498 F.3d at 1181.

As explained, in *Drummond*, a privately operated Catholic religious school applied to participate in Oklahoma's charter school program. In a split decision, the Oklahoma Supreme Court held that the school's Free Exercise rights were nonexistent because under Supreme Court precedent, the school became a state actor by participating in a governmental program. But every one of the *Drummond* court's justifications for finding state action runs headlong into applicable Supreme Court precedent.

First, the Oklahoma Supreme Court stressed that charter schools had been statutorily designated as "public" schools so they must be state actors. But "[t]he distinction between private conduct and state action turns on substance, not labels." *Lindke v. Freed*, 601 U.S. 187, 188 (2024). Otherwise, states could strip private actors of their constitutional rights merely by labeling them as state actors. *See Lebron v. Nat'l R.R. Passenger Corp.*, 513

17

U.S. 374, 392 (1995) ("[I]t is not for Congress to make the final determination of Amtrak's status as a Government entity for purposes of determining … constitutional rights[.]").

For that reason and others, the Supreme Court has repeatedly held that labeling an entity "public" does not transform a private actor into a state actor. So for example, in *Jackson*, the Supreme Court held that state legislation defining a privately operated electric company as a "public utility" did not mean the company engaged in state action. 419 U.S. at 350 n.7, 352-54. The same was true in *Polk County v. Dodson*, where the Court looked beyond the "public defender" label and held that the lawyer was not engaged in state action while representing indigent defendants. 454 U.S. 312, 317-20 (1981). And most recently in *Halleck*, the Court concluded that an operator of "public access channels" was not engaged in state action. 587 U.S. at 805. *Drummond* thus erred by unduly emphasizing the statutory designation of charter schools.

Next, the Oklahoma Supreme Court claimed that the existence of a contract and extensive state monitoring meant that St. Isidore was closely "entwined with the State." *Drummond*, 558 P.3d at 11 ¶ 29. But the U.S. Supreme Court has repeatedly rejected "the 'being heavily regulated makes you a state actor' theory of state action." *Halleck*, 587 U.S. at 816. Indeed, *Brentwood*—the decision that *St. Isidore* relied upon—expressly acknowledged that "service providers" who operate pursuant to contracts are not "public actors." *Brentwood*, 531 U.S. at 299 (distinguishing that case from *Rendell-Baker*, 457 U.S. at 839-43). Rather, "[a]cts of such private contractors do not become acts of the government by reason of their significant or even total engagement in performing public contracts." *Rendell-Baker*, 457 U.S. at 841. Nor does the fact that a contractor might be

18

"subject to extensive state regulation" change the conclusion. *Jackson*, 419 U.S. at 350. At bottom, the proper inquiry is whether the state's regulatory regime "compel[s]" or significantly encourages Ben Gamla's religious exercise. *Halleck*, 587 U.S. at 809. It doesn't, *supra* at 15-16, so there is no state action.

Finally, though *Drummond* conceded that "[t]he provision of education may not be a traditionally exclusive public function," it held that "*free public* education is exclusively a public function." 558 P.3d at 11-12 ¶ 30. That circular reframing accomplishes little. "[T]he definition of a particular program can always be manipulated to subsume the challenged condition, and to allow States to recast a condition on funding in this manner would be to see the First Amendment reduced to a simple semantic exercise." *Carson*, 596 U.S. at 784 (cleaned up). And *Rendell-Baker* also forecloses such arguments, as that case involved free publicly funded education, yet the Court still found no state action. 457 U.S. at 832. The "legislative policy choice" to "provide [educational] services for … students at public expense" "in no way makes [such] services the exclusive province of the State." *Id.* at 842.

### c. Multiple circuit courts have rejected *Drummond*'s reasoning.

At every step, *Drummond*'s reasoning contravenes Supreme Court precedent. For that reason, multiple federal courts of appeal have rejected the very arguments that the *Drummond* court adopted.

For example, in *Caviness v. Horizon Community Learning Center, Inc.*, 590 F.3d 806, 812 (9th Cir. 2010), the Ninth Circuit held that "a private nonprofit corporation running a charter school that [was] defined as a 'public school' by state law" was not engaged in state

19

action. Though Arizona law characterized charter schools as public actors, that label was insufficient to support the plaintiff's claim of state action. *Id.* at 814. Furthermore, the Ninth Circuit held that the charter school was not "a state actor by virtue of 'public entwinement in [its] management and control." *Id.* at 816 n.6. "Even extensive government regulation of a private business is insufficient to make [it] a state actor if the challenged conduct was 'not compelled or even influenced by any state regulation.'" *Id.* at 816 (quoting *Rendell-Baker*, 457 U.S. at 841-42). As to the traditional exclusive function analysis, the Ninth Circuit also rejected the exact argument adopted by the Oklahoma Supreme Court. It held that the argument that "'*public* educational services' are traditionally and exclusively the province of the state" was "foreclosed by *Rendell-Baker*." *Id.* at 814-15.

The First Circuit agrees. In *Logiodice*, 296 F.3d 22, a student sued a private high school that contracted with the state to "accept and educate all" of the district's high school students. The student claimed that the school was a state actor and had deprived him of due process, but the First Circuit rejected the claim. *Id.* at 24-25. With respect to the entwinement theory, the First Circuit noted that Maine "sponsored" attendance for the vast majority of the school's students and "regulate[d] contract schools in various respects." *Id.* at 28. But that was not enough to render those schools state actors. Rather, the school was "run by private trustees and not public officials," so it was not engaged in state action. *Id.*

Similarly, the First Circuit held that "education is not and never has been a function reserved to the state." *Id.* at 26. While *Drummond* accepted this argument, it made the very mistake the First Circuit warned against: "narrow[ing] and refin[ing] the category as that

20

of providing a publicly funded education available to all students generally." *Id.* "There is no indication that the Supreme Court had this kind of tailoring by adjectives in mind when it spoke of functions 'exclusively' provided by government." *Id.* at 27.

Finally, in *Robert S.*, 256 F.3d 159, the Third Circuit—in an opinion by then-Judge Alito—also rejected the arguments adopted in *Drummond*. The school there "worked in close concert with state and local governments" to "provid[e] treatment and education to juvenile sex offenders." *Id.* at 163. A plaintiff sued the private school under § 1983, and the Third Circuit rejected the claim because the school "did not act under color of state law." *Id.* at 161. That's because the school's "receipt of government funds did not make it a state actor." *Id.* at 165. Nor did "detailed requirements set out in [the state's] contracts" make a difference, as "they did not 'compel or even influence'" the challenged conduct. *Id.* And the fact that the school provided "services that [the government] was required by state law to provide" was insufficient to show an exclusive state function. *Id.* at 166. As then-Judge Alito held, this "very argument" was "rejected in *Rendell-Baker*." *Id.*

In short, *Drummond* was wrongly decided. This Court is not bound by state courts on questions of federal law and would not be the first federal court to recognize that charter schools are not state actors. This Court should thus conclude that Ben Gamla is not engaged in state action and that Ben Gamla's exclusion from Oklahoma's charter school program violates the Free Exercise Clause.

## II.  The remaining factors favor granting a preliminary injunction.

Plaintiffs have demonstrated a likelihood of success on their First Amendment claim and are therefore entitled to injunctive relief. *Hobby Lobby*, 723 F.3d at 1145 ("[I]n First

21

Amendment cases, the likelihood of success on the merits will often be the determinative factor."). In any event, the remaining factors favor relief.

*Irreparable harm.* When plaintiffs "suffer harm of a constitutional dimension, such harm is irreparable." *Does 1-11*, 100 F.4th at 1274; *see also Awad v. Ziriax*, 670 F.3d 1111, 1131 (10th Cir. 2012) ("[W]hen an alleged constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary."). That is especially true in First Amendment cases, as "the loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Does 1-11*, 100 F.4th at 1274 (quoting *Diocese of Brooklyn v. Cuomo*, 592 U.S. 14, 19 (2020)). Here, Plaintiffs' Free Exercise rights are violated by Oklahoma's religious discrimination in its charter school program. That "unquestionably constitutes irreparable injury." *Id.*; *see also Mahmoud v. Taylor*, 606 U.S. 522, 569 (2025).

Moreover, Ben Gamla will suffer irreparable harm because every year it is excluded from Oklahoma's charter school program, it will lose the opportunity to educate children. Lost opportunities are widely recognized as quintessential irreparable harm. *See, e.g.*, *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 356 F.3d 1256, 1263 (10th Cir. 2004) ("lost opportunities to distribute unique products" constitutes irreparable harm); *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1211 (10th Cir. 2009) (same); *Am. All. for Equal Rts. v. Fearless Fund Mgmt., LLC*, 103 F.4th 765, 780 (11th Cir. 2024) ("Moreover, and more specifically, each lost opportunity to enter [the] contest works an irreparable injury because it prevents [Plaintiffs] from competing at all—not just for the $20,000 cash prize but also for … ongoing mentorship and the ensuing business opportunities that a

22

contest victory might provide."); *cf. Giri v. Nat'l Bd. of Med. Examiners*, 718 F. Supp. 3d 30, 44 (D.D.C. 2024) ("The loss of opportunity to pursue one's chosen profession due to alleged discrimination is widely recognized as constituting an irreparable injury." (collecting cases)). That is especially true where the lost opportunity prevents an organization from advancing its religious mission. *See Diocese of Brooklyn*, 592 U.S. at 19.

**Balance of equities and the public interest.** "[W]hen the Government is the opposing party," the third and fourth factors "merge." *Does 1-11*, 100 F.4th at 1267 (quoting *Nken v. Holder*, 556 U.S. 418, 435 (2009)). And when the government "intru[des] on religious liberty," the analysis is simple: "it is always in the public interest to prevent the violation of a party's constitutional rights." *Id.* at 1274. Here, the balance of equities and public interest strongly favor Ben Gamla. Oklahoma's exclusion of religious institutions from its charter school program violates the Free Exercise Clause, so "an injunction would be in the public interest." *Hobby Lobby*, 723 F.3d at 1147.

## CONCLUSION

This Court should grant Plaintiffs' motion for a preliminary injunction.

Dated: March 27, 2026

Respectfully submitted,

/s/ Eric S. Baxter

Robert G. McCampbell
  OBA No. 10390
David A. Herber
  OBA No. 33527
GABLEGOTWALS
499 W. Sheridan Ave., Suite 2200
Oklahoma City, OK 73102
Tel 405-235-5500
*RMcCampbell@Gablelaw.com*

Eric S. Baxter
  DC Bar No. 479221
Eric C. Rassbach
  TX Bar No. 24013375
Daniel L. Chen
  DC Bar No. 1781783
Phillip J. Allevato*†
  CA Bar No. 362581
THE BECKET FUND FOR RELIGIOUS LIBERTY
1919 Pennsylvania Ave. NW, Ste. 400
Washington, DC 20006
(202) 955-0095
*ebaxter@becketfund.org*

*\*Application pro hac vice to the Western District of Oklahoma pending.*

*†Not a member of the DC Bar; admitted in California. Practice limited to cases in federal court.*

*Attorneys for Plaintiffs*

24

**CERTIFICATE OF SERVICE**

I hereby certify that on March 27, 2026, copies of the *Motion for Preliminary Injunction*, *Memorandum in Support of Motion for Preliminary Injunction*, and supporting declarations were served in accordance with Fed. R. Civ. P. 5(b)(2)(B)(i) on the following:

| | |
|---|---|
| Gentner Drummond<br>Office of the Oklahoma Attorney General<br>313 NE 21st Street<br>Oklahoma City, OK 73105 | Skyler H. Lusnia<br>William Pearson<br>Amber Hidy<br>Britni Tomcho<br>David Rutkauskas<br>Damon Gardenhire<br>Dr. Kitty Campbell<br>Jared Buswell<br>Lindel Fields<br>Brian T. Shellem<br>Rebecca Wilkinson<br>M.C. Connors Building<br>2501 N. Lincoln Blvd., Suite 301<br>Oklahoma City, OK 73105 |

Dated: March 27, 2026        /s/ Eric S. Baxter
                             Eric S. Baxter

25