**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF OKLAHOMA**

----------------------------------------------------- :

THE NATIONAL BEN GAMLA
JEWISH CHARTER SCHOOL
FOUNDATION, INC., et al.,

          *Plaintiffs*,

     -against-

GENTNER DRUMMOND, in his official
capacity as Attorney General of
Oklahoma, et al.,

          *Defendants*.

----------------------------------------------------- :

   :
   :
   :   Case No. 5:26-cv-00582-R
   :
   :
   :
   :
   :
   :
   :
   :
   :
   :
   :
   :

**MOTION TO INTERVENE AND BRIEF IN SUPPORT BY RABBI DANIEL
KAIMAN, BRADLEY ARCHER, ERIKA DUBOSE, SYDNEY GEBHARDT,
KARA JOY MCKEE, MICHELE MEDLEY, AND GENE PERRY**

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................... 1

LEGAL AND FACTUAL BACKGROUND ..................................................................... 3

ARGUMENT ..................................................................................................................... 10

    I.      Proposed Intervenors are entitled to intervene as of right under Rule
          24(a)(2) ................................................................................................. 11

          A.     Proposed Intervenors' motion is timely .................................... 10

          B.     Proposed Intervenors have important interests in this case .................... 12

          C.     Proposed Intervenors' ability to protect their interests will be
               impaired if they are not allowed to intervene ......................................... 15

          D.     Proposed Intervenors' interests will not be adequately represented
               by the existing parties ................................................................. 17

    II.     Alternatively, the Court should grant permissive intervention under Rule
          24(b) .................................................................................................... 20

CONCLUSION .................................................................................................................. 23

## TABLE OF AUTHORITIES

**Cases**

*Am. Atheists, Inc.  v. City of Detroit Downtown Dev. Auth.*,
567 F.3d 278 (6th Cir. 2009) ...................................................................... 16

*Ariz. Christian Sch. Tuition Org. v. Winn*,
563 U.S. 125 (2011) .................................................................................... 13

*Brammer-Hoelter v. Twin Peaks Charter Acad.*,
602 F.3d 1175 (10th Cir. 2010) .................................................................. 15

*Brown v. Bd. of Educ.*,
347 U.S. 483 (1954) .................................................................................... 15

*Coal. of Arizona/New Mexico Cntys. for
Stable Econ. Growth v. Dep't of Interior*,
100 F.3d 837 (10th Cir. 1996) .............................................................. 12, 18

*Colo. Cas. Ins. Co. v. S & S Joint Venture*,
No. 11-CV-02182-MSK-KLM,
2011 WL 6055408 (D. Colo. Dec. 6, 2011).................................................. 13

*DaimlerChrysler Corp. v. Cuno*,
547 U.S. 332 (2006).................................................................................... 13

*Drummond ex rel. State v. Okla. Statewide
Virtual Charter School Board*,
558 P.3d 1 (Okla. 2024).............................................................. 3, 13, 14, 15

*Fent v. Contingency Rev. Bd.*,
163 P.3d 512 (Okla. 2007).......................................................................... 13

*Flast v. Cohen*,
392 U.S. 83 (1968)...................................................................................... 13

*Immel v. Tulsa Pub. Facilities Auth.*,
490 P.3d 135 (Okla. 2021).......................................................................... 13

*Kane County v. United States (Kane III)*,
928 F.3d 877 (10th Cir. 2019) ..............................................11, 12, 13, 16, 17, 19, 20

*Kane County v. United States (Kane IV)*,
94 F.4th 1017 (10th Cir. 2024) ................................................................. 17

*Kellogg v. Sch. Dist. No. 10*,
74 P. 110 (Okla. 1903) ............................................................................. 13

*Lower Ark. Valley Water Conservancy Dist. v. United States*,
252 F.R.D. 687 (D. Colo. 2008) ......................................................... 21, 22

*Nat. Res. Def. Council v. U.S. Nuclear Regul. Comm'n*,
578 F.2d 1341 (10th Cir. 1978) ................................................................ 16

*Oklahoma ex rel. Edmondson v. Tyson Foods, Inc.*,
619 F.3d 1223 (10th Cir. 2010) ................................................................ 11

*Okla. Pub. Emps. Ass'n v. Okla. Dep't of Cent. Servs.*,
55 P.3d 1072 (Okla. 2002) ....................................................................... 13

*Okla. Statewide Charter Sch. Bd. v. Drummond*,
605 U.S. 165 (2025) ................................................................................... 3

*San Juan County v. United States*,
503 F.3d 1163 (10th Cir. 2007) (en banc) ..................................... 11, 12, 20

*Sanguine, Ltd. v. U.S. Dep't of Interior*,
736 F.2d 1416 (10th Cir. 1984) ................................................................ 11

*Tinker v. Des Moines Indep. Cmty. Sch. Dist.*,
393 U.S. 503 (1969) ................................................................................. 15

*United States v. N. Colo. Water Conservancy Dist.*,
251 F.R.D. 590 (D. Colo. 2008) ............................................................... 21

*Utah Ass'n of Cntys. v. Clinton*,
255 F.3d 1246 (10th Cir. 2001) .............................................. 12, 15, 17, 19

*W. Energy All. v. Zinke*,
877 F.3d 1157 (10th Cir. 2017) .............................................. 10, 11, 17, 19

*W. Virginia State Bd. of Educ. v. Barnette*,
319 U.S. 624 (1943) ................................................................................. 15

*WildEarth Guardians v. U.S. Forest Serv.*,
573 F.3d 992 (10th Cir. 2009) ................................................... 12, 16, 19

iii

*Wurz v. Bill Ewing's Serv. Ctr., Inc.*,
129 F.R.D. 175 (D. Kan. 1989)..................................................................12

**Statutes and Rules**

Fed. R. Civ. P. 24................................................................... 10, 11, 20, 21

Okla. Stat. tit. 70, § 1-124................................................................ 14

Okla. Stat. tit. 70, § 3-136............................................................. 14, 19

Okla. Stat. tit. 70, § 3-140................................................................ 19

Okla. Stat. tit. 70, § 18-201.1 ........................................................... 14

**Constitutional Provisions**

Okla. Const. art. 1, § 5.................................................................... 14

Okla. Const. art. 2, § 5.................................................................... 14

Okla. Const. art. 6, § 4..................................................................... 8

U.S. Const. amend. I........................................................................ 14

**Other Authorities**

Gordon Lafer, Breaking Point: The Cost of Charter Schools for Public
School Districts 10–11, 17 (2018), https://bit.ly/4dj2QMY ...................... 14

Letter from Gentner Drummond, Att'y Gen. Okla., to Rebecca L.
Wilkinson, Exec. Dir., Statewide Virtual Charter Sch. Bd. (Feb. 23,
2023), https://bit.ly/4tgWW3o ........................................................... 8

Rebecca L. Wilkinson, Okla. Op. Att'y Gen. No. 2022-7 (2022),
https://bit.ly/4bKJU8A ................................................................. 8, 19

**INTRODUCTION**

Rabbi Daniel Kaiman, Bradley Archer, Erika DuBose, Sydney Gebhardt, Kara Joy McKee, Michele Medley, and Gene Perry move to intervene in this case as defendants. They do so to ensure that their tax dollars do not support a religious public school and are not diverted from their inclusive, secular public schools. Proposed Intervenors are all Oklahoma taxpayers. All of them are also parents of students attending Oklahoma public schools, except that one is a public-school student. One of the Proposed Intervenors is a rabbi, and one is a teacher at a public school.

Plaintiff Ben Gamla Jewish Charter School Foundation seeks to establish a taxpayer-funded religious public charter school where Jewish religious teachings would permeate all subjects. Ben Gamla filed this lawsuit to challenge the constitutionality of Oklahoma's prohibitions against religious charter schools. Defendants are board members and officers of the Oklahoma Statewide Charter School Board, as well as Oklahoma Attorney General Gentner Drummond. A majority of the Board's members have indicated that they believe that religious public charter schools should be permitted. Attorney General Drummond has taken the opposite position, but he has only nine months left in his term, and it is unknown what position his successor will take on the issues presented by this case. Proposed Intervenors, on the other hand, are committed to defending the constitutionality of the challenged Oklahoma prohibitions throughout the life of this litigation and are well-positioned to do so.

Under Federal Rule of Civil Procedure 24(a), Proposed Intervenors have a right to intervene in this case. Their application is timely because this case—filed eight days

1

ago—is in its infancy.  They have several important interests in this case:  First, as Oklahoma taxpayers, Proposed Intervenors have an interest in vindicating their right under Oklahoma law to ensure that their tax dollars are spent lawfully.  Second, as public-school parents, a teacher, and a student, Proposed Intervenors have an interest in preventing the diversion of limited public resources away from their schools to a religious school that would not be open to or appropriate for them or their children. Third, Proposed Intervenors who teach at or plan to send their children to Oklahoma charter schools have an interest in preserving the constitutional protections that charter-school teachers and students now enjoy.  These important interests may be impaired if Proposed Intervenors are not allowed to protect them here, due to both the direct consequences of an adverse merits decision allowing state funding of Ben Gamla and the long-term *stare decisis* effects that ultimate resolution of this litigation in favor of Ben Gamla may have.  Finally, Proposed Intervenors' participation in this case is necessary to ensure that their interests are adequately represented, given the support for religious charter schools by a majority of the Board's members and the uncertainty over whether Attorney General Drummond's successor will continue to defend the constitutionality of the challenged Oklahoma prohibitions upon taking office in nine months.

Alternatively, this Court should grant permissive intervention under Federal Rule of Civil Procedure 24(b).  Proposed Intervenors assert defenses that share with the main action common questions of law and fact—including whether or not the U.S. Constitution required the Board to grant Ben Gamla's application.  Intervention will not unduly delay or prejudice the adjudication of the original parties' rights, for the case has only just

begun.  And permissive intervention is further supported by discretionary factors used by courts in this Circuit.

## LEGAL AND FACTUAL BACKGROUND

In *Drummond ex rel. State v. Oklahoma Statewide Virtual Charter School Board*, 558 P.3d 1, 11–15 (Okla. 2024)—a lawsuit challenging authorization of a religious virtual charter school called St. Isidore of Seville Catholic Virtual School—the Oklahoma Supreme Court held that Oklahoma charter schools are governmental entities and state actors and are thus prohibited from promoting religion to students or coercing students to take part in religious activities.  As here, the Board and its members were defendants in the *Drummond* litigation—only there, the Board defended its decision to *approve* a religious charter school, after being sued for doing so by Attorney General Drummond. *See, e.g.*, Brief for Petitioners at ii, 2, *Okla. Statewide Charter Sch. Bd. v. Drummond*, 605 U.S. 165 (2025) (No. 24-394), https://bit.ly/485HMpF.  After losing before the Oklahoma Supreme Court, the Board appealed to the U.S. Supreme Court.  Petition for a Writ of Certiorari, *Drummond*, 605 U.S. 165 (No. 24-394), https://bit.ly/483lEMB.[1]  The U.S. Supreme Court affirmed the Oklahoma Supreme Court's decision by a 4–4 vote. *Drummond*, 605 U.S. 165.

---

[1] St. Isidore was originally approved by a predecessor entity, the Oklahoma Statewide Virtual Charter School Board.  Brief for Petitioners at ii, 16, *Drummond*, 605 U.S. 165 (No. 24-394).  During the pendency of the *Drummond* case, that entity was replaced by the current Board, which inherited the entity's powers and obligations. *Id.* at ii; Okla. Stat. tit. 70, § 3-132.1.  The current Board continued to defend the approval of St. Isidore, including in proceedings before the U.S. Supreme Court. *See, e.g.*, Petition for a Writ of Certiorari, *Drummond*, 605 U.S. 165 (No. 24-394).

3

Despite the Oklahoma Supreme Court's clear pronouncement in *Drummond*, Ben Gamla now seeks to establish an explicitly religious virtual charter school. On November 3, 2025, Ben Gamla sent the Board a letter of intent to apply for charter authorization. (ECF No. 1-5, at 16.) In December 2025, Ben Gamla submitted to the Board an application for initial charter authorization. (Compl. ¶ 73, ECF No. 1.) On February 9, 2026, the Board denied Ben Gamla's application and, on February 13, 2026, issued a rejection letter to Ben Gamla explaining its reasons for denial. (ECF No. 1-4, at 1–2.) On February 27, 2026, citing Okla. Stat. tit. 70, § 3-134(E)(3)—which authorizes charter applicants to "submit a revised application for reconsideration" to the Board within thirty days of rejection—Ben Gamla submitted an addendum to its application. (ECF No. 1-5, at 1.) The addendum purported "to satisfy the concerns outlined in the Board's February 13 rejection letter and to provide clarification and additional documentation responsive to the issues identified therein." (*Id.*) Ben Gamla did not, however, submit a "full revised application." (*Id.*) On March 9, 2026, the Board again denied Ben Gamla's application. (ECF No. 1-6.)

Ben Gamla's letter of intent, application, and addendum make clear that Jewish religious teachings will be integrated into "every dimension of . . . life" at Ben Gamla (ECF No. 1-2, at 8, 38) and that a core part of the school's mission will be to "enabl[e] students to . . . develop[] deep Jewish knowledge, faith, and values" (ECF No. 1-5, at 1, 16). The school will be "operated . . . for . . . religious purposes." (ECF No. 1-2, at 3.) Students will take mandatory "religion/theology classes"; learn about "Jewish religious beliefs, principles, and ethical frameworks"; and study "religious rituals." (*Id.* at 8, 61.)

4

Employees will be required to "support the principles, teachings, and commitments of the Jewish community"; to "refrain from actions that are contrary to the teachings of the community"; and to "uphold the standards of the Jewish tradition in their day-to-day work and personal lives."  (*Id.* at 3.)

In addition, statements in Ben Gamla's application demonstrate or indicate that the school plans to follow discriminatory policies or practices.  For example, while Ben Gamla professes that it will accept students "of different faiths or no faith," it qualifies that statement by warning that "[a]dmission assumes the student and family willingness to adhere with respect to the beliefs, expectations, policies, and procedures of the school."  (*Id.* at 59.)  What is more, Ben Gamla "retains its right to consider religion as a factor in employment-related decisions."  (*Id.* at 54.)

During and contemporaneously with its February 9 and March 9 meetings, the Board—or at least a majority of its nine (*see* Okla. Stat. tit. 70, § 3-132.1(A)) members—indicated disagreement with the Oklahoma Supreme Court's decision in *Drummond*.  In a statement issued by the Board on its website, Board Chairman Brian Shellem characterized *Drummond*'s outcome as ill-advised and explained that the Board was "unfortunately" bound by it "even if we disagree with it."  (ECF No. 1-3, at 2–3.)  At the February 9 meeting, Board Member Damon Gardenhire stated that he was "troubled by the fact that our hands are tied by the State Supreme Court decision," in part because he believed that decision to be based on "a very unfortunate, bigoted history."  (Feb. 9 Board

5

Meeting Tr., Ex. 1,[2] at 3.)  Board Member David Rutkauskas "agree[d] with Mr. Gardenhire" and called the situation "unfortunate."  (*Id.*)  Board Member William Pearson stated that he "would love to vote for a school of this type" but could not do so "because of the rule of law that we have in Oklahoma."  (*Id.* at 4.)  Board Member Jared Buswell argued that public schools of the past were "founded in order to teach religious precepts."  (*Id.*)  At the March 9 meeting, Mr. Gardenhire reiterated his "personal disagreements with" *Drummond*, and Mr. Buswell "agree[d] with [Mr. Gardenhire's] comments."  (Mar. 9 Board Meeting Tr., Ex. 2, at 2.)  Throughout the two meetings, no Board member spoke in support of *Drummond*'s reasoning or outcome.  (Feb. 9 Tr., Ex. 1; Mar. 9 Tr., Ex. 2.)

At the February 9 meeting, the Board also voted to seek private counsel for any litigation stemming from its denial of Ben Gamla's application.  (Feb. 9 Tr., Ex. 1, at 9–10.)  Ordinarily, the Oklahoma Attorney General would represent the Board in litigation against it.  (*Id.* at 7.)  But the Board did not wish to be represented by Attorney General Drummond in any lawsuits challenging its denial of Ben Gamla's application even though he vigorously and successfully opposed religious charter schools in the *Drummond* case.

Instead, at its March 9 meeting, the Board voted to retain First Liberty Institute as counsel for this matter.  (*Id.* at 11–12.)  In *Drummond*, First Liberty filed amicus briefs on behalf of itself and certain Oklahoma entities and officials arguing that Oklahoma's

---

[2] Citations to exhibit numbers refer to exhibits attached to this Motion.  Exhibits attached to Plaintiffs' Complaint are cited by ECF number.

prohibitions against religious charter schools are unconstitutional, and First Liberty took the same position on behalf of those Oklahoma clients in a separate lawsuit that challenged the proposed religious charter school at issue in *Drummond*.[3]  After the U.S. Supreme Court's 4–4 affirmance of *Drummond*, First Liberty issued a press release calling the outcome "disappointing" and promising "more legal battles ahead to ensure the government treats faith-based organizations fairly."  (May 2025 First Liberty Press Release, Ex. 3, at 3.)  And on March 24—the same day that Ben Gamla filed this lawsuit—First Liberty issued a press release confirming that it is representing the Board in this case and stating, "The Board is simply doing what the Oklahoma Supreme Court requires, which is discriminate against faith-based applicants simply because they are religious.  If it were not for the ban on religious schools, the board would have approved this school's application."  (Mar. 2026 First Liberty Press Release, Ex. 4, at 2.)

Earlier in the month, on March 11, Attorney General Drummond filed a lawsuit in state court arguing that the Board improperly failed to include deficiencies unrelated to religion in the grounds for its final denial of Ben Gamla's application.  Petition for Writ of Mandamus at 1–2, *Drummond v. Okla. Statewide Charter Sch. Bd.*, No. CV-2026-649

---

[3] *See* Brief of *Amici Curiae* Ryan Walters et al. in Support of Petitioners, *Drummond*, 605 U.S. 165 (No. 24-394), https://bit.ly/4c1Rc70; Brief of *Amici Curiae* Ryan Walters et al. in Support of Petitioners, *Okla. Statewide Charter Sch. Bd. v. Drummond*, 145 S. Ct. 1134 (mem.) (2025) (No. 24-394), https://bit.ly/4tfKzVs; Brief of *Amici Curiae* in Support of Respondents and Intervenor-Respondents, *Drummond*, 558 P.3d 1 (No. MA-121694), https://bit.ly/4sHsVtK; Defendant Oklahoma State Department of Education and Defendant State Superintendent of Public Instruction Ryan Walters' Motion to Dismiss, *OKPLAC, Inc. v. Statewide Virtual Charter Sch. Bd.*, No. CV-2023-1857 (Okla. Dist. Ct. Sept. 20, 2023), https://bit.ly/4lWhcFa.

(Okla. Dist. Ct. Mar. 11, 2026), https://bit.ly/4uMZPuu.  Attorney General Drummond alleged that the Board did so intentionally in order to engineer a record designed to prevent certain state-law issues from being considered in Ben Gamla's lawsuit before this Court.  *Id.* at 2, 11–12.

In his official capacity, Attorney General Drummond is a defendant in this lawsuit, as are members and officials of the Board.  (Compl. ¶¶ 14–24, ECF No. 1.)  While Attorney General Drummond has defended the constitutionality of Oklahoma's prohibitions against religious charter schools, his predecessor John O'Connor issued an opinion (which Drummond revoked) that those prohibitions violate the U.S. Constitution. Rebecca L. Wilkinson, Okla. Op. Att'y Gen. No. 2022-7 (2022), https://bit.ly/4bKJU8A; Letter from Gentner Drummond, Att'y Gen. Okla., to Rebecca L. Wilkinson, Exec. Dir., Statewide Virtual Charter Sch. Bd. (Feb. 23, 2023), https://bit.ly/4tgWW3o; *accord* Compl. ¶ 44, ECF No. 1.

Attorney General Drummond's term ends on January 11, 2027 (*see* Okla. Const. art. 6, § 4), and he is not running for re-election (Feb. 9 Tr., Ex. 1, at 6).  It is unknown who Attorney General Drummond's successor will be and whether that person will agree with Drummond's or O'Connor's views on the issues in this case.

Proposed Intervenors have various beliefs and backgrounds, but they share two core convictions: a public school must not be religious, and tax dollars must not fund religious instruction in public schools.  Rabbi Daniel Kaiman is the Principal Rabbi of a congregation in Oklahoma and is raising two Jewish children who attend a non-charter public elementary school in Oklahoma.  (Kaiman Decl., Ex. 6 ¶¶ 2–3, 6.)  Bradley Archer

8

is an atheist, a teacher at an Oklahoma charter school, and the parent of a nonreligious child who currently attends a non-charter public school in Oklahoma and will in the 2026–27 school year start attending the charter school where Mr. Archer teaches. (Archer Decl., Ex. 7 ¶¶ 2–3, 6.)  Erika DuBose is a practicing Jew, a social worker for the Cherokee Nation, and the parent of two children—also practicing Jews—who attend a non-charter public high school in Oklahoma.  (DuBose Decl., Ex. 8 ¶¶ 2, 5, 8.)  Sydney Gebhardt—an adult child of Ms. DuBose who is a senior at a non-charter public high school in Oklahoma—is a nonbinary practicing Jew and advocate for LGBTQ+ inclusion. (Gebhardt Decl., Ex. 9 ¶¶ 2, 5, 8.)  Kara Joy McKee and Gene Perry are a Jewish married couple and the parents of a child who attends a non-charter public elementary school in Oklahoma and is being raised within the Jewish tradition.  (McKee Decl., Ex. 10 ¶¶ 2, 5; Perry Decl., Ex. 11 ¶¶ 2, 5.)  Michele Medley is nonreligious, a child-and-family therapist, and the parent of two children who currently attend non-charter public schools in Oklahoma, one of whom will start attending an Oklahoma charter school in the 2026– 27 school year.  (Medley Decl., Ex. 12 ¶¶ 2, 6, 10.)

Each Proposed Intervenor pays taxes to the State of Oklahoma that provide revenue for public schools—including charter schools—and would be used to fund Ben Gamla if it is allowed to operate as a charter school.  All the Proposed Intervenors object to unlawful use of their tax payments for religious instruction in public schools.  The Proposed Intervenors who have children in Oklahoma public schools further object to public funds being diverted from their nonreligious public schools—which already face serious resource limitations—to Ben Gamla, a school that would not be appropriate for or

9

welcoming to Proposed Intervenors' children. As a public-school student, Mx. Gebhardt objects for the same reason. Likewise, as a public-school teacher, Mr. Archer objects to public funds being diverted from his nonreligious employer school to Ben Gamla, a school that would impose religion-based requirements for employment that he could not meet. (Archer Decl., Ex. 7 ¶¶ 4–11, 13–14; DuBose Decl., Ex. 8 ¶¶ 3–11; Gebhardt Decl., Ex. 9 ¶¶ 3–11; Kaiman Decl., Ex. 6 ¶¶ 4–11; McKee Decl., Ex. 10 ¶¶ 3–11; Medley Decl., Ex. 12 ¶¶ 4–11, 13–15; Perry Decl., Ex. 11 ¶¶ 3–11.)

Mr. Archer, as a charter-school teacher and soon-to-be charter-school parent, and Ms. Medley, as a soon-to-be charter-school parent, additionally fear that a judicial decision in favor of Ben Gamla could take away constitutional rights that all charter-school teachers and students now enjoy. (Archer Decl., Ex. 7 ¶ 12; Medley Decl., Ex. 12 ¶ 12.)

## ARGUMENT

The Tenth Circuit "has historically taken a 'liberal' approach to intervention and thus favors the granting of motions to intervene." *W. Energy All. v. Zinke*, 877 F.3d 1157, 1164 (10th Cir. 2017). Federal Rule of Civil Procedure 24(a) requires that a court grant intervention if certain conditions are met, while Rule 24(b) authorizes a court to permit intervention if other conditions are met. Proposed Intervenors satisfy the standards for both intervention as of right under Rule 24(a) and permissive intervention under Rule 24(b).

10

## I.   Proposed Intervenors are entitled to intervene as of right under Rule 24(a)(2).

To intervene as of right, a proposed intervenor must establish that: "(1) the application is timely; (2) it claims an interest relating to the property or transaction which is the subject of the action; (3) the interest may as a practical matter be impaired or impeded; and (4) the interest may not be adequately represented by existing parties." *Kane County v. United States (Kane III)*, 928 F.3d 877, 890 (10th Cir. 2019); Fed. R. Civ. P. 24(a)(2).  These requirements "may be relaxed in cases raising significant public interests."  *Kane III*, 928 F.3d at 890 (quoting *San Juan County v. United States*, 503 F.3d 1163, 1201 (10th Cir. 2007) (en banc)).  And in applying this four-part test, the courts of this Circuit are guided primarily by practical considerations, rather than "rigid, technical requirements."  *San Juan County*, 503 F.3d at 1195.  Proposed Intervenors satisfy all four parts of this test.

### A.  Proposed Intervenors' motion is timely.

This motion is timely.  Timeliness is determined "in light of all of the circumstances."  *Sanguine, Ltd. v. U.S. Dep't of Interior*, 736 F.2d 1416, 1418 (10th Cir. 1984).  "[T]hree non-exhaustive factors are particularly important: (1) the length of time since the movants knew of their interests in the case; (2) prejudice to the existing parties; and (3) prejudice to the movants."  *Zinke*, 877 F.3d at 1164 (citation modified).  Prejudice must be "caused by the movant's delay, not by the mere fact of intervention."  *Oklahoma ex rel. Edmondson v. Tyson Foods, Inc.*, 619 F.3d 1223, 1236 (10th Cir. 2010).  A motion to intervene is particularly timely when it comes in the "early stage of the litigation," as there is a "lack of prejudice to [the parties] flowing from the length of time between the

11

initiation of the proceedings and the motion to intervene." *Utah Ass'n of Cntys. v. Clinton*, 255 F.3d 1246, 1250–51 (10th Cir. 2001) (allowing intervention after two-and-a-half years because the case was not yet ready for trial); *see also Wurz v. Bill Ewing's Serv. Ctr., Inc.*, 129 F.R.D. 175, 177 (D. Kan. 1989) ("[S]ix [] weeks from the filing of the action is not an unreasonable amount of time within which to file a motion to intervene."). Here, Proposed Intervenors filed their motion eight days after this lawsuit was filed and five days after Plaintiffs filed a preliminary-injunction motion. Proposed Intervenors intend to submit a proposed response to the preliminary-injunction motion by the due date for the responses of the existing parties. Thus Proposed Intervenors easily meet the timeliness requirement.

### B. Proposed Intervenors have important interests in this case.

Proposed Intervenors have "interest[s] relating to the property or transaction which is the subject of the action." *Kane III*, 928 F.3d at 890. The interest requirement is a "highly fact-specific . . . practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." *Coal. of Arizona/New Mexico Cntys. for Stable Econ. Growth v. Dep't of Interior*, 100 F.3d 837, 841 (10th Cir. 1996) (citation modified). One way to meet the requirement is to show an interest that "is direct, substantial, and legally protectable." *San Juan County*, 503 F.3d at 1194. "But other interests may also suffice." *Id.* at 1195. And the "burden to satisfy this condition is minimal." *WildEarth Guardians v. U.S. Forest Serv.*, 573 F.3d 992, 996 (10th Cir. 2009) (citation modified). An intervenor-defendant need not demonstrate

12

Article III standing unless it seeks relief different from that sought by the parties.  *See Kane III*, 928 F.3d at 886–87 & nn.11–12.

Proposed Intervenors have multiple direct, substantial, and legally protectable interests in this case.  As Oklahoma taxpayers, Proposed Intervenors have an interest in opposing Plaintiffs' claims in order to protect Proposed Intervenors' individually enforceable state-law taxpayer rights.  Under Oklahoma law, state taxpayers have the right "to challenge the unlawful or unconstitutional expenditure of state funds."  *Okla. Pub. Emps. Ass'n v. Okla. Dep't of Cent. Servs.*, 55 P.3d 1072, 1078 (Okla. 2002); *accord Immel v. Tulsa Pub. Facilities Auth.*, 490 P.3d 135, 142 (Okla. 2021); *Fent v. Contingency Rev. Bd.*, 163 P.3d 512, 520 (Okla. 2007); *Kellogg v. Sch. Dist. No. 10*, 74 P. 110, 116 (Okla. 1903).  A need to protect state-law rights is sufficient to support intervention under Rule 24(a).  *See Colo. Cas. Ins. Co. v. S & S Joint Venture*, No. 11-CV-02182-MSK-KLM, 2011 WL 6055408, at *3 (D. Colo. Dec. 6, 2011) ("[G]ranting leave to intervene would allow [proposed intervenor] to preserve its right to defend its economic interest related to the underlying state court lawsuit . . . .").  In addition, the U.S. Supreme Court has recognized that taxpayers have special interests in preventing the unlawful use of their tax funds to support a religion, as that "coerce[s] a form of religious devotion in violation of conscience."  *See Ariz. Christian Sch. Tuition Org. v. Winn*, 563 U.S. 125, 141 (2011); *accord DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 347 (2006); *Flast v. Cohen*, 392 U.S. 83, 102–06 (1968).  Here, Proposed Intervenors seek to protect their right to prevent millions of tax dollars (*see* Ben Gamla Five-Year Budget, Ex. 5) from funding a religious charter school.  As the Oklahoma Supreme Court held in

13

*Drummond*, such funding would violate the Oklahoma Charter Schools Act, the Oklahoma Constitution, and the U.S. Constitution's Establishment Clause.  558 P.3d at 15; *see also* Okla. Stat. tit. 70, § 3-136(A)(2); Okla. Const. art. 1, § 5; Okla. Const. art. 2, § 5; U.S. Const. amend. I.

Proposed Intervenors have additional interests in this litigation in their capacities as public-school parents, a teacher, and a student.  A ruling in favor of Ben Gamla could divert already-limited public resources away from Proposed Intervenors' secular schools and to a religious school that would not be appropriate for or welcoming to them or their children and that would impose religion-based employment requirements that the intervenor-teacher could not meet.  *See supra* at 9–10.  Oklahoma public schools, including virtual charter schools, receive funding based in part on the number of students they serve.  Okla. Stat. tit. 70, § 1-124; *id.* § 18-201.1.  When students leave one public school for another, their per-pupil funds are allocated to the new school.  But school-district costs do not decrease proportionally with student enrollment, because school districts must still pay fixed costs for indispensable items such as facilities and administration.  Reductions in student enrollment can therefore result in budget cuts that adversely affect the quality of education a school provides.  *See, e.g.*, Gordon Lafer, Breaking Point: The Cost of Charter Schools for Public School Districts 10–11, 17 (2018), https://bit.ly/4dj2QMY.  Thus, an adverse ruling authorizing the public funding of a religious charter school could harm the quality of Proposed Intervenors' schools by taking funding away from them.

Finally, the Proposed Intervenors who teach at or plan to send their children to

Oklahoma charter schools have interests in preserving their and their children's existing constitutional protections at work and school.  Under current caselaw, Oklahoma charter schools are governmental entities and state actors and therefore must comply with the constitutional obligations that apply to the government.  *Drummond*, 558 P.3d at 9–14; *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 602 F.3d 1175, 1188 (10th Cir. 2010). Ben Gamla argues that Oklahoma charter schools should not be considered state actors and therefore need not comply with constitutional requirements.  (Compl. ¶¶ 121, 130, 141, 150, ECF No. 1.)  A ruling in Ben Gamla's favor could therefore set a precedent that could enable Proposed Intervenors' charter schools to ignore the many constitutional rights that public-school teachers, parents, and students have long enjoyed, such as equal protection (*e.g.*, *Brown v. Bd. of Educ.*, 347 U.S. 483, 495 (1954)), free speech (*e.g.*, *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 514 (1969)), and religious freedom (*e.g.*, *W. Virginia State Bd. of Educ. v. Barnette*, 319 U.S. 624, 642 (1943)). Potentially adverse "*stare decisis* effect[s]" like these are valid interests under Rule 24(a)(2), regardless of whether they relate to "the particular issue before the court." *Utah Ass'n of Cntys.*, 255 F.3d at 1252–54.

In sum, Proposed Intervenors have significant legal, economic, and educational interests in this case.

### C. Proposed Intervenors' ability to protect their interests will be impaired if they are not allowed to intervene.

Denying intervention would impair Proposed Intervenors' interests.  "To satisfy [the impairment] element of the intervention test, a would-be intervenor must show only

15

that impairment of its substantial legal interest is *possible* if intervention is denied." *Id.* at 1253 (emphasis added). Impairment "is not limited to consequences of a strictly legal nature." *Nat. Res. Def. Council v. U.S. Nuclear Regul. Comm'n*, 578 F.2d 1341, 1345 (10th Cir. 1978). And, like the interest requirement, the impairment requirement poses a "minimal" burden (*WildEarth Guardians*, 573 F.3d at 995) and is a matter of "practical judgment" (*Kane III*, 928 F.3d at 891).

Proposed Intervenors meet this minimal burden. An adverse merits judgment here would impair Proposed Intervenors' right under Oklahoma law to prevent the illegal delivery of their tax dollars to a religious public charter school. An adverse judgment would also impair Proposed Intervenors' interests as public-school parents, a teacher, and a student by diverting funds from their secular public schools. In addition, Ben Gamla would undoubtedly attempt to use a ruling in its favor here to block any separate future challenge to the funding and operation of Ben Gamla as a public charter school. And if intervention is denied, Proposed Intervenors will face substantial obstacles in any later effort to recoup public funding of Ben Gamla. *See Am. Atheists, Inc. v. City of Detroit Downtown Dev. Auth.*, 567 F.3d 278, 287 (6th Cir. 2009) (once funds are disbursed to recipients, recovery can be "difficult, if not judicially impossible"). Likewise, there would be no way to later undo harm to Proposed Intervenors' schools caused by the diversion of public funds away from them.

Moreover, if Ben Gamla prevails on the merits, Proposed Intervenors' interests could be impaired in ways that extend beyond the direct effects of this case on its participants. "[T]he *stare decisis* effect of the . . . judgment"—and especially of an

16

appellate ruling—could hinder future efforts by Proposed Intervenors to challenge other religious charter schools and to enforce their constitutional rights as charter-school parents and a teacher. *See Utah Ass'n of Cntys.,* 255 F.3d at 1254; *see also id.* ("[A] judgment in favor of plaintiffs in this case would impair the intervenors' interest in promoting their environmental protection goals by seeking presidential designation of *other* national monuments *in the future*." (emphases added)).

### D. Proposed Intervenors' interests will not be adequately represented by the existing parties.

Finally, Proposed Intervenors meet their burden to demonstrate that their interests may not be adequately represented by the existing parties. "For a proposed intervenor to establish inadequate representation by a representative party, the possibility of divergence of interest need not be great, and this showing is easily made when the representative party is the government." *Kane III*, 928 F.3d at 891 (citation modified). Indeed, the Tenth Circuit has "expressed doubt about whether [the government] can 'adequately represent the interests of a private intervenor *and* the interests of the public.'" *Kane County v. United States (Kane IV)*, 94 F.4th 1017, 1030 (10th Cir. 2024) (quoting *Zinke*, 877 F.3d at 1168). That doubt is due in part to the government's "obligat[ion] to consider a broad spectrum of views, many of which may conflict with the particular interest of the would-be intervenor." *Utah Ass'n of Cntys.*, 255 F.3d at 1256. Furthermore, adequacy of representation under "Rule 24(a)(2) requires that the interests of [the parties] be *identical*, not just harmonious." *Kane IV*, 94 F.4th at 1033 (citation modified).

17

Here, Proposed Intervenors' and Defendants' interests are far from identical. To begin with, as governmental officials, Defendants face unique institutional constraints. The prospect of future lawsuits, liability for attorney's fees, and potential damages may materially influence their litigation and settlement strategy. Proposed Intervenors have no such institutional interests and are unreservedly committed to preserving Oklahoma's system of secular, nondiscriminatory public schools.

What is more, the defendant Board members' conduct and statements make plain that they will not adequately represent Proposed Intervenors' interests. The Board litigated in favor of religious charter schools in *Drummond*, and a majority of the Board's members continue to express disagreement with *Drummond*'s reasoning and outcome. *See supra* at 5–6. Indeed, the Board hired as counsel for this case an organization that has consistently advocated for legalizing religious charter schools (*see supra* at 6–7) and just last week pejoratively described the *Drummond* decision as requiring the Board to "discriminate against faith-based applicants simply because they are religious" (Mar. 2026 First Liberty Press Release, Ex. 4, at 2). Proposed Intervenors obviously cannot rely on the Board to defend the constitutionality of Oklahoma's prohibitions against religious charter schools. *See Coal. of Arizona/New Mexico Cntys.*, 100 F.3d at 845 (agency's "ability to adequately represent" proposed intervenor was "made all the more suspect by its [demonstrated] reluctance in protecting" his goals).

And while defendant Attorney General Drummond has consistently defended the constitutionality of the challenged prohibitions, he has only nine months left in his term. It is unknown whether the person who succeeds Drummond as Attorney General will

18

continue to oppose religious charter schools or will instead advocate in favor of their existence, as did Drummond's predecessor by issuing an opinion arguing that Oklahoma's requirements that charter schools be secular violate the U.S. Constitution. *See* Okla. Op. Att'y Gen. No. 2022-7, *supra*.  The Tenth Circuit has repeatedly concluded that proposed intervenors satisfied the inadequacy-of-representation requirement when—as here—there was a genuine risk that the position of governmental defendants could change, including because of an election.  *See Kane III*, 928 F.3d at 895; *Zinke*, 877 F.3d at 1168; *WildEarth Guardians*, 573 F.3d at 997; *Utah Ass'n of Cntys.*, 255 F.3d at 1256.

In addition, one of the arguments that Proposed Intervenors would make if allowed to take part in this case is that discriminatory practices or policies of Ben Gamla disqualify it from being a public charter school.  Charter schools cannot lawfully discriminate in student admissions, student discipline, and employment (*e.g.*, Okla. Stat. tit. 70, §§ 3-136(A)(2), 3-136(A)(9), 3-140), but there was substantial evidence that St. Isidore (the proposed religious charter school at issue in *Drummond*) planned to discriminate in all those ways.[4]  Attorney General Drummond did not present arguments concerning St. Isidore's discrimination to the Oklahoma Supreme Court in *Drummond*.[5]  If Attorney General Drummond takes the same approach here, Proposed Intervenors'

---

[4] *See* First Amended and Supplemental Petition, Ex. A, at PE71, 91, 133–34, 159, 161–70, 190–92, 195, 201–02, 222, 253–54, *OKPLAC, Inc. v. Statewide Virtual Charter Sch. Bd.*, No. CV-2023-1857 (Okla. Dist. Ct. Jan. 31, 2024), https://bit.ly/48haNyF (Part 1), https://bit.ly/4s64OUK (Part 2).

[5] *See* Petitioner's Brief in Support of Application to Assume Original Jurisdiction and Petition for Writ of Mandamus and Declaratory Judgment, *Drummond*, 558 P.3d 1 (No. MA-121694), https://bit.ly/41G7jC4; Petitioner's Reply to Respondents' and Intervenor's Briefs in Response, *Drummond*, 558 P.3d 1 (No. MA-121694), https://bit.ly/4dBXIDV.

interests in preventing diversion of their public-school tax funds to support unlawful discrimination that would exclude them or their children would go unrepresented.

In conclusion, unlike any existing party to this case, Proposed Intervenors are not only committed but also well-positioned to vigorously defend—throughout the likely multi-year life of this litigation—the constitutionality of Oklahoma's requirements that public charter schools be secular and open to all. They therefore meet the inadequacy-of-representation requirement.

\* \* \* \* \*

Proposed Intervenors thus satisfy all the requirements for intervention as of right. And this case raises "significant public interest[]" questions about Oklahoma's system of secular public schools, which further weighs in favor of allowing intervention under Rule 24(a). *See Kane III*, 928 F.3d at 890 (quoting *San Juan County*, 503 F.3d at 1201).

## II. Alternatively, the Court should grant permissive intervention under Rule 24(b).

If intervention is not granted as of right, it should be permitted under Federal Rule of Civil Procedure 24(b). Permissive intervention is warranted upon timely motion when a movant "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). When evaluating a motion for permissive intervention, "the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). In exercising their discretion to grant permissive intervention, courts in this Circuit have considered various other factors, including "whether the would-be intervener's input adds value to the existing litigation"; "whether the petitioner's interests are adequately

20

represented by the existing parties"; and "the availability of an adequate remedy in another action."  *See, e.g.*, *Lower Ark. Valley Water Conservancy Dist. v. United States*, 252 F.R.D. 687, 690–91 (D. Colo. 2008) (quoting *United States v. N. Colo. Water Conservancy Dist.*, 251 F.R.D. 590, 599 (D. Colo. 2008)).

Proposed Intervenors assert defenses that "share[] with the main action a common question of law or fact."  Fed. R. Civ. P. 24(b)(1)(B).  Ben Gamla asserts that the Board violated the Free Exercise and Equal Protection Clauses by denying its charter-school application.  (Compl. ¶¶ 108–150, ECF No. 1.)  If permitted to intervene, Proposed Intervenors will mount a merits defense to these claims on multiple grounds, including that (i) public charter schools are governmental entities and state actors and therefore lack rights under the Free Exercise and Equal Protection Clauses; (ii) even if charter schools had such rights, the Clauses do not require Oklahoma to authorize religious education in its charter schools; (iii) indeed, the Establishment Clause affirmatively prohibits Oklahoma from doing so; and (iv) discriminatory practices or policies of Ben Gamla disqualify it from lawfully operating as a public charter school.

Moreover, intervention will not "unduly delay or prejudice the adjudication of the original parties' rights" (Fed. R. Civ. P. 24(b)(3)), as this case was filed only eight days ago, and Plaintiffs' preliminary-injunction motion was filed only five days ago.  *See Lower Ark. Valley*, 252 F.R.D. at 691 ("[I]ntervention would not 'unduly delay or prejudice adjudication of the original parties' rights' because neither defendant has yet filed an answer to Plaintiff's complaint, and because no party appears to have yet conducted any factual discovery.").  As noted above, Proposed Intervenors plan to submit

21

a proposed response to the preliminary-injunction motion by the due date for the responses of the existing parties.

Permissive intervention is also supported by the additional factors set forth in cases like *Lower Ark. Valley*, 252 F.R.D. at 690–91.  Proposed Intervenors would add value to the case by presenting a robust merits defense.  And Proposed Intervenors' counsel bring substantial experience in church-state, religious-freedom, and public-education litigation.  Indeed, many of Proposed Intervenors' counsel currently represent intervenors in a similar case involving an attempt to establish a religious charter school in Knox County, Tennessee.  Order Granting Motion to Intervene, *Wilberforce Acad. of Knoxville v. Knox Cnty. Bd. of Educ.*, No. 3:25-CV-00584 (E.D. Tenn. Jan. 30, 2026).  In addition, many of Proposed Intervenors' counsel represented Oklahoma taxpayers in a state-district-court lawsuit challenging the proposed St. Isidore religious charter school. *See* First Amended and Supplemental Petition, *OKPLAC, Inc.*, No. CV-2023-1857, https://bit.ly/48haNyF.  And many of Proposed Intervenors' counsel represented *amici* in the *Drummond* litigation, filing briefs in the U.S. and Oklahoma Supreme Courts.[6]  This expertise will aid the Court's consideration of the constitutional issues and weighs in favor of granting permissive intervention.  Further, as explained above, Proposed Intervenors' interests will not be adequately represented by Defendants.  And finally, attempting to protect Proposed Intervenors' interests in an alternative forum could be

---

[6] *See* Brief of Oklahoma Parent Legislative Advocacy Coalition et al. as *Amici Curiae* in Support of Respondent, *Drummond*, 605 U.S. 165 (No. 24-394), https://bit.ly/47p1yMI; Brief, in Support of Petitioner, of *Amici Curiae* Taxpayers, *Drummond*, 558 P.3d 1 (No. 121,694), https://bit.ly/4lUS1CO.

difficult and inefficient, result in multiple lawsuits concerning the same issue, and lead to conflicting adjudications.

## CONCLUSION

For the foregoing reasons, Proposed Intervenors' Motion to Intervene should be granted.

Respectfully submitted on April 1, 2026.

s/ Brent Rowland
Brent Rowland, OBA No. 13415
Morgan Bandy, WI Bar No. 1130673*
Oklahoma Appleseed Center for
Law & Justice
624 S. Denver Ave., Suite 400
Tulsa, OK 74119
Telephone: (918) 519-5750
brent@okappleseed.org /
morgan@okappleseed.org

Daniel Mach, DC Bar No. 461652*
Heather L. Weaver, DC Bar No. 495582*
American Civil Liberties Union
Foundation
915 15th Street, NW, Suite 600
Washington, DC 20005
Telephone: (202) 675-2330
dmach@aclu.org / hweaver@aclu.org

Nancy A. Noet, WI Bar No. 1023106*
Samuel T. Grover, WI Bar No. 1096047*
Freedom From Religion Foundation
PO Box 750
Madison, WI 53701
Telephone: (608) 256-8900
noetn@ffrf.org / sgrover@ffrf.org

Alex J. Luchenitser,
DC Bar No. 473393*
Luke Anderson, DC Bar No. 90042004*
Americans United for Separation of
Church and State
1310 L Street NW, Suite 200
Washington, DC 20005
Telephone: (202) 466-7306 / (202) 898-2134
luchenitser@au.org / anderson@au.org

Jessica Levin, CA Bar No. 338240*
Wendy Lecker, NY Bar No. 2283125*
Patrick Cremin, CA Bar No. 345406*
Katrina Reichert, CA Bar No. 357984*
Education Law Center
60 Park Place, Suite 300
Newark, NJ 07102
Telephone: (973) 624-1815
JLevin@edlawcenter.org /
WLecker@edlawcenter.org /
PCremin@edlawcenter.org /
KReichert@edlawcenter.org

*Attorneys for Proposed Intervenors*
* *Pro hac vice* motion submitted herewith or forthcoming.

23

## CERTIFICATE OF SERVICE

I hereby certify that on April 1, 2026, I caused copies of the foregoing document and all supporting attachments to be served on Plaintiffs' counsel via ECF, and to Defendants and their counsel by mail and email at the addresses below:

Gentner Drummond, Attorney General
Garry M. Gaskins, II, Solicitor General
Brad Clark, General Counsel
Office of Oklahoma Attorney General
313 NE 21st Street
Oklahoma City, OK 73105
*Gentner.Drummond@oag.ok.gov*
*Garry.Gaskins@oag.ok.gov*
*Bradley.Clark@oag.ok.gov*

Hiram Sasser
First Liberty Institute
2001 West Plano Parkway, Suite 1600
Plano, TX 75075
*hsasser@firstliberty.org*

Skyler H. Lusnia
William Pearson
Amber Hidy
Britni Tomcho
David Rutkauskas
Damon Gardenhire
Dr. Kitty Campbell
Jared Buswell
Lindel Fields
Brian T. Shellem
Rebecca Wilkinson
M.C. Connors Building
2501 N. Lincoln Blvd., Suite 301
Oklahoma City, OK 73105

s/ Brent Rowland
Brent Rowland

24