**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA**

THE NATIONAL BEN GAMLA
JEWISH CHARTER SCHOOL
FOUNDATION, INC., *et al.*,

        *Plaintiffs*,

v.

GENTNER DRUMMOND, in his
official capacity as Attorney General of
Oklahoma, *et al.*,

        *Defendants*.

Case No. 5:26-cv-00582-R

**<u>OKLAHOMA STATEWIDE CHARTER SCHOOL BOARD DEFENDANTS'
RESPONSE TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION</u>**

## TABLE OF CONTENTS

INTRODUCTION ..................................................................................................1

BACKGROUND ...................................................................................................2

ARGUMENT........................................................................................................8

    I.    THE *DRUMMOND* DECISION DOES NOT BIND THIS COURT.....................................8

        A.   Part I ignored relevant decisions of the United States Supreme Court.................9

        B.   Parts II, III, and IV's analyses of federal law are irrelevant to this Court's determination of the issues presented.....................................................................12

    II.   BEN GAMLA MEETS THE REQUIREMENTS FOR A PRELIMINARY INJUNCTION.....13

        A.   Ben Gamla is likely to succeed on the merits of its claims. ...............................13

        B.   The remaining factors favor an injunction.........................................................16

    III.  AN INJUNCTION IS NECESSARY FOR BOARD MEMBERS TO COMPLY WITH THEIR OATH OF OFFICE. ...............................................................................................17

CONCLUSION...................................................................................................17

CERTIFICATE OF SERVICE ...............................................................................19

## TABLE OF AUTHORITIES

**CASES**

*Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288 (2001) ...............15

*Carson v. Makin*, 596 U.S. 767 (2022) .................................................................11, 14, 16

*Caviness v. Horizon Cmty. Learning Ctr., Inc.*, 590 F.3d 806 (9th Cir. 2010) ...................15

*Does 1–11 v. Bd. of Regents of Univ. of Colo.*, 100 F. 4th 1251 (10th Cir. 2024)..............13

*Drummond v. Okla. Statewide Virtual Charter Sch. Bd.*, 558 P.3d 1 (Okla. 2024) ... passim

*Espinoza v. Mont. Dep't of Revenue,* 591 U.S. 464 (2020)................................1, 10, 11, 14

*Hobby Lobby Stores, Inc. v. Sebelius*, 723 F.3d 1114 (10th Cir. 2013)........................16, 17

*Jackson v. Metro. Edison Co.*, 419 U.S. 345 (1974)...........................................................12

*Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507 (2022)......................................................13

*Lebron v. Nat'l R.R. Passenger Corp.,* 513 U.S. 374 (1995)..............................................12

*Lindke v. Freed*, 601 U.S. 187 (2024)................................................................................15

*Logiodice v. Trs. of Me. Cent. Inst.*, 296 F.3d 22 (1st Cir. 2002)......................................15

*Manhattan Cmty. Access Corp. v. Halleck*, 587 U.S. 802 (2019).........................12, 14, 15

*Marbury v. Madison*, 1 Cranch 137 (1803) .......................................................................11

*Michigan v. Long*, 463 U.S. 1032 (1983)............................................................................9

*Nitro-Lift Technologies, LLC v. Howard*, 568 U.S. 17 (2012) (per curiam).......................11

*Oklahoma Statewide Charter Sch. Bd. v. Drummond*, 605 U.S. 165 (2025) (per curiam)..7

*Oliver v. Hofmeister*, 368 P.3d 1270 (Okla. 2016).............................................................5

*Peltier v. Charter Day Sch., Inc.*, 37 F.4th 104 (4th Cir. 2022) .........................................15

*Polk Cnty. v. Dodson*, 454 U.S. 312 (1981) ..........................................................................12

*Rendell-Baker v. Kohn*, 457 U.S. 830 (1982) ...............................................................12, 15

*Robert S. v. Stetson Sch., Inc.*, 256 F.3d 159 (3d Cir. 2001) .............................................15

*TMJ Implants, Inc. v. Aetna, Inc.*, 498 F.3d 1175 (10th Cir. 2007)...............................9, 13

*Trevino v. Thaler*, 569 U.S. 413 (2013) ...............................................................................9

*Trinity Lutheran Church of Columbia, Inc. v. Comer,* 582 U.S. 449 (2017) ................1, 14

*VDARE Found. v. City of Colo. Springs*, 11 F.4th 1151 (10th Cir. 2021)..........................15

*Wilder v. Turner*, 490 F.3d 810 (10th Cir. 2007)...............................................................9, 12

*Wilson v. Hawaii*, No. 23-7517, 2024 WL 5036306 (U.S. Dec. 9, 2024) (Thomas, J.,
    statement respecting the denial of certiorari)...........................................................9, 10

*Zelman v. Simmons-Harris*, 536 U.S. 639 (2002)...............................................................16

## STATUTES

Okla. Stat. tit. 70, § 18-200.1..............................................................................................16

Okla. Stat. tit. 70, § 3-132.1..................................................................................................2

Okla. Stat. tit. 70, § 3-132.2..................................................................................................2

Okla. Stat. tit. 70, § 3-134.....................................................................................................8

Okla. Stat. tit. 70, § 3-136.....................................................................................................3

Okla. Stat. tit. 70, §§ 3-130 *et seq* ......................................................................................3

## OTHER AUTHORITIES

Br. for Pet'rs, Okla. Statewide Charter Sch. Bd. v. Drummond, 605 U.S. 165 (No. 24-
    394). ...........................................................................................................................14

Original Pet., OKPLAC, Inc. v. Statewide Virtual Charter Sch. Bd., No. CV-2023-1857
    (Okla. Cnty. Dist. Ct. July 31, 2024)...........................................................................5

Pet. for a Writ of Cert., Okla. Statewide Charter Sch. Bd. v. Drummond, 605 U.S. 165 (No. 24-394)...................................................................................................14

**CONSTITUTIONAL PROVISIONS**

Okla. Const. art. II, § 5. .........................................................................................10

U.S. Const. art. VI, cl. 2.............................................................................................8

## INTRODUCTION

Ben Gamla's application for a proposed Jewish charter school placed the Oklahoma Statewide Charter School Board in a difficult situation. The Board believed—and still believes—that denying Ben Gamla's otherwise-qualified revised application solely because of its religious character would violate the Free Exercise Clause of the United States Constitution. But the Oklahoma Supreme Court issued a mandate in *Drummond v. Oklahoma Statewide Virtual Charter School Board* that prohibited the Board from approving Ben Gamla's otherwise-qualified revised application because of its religious character. 558 P.3d 1 (Okla. 2024). Due to its commitment to following the law and abiding by the court's order in *Drummond*, the Board denied Ben Gamla's revised application.

The United States Supreme Court calls this type of discrimination, based solely on religious character, "odious to our Constitution." *Trinity Lutheran Church of Columbia, Inc. v. Comer,* 582 U.S. 449, 467 (2017). And a state constitution's requirement that no money or "no-aid" be provided to religious organizations offers no excuse. *See Espinoza v. Mont. Dep't of Revenue,* 591 U.S. 464, 488–89 (2020). But until a federal court says otherwise, the Board is required to continue engaging in odious discrimination per the *Drummond* decision. For this reason, and because Ben Gamla is likely to succeed on the merits of its free exercise claims, the Board respectfully requests this Court grant the Motion for Preliminary Injunction.

## BACKGROUND

### *The Oklahoma Statewide Charter School Board and Oklahoma Charter Schools Act*

The Oklahoma Statewide Charter School Board exists to "support and expand education choice for Oklahoma families by authorizing and overseeing high-quality charter schools and implementing supplementary learning opportunities, ensuring access to innovative educational environments that promote academic excellence and that prepare students for successful lives." Oklahoma Statewide Charter School Board, https://oklahoma.gov/scsb.html (last modified Mar. 3, 2026). As a statutorily created state board, its nine Board Members supervise the operation of virtual and brick-and-mortar charter schools across the state; ensure charter school compliance with state law, and maintain the procedure for accepting, approving, and disapproving proposed charter school applications; among other duties. *See* Okla. Stat. tit. 70, §§ 3-132.1, 132.2. Board Members hire an Executive Director and other staff to serve at the Board's direction. Okla. Stat. tit. 70, § 3-132.2.

The Oklahoma Statewide Charter School Board was established on July 1, 2024. Okla. Stat. tit. 70, § 3-132.1(I). It is the successor-in-interest to the Oklahoma Statewide Virtual Charter School Board, which was abolished on the same date. *Id.* Upon the statutory change, the Oklahoma Statewide Charter School Board was automatically substituted in litigation for the Oklahoma Statewide Virtual Charter School Board. Decl. of Hiram S. Sasser, III (Sasser Decl.), Ex 1-E at 2. Therefore, as predecessor and successor, the actions and obligations of the Oklahoma Statewide Virtual Charter School Board and the Oklahoma Statewide Charter School Board are interchangeable.

2

The Oklahoma Charter Schools Act governs the establishment and operation of charter schools. *See* Okla. Stat. tit. 70, §§ 3-130 *et seq*. Relevant here is the religious exclusion from participation:

> A charter school shall be nonsectarian in its programs, admission policies, employment practices, and all other operations. A sponsor may not authorize a charter school or program that is affiliated with a nonpublic sectarian school or religious institution[.]

Okla. Stat. tit. 70, § 3-136(A)(2). This ban is twofold—status and use. The second sentence prohibits religious groups from operating a charter school because of their religious status—i.e., affiliation with a religious institution. And the first sentence prohibits a charter school having any religious use—i.e., being religious in its programs or operation. Together, these two bans are a full-scale prohibition on a charter school having any religious character whatsoever.

In 2022, Executive Director Rebecca Wilkinson requested an official opinion of the Oklahoma Attorney General as to whether enforcement of the Oklahoma Charter Schools Act's religious exclusion would violate the First Amendment's Free Exercise Clause, as interpreted in *Trinity Lutheran Church of Colombia, Inc. v. Comer*, *Espinoza v. Montana Department of Revenue*, and *Carson v. Makin*. Sasser Decl., Ex. 1-A at 1. Then-Oklahoma Attorney General John O'Connor ultimately concluded that enforcement of either the status or use religious exclusions would likely be unconstitutional under the Free Exercise Clause, because "they single out religiously affiliated organizations based solely on their 'sectarian' status or their anticipated use of public funds for religious purposes." *Id.* at 14–15.

3

Upon taking office in early 2023, Oklahoma Attorney General Gentner Drummond withdrew Former General O'Connor's opinion. *Id*., Ex. 1-B at 1. General Drummond cited alleged legal uncertainties surrounding the application of federal state action doctrine to charter schools as the reason for the withdrawal, stating that he was "hopeful that the U.S. Supreme Court w[ould] definitively rule on this unsettled issue." *Id*.

### St. Isidore of Seville Catholic Virtual School

Also in early 2023, the Archdiocese of Oklahoma City and Diocese of Tulsa applied to the Board for a proposed charter school: St. Isidore of Seville Catholic Virtual School. *See Drummond*, 558 P.3d at 6–7. St. Isidore's revised application ran directly into both religious exclusions: the operator was affiliated with two religious institutions and the school planned to "fully incorporate" the teachings of the Catholic Church into its operation. *Id.* at 14. Aside from its religious character, St. Isidore's revised application was otherwise exemplary and worthy of approval under the Act. Sasser Decl., Ex. 1-C at 3.

So the Board Members, having taken an oath to uphold the Constitution of the United States, had a choice to make. *Id*. Should they vote to deny St. Isidore's revised application because of its religious character and risk violating the Free Exercise Clause? Or should they approve it in spite of its religious character in violation of the Oklahoma Charter Schools Act's religious exclusion?

At an open meeting, the Board voted 3-2 to approve St. Isidore's revised application (and eventually, a contract for sponsorship). *Drummond*, 558 P.3d at 6–7. Doing so reflected the Board's belief that enforcing the religious exclusion against St. Isidore would violate the Free Exercise Clause and that approval was consistent with the Oklahoma

4

Supreme Court's decision in *Oliver v. Hofmeister,* which held that a "state funded scholarship provided to students with disabilities to attend a private school of choice" did not offend the Oklahoma Constitution when parents chose religious schools. 368 P.3d 1270, 1272 (Okla. 2016); *see also* Sasser Decl., Ex. 1-C at 14–15.

**Drummond v. Oklahoma Statewide Virtual Charter School Board**

Litigation over St. Isidore quickly ensued. A public-education advocacy organization, alongside nine Oklahoma taxpayers, sued in Oklahoma County District Court. Original Pet., OKPLAC, Inc. v. Statewide Virtual Charter Sch. Bd., No. CV-2023-1857 (Okla. Cnty. Dist. Ct. July 31, 2024). General Drummond's lawsuit followed—this one an original jurisdiction action at the Oklahoma Supreme Court. Sasser Decl., Ex. 1-D.

General Drummond sought a writ of mandamus compelling the Board to rescind its contract with St. Isidore, arguing that the "contract is in violation of the U.S. Constitution as well as Oklahoma's Constitution." *Id*. at ¶ 10. The Board opposed General Drummond's Petition. *Id*., Ex. 1-C.

The Oklahoma Supreme Court assumed original jurisdiction and held that "the St. Isidore Contract violates the Oklahoma Constitution, the [Oklahoma Charter Schools] Act, and the federal Establishment Clause." *Drummond*, 558 P.3d at 7. To reach that decision, the court began with Article II, Section 5 of the Oklahoma Constitution, which "prohibits the State from using public money for the benefit or support of any religious institution." *Id.* at 7. It held that "[t]he expenditure of state funds for St. Isidore's operations constitutes the use of state funds for the benefit and support of the Catholic church" in violation of the Oklahoma Constitution. *Id*. at 8–9. The court then further held that St. Isidore's existence

5

violated Article I, Section 5 of the Oklahoma Constitution which requires Oklahoma to establish and maintain "a system of public schools, which shall be open to all the children of the state and free from sectarian control" and the Oklahoma Charter Schools Act's religious exclusion. *Id.* at 9.

To reach the conclusion that St. Isidore violated the federal Establishment Clause, the Oklahoma Supreme Court reasoned that St. Isidore was a governmental entity and a state actor. *Id.* at 9–15. To determine that St. Isidore was a governmental entity, the court relied on the Oklahoma Charter Schools Act's legislative label that "a charter school is a public school, sponsored by a governmental entity." *Id.* at 9 (emphasis omitted). And to alternatively conclude that St. Isidore was a state actor, the Oklahoma Supreme Court analyzed "U.S. Supreme Court state actor tests." *Id.* at 11.

After holding that St. Isidore was a governmental entity and state actor, the court held that "it cannot ignore the mandates of the Establishment Clause." *Id.* at 13. Because St. Isidore planned to "fully incorporate Catholic teachings into every aspect of the school, . . . require students to spend time in religious instruction and activities, . . . [and] permit state spending in direct support of the religious curriculum and activities[,]" the Board's sponsorship contract with St. Isidore violated the Establishment Clause. *Id*. at 14.

Finally, the court held that the Free Exercise Clause was not implicated because of state action. *Id.* at 14–15.

Justice Kuehn dissented. *Id.* at 15–19 (Kuehn, J., dissenting). In her view, "St. Isidore would not become a 'state actor' merely by contracting with the [Board] to provide a choice in educational opportunities." *Id.* at 15. Nor would funding St. Isidore violate

6

Article II, Section 5 of the Oklahoma Constitution.  *Id.*  But rather, excluding St. Isidore under Article II, Section 5 (or the Oklahoma Charter Schools Act's religious exclusion) would violate the Free Exercise Clause.  *Id.* at 18–19.

Both the Board and St. Isidore sought—and were granted—certiorari at the United States Supreme Court.  *Oklahoma Statewide Charter Sch. Bd. v. Drummond*, 605 U.S. 165, 166 (2025) (per curiam).  But the Supreme Court, with Justice Barrett recused, deadlocked 4-4.  *Id.*  That tie resulted in a consolidated one-line opinion: "The judgment is affirmed by an equally divided court."  *Id.*  So the Oklahoma Supreme Court's decision in *Drummond* remained binding, requiring the Board to enforce the religious exclusion or risk harsh penalties for violating a court order.  Sasser Decl., Ex. 1-E at 3–4.

### *The Ben Gamla Jewish Charter School*

In 2025, the National Ben Gamla Jewish Charter School Foundation, Inc. applied for a proposed charter school—Ben Gamla Jewish Charter School.  Decl. of Peter Deutsch, Pls. Ex. 2 at ¶ 26, ECF No. 11-2 at 6.  Ben Gamla wished to "incorporate[] a Jewish perspective in all subjects"—teaching "Jewish religion, culture, values, rituals, texts, holidays, and practices" throughout its school.  *Id.* at ¶¶ 27–30.  The application affirmed that it would abide by all provisions of the Oklahoma Charter Schools Act, except for the religious exclusion.  *Id.* at ¶ 31.

The Board denied Ben Gamla's application at a public meeting, then sent Ben Gamla a letter listing ten reasons for the rejection, including the religious exclusion and the *Drummond* decision.  Pls. Ex. 2-B, ECF No. 11-2 at 82–83.  Ben Gamla exercised its statutory right to submit a revised application for another vote of the Board at a public

7

meeting.  Pls. Ex. 2-C, ECF No. 11-2 at 86–90; *see also* Okla. Stat. tit. 70, § 3-134(E)(3). Satisfied that Ben Gamla explained or cured the other nine reasons for rejection, the Board denied the revised application solely under the religious exclusion and *Drummond*.  Pls. Ex. 2-D, ECF No. 11-2 at 103; *see also* Sasser Decl., Ex. 1-F.

But at both meetings, Board Members expressed their discontent with having to do so.  *See* Compl. at ¶¶ 87–94, 103, ECF No 1 at 14–15, 17.  One Member remarked that the *Drummond* decision meant that the Board's "hands are tied," regardless of the strengths of Ben Gamla's revised application.  *Id.* at ¶ 87.  Despite the Board's advocacy at the Oklahoma Supreme Court and United States Supreme Court that denying an applicant solely because of its religion violated the Free Exercise Clause, the *Drummond* decision required it to do just that.

And now the Board is reaping what the *Drummond* decision sowed on its behalf— a lawsuit alleging it violated Ben Gamla's First and Fourteenth Amendment rights.  But the Board was powerless to do otherwise with Ben Gamla's revised application under *Drummond*.  In fact, General Drummond already threatened Board Members with criminal contempt of court, should they fail to implement *Drummond*'s result.  Sasser Decl., Ex. 1-E at 3–4.  But until a federal court says otherwise, the Board is required to continue engaging in religious discrimination.

## ARGUMENT

### I.    THE *DRUMMOND* DECISION DOES NOT BIND THIS COURT.

No part of the *Drummond* decision is binding on this Court.  *See* U.S. Const. art. VI, cl. 2.  The decision consists of four parts: (I) a holding that the Oklahoma Constitution and

the Oklahoma Charter Schools Act's religious exclusion prohibited the Board's contract with St. Isidore; (II) a holding that St. Isidore would be a governmental entity and alternatively, a state actor; (III) a dicta analysis that the Establishment Clause prohibited the St. Isidore contract, and; (IV) a holding that the Free Exercise Clause did not apply to the case.  Through either improper avoidance or incorrect analysis, each part of the *Drummond* decision involves an interpretation of federal law.  *Drummond*, 558 P.3d at 7–15.  But "[i]t is beyond cavil that [a federal court is] not bound by a state court interpretation of federal law."  *Wilder v. Turner*, 490 F.3d 810, 814 (10th Cir. 2007) (quotation omitted).  In fact, a federal court "owes no deference to state-court interpretation of the United States Constitution."  *TMJ Implants, Inc. v. Aetna, Inc.*, 498 F.3d 1175, 1181 (10th Cir. 2007).  So the analyses in *Drummond* are irrelevant to this Court's determination of the issues in this case.

### A.    Part I ignored relevant decisions of the United States Supreme Court.

Part I held that the Oklahoma Constitution and Oklahoma Charter Schools Act prohibited the Board from contracting with St. Isidore.  The court stated later in its opinion that this determination "affords bona fide, separate, adequate, and independent grounds" to rest its decision.  *Drummond*, 558 P.3d at 13.  It is true that a federal court "will not review judgments of state courts that rest on adequate and independent state grounds."  *Michigan v. Long*, 463 U.S. 1032, 1041–42 (1983).  But only "'constitutionally proper' rules can create adequate and independent state grounds."  *Wilson v. Hawaii*, No. 23-7517, 2024 WL 5036306, at *20 (U.S. Dec. 9, 2024) (Thomas, J., statement respecting the denial of certiorari) (quoting *Trevino v. Thaler*, 569 U.S. 413, 421 (2013)).  So state supreme courts

9

must give the Constitution its "due regard," and a "state-law holding . . . is not an adequate nonfederal ground" where it violates the Constitution. *Id.* (quotation omitted).

The Oklahoma Supreme Court primarily rested its decision on Article II, Section 5 of the Oklahoma Constitution, or the "no-aid" clause, which reads:

> No public money or property shall ever be appropriated, applied, donated, or used, directly or indirectly, for the use, benefit, or support of any sect, church, denomination, or system of religion, or for the use, benefit, or support of any priest, preacher, minister, or other religious teacher or dignitary, or sectarian institution as such.

But without any mention of the United States Constitution in this analysis, despite the Board raising the issue, Sasser Decl., Ex. 1-C at 10–11, the "[Oklahoma] Supreme Court failed to give the [First] Amendment its due regard." *Wilson*, 2024 WL 5036306, at *20 (Thomas, J., statement). Had it properly asked the "threshold question of whether the [First] Amendment allows" Article II, Section 5 to prohibit the Board's contract with St. Isidore, the Oklahoma Supreme Court would have found that "[t]he answer is 'no.'" *Id.*

In *Espinoza v. Montana Department of Revenue,* the Montana Supreme Court relied on the state's "no-aid" provision to strike down a program providing tuition assistance to parents that choose to send their students to private, religious schools. 591 U.S. at 474. The United States Supreme Court reversed, stating that Montana cannot have an "interest in separating church and State 'more fiercely' than the Federal Constitution . . . in the face of free exercise." *Id.* at 484–85. And "[g]iven the conflict between the Free Exercise Clause and the application of the no-aid provision here, the Montana Supreme Court should have 'disregard[ed]' the no-aid provision and decided this case 'conformably to the

10

[C]onstitution' of the United States." *Id.* at 488 (quoting *Marbury v. Madison*, 1 Cranch 137, 178 (1803)).

Applying *Espinoza* here, Article II, Section 5 is not a "constitutionally proper" state ground for the Oklahoma Supreme Court's decision. Dissenting Justice Kuehn raised this exact concern. She argued that the Majority ignored the Free Exercise Clause in ways that "destined [*Drummond*] for the same fate as the Montana Supreme Court's opinion in *Espinoza*." *Drummond*, 558 P.3d at 18–19 (Kuehn, J., dissenting). The Majority did not heed her warnings.

Therefore, the *Drummond* decision is not binding here, and this Court should afford no deference to its determination that Article II, Section 5 prohibits religious charter schools. For the same reasons, this Court can also disregard the Oklahoma Supreme Court's holdings that Article I, Section 5 and the Oklahoma Charter Schools Act's religious exclusion prohibit such contracts.

Instead, this Court is bound to follow *Espinoza*. But the holding in Part I of the *Drummond* decision fails to properly consider the impact of the Free Exercise Clause, and cases like *Trinity Lutheran, Espinoza,* and *Carson*. *See Carson v. Makin*, 596 U.S. 767 (2022). So this Court must ignore the *Drummond* decision, because it rests on constitutionally improper state grounds. *See Nitro-Lift Technologies, LLC v. Howard*, 568 U.S. 17, 19–20 (2012) (per curiam) (holding that an Oklahoma Supreme Court decision did not rest on "adequate and independent state grounds," despite the court saying that it did, when the decision "disregards" relevant Supreme Court precedent).

11

**B.      Parts II, III, and IV's analyses of federal law are irrelevant to this Court's determination of the issues presented.**

Part II held that St. Isidore was a governmental entity and alternatively, a state actor. But whether an entity is a state actor under 42 U.S.C. § 1983 is a question for federal courts to determine under federal law.

The Oklahoma Supreme Court's conclusion that St. Isidore is a "governmental entity" because of the Oklahoma Charter Schools Act's labeling of charter schools as "public school[s]" is only binding in Oklahoma state courts—not here. *Drummond*, 558 P.3d at 10–12. That's because the Supreme Court's decisions in *Jackson v. Metropolitan Edison Company*, 419 U.S. 345, 351 (1974), *Polk County v. Dodson*, 454 U.S. 312, 317–20 (1981), *Lebron v. National Railroad Passenger Corporation,* 513 U.S. 374, 392–93 (1995), and *Manhattan Community Access Corporation v. Halleck*, 587 U.S. 802, 816 (2019), bind this Court. And those decisions all reject the idea that legislative labels and some degree of state regulation transform a private entity into a state actor.

And the court's alternative analysis of the Supreme Court's state action tests is nothing more than pontification about federal law. *See Wilder*, 490 F.3d at 814. Regardless of the Oklahoma Supreme Court's dicta as to its applicability, *Drummond*, 558 P.3d at 12, *Rendell-Baker v. Kohn*, 457 U.S. 830 (1982), binds this Court. And *Rendell-Baker* holds that a privately-operated, publicly-funded school that is regulated by public authorities is not a state actor. *Id.* at 831, 839–43.

Part III offered a dicta-analysis of the Establishment Clause that cites exclusively to decisions of the Supreme Court interpreting the Constitution, and Part IV concluded St.

Isidore's case did not implicate the Free Exercise Clause, despite the Board raising the issue.[1]   Sasser Decl., Ex. 1-C at 10–11.  So this Court "owes no deference" to either determination.  *TMJ Implants*, 498 F.3d at 1181.

Therefore, the *Drummond* decision, in its entirety, is not binding on this Court and should not weigh in its determination of whether Ben Gamla is likely to succeed on the merits of its claims.

## II.    BEN GAMLA MEETS THE REQUIREMENTS FOR A PRELIMINARY INJUNCTION.

A preliminary injunction is proper against the government where the plaintiff shows a likelihood of success on the merits, a likelihood of irreparable harm if the injunction is not granted, and that the balances of equities and public interest favor an injunction.  *Does 1–11 v. Bd. of Regents of Univ. of Colo.*, 100 F. 4th 1251, 1267 (10th Cir. 2024).

### A.    Ben Gamla is likely to succeed on the merits of its claims.

"When evaluating likelihood of success on the merits, it is critical to consider all factors that may bear on the probability that the moving party will succeed" including "the likelihood that the Supreme Court will grant review in the case."  *Id.* (quotation omitted). The Supreme Court's past grant of review in *Drummond*—where no decision was reached due to a technicality—leaves the issues primed for Supreme Court review again.  The Board takes the same position here that it took before the Oklahoma Supreme Court and

---

[1] The Oklahoma Supreme Court's analysis of the Establishment Clause and Free Exercise Clause also ignored the impact of *Kennedy v. Bremerton School District* on the religion clauses.  *See* 597 U.S. 507, 534–35 (2022) (stating that "in place of *Lemon* and the endorsement test," which was "abandoned," the "Establishment clause must be interpreted by reference to historical practices and understandings" (citation modified)).

13

the United States Supreme Court in *Drummond*: that the Oklahoma Charter Schools Act's religious exclusion violates the Free Exercise Clause.  *See* Sasser Decl., Ex. 1-C at 10–11; Pet. for a Writ of Cert., *Okla. Statewide Charter Sch. Bd.*, 605 U.S. 165 (No. 24-394); Br. for Pet'rs, *Okla. Statewide Charter Sch. Bd.*, 605 U.S. 165 (No. 24-394).

The Supreme Court has "repeatedly held that a State violates the Free Exercise Clause when it excludes religious observers from otherwise available public benefits." *Carson*, 596 U.S. at 778; *see also Trinity Lutheran Church*, 582 U.S. at 458, *Espinoza*, 591 U.S. at 475–76.  But the Oklahoma Charter Schools Act's religious exclusion requires that exact violation—the rejection of any applicant affiliated with a religious institution or that desires to operate a religious charter school.  So the Board, bound by *Drummond*, reluctantly denied Ben Gamla's otherwise-qualified revised application solely because of Ben Gamla's religious character.

When faced with similar discrimination in *Trinity Lutheran*, the Supreme Court held that "the exclusion of [an applicant] from a public benefit for which it is otherwise qualified, solely because it is [religious], is odious to our Constitution . . . and cannot stand."  582 U.S. at 467.  And Oklahoma cannot justify its discrimination with "an interest in separating church and state 'more fiercely' than the Federal Constitution."  *Carson*, 596 U.S. at 781 (quoting *Espinoza*, 591 U.S. at 484–85).  The Oklahoma Charter Schools Act's religious exclusion therefore violates the Free Exercise Clause.

Application of the Establishment Clause does not alter this analysis.  First, the Establishment Clause does not even apply if Ben Gamla, a private corporation, is not a state actor.  *Cf. Manhattan Cmty. Access Corp.*, 587 U.S at 804–05 (holding that because a

14

private party is not a state actor, the First Amendment does not apply).  It is not.  *Rendell-Baker*, 457 U.S. at 839–843; *cf. VDARE Found. v. City of Colo. Springs*, 11 F.4th 1151, 1161 (10th Cir. 2021) (applying *Rendell-Baker*).  Other circuit courts agree that privately-operated, publicly-funded schools are not state actors.  *See Caviness v. Horizon Cmty. Learning Ctr., Inc.*, 590 F.3d 806 (9th Cir. 2010); *Logiodice v. Trs. of Me. Cent. Inst.*, 296 F.3d 22 (1st Cir. 2002); *Robert S. v. Stetson Sch., Inc.*, 256 F.3d 159 (3d Cir. 2001).  *But see Peltier v. Charter Day Sch., Inc.*, 37 F.4th 104 (4th Cir. 2022).

This consistent result is because application of any federal state action test leads to the conclusion that privately-operated but publicly-funded schools are private actors. Oklahoma charter schools are not so "entwined with governmental policies," management, or control such that it is a state actor.  *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 296 (2001).  Neither has the state compelled any charter school to exist.  *See Manhattan Ctmy. Access Corp.*, 587 U.S. at 809.  Nor is educating students a "traditional, exclusive public function."  *Id.*  And Oklahoma is not outsourcing its constitutional obligation to create a system of public schools when it allows private organizations to operate charter schools as an additional education option for families, on top of traditional public school.  *See id.* at 810 n.1.  Finally, legislatively labeling charter schools "public" does not render them state actors, because "[t]he distinction between private conduct and state action turns on substance, not labels."  *Lindke v. Freed*, 601 U.S. 187, 197 (2024); *Caviness*, 590 F.3d at 812 ("We therefore begin with the recognition that [the state legislature] has statutorily defined a charter school as a 'public

15

school' . . . However, because the conduct of a private corporation is at issue, our inquiry does not end there.").

Second, "a neutral benefit program in which public funds flow to religious organizations through the independent choices of private benefit recipients does not offend the Establishment Clause." *Carson*, 596 U.S. at 781 (citing *Zelman v. Simmons-Harris*, 536 U.S. 639, 652–653 (2002)). Attendance at Ben Gamla is entirely voluntary: no parent is required to send his or her student there. But Ben Gamla will only receive funding if parents choose to do so. *See* Okla. Stat. tit. 70, § 18-200.1. So any per-pupil funding provided to Ben Gamla is the result of "the private decision of individual parents" consistent with the Establishment Clause. *Zelman*, 536 U.S. at 652.

Because Ben Gamla would not be a state actor, there is no issue of religious establishment here for this court to consider. Instead, Ben Gamla—a private actor—retains its free exercise rights to not be excluded from a generally available public benefit simply because it is religious. For that reason, Ben Gamla is likely to succeed on the merits of its claims.

**B.    The remaining factors favor an injunction.**

"[I]n First Amendment cases, the likelihood of success on the merits will often be the determinative factor." *Hobby Lobby Stores, Inc. v. Sebelius*, 723 F.3d 1114, 1145 (10th Cir. 2013), *aff'd. sub nom.*, *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682 (2014). That is because "the loss of First Amendment freedoms, even for minimal periods of time, unquestionably constitutes irreparable injury," "when a law is likely unconstitutional, the interests of . . . the government . . . do not outweigh a plaintiff's interest in having its

16

constitutional rights protected," and "it is always in the public interest to prevent the violation of a party's constitutional rights." *Hobby Lobby Stores*, 723 F.3d at 1145–46 (citation modified).  So Ben Gamla meets the remaining requirements for a preliminary injunction.

### III.    AN INJUNCTION IS NECESSARY FOR BOARD MEMBERS TO COMPLY WITH THEIR OATH OF OFFICE.

Board Members take an oath of office to uphold the Constitution of the United States.  Sasser Decl., Ex. 1-C at 3.  But the *Drummond* decision and the Attorney General's threats of jail time currently make it impossible for the Board Members to comply with that obligation.   The Oklahoma Charter Schools Act's religious exclusion and the *Drummond* decision alone are why the Board denied Ben Gamla's revised application. *See id*., Ex. 1-F.  Until a federal court rules on the unconstitutionality of the religious exclusion under the Free Exercise Clause, the Board must comply with the *Drummond* decision and regrettably continue its discrimination against religious applicants.  It is powerless to do otherwise.

### CONCLUSION

This Court should grant Plaintiffs' motion for preliminary injunction.

17

Respectfully submitted this 17 day of April, 2026.

/s/ Anthony J. Ferate
Anthony J. Ferate, OBA No. 21171
SPENCER FANE LLP
9400 North Broadway Extension, Suite 600
Oklahoma City, Oklahoma 73114
(405) 844-9900
ajferate@spencerfane.com

Hiram S. Sasser, III, OBA No. 19557
Holly M. Randall,* OBA No. 34763
Erin E. Smith,* OBA No. 35232
FIRST LIBERTY INSTITUTE
2001 W. Plano Parkway, Suite 1600
Plano, Texas 75075
(972) 941-4444
hsasser@firstliberty.org
hrandall@firstliberty.org
esmith@firstliberty.org

*Applications pro hace vice to the Western
District pending.

**Attorneys for Oklahoma Statewide Charter
School Board Defendants**

18

## **<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this 17 day of April, 2026, I electronically submitted this

document to the Clerk of Court via the ECF to be served on counsel for Plaintiffs,

Defendant, and Proposed Intervenors.

*/s/ Anthony J. Ferate*
Anthony J. Ferate, OBA No. 21171
SPENCER FANE LLP
9400 North Broadway Extension, Suite 600
Oklahoma City, Oklahoma 73114
(405) 844-9900
ajferate@spencerfane.com

19