**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| THE NATIONAL BEN GAMLA JEWISH CHARTER SCHOOL FOUNDATION, INC., *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> GENTNER DRUMMOND, in his official capacity as Attorney General of Oklahoma, *et al.*, <br><br> *Defendants*. | Case No. 5:26-cv-00582-R |

## <u>OKLAHOMA STATEWIDE CHARTER SCHOOL BOARD DEFENDANTS' OPPOSITION TO MOTION TO INTERVENE</u>

# TABLE OF CONTENTS

INTRODUCTION ...........................................................................................................1

BACKGROUND .............................................................................................................1

ARGUMENT.................................................................................................................2

   I.    MOVANTS LACK ARTICLE III STANDING TO INTERVENE. ....................................2

   II.   MOVANTS CANNOT INTERVENE AS OF RIGHT. .....................................................5

      A.   Movants lack a direct, substantial, legally protectable interest related to the subject of this case. ......................................................................5

      B.   Movants' purported interests will not be impaired if intervention is denied.................................................................................................9

      C.   Movants' purported interests are adequately represented. .........................10

   III.   PERMISSIVE INTERVENTION IS IMPROPER........................................................12

CONCLUSION.............................................................................................................14

CERTIFICATE OF SERVICE ........................................................................................16

# TABLE OF AUTHORITIES

**Cases**

*Archer v. U.S.*,
  268 F.2d 687 (10th Cir. 1959)................................................................................12

*Ariz. Christian Sch. Tuition Org. v. Winn*,
  563 U.S. 125 (2011)............................................................................................7

*Arney v. Finney*,
  967 F.2d 418 (10th Cir. 1992)..............................................................................13

*Barnes v. Sec. Life of Denver Ins. Co.*,
  945 F.3d 1112 (10th Cir. 2019)...................................................................5, 8, 10

*City of Stilwell, Okla. v. Ozarks Rural Elec. Co-op, Corp.*,
  79 F.3d 1038 (10th Cir. 1996)..........................................................................8, 12

*Daggett v. Comm'n on Gov't Ethics & Election Pracs.*,
  172 F.3d 104 (1st Cir. 1999)................................................................................12

*Democracy N.C. v. N.C. State Bd. of Elections*,
  No. 1:20CV457, 2020 WL 6591397 (M.D.N.C. June 24, 2020)...................................13

*Diamond v. Charles*,
  476 U.S. 54 (1986).........................................................................................3, 4

*Drummond v. Okla. Statewide Virtual Charter Sch. Bd.*,
  558 P.3d 1 (Okla. 2024)......................................................................................2

*Glyde Solar, LLC v. Newby*,
  No. 2:24-cv-00057, 2024 WL 5349932 (D. Utah Dec. 13, 2024) ................................13

*Hein v. Freedom From Religion Found., Inc.*,
  551 U.S. 587 (2007)............................................................................................7

*Hollingsworth v. Perry*,
  570 U.S. 693 (2013).......................................................................................1, 4

*Kan. Nat. Res. Coal. v. U.S. Dep't of Interior*,
  971 F.3d 1222 (10th Cir. 2020)...........................................................................4

*Kane Cnty., Utah v. U.S.*,
  928 F.3d 877 (10th Cir. 2019).....................................................................3, 9, 10, 11

*Okla. Pub. Emps. Ass'n v. Okla. Dep't of Cent. Servs.*,
  55 P.3d 1072 (Okla. 2002) ..................................................................................7

*Okla. v. U.S. Dep't of the Interior*,
  569 F. Supp. 3d 1155 (W.D. Okla. 2021) .......................................................11

*Oregon-California Trials Ass'n v. Walsh*,
  467 F. Supp. 3d 1007 (D. Colo. 2020)............................................................14

*Payne v. Tri-State Careflight, LLC*,
  No. CIV 14-1044 JB/KBM, 2016 WL 9738302 (D.N.M. July 12, 2016) .....................13

*Pub. Serv. Co. of New Mexico v. Barboan*,
  857 F.3d 1101 (10th Cir. 2017).......................................................................14

*San Juan Cnty., Utah v. U.S.*,
  503 F.3d 1163 (10th Cir. 2007)..............................................................6, 7, 8

*SEC v. LBRY, Inc.*, 26 F.4th 96 (1st Cir. 2022) .................................................12

*Town of Chester, N.Y. v. Laroe Estates, Inc.*,
  581 U.S. 433 (2017).........................................................................................3

*Tri-State Generation & Transmission Ass'n, Inc. v. N.M. Pub. Regul. Comm'n*,
  787 F.3d 1068 (10th Cir. 2015).......................................................................11

*U.S. v. City of Albuquerque*,
  No. CIV 14-1025 RB/KK, 2015 WL 13747189 (D.N.M. June 2, 2015).....................13

*U.S. v. Michigan*,
  424 F.3d 438 (6th Cir. 2005)............................................................................8

*Victim Rts. L. Ctr. v. Rosenfelt*,
  988 F.3d 556 (1st Cir. 2021).........................................................................12

*W. Energy All. v. Jewell*,
  No. CIV 16-0912 WJ/KBM, 2017 WL 3600741 (D.N.M. Jan. 13, 2017) ...................14

iii

**Statutes**

Fed. R. Civ. P. 24.................................................................................................................5

Okla. Stat. tit. 70, § 28-103.................................................................................................4

Okla. Stat. tit. 70, § 3-136..................................................................................................2

Okla. Stat. tit. 70, §§ 3-130 *et seq.* .....................................................................................4

**Other Authorities**

7C Fed. Prac. & Proc. Civ. § 1909 (Wright & Miller, 3d ed.) ...........................................12

ACLU, *Statement on Oklahoma Attorney General's Lawsuit Regarding St. Isidore of Seville Catholic Virtual School* (Oct. 20, 2023), https://www.aclu.org/press-releases/statement-on-oklahoma-attorney-generals-lawsuit-regarding-st-isidore-of-seville-catholic-virtual-school.................................................................................11

Br. for Resp't, Okla. Statewide Charter Sch. Bd. v. Drummond, 605 U.S. 165 (2025) (Nos. 24–394, 24–396) 2025 WL 1002809.................................10

Br. in Opp'n, Okla. Statewide Charter Sch. Bd. v. Drummond, 605 U.S. 165 (2025) (No. 24-394), 2024 WL 4787943.................................................10

Br., in Supp. of Pet'r, of Amici Curiae, Drummond v. Okla. Statewide Virtual Charter Sch. Bd., MA-121694 (Okla. Dec. 27, 2023) .............................................................14

FFRF Action Fund, *'Secularist' Okla. AG Criticizes The Favoring Of A Religious Charter School* (Mar. 20, 2026), https://ffrfaction.org/secularist-okla-ag-criticizes-the-favoring-of-a-religious-charter-school/.............................................................................11

Pet. for Writ of Mandamus, Drummond v. Okla. Statewide Charter Sch. Bd., No. CV-2026-649 (Okla. Cnty. Dist. Ct. Mar. 11, 2026) ................................................3

Resp'ts' Br. in Resp. to Pet'r's Appl. and Pet., Drummond v. Okla. Statewide Virtual Charter Sch. Bd., No. MA-121694 (Okla. Nov. 21, 2023) .............................................3

## INTRODUCTION

Movants—seven Oklahoma residents who identify themselves as taxpayers, parents, a teacher, and a student—seek to intervene to defend the constitutionality of the Oklahoma Charter Schools Act's religious exclusion.  This Court should deny Movants intervention for three independent reasons.

*First*, Movants lack Article III standing.  *See Hollingsworth v. Perry*, 570 U.S. 693, 715 (2013) ("[The Supreme Court] ha[s] never before upheld the standing of a private party to defend the constitutionality of a state statute when state officials have chosen not to.").

*Second*, Movants fail to carry their burden for intervention as of right.  They lack any direct, substantial, and legally protectable interests.  Without any interests, Movants fail to show impairment.  And without any impaired interests, Movants fail to show inadequate representation.

*Third*, granting permissive intervention is an abuse of discretion.  Movants' intervention would cause unnecessary duplication and complexity.  Movants' policy concerns are best addressed through amicus participation.  This Court should deny the Motion to Intervene.

## BACKGROUND

In December 2025, Ben Gamla Jewish Charter School submitted a formal application for initial virtual charter school authorization to the Oklahoma Statewide Charter School Board.  Compl., ECF No. 1 at ¶ 65.  The application materials indicated that "students will receive instruction in Jewish religion, culture, values, rituals, texts, holidays, and practices" and that the school "seeks to provide outstanding academic and

co-curricular programs infused with a Jewish understanding of the human person and grounded in the enduring Jewish values of truth (*emet*), beauty (*yofi*), and goodness (*tov*), as expressed in Jewish thought and tradition." *Id.* at ¶¶ 72, 75.

In February 2026, the Board denied the application, citing the Oklahoma Supreme Court's decision in *Drummond v. Oklahoma Statewide Virtual Charter School Board*, 558 P.3d 1 (Okla. 2024), and the Oklahoma Charter Schools Act's religious exclusion, Okla. Stat. tit. 70, § 3-136(A)(2). ECF No. 1-4 at 3.[1] After the denial, Ben Gamla submitted a revised application. ECF No. 1-5. In March 2026, the Board denied Ben Gamla's revised application. This time, the sole reason for denial of the revised application was Ben Gamla's religious character. ECF No. 1-6.

Ben Gamla filed the present federal lawsuit challenging the constitutionality of the Act's religious exclusion. ECF No. 1 at ¶¶ 107–51. Ben Gamla asserts claims under the Free Exercise and Equal Protection Clauses, arguing that the Board's denial of its revised application violated these constitutional provisions. *Id.* at ¶¶ 107–51. Defendants in this action are the Board and the Oklahoma Attorney General. *Id.* at ¶¶ 14, 15–24. Movants filed this Motion to join as Intervenor-Defendants.

**ARGUMENT**

I.    **MOVANTS LACK ARTICLE III STANDING TO INTERVENE.**

"[A]n intervenor of right must have Article III standing in order to pursue relief that is different from that which is sought by a party with standing." *Town of Chester, N.Y. v.*

---

[1] References to ECF documents are to the ECF-numbered pages.

*Laroe Estates, Inc.*, 581 U.S. 433, 440 (2017); *see also Kane Cnty., Utah v. U.S.*, 928 F.3d 877, 887 n.12 (10th Cir. 2019) ("*Town of Chester* involved a plaintiff-side intervenor, but we see no reason not to apply that rule to defendant-side intervenors as well."). The Board, in the *Drummond* litigation, argued that the religious exclusion violated the Free Exercise Clause. *See* Resp'ts' Br. in Resp. to Pet'r's Appl. and Pet., Drummond v. Okla. Statewide Virtual Charter Sch. Bd., No. MA-121694 (Okla. Nov. 21, 2023). Nothing about its litigation position has changed since. *See* Answer, ECF No. 59. And the Oklahoma Attorney General refuses to take a position on the merits. *See* Mot. to Dismiss, ECF No. 52; Resp. to Mot. for Prelim. Inj., ECF No. 64 at 4 n.4 (taking "no position . . . on the merits of Plaintiffs' constitutional claims"); *cf.* Pet. for Writ of Mandamus, Drummond v. Okla. Statewide Charter Sch. Bd., No. CV-2026-649 (Okla. Cnty. Dist. Ct. Mar. 11, 2026) (taking "**no position** . . . on the constitutional or statutory questions" (emphasis in original)). So Movants would be the only party seeking to defend the constitutionality of the Act's religious exclusion. Therefore, Movants must possess Article III standing to intervene. *Kane Cnty.*, 928 F.3d at 886–87.[2]

Article III standing requires a party to have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Town of Chester*, 581 U.S. at 438 (citation omitted). An injury in fact is one that is concrete and particularized and actual or imminent.

---

[2] Movants cannot rely on "piggyback standing" because they are the only party seeking to defend the constitutionality of the Act's religious exclusion. *Diamond v. Charles*, 476 U.S. 54, 64 (1986) (explaining that piggybacking on "the State's undoubted standing exists only if the State is in fact an appellant before the Court").

3

*Kan. Nat. Res. Coal. v. U.S. Dep't of Interior*, 971 F.3d 1222, 1231 (10th Cir. 2020). In other words, "it must actually exist." *Id.* (citation omitted). Litigants "must seek relief for an injury that affects him in a 'personal and individual way'" and "possess a 'direct stake in the outcome.'" *See Hollingsworth*, 570 U.S. at 705 (citations omitted). The "[Supreme Court] ha[s] never before upheld the standing of a private party to defend the constitutionality of a state statute when state officials have chosen not to." *Id.* at 715.[3]

Movants' stated intention is to intervene to defend the constitutionality of the Act's religious exclusion. *See* ECF No. 15 at 6 (claiming "commit[ment] to defending the constitutionality of the challenged Oklahoma prohibitions"). "[S]uch a 'generalized grievance,' no matter how sincere is insufficient." *Hollingsworth*, 570 U.S. at 706. Movants have no role in enforcing the Oklahoma Charter Schools Act, so they lack a "'personal stake' in defending its enforcement that is distinguishable from the general interest of every citizen." *Id.* at 707 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). The Supreme Court made clear that "Article III standing is not to be placed in the hands of concerned bystanders, who will use it simply as a vehicle for the vindication of value interests." *Id.* (quoting *Diamond v. Charles*, 476 U.S. 54, 62 (1986)) (citation modified).

---

[3] Absent a state statute conferring standing to defend the constitutionality of a challenged state statute to private parties, Movants have no standing to intervene. *See Diamond*, 476 U.S. at 65 n.17. The State of Oklahoma conferred no such right here. *Contrast* Okla. Stat. tit. 70, §§ 3-130 *et seq. with* Okla. Stat. tit. 70, § 28-103(B) (conferring taxpayer standing to defend the Oklahoma Parental Choice Tax Credit Act).

4

This Court need not wade into the shoal waters of this Circuit's intervention rules. It should deny the Motion for lack of standing.

## II.    MOVANTS CANNOT INTERVENE AS OF RIGHT.

In addition to standing, Federal Rule of Civil Procedure 24(a)(2) requires a movant seeking intervention as of right to establish "(1) timeliness, (2) an interest relating to the property or transaction that is the subject of the action, (3) the potential impairment of that interest, and (4) inadequate representation by existing parties." *Barnes v. Sec. Life of Denver Ins. Co.*, 945 F.3d 1112, 1121 (10th Cir. 2019) (citation omitted).

First, the Movants' proffered interests are not "direct, substantial, and legally protectable" interests related to the transaction that is the subject of this case. *Id.* Instead, they are policy arguments in favor of retaining the Act's religious exclusion. Second, because they are not interests, they cannot be "impair[ed]." *Id.* at 1123. Third, without direct, substantial, and legally protectable interests, there is no need for adequate representation.

### A. Movants lack a direct, substantial, legally protectable interest related to the subject of this case.

Movants have the burden to show that they assert a "direct, substantial, and legally protectable" interest relating to the transaction that is the subject of the action. *Id.* at 1121. "A protectable interest is one that would be impeded by the disposition of the action." *Id.* at 1122 (quoting *W. All. v. Zinke*, 887 F.3d 1157, 1165 (10th Cir. 2017)). Whether Movants possess an "interest sufficient to warrant intervention as a matter of right is a highly fact-specific determination." *Id.* at 1121 (quoting *Kane Cnty.*, 928 F.3d at 889). The interest

must be practical and direct, not speculative or contingent on future events. *See San Juan Cnty., Utah v. U.S.*, 503 F.3d 1163, 1203 (10th Cir. 2007).

Movants seek to intervene to defend the constitutionality of the Act's religious exclusion. ECF No. 15 at 6. In support they allege three "interests" that warrant intervention as of right: (1) "vindicating their right under Oklahoma law to ensure that their tax dollars are spent lawfully," (2) "preventing the diversion of limited public resources away from their schools to a religious school that would not be open to or appropriate for them or their children," and (3) "preserving the constitutional protections that charter-school teachers and students now enjoy." ECF No. 15 at 7. Each of these proffered interests are either irrelevant to the transaction that is the subject of this action or so broad that they cannot satisfy Movants' burden to prove they are substantial, protectable interests related to the Board's denial of Ben Gamla's revised application.

First, Movants claim that they must intervene to protect their "individually enforceable state-law taxpayer rights." ECF No. 15 at 18. While intervention may be based on interests that are "contingent upon the outcome of the litigation," interests that are "*too* contingent, *too* indirect and hardly substantial" do not warrant intervention as of right. *San Juan Cnty.*, 503 F.3d at 1202–03. Movants' alleged concerns as taxpayers are contingent on a host of actions indirect to this litigation. For instance, negotiating a contract for sponsorship with the Board and various other prerequisites must occur before taxpayer dollars ever flow to a sponsored school.

6

Moreover, Movants' arguments fail because the Board denied Ben Gamla's revised application.  ECF No. 1-6.  No taxpayer money was spent—let alone unlawfully.[4]

Movants argue that they require intervention because they possess state taxpayer status to challenge state expenditures under Oklahoma law.  ECF No. 15 at 18.  But Movants do not possess a protectable state-law right.  Their generalized interest in preventing unlawful spending does not support intervention because it does not give them standing under Oklahoma law.  Taxpayers do not have standing to challenge spending when a state agency has "express statutory authority to contract with a non-governmental agency to provide certain services."  *Okla. Pub. Emps. Ass'n v. Okla. Dep't of Cent. Servs.*, 55 P.3d 1072, 1079 (Okla. 2002).

And even though the Supreme Court recognizes taxpayer standing to challenge violations of the Establishment Clause under limited circumstances, *Ariz. Christian Sch. Tuition Org. v. Winn*, 563 U.S. 125, 138–39 (2011); *Hein v. Freedom From Religion Found., Inc.*, 551 U.S. 587, 609 (2007) (plurality),  Movants' interests are speculative and entirely contingent on future events, *San Juan Cnty.*, 503 F.3d at 1203.  Any claim Movants would make is not ripe for adjudication.  A host of events outside the scope of this case must occur before a charter school receives any amount of taxpayer funding.

---

[4] If this Court determines that the Act's religious exclusion is unconstitutional, and the Board sponsors Ben Gamla's creation, any taxpayer funding flowing to Ben Gamla—or any religious charter school thereafter—would not be "unlawful."  *See Carson v. Makin*, 596 U.S. 767, 781 (2022) (citing *Zelman v. Simmons-Harris*, 536 U.S. 639, 652–53 (2002)).

Second, Movants claim that they have an interest in protecting against diversion of funds from their secular schools to religious schools that "would not be appropriate for or welcoming to them or their children and that would impose religion-based employment requirements that the intervenor-teacher could not meet." ECF No. 15 at 19. Setting aside Movants' irrelevant and inappropriate claims about potential conduct of Ben Gamla, this interest is not "direct, substantial, and legally protectable." *Barnes*, 945 F.3d at 1121. Taxpayer funding of charter schools contains many intervening actions, some of which must be completed by nonparties and through processes not at issue in this case. At best, Movants' concerns about diversion of taxpayer funds are contingent interests in their schools'—not their own—financial benefit or loss. *See City of Stilwell, Okla. v. Ozarks Rural Elec. Co-op, Corp.*, 79 F.3d 1038, 1042 (10th Cir. 1996). "An interest of this sort is too attenuated and does not satisfy the 'direct and substantial' requirement of Rule 24(a)(2)." *Id.*

Third, Movants claim they have an interest in "preserving their and their children's existing constitutional protections at work and school." ECF No. 15 at 20. Utilizing a lengthy, nonlinear, and speculative chain of events, Movants assume that this Court will find that charter schools are private entities and that this "could enable" their charter schools to violate their equal protection rights. ECF No. 15 at 20.

These collateral concerns are too attenuated to justify intervention as of right. *See San Juan Cnty.*, 503 F.3d at 1202. While Movants may be concerned about hypothetical issues, these issues are not currently, and may never be, before this Court. *U.S. v. Michigan*, 424 F.3d 438, 444 (6th Cir. 2005).

## B. Movants' purported interests will not be impaired if intervention is denied.

To satisfy the impairment element, Movants "must have an interest that could be adversely affected by the litigation." *Kane Cnty.*, 928 F.3d at 891 (quoting *San Juan Cnty.*, 503 F.3d at 1199). But Movants' theories of impairment are the type of attenuated concerns that do not require intervention.

Movants claim that the direct consequences of an adverse merits decision finding the Act's religious exclusion unconstitutional will impair their interests. ECF No. 15 at 21. Specifically, they claim that denial of their intervention would impair their: (1) "right under Oklahoma law to prevent the illegal delivery of their tax dollars to a religious charter school," (2) interest in "diver[sion of] funds from their secular public schools," (3) ability to separately "challenge . . . the funding and operation of Ben Gamla as a public charter school, (4) "effort to recoup public funding of Ben Gamla," and (5) ability to "undo harm to Proposed Intervenors' schools caused by the diversion of public funds away from them." ECF 15 at 16.

Movants also claim that the stare decisis effect of a Ben Gamla victory will impair their interests. ECF No. 15 at 7, 21–22. They argue that if this Court finds the Act's religious exclusion unconstitutional—and especially if that decision is upheld on appeal— then Movants' future efforts "to challenge other religious charter schools and to enforce their constitutional rights" could be hindered. ECF No. 15 at 21–22.

But the case before this Court only addresses whether the Act's religious exclusion is unconstitutional. It does not seek—nor can it—to adjudicate the compliance obligations of existing charter schools, the enforcement practices of regulators, or the future policy

9

choices of nonparty educational institutions.  And the expenditure of taxpayer funds is too attenuated and reliant on nonparties and actions outside the reach of the instant case.  Any impact on those entities and their statutory rights would be indirect and dependent on intervening decisions by parties and actions not subject to this Court's jurisdiction.  "If an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene." *Barnes*, 945 F.3d at 1123 (citation omitted).  But Movants cannot demonstrate such practical effect because their claimed harm depends on a series of contingent future events beyond the scope of this litigation.  Just like Movants' interests, Movants' theory of impairment is too attenuated and speculative to warrant intervention as of right.

### C. Movants' purported interests are adequately represented.

Even if Movants could establish impairment of a direct, substantial, and legally protectable interest, they fail to show inadequacy of representation.  *See Kane Cnty.*, 928 F.3d at 892.  Movants' "interests" lie in preserving the Act's religious exclusion—an exclusion Defendant Attorney General Gentner Drummond previously defended at the U.S. Supreme Court.  Br. in Opp'n, Okla. Statewide Charter Sch. Bd. v. Drummond, 605 U.S. 165 (2025) (No. 24-394), 2024 WL 4787943; Br. for Resp't, Okla. Statewide Charter Sch. Bd. v. Drummond, 605 U.S. 165 (2025) (Nos. 24–394, 24–396) 2025 WL 1002809; *see also* ECF No. 15 at 11 ("[Drummond] vigorously and successfully opposed religious charter schools in the *Drummond* case.")  And when objectives are shared, adequate representation is presumed, even when the party in the case is a government entity.  *See Tri-State Generation & Transmission Ass'n, Inc. v. N.M. Pub. Regul. Comm'n*, 787 F.3d

1068, 1074 (10th Cir. 2015) (presumption of adequate representation applied to "New Mexico Attorney General, who [was] obligated by law to defend the constitutionality of the statute"); *see also Okla. v. U.S. Dep't of the Interior*, 569 F. Supp. 3d 1155, 1164 (W.D. Okla. 2021).

Recently, General Drummond earned the title "Secularist of the Week" from the Freedom From Religion Foundation Action Fund. *See* FFRF Action Fund, *'Secularist' Okla. AG Criticizes The Favoring Of A Religious Charter School* (Mar. 20, 2026), https://ffrfaction.org/secularist-okla-ag-criticizes-the-favoring-of-a-religious-charter-school/. And the ACLU likewise praised General Drummond in a press release. ACLU, *Statement on Oklahoma Attorney General's Lawsuit Regarding St. Isidore of Seville Catholic Virtual School* (Oct. 20, 2023), https://www.aclu.org/press-releases/statement-on-oklahoma-attorney-generals-lawsuit-regarding-st-isidore-of-seville-catholic-virtual-school ("We applaud Attorney General Drummond for his efforts to protect church-state separation" and "The lawsuit filed today demonstrates that AG Drummond shares this commitment"). Movants' concerns about the end of General Drummond's term are speculative. This Court should not consider them.

Further, Movants cannot prove inadequacy by stressing some unique argument that only they will raise. *Cf.* ECF No. 15 at 24–25. "[R]epresentation is not inadequate simply because the applicant and the representative disagree regarding the facts or law of the case." *Kane Cnty.*, 928 F.3d at 892 (citation omitted). The fact that Movants wish to advance additional policy arguments or employ different litigation tactics does not establish inadequate representation. *See* 7C Fed. Prac. & Proc. Civ. § 1909 (Wright & Miller, 3d

11

ed.).    An "interest in making an additional constitutional argument in defense of government action" does not meet Movants' burden. *Victim Rts. L. Ctr. v. Rosenfelt*, 988 F.3d 556, 562 (1st Cir. 2021).  That is why courts routinely deny motions to intervene when movants intend to assert alternative legal arguments. *See SEC v. LBRY, Inc.*, 26 F.4th 96, 100 (1st Cir. 2022) (collecting cases).  And this Court should do the same.

### III.    PERMISSIVE INTERVENTION IS IMPROPER.

This Court should also deny permissive intervention.   Denying permissive intervention is appropriate here for several reasons, including the same reasons given above for denying intervention as of right.   Federal Rule of Civil Procedure 24(b) permits permissive intervention when a movant "has a claim or defense that shares with the main action a common question of law or fact."   Whether to grant permissive intervention is discretionary, *City of Stilwell*, 79 F.3d at 1043, and it may be denied for any reason "rationally relevant," *Daggett v. Comm'n on Gov't Ethics & Election Pracs.*, 172 F.3d 104, 113 (1st Cir. 1999).  A district court must consider "whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." *Archer v. U.S.*, 268 F.2d 687, 690 (10th Cir. 1959).

In exercising its discretion, the Court may consider additional factors such as "whether the would-be intervenor's input adds value to the existing litigation," the movant's "interests are adequately represented by the existing parties," and "the availability of an adequate remedy in another action." *Glyde Solar, LLC v. Newby*, No.

12

2:24-cv-00057, 2024 WL 5349932, at *1 (D. Utah Dec. 13, 2024).[5]   While not a requirement, a finding of adequate representation supports denial of permissive intervention.  *Payne v. Tri-State Careflight, LLC*, No. CIV 14-1044 JB/KBM, 2016 WL 9738302, at *18 (D.N.M. July 12, 2016) (citing *City of Stilwell*, 79 F.3d at 1043).

First, Movants' intervention would create duplication and unnecessary complexity. "An intervenor's interest should not merely duplicate existing claims or defenses and must bring something more to the action."  *U.S. v. City of Albuquerque*, No. CIV 14-1025 RB/KK, 2015 WL 13747189, at *2 (D.N.M. June 2, 2015) (quotations omitted).  Adding seven additional defendants would result in duplicative briefing, overlapping arguments, and redundant positions on the core legal and factual questions.

Courts also question whether "intervention would only clutter the action unnecessarily."  *Arney v. Finney*, 967 F.2d 418, 421 (10th Cir. 1992).  Movants' unique legal theories and factual perspectives do not have direct, legal bearing on issues presented to this Court.  The addition of another defendant group would increase the complexity of the litigation with no upside.  Their presence would inject a fourth set of parties, along with increased briefing, motion practice, and scheduling conflicts.  *See Democracy N.C. v. N.C. State Bd. of Elections*, No. 1:20CV457, 2020 WL 6591397, at *2 (M.D.N.C. June 24, 2020).  Permissive intervention will cause "undue delay and potentially obfuscate the

---

[5] Even if this Court determines that Movants have claims that may be brought, permissive intervention should still be denied.  Movants possess the availability of an adequate remedy in a separate action.  *See U.S. v. City of Albuquerque*, Case No. CIV 14-1025 RB/KK, 2015 WL 13747189, at *5 (D.N.M. June 2, 2015) ("Proposed Intervenors are free to file their equal protection claims in another case.").

relevant issues in the lawsuit." *W. Energy All. v. Jewell*, No. CIV 16-0912 WJ/KBM, 2017 WL 3600741, at *8 (D.N.M. Jan. 13, 2017).  Allowing Movants to "inject their own agenda into this case . . .  only prejudice[s] the existing parties to this lawsuit trying to resolve the issues that were raised in the Complaint."  *Id.*

Movants' primary contribution—their policy concerns regarding potential downstream effects on nonparty charter schools and funding-condition enforcement—are best addressed through amicus participation.  District courts have "broad discretion in allowing participation of *amicus curiae*."  *Oregon-California Trials Ass'n v. Walsh*, 467 F. Supp. 3d 1007, 1073 (D. Colo. 2020) (citation omitted).  Amicus participation is a well-established and adequate vehicle for presenting policy arguments and broader institutional concerns that extend beyond the immediate parties' interests.  Similar policy concerns to those of Movants were appropriately raised in the *Drummond* litigation through amicus briefing after a denial of intervention.  *See* Br., in Supp. of Pet'r, of Amici Curiae, Drummond v. Okla. Statewide Virtual Charter Sch. Bd., MA-121694 (Okla. Dec. 27, 2023).  The Board does not oppose Movants' participation as amicus curiae in the instant case, and this Court would remain free to consider Movants' briefed arguments.  *See Pub. Serv. Co. of New Mexico v. Barboan*, 857 F.3d 1101, 1114 (10th Cir. 2017).

<u>CONCLUSION</u>

This Court should deny the Motion to Intervene.

14

Respectfully submitted this 22 day of April, 2026.

/s/ Anthony J. Ferate
Anthony J. Ferate, OBA No. 21171
SPENCER FANE LLP
9400 North Broadway Extension, Suite 600
Oklahoma City, Oklahoma 73114
(405) 844-9900
ajferate@spencerfane.com

Hiram S. Sasser, III, OBA No. 19557
Holly M. Randall,* OBA No. 34763
Erin E. Smith,* OBA No. 35232
FIRST LIBERTY INSTITUTE
2001 W. Plano Parkway, Suite 1600
Plano, Texas 75075
(972) 941-4444
hsasser@firstliberty.org
hrandall@firstliberty.org
esmith@firstliberty.org

*Admitted pro hace vice.

**Attorneys for Oklahoma Statewide Charter School Board Defendants**

15

## CERTIFICATE OF SERVICE

I hereby certify that on April 22, 2026, I electronically submitted this document to the Clerk of Court via the ECF to be served on counsel for Plaintiffs, Defendant, and Proposed Intervenors.

/s/ Anthony J. Ferate
Anthony J. Ferate, OBA No. 21171
SPENCER FANE LLP
9400 North Broadway Extension, Suite 600
Oklahoma City, Oklahoma 73114
(405) 844-9900
ajferate@spencerfane.com