# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

THE NATIONAL BEN GAMLA JEWISH
CHARTER SCHOOL FOUNDATION, INC.,
*et al.*,

          *Plaintiffs*,

       v.

GENTNER DRUMMOND, in his official
capacity as Attorney General of Oklahoma,
*et al.*,

          *Defendants*.

Case No. 5:26-cv-00582-R

**PLAINTIFFS' OPPOSITION TO
OKLAHOMA TAXPAYERS'
MOTION TO INTERVENE
(DKT. 15)**

Robert G. McCampbell
  OBA No. 10390
David A. Herber
  OBA No. 33527
GABLEGOTWALS
499 W. Sheridan Ave., Suite 2200
Oklahoma City, OK 73102
Tel 405-235-5500
*RMcCampbell@Gablelaw.com*

Eric S. Baxter
  DC Bar No. 479221
Eric C. Rassbach
  TX Bar No. 24013375
Daniel L. Chen
  DC Bar No. 1781783
Phillip J. Allevato*
  CA Bar No. 362581
THE BECKET FUND FOR RELIGIOUS LIBERTY
1919 Pennsylvania Ave. NW, Ste. 400
Washington, DC 20006
(202) 955-0095
*ebaxter@becketfund.org*

*\*Not a member of the DC Bar; admitted in
California. Practice limited to cases in
federal court.*

*Attorneys for Plaintiffs*

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES.................................................................................................ii

INTRODUCTION ............................................................................................................ 1

FACTUAL BACKGROUND ........................................................................................... 2

LEGAL STANDARD ...................................................................................................... 5

ARGUMENT.................................................................................................................... 6

I.  Movants lack Article III standing. .............................................................................. 6

   A.  Movants seek different relief so they must show standing. .................................. 6

   B.  Movants do not have standing as taxpayers. ......................................................... 8

   C.  Movants' other alleged interests are generalized grievances. ............................. 13

II. Movants cannot intervene as of right.......................................................................... 16

III. Movants do not satisfy the requirements for permissive intervention........................ 19

CONCLUSION ................................................................................................................ 19

CERTIFICATE OF SERVICE......................................................................................... 21

**TABLE OF AUTHORITIES**

**Page(s)**

*Allen v. Wright*,
    468 U.S. 737 (1984)................................................................................. 8

*Am. Ass'n of People with Disabilities v. Herrera*,
    257 F.R.D. 236 (D.N.M. 2008).................................................................. 18

*Ariz. Christian Sch. Tuition Org. v. Winn*,
    563 U.S. 125 (2011)..........................................................................*passim*

*Ark Encounter, LLC v. Stewart*,
    311 F.R.D. 414 (E.D. Ky. 2015)................................................................ 17

*Bowen v. Kendrick*,
    487 U.S. 589 (1988)................................................................................ 11

*Chiles v. Thornburgh*,
    865 F.2d 1197 (11th Cir. 1989) ........................................................ 17, 18

*Chrisman v. C.I.R.*,
    82 F.3d 371 (10th Cir. 1996) ................................................................... 11

*City of Herriman v. Bell*,
    590 F.3d 1176 (10th Cir. 2010) ............................................................... 19

*City of Stilwell v. Ozarks Rural Elec. Co-op. Corp.*,
    79 F.3d 1038 (10th Cir. 1996) .............................................................. 5, 18

*Clapper v. Amnesty Int'l*,
    568 U.S. 398 (2013)............................................................................ 14, 16

*Coal. of Ariz./N.M. Cntys. for Stable Econ. Growth v. Dep't of the Interior*,
    100 F.3d 837 (10th Cir. 1996) ................................................................. 16

*DaimlerChrysler Corp. v. Cuno*,
    547 U.S. 332 (2006).................................................................................. 11

*Doremus v. Bd. of Educ.*,
    342 U.S. 429 (1952)...................................................................9, 10, 14, 17

*E. Bay Sanctuary Covenant v. Biden*,
    102 F.4th 996 (9th Cir. 2024) .................................................................. 18

*FDA v. All. for Hippocratic Med.*,
 602 U.S. 367 (2024) ............................................................................................ 8

*Flast v. Cohen*,
 392 U.S. 83 (1968) ......................................................................................... 8, 10

*Hein v. Freedom From Religion Found., Inc.*,
 551 U.S. 587 (2007) .................................................................................*passim*

*Higganbotham v. Oklahoma ex rel. Okla. Transp. Comm'n*,
 328 F.3d 638 (10th Cir. 2003) ......................................................................... 11

*Hollingsworth v. Perry*,
 570 U.S. 693 (2013) .................................................................................*passim*

*Kane County v. United States*,
 928 F.3d 877 (10th Cir. 2019) ........................................................................... 6

*Lujan v. Defs. of Wildlife*,
 504 U.S. 555 (1992) ............................................................................... 9, 14, 18

*Nova Health Sys. v. Gandy*,
 416 F.3d 1149 (10th Cir. 2005) ....................................................................... 15

*Okla. Pub. Emps. Ass'n v. Okla. Dep't of Cent. Servs.*,
 55 P.3d 1072 (Okla. 2002) ............................................................................... 13

*Perry v. Brown*,
 52 Cal. 4th 1116 (2011) ................................................................................... 12

*Rocky Mountain Wild v. Dallas*,
 98 F.4th 1263 (10th Cir. 2024) .......................................................................... 6

*San Juan Cnty. v. United States*,
 503 F.3d 1163 (10th Cir. 2007) ........................................................... 16, 17, 18

*Town of Chester v. Laroe Ests., Inc.*,
 581 U.S. 433 (2017) ........................................................................................ 5, 6

*Tri-State Generation and Transmission Ass'n v. N.M. Pub. Regul. Comm'n*,
 787 F.3d 1068 (10th Cir. 2015) ....................................................................... 19

*United States v. RaPower-3, LLC*,
 341 F.R.D. 311 (D. Utah 2022) ....................................................................... 19

iii

*Valley Forge Christian Coll. v. Ams. United for Separation of Church and State*,
  454 U.S. 464 (1982) .................................................................................... 10, 11

*Washington v. Food & Drug Admin.*,
  108 F.4th 1163 (9th Cir. 2024) ....................................................................... 19

*WildEarth Guardians v. U.S. Forest Serv.*,
  573 F.3d 992 (10th Cir. 2009) ....................................................................... 16

**Statutes**

Okla. Stat. Ann. tit. 70, § 3-136 ......................................................................... 3

Okla. Stat. Ann. tit. 70 § 3-142 .................................................................... 14, 15

**Other Authorities**

Fed. R. Civ. P. 24 ............................................................................................... 5

iv

**INTRODUCTION**

Seven Oklahoma taxpayers have moved to intervene in this lawsuit to protect Oklahoma's practice of discriminating against religious institutions. But before they can join this case, the Movants face a fundamental, threshold problem: Article III of the United States Constitution. Because they seek relief that is far different and broader than that sought by the existing Defendants, this Court must first ask whether the Movants have any cognizable legal interest in this litigation. The answer is no.

Movants claim they are entitled to intervene based on their status as Oklahoma taxpayers. They also state a generalized concern for the quality of public education in Oklahoma. But neither foundation supports intervention, and together, they illustrate precisely the kind of abstract, undifferentiated grievances that the Supreme Court has consistently held are insufficient to confer standing.

Start with taxpayer standing. Courts have repeatedly declined to find that an individual's payment of taxes is sufficient to confer Article III standing, and for good reason. The U.S. Supreme Court has for decades narrowly interpreted taxpayer standing, cabining it to discrete circumstances involving a direct expenditure pursuant to Congress's power under the Taxing and Spending Clause. Because the interests of taxpayers are, in essence, the interests of the public at large, deciding a constitutional claim based solely on taxpayer standing would violate Article III.

Movants' concern for the quality of public education in Oklahoma also fails to satisfy Article III's requirements. Their theory is that if Plaintiffs ultimately prevail in this litigation, and if students ultimately enroll at Ben Gamla, and if those students are from

1

their children's schools, then per-pupil funding might be allocated away from their children's schools, which might then experience budget pressures, which might then affect educational quality. This is not a cognizable legal injury; it is a policy concern riddled with independent, speculative contingencies.

Movants who fear that a ruling for Plaintiffs might possibly erode constitutional protections at public schools in some future case are in no better position. The high school student who pays general sales and motor-vehicle taxes and objects on principle to religious charter schools presents nothing more than a generalized grievance indistinguishable from that of any other concerned bystander. These are the kinds of interests—diffuse, contingent, and shared with the public at large—that courts must screen out at the threshold, not amplify through intervention.

For similar reasons, Movants also lack any protectable legal interest in this litigation. To support intervention, an interest cannot be too contingent, indirect, or generalized. But Movants' interests are precisely that. Nor do Movants establish that they are entitled to permissive intervention, as they possess only general legal, ideological, and policy objections to the challenged governmental action at issue here.

Accordingly, this Court should deny the Oklahoma taxpayers' motion for intervention.

### FACTUAL BACKGROUND

In December 2025, Plaintiff Peter Deutsch, a former Democratic congressman from Florida, founded the National Ben Gamla Jewish Charter School Foundation, Inc. ("Ben Gamla") in Oklahoma. Shortly after, Ben Gamla applied to the Oklahoma Statewide Charter School Board ("the Board") to create an Oklahoma charter school where students

would receive a rigorous academic education alongside a deep cultural and ethical grounding derived from the Jewish faith, heritage, and tradition. On February 9, 2026, the Board voted to reject Ben Gamla's application. The Board listed ten supposed deficiencies with Ben Gamla's application. Most importantly, the Board found that Ben Gamla's Jewish identity conflicted with the Oklahoma Charter Schools Act ("OCSA"), which includes a nonsectarian requirement forbidding charter schools from being religious. *See* Okla. Stat. Ann. tit. 70, § 3-136(A)(2). Within the thirty-day statutory deadline, Ben Gamla amended its application to cure the alleged defects, but without altering its religious identity. On March 9, the Board again voted to reject Ben Gamla's application, identifying the school's religious nature as the sole reason for the denial.

Attorney General Drummond immediately filed a petition for writ of mandamus in the state district court for Oklahoma County, seeking to enforce the OCSA by "compel[ling] the Board to discharge its independent statutory duty to identify all valid, non-constitutional grounds for rejection of Ben Gamla's application." Dkt. 52 at 2; *see also Drummond v. Okla. Statewide Charter Sch. Bd.*, No. CV-2026-649 (Okla. Cnty. Dist. Ct. Mar. 11, 2026) ("Petition for Writ"). There, Drummond sought to compel the Board "to amend its March 10, 2026 rejection letter" to include additional "independent, non-constitutional grounds" for rejecting Ben Gamla's application. Petition for Writ at 13.

Ben Gamla filed this suit against the Attorney General and the Board on March 24, 2026, and filed a Motion for Preliminary Injunction three days later.

In response, Drummond filed a Motion to Dismiss, arguing he had "no role in the administration of the [OCSA], the processing or denial of charter school applications, or

the enforcement of the OCSA's nonsectarian requirement." Dkt. 52 at 1. He expressly takes "no position" on this proceeding's "constitutional or statutory questions." *Id.* at 2. Drummond further claims that he "exercises no control over the Board's application decisions," though he simultaneously notes his "authority to represent the interests of the State of Oklahoma and its citizens in matters arising under the Oklahoma Charter Schools Act" and expressly refuses to "waive[ ]" that legal authority. *Id.* at 1 n.1, 3.

The Board filed an Answer in which they admitted to most of Ben Gamla's allegations and agreed that this Court should enjoin the OCSA's nonsectarian requirement and declare it unconstitutional. Dkt. 59 at 15. Indeed, in its response to Plaintiffs' motion for preliminary injunction, the Board expressly agrees with Plaintiffs' legal arguments, notes that "an injunction is necessary for Board Members to comply with their oath of office," and requests that the Court "grant Plaintiffs' motion for preliminary injunction." Dkt. 63 at 17.

Unlike both Drummond and the Board, Movants deny nearly all of Ben Gamla's allegations. *See generally* Dkt. 15-14. Movants are seven Oklahoma taxpayers seeking to "ensure that their tax dollars do not support a religious public school and are not diverted from their inclusive, secular public schools." Dkt. 15 at 1 ("Mot."). Six movants are parents of children in government-run public schools; one is a high school senior and the child of another movant who claims injury through payment of general sales and motor-vehicle taxes. Dkt. 15-9 ¶ 3. Some movants, as charter-school teachers or "soon-to-be charter-school parent[s]," "fear" that permitting Ben Gamla to operate a charter school will "take away constitutional rights." Mot. at 10.

4

Given that supposed interest in this litigation, Movants vigorously argue that Oklahoma's nonsectarian requirement is constitutional. Dkt. 15-14 at 2-3. Unlike both the Board—which affirmatively agrees that injunctive relief is warranted—and Drummond—who takes no position on the issue, does not seek to defend the state law, and seeks only his dismissal on limited, procedural grounds—Movants "are unreservedly committed to preserving Oklahoma's system of secular, nondiscriminatory public schools." Mot. at 18. Indeed, Movants assert that they should be permitted to intervene to present arguments that would otherwise go "unrepresented." *Id.* at 19-20.

## LEGAL STANDARD

Intervention as of right is appropriate where, among other things, a third party "claims an interest relating to the property or transaction" at issue that would be "impair[ed] or impede[d]" by the "action" and is not "adequately represent[ed]" by the existing parties. Fed. R. Civ. P. 24(a)(2). Permissive intervention is a matter of the Court's discretion, *City of Stilwell v. Ozarks Rural Elec. Co-op. Corp.*, 79 F.3d 1038, 1043 (10th Cir. 1996), and may be appropriate where the third party "has a claim or defense that shares with the main action a common question of law or fact," Fed. R. Civ. P. 24(b)(1)(B). Additionally, under Rule 24, putative intervenors "must demonstrate Article III standing" when they seek "relief that is different from that which is sought by a party with standing." *Town of Chester v. Laroe Ests., Inc.*, 581 U.S. 433, 440 (2017).

## ARGUMENT

### I. Movants lack Article III standing.

Intervenors "must demonstrate Article III standing" when they seek relief that is different from that which is sought by the party with standing. *Rocky Mountain Wild v. Dallas*, 98 F.4th 1263, 1286 n.5 (10th Cir. 2024) (quoting *Town of Chester*, 581 U.S. at 439-40). This rule applies to both plaintiff-intervenors and defendant-intervenors. *Kane County v. United States*, 928 F.3d 877, 887 n.12 (10th Cir. 2019). To show standing, a party must "possess a direct stake in the outcome of the case." *Hollingsworth v. Perry*, 570 U.S. 693, 705 (2013) (cleaned up).

### A. Movants seek different relief so they must show standing.

Under *Town of Chester*, putative intervenors seeking relief different from that sought by parties with standing must establish their own independent Article III standing. 581 U.S. at 439-40. Here, Movants bear that burden. Though they claim to seek the same relief sought by the existing Defendants, Mot. at 12-13, the filings in this case tell a different story.

Attorney General Drummond seeks limited relief in this case. As explained in his motion to dismiss, Drummond takes "no position" on the "constitutional or statutory questions" in this proceeding. Dkt. 52 at 2. Rather than defend the constitutionality of Section 70-3-136(A)(2), Drummond merely argues that he "has no role in the administration of the [OCSA]," so he should be dismissed from the action as an unnecessary party. *Id.* at 1-2. He also asserts he was wrongly named as a defendant because a court order against him cannot redress Plaintiffs' injuries. *Id.* at 6-8. Regardless of

6

whether Drummond is right or wrong (he's wrong), the limited nature of his requested relief is clear: his (and only his) dismissal from the case on technical, procedural grounds without reaching the merits of the constitutional claims. *Id.* at 2. Indeed, when this case proceeds, he expressly asks for the Court to "order the caption of this case modified to remove his name." *Id.* at 8.

While Drummond seeks only his individual dismissal and takes no position on the merits, Movants, on the other hand, are committed to defending the OCSA's religious exclusion "throughout the life of this litigation and are well-positioned to do so." Mot. at 1. They directly dispute that the OCSA's nonsectarian requirement violates the First Amendment. Dkt. 15-14 at 2-3. As they see it, funding Ben Gamla would violate the OCSA, the Oklahoma Constitution, and the U.S. Constitution. Mot. at 12-23.

In fact, in support of intervention, Movants acknowledge that they will raise new independent arguments and seek different relief. For example, Movants say they will proffer arguments that "Attorney General Drummond did not present" and that would otherwise go "unrepresented." *Id.* at 19-20. And they claim their interests are "far from identical" from existing Defendants because they "are unreservedly committed to preserving Oklahoma's system of secular, nondiscriminatory public schools." *Id.* at 18. That relief, and the legal bases for them, are far broader and far different than the ones presented by Drummond.

That relief is also entirely different from the relief sought by the Board. The Board agrees that Ben Gamla is entitled to injunctive relief. *See* Dkt. 59 at 15; Dkt. 63 at 1 ("[B]ecause Ben Gamla is likely to succeed on the merits of its free exercise claims, the

Board respectfully requests this Court grant the Motion for Preliminary Injunction."). For the Board, it was placed in a "difficult situation" because the Board was "powerless" to grant Ben Gamla's application due to the Oklahoma Supreme Court's *Drummond* decision, which adopted the Attorney General's argument in an earlier lawsuit and held the Board must categorically deny all religious charter-school applications. Dkt. 63 at 1, 8, 17. As the Board explains, Drummond "already threatened Board members with criminal contempt of court, should they fail to implement *Drummond*'s result." *Id.* at 8. Thus, the Board asks this Court to grant an injunction to allow Board members to comply with their oaths of office. *Id.* at 17. Again, to put it mildly, that relief is different from an order upholding "the constitutionality of the challenged Oklahoma prohibitions." Mot. at 1. Accordingly, Movants must demonstrate that they possess Article III standing.

### B.  Movants do not have standing as taxpayers.

Movants cannot demonstrate standing. First, they claim a protectable legal interest in their supposed "state-law taxpayer rights," specifically their "special interests in preventing the unlawful use of their tax funds to support a religion." Mot. at 13 (citing *Ariz. Christian Sch. Tuition Org. v. Winn*, 563 U.S. 125, 141 (2011), and *Flast v. Cohen*, 392 U.S. 83, 102-06 (1968)). But such generalized grievances are insufficient for standing.

Article III's standing requirements "screen out" parties "who might have only a general legal, moral, ideological, or policy objection to a particular government action," and "prevent[] the federal courts from becoming a 'vehicle for the vindication of the value interests of concerned bystanders.'" *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 381-82 (2024) (quoting *Allen v. Wright*, 468 U.S. 737, 756 (1984)). A litigant "raising only a

8

generally available grievance about government—claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large—does not state an Article III case or controversy." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 573-74 (1992).

Taxpayer standing is a type of generalized grievance. Taxpayer standing is predicated on the idea that "an individual who has paid taxes has a 'continuing, legally cognizable interest in ensuring that those funds are not *used* by the Government in a way that violates the Constitution.'" *Winn*, 563 U.S. at 134 (quoting *Hein v. Freedom From Religion Found., Inc.*, 551 U.S. 587, 599 (2007)). But "this type of interest is too generalized and attenuated to support Article III standing." *Hein*, 551 U.S. at 599. In other words, taxpayer standing "is not generally deemed sufficient to establish standing in federal court." *Winn*, 563 U.S. at 131. Indeed, the Supreme Court has "repeatedly emphasized" that the "bar on taxpayer standing" "must be applied with 'rigor.'" *Hein*, 551 U.S. at 609.

The logic against conferring broad taxpayer standing applies in the Establishment Clause context. In *Doremus v. Board of Education*, 342 U.S. 429 (1952), taxpayers brought an Establishment Clause challenge to a New Jersey law that authorized public school teachers to read passages from the Bible. The Court dismissed the appeal for lack of standing, holding that "the interests of a taxpayer in the moneys of the federal treasury are too indeterminable, remote, uncertain and indirect to furnish a basis for an appeal to the preventive powers of the Court." *Id.* at 433. This was "equally true when a state Act" was at issue, and thus, a taxpayer must show that he or she is "in danger of sustaining some

direct injury as the result of its enforcement, and not merely that he suffers in some indefinite way in common with people generally." *Id.* at 434.

Similarly, in *Valley Forge Christian College v. Americans United for Separation of Church and State*, 454 U.S. 464 (1982), the Supreme Court dismissed a lawsuit brought by taxpayers upset by the transfer of federal property to a religious college. The Court held that relaxed standing requirements "do[ ] not become more palatable when the underlying merits concern the Establishment Clause." *Id.* at 489. It also clarified that any exceptions to the general bar on taxpayer standing apply *only* to challenges to the "exercises of congressional power under the taxing and spending clause of Art. I, § 8, of the Constitution." *Id.* at 478. In all other circumstances, taxpayer standing provides no "continuing, legally cognizable interest in ensuring that … funds are not used by the Government in a way that violates the Constitution." *Winn*, 563 U.S. at 134 (quoting *Hein*, 551 U.S. at 599).

Movants resist this conclusion. First, they argue that under *Flast v. Cohen*, they possess standing under an exception to the general rule against taxpayer standing. But in *Flast*, taxpayers sought to enjoin the expenditure of federal funds under a program which they alleged was unconstitutionally supporting religious schools. The Court found taxpayer standing on narrow grounds, holding that "a taxpayer will be a proper party to allege the unconstitutionality only of exercises of congressional power under the taxing and spending clause of Art. I, § 8, of the Constitution." *Flast*, 392 U.S. at 102.

Subsequent decisions from the Supreme Court confirm that *Flast* is a "narrow exception to the general constitutional prohibition against taxpayer standing." *Hein*, 551 U.S. at 602. In *Valley Forge*, the Court found the plaintiffs had no standing under *Flast* to challenge an

10

agency's decision to transfer a parcel of federal property. 454 U.S. at 464. In *Hein*, the Court found no standing under *Flast* to challenge federal executive actions even when funded by general appropriations. In *Winn*, the Court found no standing under *Flast* to challenge state government tax credits, explaining that *Flast* provides only a "'narrow exception' to 'the general rule against taxpayer standing.'" 563 U.S. at 138 (quoting *Bowen v. Kendrick*, 487 U.S. 589, 618 (1988)). And in *DaimlerChrysler Corp. v. Cuno*—cited by Movants, *see* Mot. at 13—the Supreme Court explained that expanding *Flast* "would be quite at odds with its narrow application in our precedent." 547 U.S. 332, 348 (2006). It therefore dismissed the action because "state taxpayers have no standing under Article III to challenge state tax or spending decisions simply by virtue of their status as taxpayers." *Id.* at 346.

*Flast*, then, has no application to this case. Movants attempt to intervene to defend a state agency's decision to deny a charter school application—a far cry from an exercise of Congress's power under the Taxing and Spending Clause. *See, e.g.*, *Higganbotham v. Oklahoma ex rel. Okla. Transp. Comm'n*, 328 F.3d 638, 641 (10th Cir. 2003) ("The Supreme Court thus far has recognized only one exception to this rule: a taxpayer may have standing to challenge Congressional action taken pursuant to the Spending Clause when the action allegedly violates the Establishment Clause of the First Amendment."); *Chrisman v. C.I.R.*, 82 F.3d 371, 373 n.1 (10th Cir. 1996) ("Under the limited exception to the general bar on taxpayer challenges to decisions concerning appropriations, in order to achieve standing, a taxpayer must demonstrate a logical link between his status as a

11

taxpayer and the exercise of congressional power under the taxing and spending clause of the Constitution[.]"). Movants thus lack Article III standing.

Perhaps sensing their *Flast* argument is untenable, Movants contend that Oklahoma law grants them standing in federal court. Mot. at 13 ("individually enforceable state-law taxpayer rights"). But that argument fares no better.

Parties may litigate in state court even when they wouldn't otherwise satisfy the requirements of Article III. But that doesn't mean that a party with a state-law right can automatically sue in federal court. Indeed, the Supreme Court in *Hollingsworth* dealt with this precise scenario and dismissed for lack of standing.

*Hollingsworth* arose when same-sex couples challenged California's Proposition 8 in federal court. Proposition 8 amended California's constitution to prohibit same-sex marriage. *Hollingsworth*, 570 U.S. at 701. Its proponents—who were state citizens—intervened to defend the initiative alongside state government officials. *Id.* at 702. When the district court ruled for the plaintiffs, the state officials declined to appeal. *Id.*

The citizen proponents, however, appealed. *Id.* The Ninth Circuit then certified a question to the California Supreme Court asking whether, under California law, proponents of a state proposition could legally defend its validity and constitutionality. *Id.* at 702-03. The California Supreme Court held that, under California law, the proponents were authorized to defend the validity of Proposition 8 and to appeal any judgment invalidating it. *Perry v. Brown*, 52 Cal. 4th 1116, 1127 (2011).

Relying on that answer, the Ninth Circuit found standing. But the Supreme Court reversed, holding that the proponents lacked Article III standing even though, under state

12

law, they had the ability to defend the initiative. That's because, for Article III purposes, "[t]heir only interest in having the District Court order reversed was to vindicate the constitutional validity" of Proposition 8. *Hollingsworth*, 570 U.S. at 706. And that interest was nothing more than a generalized grievance, insufficient to support standing. *Id.* The Supreme Court explained that it did not "question California's sovereign right to maintain an initiative process, or the right of initiative proponents to defend their initiatives in California courts, where Article III does not apply." *Id.* at 714-15. "But … standing in federal court is a question of federal law, not state law. And no matter its reasons, the fact that a State thinks a private party should have standing to seek relief for a generalized grievance cannot override our settled law to the contrary." *Id.*

   *Hollingsworth* applies fully here. Regardless of whether Oklahoma courts permit "standing … based … on the status of its members as *taxpayers*," *Okla. Pub. Emps. Ass'n v. Okla. Dep't of Cent. Servs.*, 55 P.3d 1072, 1078 (Okla. 2002), "standing in federal court is a question of federal law, not state law," *Hollingsworth*, 570 U.S. at 715. And as previously explained, "the bar on taxpayer standing" "must be applied with rigor." *Hein*, 551 U.S. at 609; *see supra*, at 8-11.

### C. Movants' other alleged interests are generalized grievances.

   Movants' other two alleged legal interests—preventing the possible diversion of resources from their public schools and preventing public funding of a charter school that may engage in religious discrimination (Mot. at 13-14)—also fail to establish standing. At bottom, both theories rest on the type of "generally available grievance about government" that the Supreme Court has "repeatedly held" is insufficient to confer jurisdiction.

13

*Hollingsworth*, 570 U.S. at 706. Article III instead requires a "concrete and particularized" injury that is "actual or imminent," not conjectural or widely shared. *Lujan*, 504 U.S. at 560. Movants allege no such injury.

Movants' "divergence of funds" theory falters from the start, as, their own open-ended language suggests. *See* Mot. at 14 ("Ben Gamla *could* divert" funds away from secular schools) (emphasis added). Any divergence of funds is dependent on a chain of contingencies: that Plaintiffs prevail, students from Movants' schools transfer to Ben Gamla, and any resulting funding changes materially affect Movants. And even if Ben Gamla eventually prevails and students transfer to the school, there is still no guarantee Movants' schools would be harmed. Rather, as the Supreme Court has recognized "[w]hen a government expends resources … its budget does not necessarily suffer." *Winn*, 563 U.S. at 136. That outcome is "pure speculation," *id.*, especially because charter school funding is based on the funding attributable to each student enrolled, Okla. Stat. Ann. tit. 70 § 3-142(A), (C). Movant's speculation about potential financial injury to their children's schools is thus a far cry from the concrete injury Article III demands. *Winn*, 563 U.S. at 136. In short, Movants' "[a]llegation[ ] of [a] *possible* future injury" based on a "highly attenuated chain of possibilities" does not suffice for standing. *Clapper v. Amnesty Int'l*, 568 U.S. 398, 409-10 (2013).

Similarly, Movants lack a "direct and particular financial interest" in the suit necessary for a concrete and particularized injury. *Doremus*, 342 U.S. at 434-35. Their concern about the allocation of public education funds is indistinguishable from the interests of every parent, student, and taxpayer in Oklahoma. *See Hein*, 551 U.S. at 600 ("Interest in the

14

moneys of the Treasury is shared with millions of others." (cleaned up)). Such claims are paradigmatic generalized grievances that do not present cognizable injury under Article III. *Id.* at 599-600.

Moreover, even if Movants had a legally cognizable interest in preventing the divergence of funding, that injury is not traceable to Ben Gamla or the Board. Any funding effects that might arise are the product of legislative choice, not the decision to grant Ben Gamla's charter application. The Oklahoma Legislature has already authorized the use of public funds for the charter school program. Okla. Stat. Ann. tit. 70, § 3-142(A), (C). And even if the rejection of Ben Gamla's application were upheld, funds would continue flowing to other charter schools. If Movants believe public schools will be underfunded because of the charter school program generally, their fight lies with the Legislature—not with Ben Gamla. A win here simply will not redress their claims. As the Tenth Circuit has recognized, when the alleged injury is the result of "the independent action of some third party not before the court … Article III does not" allow that claim in court. *Nova Health Sys. v. Gandy*, 416 F.3d 1149, 1158 (10th Cir. 2005) (cleaned up). Because any asserted financial effects depend on intervening policy choices, Movants' interest here is insufficient to establish standing.

Movants' claim that they have an interest in preventing the funding of schools that may engage in religious discrimination fares no better. Mot. at 16. Again, there is no "legally cognizable interest in ensuring that [public] funds are not used by the Government in a way that violates the Constitution." *Hein*, 551 U.S. at 599 (emphasis omitted). These "type[s] of interest[s] [are] too generalized and attenuated" to give rise to "the kind of redressable

'personal injury' required for Article III standing." *Id.*; *see also id.* at 612 (federal courts are not "forums for taxpayers' 'generalized grievances'"). That principle forecloses any finding of standing here.

What's more, Movants' claim is, again, pure speculation. Even if Ben Gamla ultimately prevails, and even if some religious charter schools were to adopt religious hiring or admissions standards, it does not follow that Movants will be affected. Not all charter schools will choose to adopt religious policies, and any such downstream effects remain entirely conjectural. *See Clapper*, 568 U.S. at 410.

In short, Movants' asserted interests are conjectural, widely shared, and dependent on a cascade of contingencies untethered to this litigation. They therefore lack the concrete, particularized, and redressable injury that Article III demands.

## II. Movants cannot intervene as of right.

Beyond lacking standing, Movants also fail to meet Rule 24(a)'s requirements to intervene. Specifically, Movants fail to allege a sufficient legal interest to warrant intervention. *See San Juan Cnty. v. United States*, 503 F.3d 1163, 1203 (10th Cir. 2007).

"Whether an applicant has an interest sufficient to warrant intervention as a matter of right is a highly fact-specific determination." *Coal. of Ariz./N.M. Cntys. for Stable Econ. Growth v. Dep't of the Interior*, 100 F.3d 837, 841 (10th Cir. 1996). A would-be intervenor must show that its "substantial legal interest" would be impaired by denial. *WildEarth Guardians v. U.S. Forest Serv.*, 573 F.3d 992, 995 (10th Cir. 2009). "[P]ractical judgment must be applied in determining whether the strength of the interest and the potential risk of injury to that interest justify intervention." *San Juan Cnty.*, 585 F.3d at 1199. For an interest

16

to be substantial, it must not be "too contingent," "too indirect" or too generalized. *Id.* at 1202 (emphasis omitted). Indeed, an "intervenor cannot rely on an interest that is wholly remote or speculative." *Id.* at 1203 (cleaned up).

As noted previously, Movants assert three supposedly protectable interests: (1) a right as an Oklahoma taxpayer "to challenge the unlawful or unconstitutional expenditure of state funds," (2) an interest in preventing diversion of public resources away from Movants' secular schools, and (3) an interest in protecting "existing constitutional protections at work and school." Mot. at 13-15. All fall short.

As a threshold matter, because Movants lack standing to protect any of these interests, they cannot claim a substantial interest vindicable by a federal court, even in the intervention context. *See Chiles v. Thornburgh*, 865 F.2d 1197, 1212-13 (11th Cir. 1989) (noting that standing cases "are relevant to help define the type of interest that the intervenor must assert"). After all, "if any taxpayer's generalized concern about the use of their tax dollars is insufficient to bring a suit but is considered substantial and direct enough to intervene in other suits, what is to prevent all [Oklahoma] taxpayers from intervening in a suit such as this one?" *Ark Encounter, LLC v. Stewart*, 311 F.R.D. 414, 419 (E.D. Ky. 2015).

But even if Movants had standing, they still would not have a protectable interest because their claimed interests are too generalized and speculative.

This is especially true with Movants' supposed interest as Oklahoma taxpayers. Again, any injuries resulting from an allocation of tax money are "too indeterminable, remote, uncertain and indirect." *Doremus*, 342 U.S. at 433. Rather they are the paradigmatic

17

example of a "generalized grievance," *Hollingsworth*, 570 U.S. at 706, that cannot serve as a protectable interest justifying intervention.

Next, Movants' claimed interest in preventing the divergence of funding similarly fails. As discussed above, any change in funding to Movants' schools is purely hypothetical. *See E. Bay Sanctuary Covenant v. Biden*, 102 F.4th 996, 1002 (9th Cir. 2024) ("Incidental effects … [are] attenuated and speculative.").

Indeed, the Tenth Circuit has dismissed similarly speculative economic harm as an insufficient interest. In *Ozarks*, a municipality sought to condemn facilities owned by a local electric cooperative. 79 F.3d at 1041. The local cooperative's wholesale supplier sought to intervene, claiming it had a financial interest in the litigation. *Id.* at 1042. Namely, it argued that an unfavorable result would lead to an increase in costs for its other customers. The Tenth Circuit rejected this argument because the limited financial stakes were "too contingent," "too indirect," and "hardly substantial." *San Juan Cnty.*, 503 F.3d at 1202 (emphasis omitted). That same reasoning means that Movants' no-divergence-of-funding interest fails.

Finally, Movants' general interest in preventing alleged discrimination likewise falls short. Again, this "type of interest is too generalized and attenuated." *Hein*, 551 U.S. at 599; *see also Lujan*, 504 U.S. at 573-74. More is required for intervention. "An intervenor must specify a 'particularized interest rather than a generalized grievance.'" *Am. Ass'n of People with Disabilities v. Herrera*, 257 F.R.D. 236, 246 (D.N.M. 2008) (quoting *Thornburgh*, 865 F.2d at 1212). Movants fail to do so here and intervention should be denied.

18

### III. Movants do not satisfy the requirements for permissive intervention.

"Rule 24(b)(1)(B) governing permissive intervention provides that, on timely motion, the court may permit anyone to intervene who 'has a claim or defense that shares with the main action a common question of law or fact.'" *Tri-State Generation and Transmission Ass'n v. N.M. Pub. Regul. Comm'n*, 787 F.3d 1068, 1074 (10th Cir. 2015).

Movants fail to satisfy the requirements for permissive intervention for the same reasons they fail to satisfy the requirements for intervention as of right. Because they seek relief that is different and broader than the relief sought by existing Defendants, Movants must show independent Article III standing, which they fail to do. *See supra*, 8-16; *see City of Herriman v. Bell*, 590 F.3d 1176, 1183-84 (10th Cir. 2010) (holding district court abused its discretion by granting permissive intervention because a political subdivision lacked "independent standing and the authority to bring [an] equal protection claim"); *Washington v. Food & Drug Admin.*, 108 F.4th 1163, 1171, 1178 (9th Cir. 2024) (denying intervention both as of right and permissively because movant sought "separate relief" without "independent standing"); *United States v. RaPower-3, LLC*, 341 F.R.D. 311, 313-14, 317 (D. Utah 2022) ("Where Prospective Intervenors have failed to establish their injury will likely be redressed by a favorable decision, they lack standing to intervene of right. For the same reason, Prospective Intervenors lack standing for permissive intervention.") (collecting cases). This Court should thus deny permissive intervention as well.

### CONCLUSION

For the foregoing reasons, this Court should deny intervention.

19

Dated: April 22, 2026

Robert G. McCampbell
  OBA No. 10390
David A. Herber
  OBA No. 33527
GABLEGOTWALS
499 W. Sheridan Ave., Suite 2200
Oklahoma City, OK 73102
Tel 405-235-5500
*RMcCampbell@Gablelaw.com*

Respectfully submitted,

/s/ Eric S. Baxter
Eric S. Baxter
  DC Bar No. 479221
Eric C. Rassbach
  TX Bar No. 24013375
Daniel L. Chen
  DC Bar No. 1781783
Phillip J. Allevato*
  CA Bar No. 362581
THE BECKET FUND FOR RELIGIOUS LIBERTY
1919 Pennsylvania Ave. NW, Ste. 400
Washington, DC 20006
(202) 955-0095
*ebaxter@becketfund.org*

*\* Not a member of the DC Bar; admitted in California. Practice limited to cases in federal court.*

*Attorneys for Plaintiffs*

20

## CERTIFICATE OF SERVICE

I hereby certify that on April 22, 2026, the foregoing was served on counsel for all parties via the Court's CM/ECF system.

/s/ Eric S. Baxter
Eric S. Baxter

21