**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| THE NATIONAL BEN GAMLA JEWISH CHARTER SCHOOL FOUNDATION, INC., *et al.*, | Case No. 5:26-cv-00582-R |
| *Plaintiffs*, | **PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION** |
| v. | |
| GENTNER DRUMMOND, in his official capacity as Attorney General of Oklahoma, *et al.*, | **Hearing and Ruling Requested by May 22, 2026** |
| *Defendants*. | |

Robert G. McCampbell
  OBA No. 10390
David A. Herber
  OBA No. 33527
GABLEGOTWALS
499 W. Sheridan Ave., Suite 2200
Oklahoma City, OK 73102
Tel 405-235-5500
*RMcCampbell@Gablelaw.com*
*DHerber@Gablelaw.com*

Eric S. Baxter
  DC Bar No. 479221
Eric C. Rassbach
  TX Bar No. 24013375
Daniel L. Chen
  DC Bar No. 1781783
Phillip J. Allevato*
  CA Bar No. 362581
Siena A. Marcelle
  DC Bar No. 90043763
THE BECKET FUND FOR RELIGIOUS LIBERTY
1919 Pennsylvania Ave. NW, Ste. 400
Washington, DC 20006
(202) 955-0095
*ebaxter@becketfund.org*

*\*Not a member of the DC Bar; admitted in California. Practice limited to cases in federal court.*

*Attorneys for Plaintiffs*

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES..............................................................................................iii

INTRODUCTION ......................................................................................................... 1

ARGUMENT.................................................................................................................. 2

I.  Attorney General Drummond is a proper defendant.......................................... 2

    A.  Attorney General Drummond has the power to enforce the OCSA......................... 3

    B.  Attorney General Drummond has willingly enforced the OCSA. ........................... 6

II. Plaintiffs have demonstrated a likelihood of success on the merits. ........................... 7

    A.  Denying Ben Gamla's charter violates the Free Exercise Clause........................... 7

    B.  Drummond's half-hearted counterargument fails. ................................................. 8

CONCLUSION ............................................................................................................... 9

CERTIFICATE OF SERVICE....................................................................................... 11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Butler v. Daimler Trucks N. Am., LLC*,
   74 F.4th 1131 (10th Cir. 2023) .................................................................................... 6

*Carson v. Makin*,
   596 U.S. 767 (2022) ...................................................................................................... 7

*Catholic Charities v. Whitmer*,
   162 F.4th 686 (6th Cir. 2025) ....................................................................................... 9

*Ceva Animal Health, LLC v. Mustang Fliers, Inc.*,
   2024 WL 3400245 (D. Kan. July 12, 2024) .................................................................. 2

*Chamber of Com. v. Edmondson*,
   594 F.3d 742 (10th Cir. 2010) ............................................................................... 4, 5, 6

*Citibank Int'l v. Collier-Traino, Inc.*,
   809 F.2d 1438 (9th Cir. 1987) ...................................................................................... 2

*E.E.O.C. v. E. Airlines, Inc.*,
   736 F.2d 635 (11th Cir. 1984) ...................................................................................... 2

*Eaves v. Polis*,
   167 F.4th 1304 (10th Cir. 2026) ................................................................................ 2, 4

*Espinoza v. Mont. Dep't. of Rev.*,
   591 U.S. 464 (2020) ...................................................................................................... 7

*Finstuen v. Crutcher*,
   496 F.3d 1139 (10th Cir. 2007) .................................................................................... 6

*Free the Nipple-Fort Collins v. City of Fort Collins*,
   916 F.3d 792 (10th Cir. 2019) ................................................................................... 8, 9

*G-I Holdings, Inc. v. Baron & Budd*,
   2002 WL 1822929 (S.D.N.Y. Aug. 7, 2002) ................................................................ 2

*Hendrickson v. AFSCME Council 18*,
   992 F.3d 950 (10th Cir. 2021) ................................................................................... 2-3

*State ex rel. Howard v. Okla. Corp. Comm'n,*
  614 P.2d 45 (Okla. 1980) ................................................................................... 3

*Kitchen v. Herbert,*
  755 F.3d 1193, 1202 (10th Cir. 2014) ........................................................... 5, 6

*Mahmoud v. Taylor,*
  602 U.S. 522 (2025) ........................................................................................... 9

*Peterson v. Martinez,*
  707 F.3d 1197 (10th Cir. 2013) ...................................................................... 3, 6

*Drummond ex rel. State v. Okla. Statewide Virtual Charter Sch. Bd.,*
  558 P.3d 1 (Okla. 2024) .................................................................................. 4, 5

*Ex parte Young,*
  209 U.S. 123 (1902) ........................................................................................... 2

**Statutes**

Okla. Stat. Ann. tit. 70, § 3-136 ........................................................................... 7

Okla. Stat. Ann. tit. 74, § 18 ............................................................................. 3, 4

**INTRODUCTION**

The Oklahoma Statewide Charter School Board agrees that Plaintiffs are entitled to a preliminary injunction. Attorney General Drummond disagrees, but only half-heartedly. Drummond makes almost no attempt to respond to the substance of Ben Gamla's First Amendment arguments. Instead, he insists that he is not a proper defendant because he lacks authority to enforce the Oklahoma Charter School Act ("OCSA")—despite suing to enforce it twice. Then, he contends that the Oklahoma Supreme Court's previous decision in a case he brought (which Drummond acknowledges is not binding on this Court) creates so much legal uncertainty that Ben Gamla cannot show a likelihood of success. Drummond is wrong on both fronts.

First, Drummond is a proper defendant in this case. Not only does Oklahoma law grant him sufficient authority to enforce the OCSA when necessary, he has actually done so twice already—*including against Ben Gamla*. Drummond's repeated efforts to block religious schools from becoming charter schools shows not only that he has power to enforce the OCSA, but also the reason why an injunction against Drummond is necessary to protect Ben Gamla's rights. Unless Drummond is enjoined alongside the Board, he will continue his efforts to bar religious schools from ever becoming charter schools.

Second, the Supreme Court has been exceedingly clear in *Carson*, *Espinoza*, and *Trinity Lutheran* that states cannot refuse to extend public benefits to religious institutions solely because they are religious. Those cases bind this court. The only case Drummond relies

1

on—his own litigation in the Oklahoma Supreme Court—does not. Accordingly, this Court should enter a preliminary injunction.[1]

**ARGUMENT**

## I. Attorney General Drummond is a proper defendant.

While the Eleventh Amendment generally immunizes states from suits in federal court, it "does not bar suit for prospective relief against a state official sued in his official capacity so long as the complaint alleges an ongoing violation of federal law." *Eaves v. Polis*, 167 F.4th 1304, 1313 (10th Cir. 2026). A state official need only "'have some connection with the enforcement' of the challenged law." *Id.* (quoting *Ex parte Young*, 209 U.S. 123, 157 (1902)). *Ex parte Young* "does not require that the state official have a special connection to the unconstitutional act or conduct." *Id.* (quoting *Hendrickson v. AFSCME Council 18*,

---

[1]   On April 17, seven Oklahoma taxpayers who sought to intervene as Defendants requested leave to file an opposition to Plaintiffs' Motion for Preliminary Injunction. Dkt. 62. Because Movants' motion for leave to file an opposition and motion to intervene remain pending—and because Movants lack standing and are not entitled to intervene, *see* Dkt. 77—Plaintiffs need not respond to the Movants' opposition, as it is an improper filing raised by a non-party to this litigation. *See, e.g.*, *E.E.O.C. v. E. Airlines, Inc.*, 736 F.2d 635, 637 (11th Cir. 1984) (The right to file a motion was "predicated on her ability to intervene successfully in the EEOC case. Otherwise, Gorman, as a non-party to the EEOC suit, would lack standing … to make any other motion[.]"); *Citibank Int'l v. Collier-Traino, Inc.*, 809 F.2d 1438, 1440 (9th Cir. 1987) ("[W]e conclude that the district court properly refused to consider [the] motion to vacate because the motion was filed by a nonparty."); *Ceva Animal Health, LLC v. Mustang Fliers, Inc.*, 2024 WL 3400245, at *2 (D. Kan. July 12, 2024) ("[I]t is procedurally improper for non-parties to file motions if they have not successfully intervened."); *G-I Holdings, Inc. v. Baron & Budd*, 2002 WL 1822929, at *1 (S.D.N.Y. Aug. 7, 2002) ("Until such time, if ever, that the Movants comply with the formal requirements [for intervention], the parties to this suit shall not be required to respond to any motions that the Movants file."). Nonetheless, should the Court grant leave to file the opposition or otherwise find a response helpful, Plaintiffs will file a reply addressing those arguments.

2

992 F.3d 950, 965 (10th Cir. 2021)). Rather, a state official must merely "have the power to enforce the law and a demonstrated willingness to exercise that power." *Id.*

That standard is easily satisfied here. Oklahoma law grants the attorney general sufficient power to enforce the OCSA's nonsectarian provision. And Drummond's own efforts to ensure that the nonsectarian provision is fully enforced demonstrate both his authority and willingness to enforce the law at issue here.

**A. Attorney General Drummond has the power to enforce the OCSA.**

As attorney general, Drummond has the requisite power to enforce the nonsectarian provision. Enforcement authority may be granted directly by the statute, or it may come "by way of another state law, an administrative delegation, or a demonstrated practice of enforcing a provision." *Peterson v. Martinez*, 707 F.3d 1197, 1207 (10th Cir. 2013).

Here, Oklahoma law gives Drummond authority to initiate "any action in which the interests of the state or the people of the state are at issue." Okla. Stat. tit. Ann. 74, § 18b(A)(3). Drummond is thus the "proper party to maintain litigation to enforce a matter of public interest." *State ex rel. Howard v. Okla. Corp. Comm'n*, 614 P.2d 45, 52 (Okla. 1980). This includes the authority to file lawsuits seeking to require the Board to faithfully apply the OCSA, including the nonsectarian provision. *See, e.g.*, Pet'rs.' Br. in Supp. of Pet. for Writ of Mandamus at 6 n.4, *Drummond ex rel. State v. Okla. Statewide Virtual Charter Sch. Bd.*, 558 P.3d 1 (Okla. 2024), 2023 WL 11915548, at *6 n.4.

Indeed, Drummond has personally brought at least two such actions against the Board—one filed shortly after Ben Gamla's application was denied in this case, *see* Pet. for Writ of Mandamus, *Drummond v. Okla. Statewide Charter Sch. Bd.*, No. CV-2026-649

3

(Okla. Cnty. Dist. Ct. Mar. 11, 2026), and one in 2023 to enforce the nonsectarian requirement against St. Isidore of Seville Catholic Virtual School, *see Drummond ex rel. State v. Okla. Statewide Virtual Charter Sch. Bd.*, 558 P.3d 1, 7 (Okla. 2024). And the Board has presented evidence that Drummond threatened them with criminal sanctions should they not comply. *See* Dkt. 63 at 8. Taken together, all of this demonstrates Drummond's "power to enforce the law." *Eaves*, 167 F.4th at 1313.

Drummond cannot avoid this straightforward conclusion. First, he relies heavily on *Chamber of Commerce v. Edmondson*, 594 F.3d 742 (10th Cir. 2010), but that case supports Ben Gamla. There, the Tenth Circuit considered whether the Oklahoma Attorney General had sufficient enforcement authority for two separate statutory provisions. For one provision, the Court held there was not sufficient authority because the "sole provision" cited by the plaintiffs authorized the attorney general to bring enforcement authority only in "a *housing* context"—one separate from the claims at issue in that lawsuit. *Id.* at 760.

Regarding the other challenged provision, however, the Tenth Circuit held that the attorney general had sufficient enforcement authority. Although the attorney general had no direct authority to enforce that provision, he was authorized to "bring[ ] civil actions against businesses that violate state law and defend[ ] state agencies" when they were sued. *Id.* at 758, 760. Notably, the statute at issue in *Edmondson* is the same one that Drummond cites here to reserve his own authority to "appear, intervene, or participate in any proceeding in which the interests of the State or its people are at issue." *Compare id.* at 760 (citing Okla. Stat. tit. Ann. 74, § 18b(A)(3), (7)), *with* Dkt. 52 at 1 n.1 (same); *see also* Dkt. 1 ¶¶ 44-46. Thus, just as in *Edmondson*, the attorney general's power to bring enforcement

4

actions to ensure compliance with the law—coupled with his repeated efforts to do just that—are sufficient to establish his "particular duty to enforce" the law. 594 F.3d at 760.

Second, Drummond argues that he somehow lacks enforcement authority because he had to bring separate proceedings against the Board, rather than directly ordering them to deny applications or rescind contracts. Dkt. 52 at 4-5; Dkt. 64 at 3-4. That's wrong. The Tenth Circuit has previously held that an attorney general's ability to sue state officials to discharge their duties is sufficient authority under *Ex parte Young*.

In *Kitchen v. Herbert*, the plaintiffs sued county clerks in Utah who refused to issue them marriage licenses, as well as the Utah Attorney General. 755 F.3d 1193, 1202 (10th Cir. 2014). Although the county clerks—not the attorney general—were the officials tasked with actually issuing marriage licenses, the Tenth Circuit held that the attorney general was still a proper party because he was statutorily "required to 'exercise supervisory powers over … county attorneys of the state in all matters pertaining to the duties of their offices" and bring enforcement actions against the clerks to ensure compliance when necessary. *Id.*

That same logic applies here. Although the Board approves or denies applications, Drummond is authorized under state law to bring actions against the Board to require it to conform its decisions to state law. Drummond has now done so twice. Indeed, his previous enforcement action led to the revocation of St. Isidore's contract. *See Drummond*, 558 P.3d at 15. Unless he is enjoined from bringing similar actions against Ben Gamla in the future, Drummond could sue in state court and try to force the Board to reject or rescind a contract with Ben Gamla at any time (as he has already done). *See Edmondson*, 594 F.3d at 758 ("An injunction would prevent him from filing lawsuits … on the basis of Section 7(B).").

5

Finally, Drummond complains that Plaintiffs do not cite a provision of the OCSA authorizing him to approve or deny charter school applications or bring actions against charter schools. Dkt. 52 at 5. But that's not what the law requires. "Connection to the enforcement of an act may come by way of another state law, an administrative delegation, or a demonstrated practice of enforcing a provision." *Peterson*, 707 F.3d at 1207. There need only be "some connection with the enforcement of the act that is in continued violation of federal law. So long as there is such a connection, it is not necessary that the officer's enforcement duties be noted in the act." *Finstuen v. Crutcher*, 496 F.3d 1139, 1151 (10th Cir. 2007) (cleaned up). Here, it's enough that Drummond can enforce the nonsectarian requirement through separate lawsuits and has a demonstrated practice of doing so. *Id.*; *see also Kitchen*, 755 F.3d at 1204 ("[T]he Attorney General's actual exercise of supervisory power … to compel compliance from county clerks … provide[s] the requisite nexus.").

## B.  Attorney General Drummond has willingly enforced the OCSA.

Drummond focuses exclusively on his supposed lack of enforcement authority, failing to even address the second prong of *Ex parte Young*. *See* Dkt. 52 at 3-6; Dkt. 64 at 1-3. He has thus forfeited the argument. *See Butler v. Daimler Trucks N. Am., LLC*, 74 F.4th 1131, 1142 (10th Cir. 2023). Regardless, as explained, Drummond has demonstrated his willingness to enforce the OCSA's requirements through the two lawsuits he filed to ensure the Board applied the OCSA as he wanted them to. *See, e.g.*, *Edmondson*, 594 F.3d at 760 (willingness based on two prior lawsuits). Thus, the *Ex parte Young* exception applies, and Drummond is a proper defendant in this suit.

**II. Plaintiffs have demonstrated a likelihood of success on the merits.**

    **A. Denying Ben Gamla's charter violates the Free Exercise Clause.**

Supreme Court precedent makes clear that Oklahoma cannot exclude Ben Gamla from operating a charter school solely because it is religious. *Espinoza v. Mont. Dep't. of Rev.*, 591 U.S. 464, 476 (2020). The Free Exercise Clause prevents States from "exclud[ing] religious observers from otherwise available public benefits." *Carson v. Makin*, 596 U.S. 767, 778 (2022) (cleaned up). The Supreme Court has affirmed this principle three times in the last ten years in cases about public funding for private educational endeavors. *See* Dkt. 11 at 10-12; Dkt. 63 at 13-14. Each time, the Court explained that "bar[ring] religious schools from public benefits solely because of the religious character of the schools," violates the Free Exercise Clause. *Espinoza*, 591 U.S. at 475-76, 484.

The same is true here. Oklahoma has chosen to work with private organizations through a generally available government program to spark innovation and expand parental choice in education. Yet Oklahoma conditions this benefit on an applicant's religious status and exercise, categorically disqualifying religious institutions from operating charter schools. Okla. Stat. Ann. tit. 70, § 3-136(A)(2). That is pure discrimination against religion, and it "must be subjected to 'the strictest scrutiny,'" *Carson*, 596 U.S. at 780, which Oklahoma cannot satisfy, Dkt. 11 at 12-13.

Drummond largely does not challenge (or even address) any of this, seemingly taking no position on the merits of Ben Gamla's free exercise claims. And the Board actually agrees that *Carson*, *Espinoza*, and *Trinity Lutheran* apply in this case because Ben Gamla was singled out for its religious identity and denied solely on that basis. Dkt. 63 at 8. The

Board would gladly grant Ben Gamla's application, were it not for an Oklahoma Supreme Court writ of mandamus tying its hands. *Id.* Thus, Ben Gamla is likely to succeed on its Free Exercise claims, and this Court should grant a preliminary injunction.

### B. Drummond's half-hearted counterargument fails.

Drummond does not seriously dispute this conclusion. Instead, he claims that the prior *Drummond* litigation addressed the operative legal questions at issue here. Dkt. 64 at 4-5. But he does not argue that *Drummond* was correctly decided. *Id.* Nor does he (or could he) argue that *Drummond* binds this Court on the merits. *Id.* at 5; *see also* Dkt. 11 at 17 (noting *Drummond* does not bind this court); Dkt. 63 at 8-12 (same). Instead, he merely states that "the existence of substantial authority on both sides" "is itself sufficient to defeat the 'clear and unequivocal' standard required for preliminary relief." Dkt. 64 at 5.

Drummond cites no legal support for the idea that "authority on both sides" forecloses a showing of likelihood of success on the merits. *See id.* For good reason. If Drummond were correct, courts would never be able to issue injunctive relief in a close case or where a circuit split is present. But courts routinely do just that.

Take *Free the Nipple-Fort Collins v. City of Fort Collins*, 916 F.3d 792 (10th Cir. 2019). There, plaintiffs sought a preliminary injunction to halt the enforcement of a public-nudity ordinance that barred women from being topless but imposed no similar restriction on men. *Id.* at 794-95. The Tenth Circuit affirmed the district court's grant of a preliminary injunction, holding that plaintiffs were likely to succeed on the merits of their equal protection claim even though the Court adopted "the minority viewpoint" on the relevant legal issue. *Id.* at 805. Instead of the split serving as a bar to preliminary relief, the panel

relied on "the [Supreme] Court's equal-protection jurisprudence" to conclude its result was "constitutionally sound." *Id.* Other courts similarly do not hesitate to issue preliminary injunctions in the face of split authorities. *See, e.g.*, *Catholic Charities v. Whitmer*, 162 F.4th 686, 696 (6th Cir. 2025) (issuing a preliminary injunction despite a circuit split and despite disagreement within the panel). And, perhaps unsurprisingly, the Supreme Court has not shied away from granting injunctive relief, even when the relevant legal questions divided the Court. *See, e.g.*, *Mahmoud v. Taylor*, 602 U.S. 522 (2025).

At bottom, this Court should reject Drummond's assertion that a divide in authority precludes injunctive relief. Courts regularly find that plaintiffs can show a likelihood of success on the merits even when a legal issue is unsettled. And given that the weight of Supreme Court precedent favors Ben Gamla, Plaintiffs have made that showing.

## CONCLUSION

For these reasons, this Court should grant Plaintiffs' Motion for Preliminary Injunction.

Dated: April 24, 2026

Respectfully submitted,

/s/ Eric S. Baxter

Robert G. McCampbell
    OBA No. 10390
David A. Herber
    OBA No. 33527
GABLEGOTWALS
499 W. Sheridan Ave., Suite 2200
Oklahoma City, OK 73102
Tel 405-235-5500
*RMcCampbell@Gablelaw.com*
*DHerber@Gablelaw.com*

Eric S. Baxter
    DC Bar No. 479221
Eric C. Rassbach
    TX Bar No. 24013375
Daniel L. Chen
    DC Bar No. 1781783
Phillip J. Allevato*
    CA Bar No. 362581
Siena A. Marcelle
    DC Bar No. 90043763
THE BECKET FUND FOR RELIGIOUS LIBERTY
1919 Pennsylvania Ave. NW, Ste. 400
Washington, DC 20006
(202) 955-0095
*ebaxter@becketfund.org*

*\*Not a member of the DC Bar; admitted in California. Practice limited to cases in federal court.*

*Attorneys for Plaintiffs*

10

## CERTIFICATE OF SERVICE

I hereby certify that on April 24, 2026, the foregoing was served on counsel for all parties via the Court's CM/ECF system.

*/s/ Eric S. Baxter*
Eric S. Baxter

*Attorney for Plaintiffs*
