**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF OKLAHOMA**

----------------------------------------------------- :

THE NATIONAL BEN GAMLA
JEWISH CHARTER SCHOOL
FOUNDATION, INC., et al.,

              *Plaintiffs*,

     -against-

GENTNER DRUMMOND, in his official
capacity as Attorney General of
Oklahoma, et al.,

             *Defendants*.

----------------------------------------------------- :

      Case No. 5:26-cv-00582-R

 

**REPLY BRIEF IN SUPPORT OF MOTION TO INTERVENE**
**BY RABBI DANIEL KAIMAN ET AL.**

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................... 1

I.   Proposed Intervenors need not demonstrate Article III standing ................................. 1

II.  In any event, Proposed Intervenors have Article III standing ...................................... 3

    *Taxpayers* ................................................................................................. 3

    *Public-school parents and teacher* .......................................................... 5

    *Public-charter-school parents and teacher* .............................................. 6

III. Proposed Intervenors are entitled to intervene as of right .......................................... 7

    *Timeliness* ................................................................................................ 7

    *Interests* ................................................................................................... 7

    *Impairment* .............................................................................................. 8

    *Inadequacy of representation* ................................................................... 8

IV. The Court should grant permissive intervention .......................................................... 9

CONCLUSION ...................................................................................................... 10

**INTRODUCTION**

No existing party to this case has committed to fully defend it.  Quite the opposite: The Board has asked the Court to *grant* Plaintiffs' preliminary-injunction motion, and the Attorney General has argued that he is not a proper defendant and should be dismissed from the case.  Yet Plaintiffs and the Board contend that these developments call for denial of Proposed Intervenors' motion to intervene.  That would turn the law on its head. Lack of adverseness among the existing parties strongly weighs in favor of allowing intervention, not against it.  Indeed, if Proposed Intervenors—who are committed to vigorously defending the constitutionality of Oklahoma's requirements that public charter schools be secular and open to all—are not permitted to enter the case, the resulting lack of adverseness would require the Court to seriously consider dismissing the lawsuit.

## I.    Proposed Intervenors need not demonstrate Article III standing.

Plaintiffs and the Board are wrong in arguing (ECF No. 76, at 2–3; ECF No. 77, at 6–8) that Proposed Intervenors must demonstrate Article III standing to intervene.  An intervenor must demonstrate Article III standing only when it attempts "to invok[e] a court's jurisdiction."  *Va. House of Delegates v. Bethune-Hill*, 587 U.S. 658, 663 (2019). That can occur in only two types of circumstances.  The first is when an intervenor wishes to appeal a decision that no other party desires to challenge.  *See Hollingsworth v. Perry*, 570 U.S. 693, 705 (2013).  The second is when an intervenor seeks affirmative relief that no existing party requests.  *See Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 591 U.S. 657, 674 n.6 (2020); *Town of Chester v. Laroe Ests., Inc.*, 581 U.S. 433, 439 (2017).  For example, in *Kane County v. United States*, 928 F.3d

877, 887 (10th Cir. 2019)—a quiet-title action, which is a type of case where both the plaintiff and the defendant seek affirmative relief by asserting title to particular property (*e.g.*, *Yokeno v. Mafnas*, 973 F.2d 803, 808 (9th Cir. 1992))—the Tenth Circuit considered whether a proposed defendant-intervenor requested that the boundaries of a land parcel be different from those sought by the governmental defendant.

But "courts generally do not require parties *opposing* judicial relief to demonstrate standing." *AAAG-Cal., LLC v. Kisana*, 553 F. Supp. 3d 1042, 1047 (D. Utah 2021). Thus, when proposed defendant-intervenors merely ask a court to deny any relief to the plaintiff, the intervenors need not demonstrate Article III standing—even when no party opposes the plaintiff's desired relief—because the intervenors are not seeking affirmative relief. *See Franciscan All., Inc. v. Azar*, 414 F. Supp. 3d 928, 938 (N.D. Tex. 2019); *Brumback v. Ferguson*, 343 F.R.D. 335, 345–46 (E.D. Wash. 2022); *NLMK Pa., LLC v. United States*, 553 F. Supp. 3d 1354, 1364 n.12 (Ct. Int'l Trade 2021); *Greater Chautauqua Fed. Credit Union v. Marks*, No. 1:22-cv-2753, 2023 WL 2744499, at *5–6 (S.D.N.Y. Mar. 31, 2023); *Env't Integrity Project v. Wheeler*, No. 20-cv-1734, 2021 WL 6844257, at *2 (D.D.C. Jan. 27, 2021).

Indeed, requiring defendant-intervenors to show Article III standing when no existing defendant plans to oppose a lawsuit would be senseless because it would deprive courts of an adversarial presentation of the issues and could thereby result in dismissal of the suit. *See infra* at 9. It is therefore unsurprising that Plaintiffs and the Board do not cite any decisions that required a defendant-intervenor to demonstrate Article III standing

2

to join an existing district-court case when the intervenor merely opposed the granting of any relief to the plaintiff.

Here, Proposed Intervenors seek nothing beyond the denial of any relief to Plaintiffs.  (ECF No. 15-14, at 22–23.)  Thus they need not show Article III standing.

## II.  In any event, Proposed Intervenors have Article III standing.

Even if Proposed Intervenors did have to demonstrate Article III standing, they would satisfy that requirement in three capacities: as Oklahoma taxpayers, as public-school parents and a teacher, and as public-charter-school parents and a teacher.

*Taxpayers.*  Proposed Intervenors have standing under federal law to oppose the use of their state tax payments to fund a religious school.  State taxpayers have standing in federal court to challenge use of public funds to promote religion when there is a nexus between the funding and legislative action.  *See Ariz. Christian Sch. Tuition Org. v. Winn*, 563 U.S. 125, 138–40 (2011); *Flast v. Cohen*, 392 U.S. 83, 102–04 (1968).  When funds are authorized or appropriated by the legislature for a particular purpose, the nexus test is met, even if executive or administrative officials are the ones who make the decisions to direct the funding to religious entities.  *See Bowen v. Kendrick*, 487 U.S. 589, 618–20 (1988); *ACLU of Mass. v. Sebelius*, 697 F. Supp. 2d 200, 203–10 (D. Mass. 2010); *ACLU of N. Cal. v. Burwell*, No. 16-cv-03539, 2016 WL 6962871, at *6–11 (N.D. Cal. Nov. 29, 2016); *ACLU of Minn. v. Tarek Ibn Ziyad Acad.*, Civ. No. 09-138, 2009 WL 2215072, at *4–6 (D. Minn. July 21, 2009); *cf. Hein v. Freedom From Religion Found.*, 551 U.S. 587, 593–96, 605, 615 (2007) (plurality opinion) (holding that nexus test was not satisfied

3

when funding at issue was used solely for internal executive-branch activity and taken from general appropriations that were not designated for any specific activity).

Accordingly, in *ACLU of Minnesota*, 2009 WL 2215072, at *6, the court ruled that state taxpayers had standing to challenge state funding of a charter school that allegedly promoted religion.  Here too, Proposed Intervenors seek to prevent (through the denial of Plaintiffs' requested relief) state funding of a religious charter school.  And the funding has a nexus with legislative action.  The Oklahoma legislature specifically authorized state funding for public charter schools.  Okla. Stat. tit. 70, § 3-142(A), (C).  It enacted a statutory formula that determines how much funding each charter school receives.  *Id.* §§ 18-200.1, 18-201.1.  And it annually appropriates state money for the specific purpose of funding public schools, including charter schools.  *E.g.*, H.R. 2766, 60th Leg., 1st Reg. Sess. §§ 1–8, 43 (Okla. 2025).

With little explanation, the Board argues that Proposed Intervenors lack taxpayer standing because there is some possibility that Ben Gamla will not receive taxpayer funds even if the school prevails in this case.  (ECF No. 76, at 6–7.)  But standing based on threatened future harm exists when "there is a substantial risk that the harm will occur." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (citation modified).  And here, it is virtually certain that Ben Gamla will receive state funding if it wins this case. The Board has made clear that it will approve Ben Gamla's application if it obtains a judgment allowing it to do so.  (ECF No. 59, at 2 ¶ 9, 15–16; ECF No. 63, at 1, 7–8, 17.) Once the Board does that, it will be statutorily obligated to enter into a charter contract with Ben Gamla.  *See* Okla. Stat. tit. 70, § 3-134(I)(5).  And the state will then be

4

required to fund Ben Gamla.  *See* Okla. Stat. tit. 70, §§ 3-142(A), 3-142(C), 18-200.1, 18-201.1.

*Public-school parents and teacher.*  Proposed Intervenors also have standing as public-school parents and a teacher based on the threat that state funding of Ben Gamla as a public charter school would harm their public schools and the education those schools provide by diverting state funds away from the schools.  (*See* ECF No. 15, at 14.)  On this point, applying the same test for standing that federal courts use, a Tennessee appellate court recently held that public-school parents had standing to challenge a school-voucher program because it threatened to harm their public schools by diverting state funds from those schools to private schools.  *Metro. Gov't of Nash. & Davidson Cnty. v. Tenn. Dep't of Educ.*, No. M2022-01786-COA-R3-CV, 2024 WL 107017, at *12–14 (Tenn. Ct. App. Jan. 10, 2024).

Plaintiffs and the Board argue that the threatened harm to the Proposed Intervenors' public schools might not occur.  (ECF No. 76, at 8; ECF No. 77, at 14.)  But at this stage of the litigation, Proposed Intervenors' allegations in their motion to intervene (ECF No. 15, at 14) and in their declarations (ECF Nos. 15-6 ¶ 8, 15-7 ¶ 11, 15-8 ¶ 7, 15-9 ¶ 9, 15-10 ¶ 9, 15-11 ¶ 8, 15-12 ¶ 11) concerning the threatened harm to their public education must be taken as true.  *See Ferrell v. SemGroup Corp.*, No. 19-CV-00610, 2020 WL 4281302, at *4 (N.D. Okla. June 12, 2020) (citing 6 *Moore's Federal Practice* § 24.03[1][a] (3d. ed. 2020)); *accord, e.g.*, *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 819–20 (9th Cir. 2001) (collecting cases).  Moreover, the magnitude of state funding that Ben Gamla projects receiving annually—$2.6 million in the 2026

5

fiscal year, increasing to $8.3 million by the 2030 fiscal year (ECF No. 15-5, at 2)—

confirms that there is "a substantial risk that the harm will occur" (*Susan B. Anthony List*,

573 U.S. at 158 (citation modified)).

    ***Public-charter-school parents and teacher.***  Additionally, the Proposed

Intervenors who teach at and/or plan to send their children to Oklahoma charter schools

(Bradley Archer and Michele Medley) have standing because Ben Gamla seeks a judicial

ruling here that would overturn current law that requires charter schools to comply with

the constitutional guarantees that teachers and students enjoy at other public schools.

(*See* ECF No. 15, at 14–15.)  Litigants who are defendant-intervenors have Article III

standing to oppose judicial action that invalidates legal protections for them.  *See Cooper*

*v. Tex. Alcoholic Beverage Comm'n*, 820 F.3d 730, 737–38 (5th Cir. 2016); *Mausolf v.*

*Babbitt*, 125 F.3d 661, 667 (8th Cir. 1997).

    Once more, the Board questions whether this form of harm is likely.  (ECF No. 76,

at 8.)  Plaintiffs' whole case, however, hinges on their argument that charter schools are

not governmental entities or other state actors and therefore need not comply with the

Establishment Clause or any other constitutional requirement.  (ECF No. 11, at 1–2, 13–

21.)  The prospect of this case resulting in a U.S. Supreme Court or Tenth Circuit ruling

accepting that contention obviously poses a grave threat to the federal constitutional

rights that Mr. Archer, his child, and Ms. Medley's child would otherwise continue to

possess as a charter-school teacher and charter-school students.

## III.  Proposed Intervenors are entitled to intervene as of right.

*Timeliness.*  Plaintiffs and the Board do not dispute that Proposed Intervenors' motion to intervene, filed just eight days after the filing of this lawsuit, was timely.

*Interests.*  For the same reasons that they have Article III standing, Proposed Intervenors have interests sufficient to support intervention as of right.  And even if Proposed Intervenors' interests do not suffice for standing, they suffice for mandatory intervention, as the showing of interest in this context need *not* rise to the level required for standing.  *See supra* at 1–3; *Kane*, 928 F.3d at 886–87 & nn.11–12.

In this regard, even if Proposed Intervenors' interest as Oklahoma taxpayers in preventing unlawful spending in support of religion does not provide them with Article III standing, Proposed Intervenors have a right to challenge such spending under state law.  (ECF No. 15, at 13.)  The need to protect a state-law interest is sufficient to support intervention.  *See Cawthorn v. Amalfi*, 35 F.4th 245, 252 (4th Cir. 2022).

The Board references (ECF No. 76, at 7) Oklahoma caselaw holding that, when a state body lawfully contracts with and funds a private entity, taxpayers cannot leverage that contract to force the state body to enforce state laws against the private entity.  *See Okla. Pub. Emps. Ass'n v. Okla. Dep't of Cent. Servs.*, 55 P.3d 1072, 1079 (Okla. 2002) (citing *McFarland v. Atkins*, 594 P.2d 758, 762 (Okla. 1978)).  But a state contract with, and state funding of, a religious charter school such as Ben Gamla—which in any event is a governmental entity, not a private one—would be unlawful, under the Oklahoma Charter Schools Act and the state and federal constitutions.  *See Drummond ex rel. State v. Okla. Statewide Virtual Charter Sch. Bd.*, 558 P.3d 1, 9–11, 14–15 (Okla. 2024), *aff'd*

7

*by an equally divided court*, 605 U.S. 165 (2025).  Oklahoma caselaw makes clear that Oklahoma taxpayers have broad rights to challenge unlawful state spending (ECF No. 15, at 13), so Ben Gamla's efforts to obtain a court order here requiring the state to contract with and fund the school directly threaten Proposed Intervenors' rights as state taxpayers.

***Impairment.***  The Board and Plaintiffs repeatedly argue that denying intervention would not impair Proposed Intervenors' interests because the harms that threaten Proposed Intervenors might not occur.  (ECF No. 76, at 9–10; ECF No. 77, at 17–18.) These arguments fail for the reasons stated in the discussion of standing above, at 4–6. What is more, under the impairment prong of the intervention test, a proposed intervenor need not demonstrate the "substantial risk [of] harm" that is required for standing (*Susan B. Anthony List*, 573 U.S. at 158 (citation modified)).  Rather, "a would-be intervenor must show only that impairment of its substantial legal interest is *possible* if intervention is denied." *Utah Ass'n of Cntys. v. Clinton*, 255 F.3d 1246, 1253 (10th Cir. 2001) (emphasis added) (citation modified).  Proposed Intervenors have plainly satisfied that requirement.  (*See* ECF No. 15, at 16–17; *supra* at 4–6.)

***Inadequacy of representation.***  Only the Board (ECF No. 76, at 10–12), not Plaintiffs (ECF No. 77), attempts to contest Proposed Intervenors' showing that their interests may not be adequately represented by existing parties.  Plaintiffs' concession is unsurprising, as developments that occurred after the filing of Proposed Intervenors' motion strongly support Proposed Intervenors on this issue.  The Board has asked the Court to *grant* Plaintiffs' preliminary-injunction motion (ECF No. 63, at 1, 17) and has agreed with virtually all of Plaintiffs' factual and legal contentions (ECF Nos. 59, 63).

Attorney General Drummond has argued that he is not a proper defendant and should be dismissed from the case (ECF No. 52); stated in his response to Plaintiffs' preliminary-injunction motion that he "takes no position in this response on the merits of Plaintiffs' constitutional claims" (ECF No. 64, at 4 n.4); and devoted less than two pages of the response to arguing that the injunction motion should be denied even if he is a proper defendant (*id.* at 4–5).

The conduct of the existing defendants makes clear that they will not adequately represent Proposed Intervenors' interests and weighs heavily in favor of allowing intervention as of right. *See Coal. of Ariz./N.M. Cntys. for Stable Econ. Growth v. Dep't of Interior*, 100 F.3d 837, 845–46 (10th Cir. 1996). The Supreme Court has urged that federal courts "insist upon that concrete adverseness which sharpens the presentation of issues upon which . . . court[s] so largely depend[] for illumination of difficult constitutional questions." *United States v. Windsor*, 570 U.S. 744, 760 (2013) (citation modified). If a court is unable to ensure such adversarial presentation of the issues, it must give serious consideration to dismissing the case. *See id.* at 761–63; *Moore v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 47, 48 (1971) (per curiam); *Lord v. Veazie*, 49 U.S. (8 How.) 251, 254–56 (1850).

## IV.  The Court should grant permissive intervention.

The existing defendants' actions also weigh heavily in favor of granting permissive intervention. Permissive intervention is particularly appropriate when "the would-be intervenor's input adds value to the existing litigation" and "the petitioner's interests are [not] adequately represented by the existing parties." *See United States v. N.*

*Colo. Water Conservancy Dist.*, 251 F.R.D. 590, 599 (D. Colo. 2008).  Both of these things are true here, as only Proposed Intervenors have submitted to the Court comprehensive briefing (ECF Nos. 62, 62-1) opposing the substantive arguments in Plaintiffs' preliminary-injunction brief.

The Board suggests that the Court allow Proposed Intervenors to serve as amici instead of granting intervention.  (ECF No. 76, at 14.)  But that would prejudice Proposed Intervenors and impede the Court's ability to decide this case on a full record.  Proposed Intervenors contend that Plaintiffs lack standing and that the case is not ripe because Ben Gamla's charter application contains serious deficiencies unrelated to Oklahoma's requirement that charter schools be nonreligious.  (ECF No. 62-1, at 3–7.)  Plaintiffs and the Board appear to factually dispute Proposed Intervenors' contentions on this matter.  (ECF No. 1 ¶¶ 99–104; ECF No. 76, at 8.)  Discovery will be needed to resolve these disputes, and amici cannot conduct discovery.  Furthermore, if intervention is denied, Proposed Intervenors will be unable to appeal any substantive rulings that the Court may issue in favor of Plaintiffs.

<div align="center">

**CONCLUSION**

</div>

For the foregoing reasons, Proposed Intervenors' Motion to Intervene should be granted.

<div align="center">

10

</div>

Respectfully submitted on April 29, 2026.

<div style="display:flex">
<div>

Brent Rowland, OBA No. 13415
Morgan Bandy, WI Bar No. 1130673*
Oklahoma Appleseed Center for
    Law & Justice
624 S. Denver Ave., Suite 400
Tulsa, OK 74119
Telephone: (918) 519-5750
brent@okappleseed.org /
morgan@okappleseed.org

Daniel Mach, DC Bar No. 461652*
Heather L. Weaver, DC Bar No. 495582*
American Civil Liberties Union
    Foundation
915 15th Street, NW, Suite 600
Washington, DC 20005
Telephone: (202) 675-2330
dmach@aclu.org / hweaver@aclu.org

Nancy A. Noet, WI Bar No. 1023106*
Samuel T. Grover, WI Bar No. 1096047*
Freedom From Religion Foundation
PO Box 750
Madison, WI 53701
Telephone: (608) 256-8900
noetn@ffrf.org / sgrover@ffrf.org

</div>
<div>

s/ Alex J. Luchenitser
Alex J. Luchenitser,
DC Bar No. 473393*
Luke Anderson, DC Bar No. 90042004*
Americans United for Separation of
    Church and State
1310 L Street NW, Suite 200
Washington, DC 20005
Telephone: (202) 466-7306 /
(202) 898-2134
luchenitser@au.org / anderson@au.org

Jessica Levin, CA Bar No. 338240*
Wendy Lecker, NY Bar No. 2283125*
Patrick Cremin, CA Bar No. 345406*
Katrina Reichert, CA Bar No. 357984*
Education Law Center
60 Park Place, Suite 300
Newark, NJ 07102
Telephone: (973) 624-1815
JLevin@edlawcenter.org /
WLecker@edlawcenter.org /
PCremin@edlawcenter.org /
KReichert@edlawcenter.org

</div>
</div>

*Attorneys for Proposed Intervenors*
\* Admitted *pro hac vice*.

11