**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| THE NATIONAL BEN GAMLA JEWISH CHARTER SCHOOL FOUNDATION, INC., *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> GENTNER DRUMMOND, in his official capacity as Attorney General of Oklahoma, *et al.*, <br><br> *Defendants*. | Case No. 5:26-cv-00582-R <br><br> **PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT DRUMMOND'S MOTION TO DISMISS (DKT. 52)** |

Robert G. McCampbell
  OBA No. 10390
David A. Herber
  OBA No. 33527
GABLEGOTWALS
499 W. Sheridan Ave., Suite 2200
Oklahoma City, OK 73102
Tel 405-235-5500
*RMcCampbell@Gablelaw.com*
*DHerber@Gablelaw.com*

Eric S. Baxter
  DC Bar No. 479221
Eric C. Rassbach
  TX Bar No. 24013375
Daniel L. Chen
  DC Bar No. 1781783
Phillip J. Allevato*
  CA Bar No. 362581
Siena A. Marcelle
  DC Bar No. 90043763
THE BECKET FUND FOR RELIGIOUS LIBERTY
1919 Pennsylvania Ave. NW, Ste. 400
Washington, DC 20006
(202) 955-0095
*ebaxter@becketfund.org*

*\*Not a member of the DC Bar; admitted in California. Practice limited to cases in federal court.*

*Attorneys for Plaintiffs*

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES..................................................................................................iii

INTRODUCTION ........................................................................................................... 1

FACTUAL BACKGROUND .......................................................................................... 2

    A.   Drummond's previous enforcement action against the Board.............................. 2

    B.   The Board denies Ben Gamla's application based on *Drummond* ........................ 4

    C.   Drummond seeks to compel the Board to reject Ben Gamla's application ............ 4

    D.   Procedural history ................................................................................................ 5

LEGAL STANDARD ...................................................................................................... 5

ARGUMENT.................................................................................................................... 5

    I.   Attorney General Drummond is a proper defendant.............................................. 5

    II.   Plaintiffs have Article III standing to maintain claims
         against Drummond. ............................................................................................ 10

    III.  Drummond is not entitled to attorney's fees........................................................ 11

CONCLUSION ............................................................................................................... 11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Benefield v. McDowall*,
  241 F.3d 1267 (10th Cir. 2001) ................................................................................ 5

*Bishop v. Oklahoma ex rel. Edmondson*,
  333 F. App'x 361 (10th Cir. 2009) ........................................................................... 7

*Chamber of Com. v. Edmondson*,
  594 F.3d 742 (10th Cir. 2010) ................................................................... 2, 8, 9, 10

*Doyle v. Hogan*,
  1 F.4th 249 (4th Cir. 2021) ...................................................................................... 7

*Drummond ex rel. State v. Okla. Statewide Virtual Charter Sch. Bd.*,
  558 P.3d 1 (Okla. 2024) ..................................................................................... 2, 3, 6

*Eaves v. Polis*,
  167 F.4th 1304 (10th Cir. 2026) ............................................................................... 5

*Finstuen v. Crutcher*,
  496 F.3d 1139 (10th Cir. 2007) ................................................................................ 9

*Hendrickson v. AFSCME Council 18*,
  992 F.3d 950 (10th Cir. 2021) .............................................................................. 5, 6

*State ex rel. Howard v. Okla. Corp. Comm'n*,
  614 P.2d 45 (Okla. 1980) ...................................................................................... 3, 6

*Johnson v. Smith*,
  104 F.4th 153 (10th Cir. 2024) ................................................................................. 5

*Kitchen v. Herbert*,
  755 F.3d 1193 (10th Cir. 2014) .......................................................................... 7, 8, 9

*Larson v. Valente*,
  456 U.S. 228 (1982) ................................................................................................ 10

*Massachusetts v. EPA*,
  549 U.S. 497 (2007) ................................................................................................ 10

*Okla. Statewide Charter Sch. Bd. v. Drummond*,
    605 U.S. 165 (2025) ................................................................................................ 3

*Peterson v. Martinez*,
    707 F.3d 1197 (10th Cir. 2013) ...................................................................... 6, 8, 9

*Prairie Band Potowatomi Nation v. Wagnon*,
    476 F.3d 818 (10th Cir. 2007) ................................................................................ 6

*United States v. Abbott*,
    85 F.4th 328 (5th Cir. 2023) .................................................................................. 7

*Women's Emergency Network v. Bush*,
    323 F.3d 937 (11th Cir. 2003) ............................................................................... 7

*Ex parte Young*,
    209 U.S. 123 (1908) ............................................................................................... 5

**Statutes**

Okla. Stat. tit Ann. 74, § 18b ...................................................................... 2, 6, 8

**INTRODUCTION**

In 2023, St. Isidore of Seville Catholic Virtual School received a charter from the State of Oklahoma to operate as a state-funded virtual charter school. But Attorney General Drummond was vehemently opposed. He believed that under state law, St. Isidore should have been disqualified from participating in Oklahoma's charter school program because St. Isidore was a religious school. So Drummond responded by suing in state court to revoke that already-granted charter. And Drummond was successful, persuading the Oklahoma Supreme Court to side with him. And, on appeal, the Supreme Court deadlocked 4-4, leaving the Oklahoma Supreme Court's decision intact.

In this case, Ben Gamla, another religious school, applied to become a charter school but was denied because of its religious identity and the Oklahoma Supreme Court's prior decision. Not content with that denial, Drummond again sued in state court. Claiming to enforce the Oklahoma Charter Schools Act ("OCSA"), Drummond sought to compel the Oklahoma Statewide Charter School Board to disqualify Ben Gamla from the charter-school program on additional, separate grounds.

But now, in this case, Drummond asks this Court to dismiss him as an improper party. From his telling, Drummond has nothing to do with approving charter schools or enforcing the OCSA, and thus, no order this Court could enter against him would alleviate Ben Gamla's injuries. To Drummond, that means he is not a proper defendant, and Ben Gamla lacks standing to pursue any claims against him.

Drummond's arguments are rooted more in his desire to avoid bad publicity than in the law. Oklahoma law grants the attorney general authority to sue to enforce the OCSA—the

same authority Drummond has already used to bring two related lawsuits in the past three years. Black letter law shows that in such circumstances, a government official is a proper party to a lawsuit. Indeed, Drummond notes and reserves his statutory "authority to represent the interests of the State of Oklahoma and its citizens in matters arising under the [OCSA]." Dkt. 52 at 1 n.1 ("Mot.") (citing Okla. Stat. tit Ann. 74, § 18b(A)(3)). And the Tenth Circuit—in a case Drummond himself cites—has already concluded that the ability to enforce state law under that precise section renders the attorney general a proper defendant under *Ex parte Young*. *See Chamber of Com. v. Edmondson*, 594 F.3d 742, 760 (10th Cir. 2010). That alone justifies denying his motion.

While Drummond attempts to paint this case as "a transparent attempt to generate a headline," Mot. at 2, the truth is that Ben Gamla needs an injunction to bar Drummond from continuing his ongoing efforts to bar religious schools, like Ben Gamla, from ever becoming charter schools. Accordingly, this Court should deny Drummond's motion.

## FACTUAL BACKGROUND

### A.  Drummond's previous enforcement action against the Board

In 2023, the predecessor to the Oklahoma Statewide Charter School Board approved an application for a Catholic charter school, St. Isidore of Seville Catholic Virtual School. *Drummond ex rel. State v. Okla. Statewide Virtual Charter Sch. Bd.*, 558 P.3d 1, 6 (Okla. 2024); Dkt. 1 ¶ 43 ("Compl."). In approving the application, the Board relied on earlier guidance from the Oklahoma Attorney General that the OCSA's nonsectarian requirement violated the federal Constitution. Compl. ¶ 44.

2

But upon taking office, the new Attorney General—Defendant Drummond—sought a writ of mandamus from the Oklahoma Supreme Court to revoke St. Isidore's already-granted charter. *Id.* Specifically, Drummond argued that as the Attorney General, he "ha[d] a clear legal right" to sue the Board "because he is 'the proper party to maintain litigation to enforce a matter of public interest.'" Pet'rs.' Br. in Supp. of Pet. for Writ of Mandamus at 6 n.4, *Drummond ex rel. State v. Okla. Statewide Virtual Charter Sch. Bd.*, 558 P.3d 1 (Okla. 2024), 2023 WL 11915548, at *6 n.4 ("Br. in Supp. of Mandamus") (quoting *State ex rel. Howard v. Okla. Corp. Comm'n*, 614 P.2d 45, 52 (Okla. 1980)); *see also* Compl. ¶¶ 45-46. He also claimed that chartering St. Isidore would violate the OCSA, the Oklahoma Constitution, and the federal Constitution. *Drummond*, 558 P.3d at 7; Compl. ¶ 44.

In a split decision, the Oklahoma Supreme Court agreed with Drummond. 558 P.3d at 7. It concluded that St. Isidore was a state actor. *Id.* at 12. That, according to the Oklahoma Supreme Court, meant that St. Isidore's religious mission, beliefs, and practices violated the OCSA and the Oklahoma Constitution's bar on aid to "sectarian" institutions, as well as the federal Constitution's Establishment Clause. *Id.* at 9-14. And because the Court found St. Isidore to be engaged in state action, it held that the United States Supreme Court's free exercise cases like *Carson, Espinoza*, and *Trinity Lutheran* were irrelevant. *Id*. at 14-15. After the U.S. Supreme Court granted certiorari in the case, it deadlocked 4-4 on the merits, leaving the Oklahoma Supreme Court's decision intact. *Okla. Statewide Charter Sch. Bd. v. Drummond*, 605 U.S. 165 (2025).

3

**B. The Board denies Ben Gamla's application based on *Drummond***

In December 2025, Plaintiff Peter Deutsch, a former Democratic congressman from Florida, founded the National Ben Gamla Jewish Charter School Foundation, Inc. in Oklahoma. Compl. ¶¶ 55, 63, 65. Ben Gamla applied to the Oklahoma Statewide Charter School Board to create a charter school where students would receive a rigorous academic education alongside a deep cultural and ethical grounding derived from the Jewish faith, heritage, and tradition. *Id.* ¶¶ 65-77.

The Board rejected Ben Gamla's application twice. It rejected Ben Gamla's initial submission in February 2026, citing Ben Gamla's religious identity and other alleged defects in its application materials. *Id.* ¶¶ 83-99. A month later, after Ben Gamla cured the alleged defects, the Board rejected the application a second time, citing Ben Gamla's religious identity as the sole reason. *Id.* ¶¶ 100-04. On March 10, the Board sent an official letter formally denying the application, citing the OCSA's nonsectarian requirement and the Oklahoma Supreme Court's decision in *Drummond*. *Id.* ¶ 104.

**C. Drummond seeks to compel the Board to reject Ben Gamla's application**

Attorney General Drummond immediately filed a petition for writ of mandamus in the state district court for Oklahoma County, seeking to enforce the OCSA by "compel[ling] the Board" to "identify all valid, nonconstitutional grounds for rejection of Ben Gamla's application." Mot. at 2; *see also Drummond v. Okla. Statewide Charter Sch. Bd.*, No. CV-2026-649 (Okla. Cnty. Dist. Ct. Mar. 11, 2026) ("Petition for Writ"); Compl. ¶ 105. Drummond also sought to compel the Board "to amend its March 10, 2026 rejection letter"

to include additional "independent, nonconstitutional grounds" for rejecting Ben Gamla's application. Petition for Writ at 13.

### D.  Procedural history

Ben Gamla filed this suit against Drummond and the Board on March 24, 2026. Dkt. 1. Drummond filed the instant motion to dismiss on April 14. Dkt. 52.

## LEGAL STANDARD

When considering a motion to dismiss, this court must "accept[ ] all well-pleaded allegations of the complaint as true and consider[ ] them in the light most favorable to the nonmoving party." *Johnson v. Smith*, 104 F.4th 153, 167 (10th Cir. 2024). "A complaint should not be dismissed … unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Benefield v. McDowall*, 241 F.3d 1267, 1270 (10th Cir. 2001).

## ARGUMENT

## I.  Attorney General Drummond is a proper defendant.

The Eleventh Amendment "does not bar suit for prospective relief against a state official sued in his official capacity so long as the complaint alleges an ongoing violation of federal law." *Eaves v. Polis*, 167 F.4th 1304, 1313 (10th Cir. 2026). An official need only "'have some connection with the enforcement' of the challenged law." *Id.* (quoting *Ex parte Young*, 209 U.S. 123, 157 (1908)). *Ex parte Young* "does not require that the state official have a special connection to the unconstitutional act or conduct." *Id.* (quoting *Hendrickson v. AFSCME Council 18*, 992 F.3d 950, 965 (10th Cir. 2021)). Rather, all that

is required "is that the state official have the power to enforce the law and a demonstrated willingness to exercise that power." *Id.* That standard is easily satisfied here.

Drummond has sufficient power to enforce the nonsectarian provision. This authority comes both "by way of another state law" and through Drummond's "demonstrated practice of enforcing a provision." *Peterson v. Martinez*, 707 F.3d 1197, 1207 (10th Cir. 2013).

Drummond has statutory authority to initiate "any action in which the interests of the state or the people of the state are at issue." Okla. Stat. Ann. tit. 74 § 18b(A)(3). The attorney general is thus the "proper party to maintain litigation to enforce a matter of public interest." *Howard*, 614 P.2d at 52. Drummond has repeatedly used this authority to file lawsuits seeking to require the Board to adopt his interpretation of the OCSA, including his interpretation of the nonsectarian provision. *See Drummond*, 558 P.3d at 7; Petition for Writ. In other words, Drummond "clearly [has] assisted or currently assist[s] in giving effect to" the OCSA by bringing enforcement actions to ensure the Board complies with the statutory requirements. *Prairie Band Potowatomi Nation v. Wagnon*, 476 F.3d 818, 828 (10th Cir. 2007). Drummond thus has a sufficient connection to the enforcement of the OCSA to be a proper defendant in this case.

Drummonds' arguments to the contrary are meritless. First, he relies on a string of cases that stand for nothing more than the general proposition that a universal duty to enforce the law is not a sufficient connection under *Ex parte Young*. Mot. at 4. But Ben Gamla does not argue that Drummond's authority is based "solely on a generalized duty to enforce the law." *See id.* Rather, as explained, Drummond's authority is derived from his statutory

authority to bring enforcement suits and his repeated efforts to do so. Moreover, in each of Drummond's cited cases, the law made "clear that another agency" or government entity was exclusively "responsible for the law's administration and enforcement," meaning the challenged official had no connection to the enforcement of the law at all. *United States v. Abbott*, 85 F.4th 328, 334 (5th Cir. 2023) (cleaned up); *see also Women's Emergency Network v. Bush*, 323 F.3d 937, 949 (11th Cir. 2003) (explaining that only one agency was "responsible for" enforcement, not the governor); *Doyle v. Hogan*, 1 F.4th 249, 255 (4th Cir. 2021) (statute "does not provide for another enforcement mechanism").

That's also true of the Tenth Circuit's unpublished opinion in *Bishop v. Oklahoma ex rel. Edmondson*, 333 F. App'x 361 (10th Cir. 2009), which Drummond cites, Mot. at 4. As the Tenth Circuit later explained in *Kitchen v. Herbert*, *Bishop* "turned on the conclusion that marriage licensing and recognition in Oklahoma were 'within the administration of the judiciary,'" and therefore entirely outside the authority of the "executive branch of Oklahoma's government." 755 F.3d 1193, 1202 (10th Cir. 2014) (quoting *Bishop*, 333 F. App'x at 365).

*Kitchen* also demonstrates why Ben Gamla properly sued Drummond. Drummond claims that he somehow lacks enforcement authority because he had to bring separate proceedings against the Board, rather than directly ordering them to deny applications or rescind contracts. Mot. at 4-5. But in *Kitchen*, the Tenth Circuit held that an attorney general's ability to bring separate enforcement actions in court to require state officials to discharge their duties was sufficient authority under *Ex parte Young*.

There, the plaintiffs sued the county clerk who refused to issue them marriage licenses, as well as the Utah Attorney General. *See Kitchen*, 755 F.3d at 1201-02. Although the county clerk—not the attorney general—was the official tasked with actually issuing marriage licenses, the Tenth Circuit held that the attorney general was still a proper party because he was statutorily "required to 'exercise supervisory powers over … county attorneys of the state in all matters pertaining to the duties of their offices" and bring enforcement actions *against the clerks* to ensure compliance when necessary. *Id.*

The same is true in this case. Although the Board approves or denies applications, the attorney general is authorized under state law to bring actions against the Board to require it to conform its decisions to state law. Drummond has now done so twice, demonstrating a "practice of enforcing" the OCSA when he wants to. *Peterson*, 707 F.3d at 1207.

Second, Drummond leans into *Chamber of Commerce v. Edmondson*, 594 F.3d 742 (10th Cir. 2010). But that case supports Ben Gamla. Drummond acknowledges as much. He notes that in *Edmondson*, the Tenth Circuit held that the attorney general had sufficient enforcement authority for Section 7(B) of that statute because he could, among other things, bring civil enforcement actions. Mot. at 4.

But *Edmondson* is even more on point than Drummond realizes. There, the authority to bring enforcement actions arose not under Section 7(B) itself, but under the *same statute* that Drummond now cites to reserve his own authority to "appear, intervene, or participate in any proceeding in which the interests of the State or its people are at issue." *Compare* 594 F.3d at 760 (citing Okla. Stat. tit. 74, § 18b(A)(3), (7)), *with* Mot. at 1 n.1 (same); *see also* Dkt. 1 ¶¶ 44-46. Thus, just as in *Edmondson*, the attorney general's power to bring

8

enforcement actions to ensure compliance with the OCSA—coupled with his repeated efforts to do just that—are sufficient to establish his "particular duty to enforce" the OCSA. 594 F.3d at 760.

Finally, Drummond complains that Ben Gamla does not cite a "provision of the OCSA that authorizes the Attorney General to approve or deny charter school applications" or bring actions directly against the charter schools. Mot. at 5. But under *Ex parte Young*, there need only be "some connection with the enforcement of the act that is in continued violation of federal law. So long as there is such a connection, it is not necessary that the officer's enforcement duties be noted in the act." *Finstuen v. Crutcher*, 496 F.3d 1139, 1151 (10th Cir. 2007) (cleaned up); *see also Peterson*, 707 F.3d at 1207 ("Connection to the enforcement of an act may come by way of another state law, an administrative delegation, or a demonstrated practice of enforcing a provision."). And as explained, Drummond is authorized to enforce the OCSA by bringing separate lawsuits and has a "demonstrated practice" of doing so. *Peterson*, 707 F.3d at 1207; *see also Kitchen*, 755 F.3d at 1204 ("[T]he Attorney General's actual exercise of supervisory power and … authority to compel compliance from county clerks … provide the requisite nexus.").

Drummond's repeated efforts to enforce the OCSA in court also demonstrate a clear willingness to enforce the statute. *See, e.g.*, *Edmondson*, 594 F.3d at 760 (willingness based on two prior lawsuits). Thus, the *Ex Parte Young* exception applies, and Drummond is not entitled to Eleventh Amendment immunity.

## II. Plaintiffs have Article III standing to maintain claims against Drummond.

Drummond argues that Ben Gamla has failed the redressability element of standing. Mot. at 6. He is wrong. "[A] plaintiff satisfies the redressability requirement when he shows that a favorable decision will relieve a discrete injury to himself. He need not show that a favorable decision will relieve his *every* injury." *Larson v. Valente*, 456 U.S. 228, 243 n.15 (1982). Moreover, the plaintiff's injury need not be completely resolved by the injunction running against a single defendant; rather, the plaintiff need only show that the injury "will likely be 'reduced to some extent' by an injunction running against" the defendant. *Edmondson*, 594 F.3d at 757 (quoting *Massachusetts v. EPA*, 549 U.S. 497, 526 (2007)). Here, Ben Gamla easily satisfies this element.

Once again, *Edmondson* is on point. The attorney general there made the same redressability arguments that Drummond makes here. *See id.* But the Tenth Circuit rejected them because "[a]n injunction would prevent [the attorney general] from filing lawsuits or defending against suits on the basis of Section 7(B)." *Id.* at 758.

The same is true here. Drummond previously used his statutory authority—the same statutory authority at issue in *Edmondson*—to initiate the lawsuit that ultimately led to the rescission of St. Isidore's contract to become a charter school. *See* Br. in Supp. of Mandamus at 6 n.4. And he expressly tries to preserve authority to bring future lawsuits in his motion to dismiss. *See* Mot. at 1 n.1. Unless Drummond is enjoined from bringing similar enforcement actions in the future, no contract that Ben Gamla might enter into with the Board would be secure. Thus, Ben Gamla requires an injunction against both the Board

10

*and* Drummond to ensure full relief. Ben Gamla therefore has standing to maintain its claims against Drummond.[1]

### III.  Drummond is not entitled to attorney's fees.

Drummond's reservation of attorney's fees is a transparent attempt to intimidate Plaintiffs and have them drop him from this case. Mot. at 9. But the law is not on his side. Because Drummond has actual enforcement authority under the OCSA and has utilized that authority multiple times over, he is a proper defendant in this case, and his motion to dismiss should be denied. There is thus no basis for Drummond to seek attorney's fees.

<strong>CONCLUSION</strong>

This Court should deny Drummond's motion to dismiss.

---

[1]  Because Drummond is a proper defendant and Ben Gamla has standing to sue him, this Court should also reject Drummond's request to remove his name from the caption of the case. *Contra* Mot. at 8-9.

11

Dated: May 1, 2026

Respectfully submitted,

/s/ Eric S. Baxter

Robert G. McCampbell
  OBA No. 10390
David A. Herber
  OBA No. 33527
GABLEGOTWALS
499 W. Sheridan Ave., Suite 2200
Oklahoma City, OK 73102
Tel 405-235-5500
*RMcCampbell@Gablelaw.com*
*DHerber@Gablelaw.com*

Eric S. Baxter
  DC Bar No. 479221
Eric C. Rassbach
  TX Bar No. 24013375
Daniel L. Chen
  DC Bar No. 1781783
Phillip J. Allevato*
  CA Bar No. 362581
Siena A. Marcelle
  DC Bar No. 90043763
THE BECKET FUND FOR RELIGIOUS LIBERTY
1919 Pennsylvania Ave. NW, Ste. 400
Washington, DC 20006
(202) 955-0095
*ebaxter@becketfund.org*

*Not a member of the DC Bar; admitted in California. Practice limited to cases in federal court.*

*Attorneys for Plaintiffs*

12