**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA**

|  |  |
|---|---|
| THE NATIONAL BEN GAMLA JEWISH CHARTER SCHOOL FOUNDATION, INC., *et al.*,<br><br>               *Plaintiffs*,<br><br>    v.<br><br>GENTNER DRUMMOND, in his official capacity as Attorney General of Oklahoma, *et al.*,<br><br>               *Defendants*. | Case No. 5:26-cv-00582-R<br><br>**PLAINTIFFS' RESPONSE IN OPPOSITION TO SECOND MOTION TO INTERVENE (DKT. 66)** |

Robert G. McCampbell
  OBA No. 10390
David A. Herber
  OBA No. 33527
GABLEGOTWALS
499 W. Sheridan Ave., Suite 2200
Oklahoma City, OK 73102
Tel 405-235-5500
*RMcCampbell@Gablelaw.com*
*DHerber@Gablelaw.com*

Eric S. Baxter
  DC Bar No. 479221
Eric C. Rassbach
  TX Bar No. 24013375
Daniel L. Chen
  DC Bar No. 1781783
Benjamin A. Fleshman
  DC Bar No. 1781280
Phillip J. Allevato*
  CA Bar No. 362581
Siena A. Marcelle
  DC Bar No. 90043763
THE BECKET FUND FOR RELIGIOUS LIBERTY
1919 Pennsylvania Ave. NW, Ste. 400
Washington, DC 20006
(202) 955-0095
*ebaxter@becketfund.org*

*\*Not a member of the DC Bar; admitted in California. Practice limited to cases in federal court.*

*Attorneys for Plaintiffs*

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES.................................................................................................iii

INTRODUCTION ........................................................................................................... 1

FACTUAL BACKGROUND ........................................................................................... 1

LEGAL STANDARD ...................................................................................................... 4

ARGUMENT.................................................................................................................... 4

   I.  Movants lack Article III standing to intervene........................................................... 5

     A. Movants seek different relief so they must establish
        Article III standing. ......................................................................................... 5

     B. Movants do not have Article III standing. ......................................................... 6

        1. Movants' claimed interest in disability protections
           does not establish standing. ........................................................................ 7

        2. Movants' claimed interest in preserving constitutional
           rights does not establish standing. ............................................................. 11

        3. Movants' claimed interest in public funding does not
           establish standing. ..................................................................................... 12

   II.  Movants cannot intervene as of right. .................................................................... 15

   III. Movants cannot permissively intervene................................................................. 17

CONCLUSION ............................................................................................................... 17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ariz. Christian Sch. Tuition Org. v. Winn*,
  563 U.S. 125 (2011) ...................................................................................................... 13

*Chiles v. Thornburgh*,
  865 F.2d 1197 (11th Cir. 1989) ................................................................................... 15

*City of Herriman v. Bell*,
  590 F.3d 1176 (10th Cir. 2010) ................................................................................... 17

*City of Los Angeles v. Lyons*,
  461 U.S. 95 (1983) ........................................................................................................ 11

*City of Stilwell v. Ozarks Rural Elec. Co-op. Corp.*,
  79 F.3d 1038 (10th Cir. 1996) ....................................................................................... 4

*Clapper v. Amnesty Int'l USA*,
  568 U.S. 398 (2013) ................................................................................................. 7, 13

*Coal. of Ariz./N.M. Cntys. for Stable Econ. Growth v. Dep't of Interior*,
  100 F.3d 837 (10th Cir. 1996) ..................................................................................... 15

*Doe v. Hochul*,
  139 F.4th 165 (2d Cir. 2025) ................................................................................. 10, 13

*Doe ex rel. Doe v. Hunter*,
  796 Fed. App'x 532 (10th Cir. 2019) .................................................................. 8, 9, 14

*FDA v. All. for Hippocratic Med.*,
  602 U.S. 367 (2024) ............................................................................................. 6, 9-10

*Habecker v. Town of Estes Park*,
  518 F.3d 1217 (10th Cir. 2008) ................................................................... 7, 11, 14, 15

*Hollingsworth v. Perry*,
  570 U.S. 693 (2013) ....................................................................................................... 6

*Kane County v. United States*,
  928 F.3d 877 (10th Cir. 2019) ....................................................................................... 5

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992) ............................................................................. 6, 7, 12

*Manhattan Cmty. Access Corp. v. Halleck*,
    587 U.S. 802 (2019) ..................................................................................... 11

*Nova Health Sys. v. Gandy*,
    416 F.3d 1149 (10th Cir. 2005) ............................................................ 6, 11, 14

*O'Shea v. Littleton*,
    414 U.S. 488 (1974) ..................................................................................... 11

*Rocky Mountain Wild v. Dallas*,
    98 F.4th 1263 (10th Cir. 2024) ....................................................................... 5

*S. Utah Wilderness All. v. Kempthorne*,
    525 F.3d 966 (10th Cir. 2008) ...................................................................... 16

*Safe Streets All. v. Hickenlooper*,
    859 F.3d 865 (10th Cir. 2017) ........................................................................ 5

*San Juan County v. United States*,
    503 F.3d 1163 (10th Cir. 2007) ............................................................... 15, 16

*Simon v. E. Ky. Welfare Rts. Org.*,
    426 U.S. 26 (1976) ......................................................................................... 6

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016) ....................................................................................... 8

*Drummond ex rel. State v. Okla. Statewide Virtual Charter Sch. Bd.*,
    558 P.3d 1 (Okla. 2024) ................................................................................. 2

*Summers v. Earth Island Inst.*,
    555 U.S. 488 (2009) ..................................................................................... 13

*Town of Chester v. Laroe Ests., Inc.*,
    581 U.S. 433 (2017) .................................................................................... 4, 5

*TransUnion LLC v. Ramirez*,
    594 U.S. 413 (2021) ..................................................................................... 14

*Tri-State Generation & Transmission Ass'n v. N.M. Pub. Regul. Comm'n*,
    787 F.3d 1068 (10th Cir. 2015) .................................................................... 17

iv

*Trump v. New York*,
      592 U.S. 125 (2020) ................................................................................... 14

*United States v. RaPower-3, LLC*,
      341 F.R.D. 311 (D. Utah 2022) .................................................................. 17

*Washington v. FDA*,
      108 F.4th 1163 (9th Cir. 2024) .................................................................. 17

*WildEarth Guardians v. U.S. Forest Serv.*,
      573 F.3d 992 (10th Cir. 2009) ................................................................... 15

**Statutes**

Okla. Stat. Ann. tit. 70, § 3-136 ................................................................. 9, 15

**Other Authorities**

34 C.F.R. § 200.64 ......................................................................................... 12

Fed. R. Civ. P. 24 ............................................................................................. 4

15 *Moore's Federal Practice* § 101.40 (3d ed. 1997) ..................................... 8

**INTRODUCTION**

Five residents of Oklahoma move to intervene to protect programs and services at their children's state-funded charter schools. But like the Oklahoma taxpayers who sought intervention earlier in this case, the five Movants here seek relief that is far different and broader than that sought by the existing Defendants. So Movants must show they possess Article III standing. They have failed to do so.

Movants' alleged injuries—worries about lost disability protections, concerns about diminished constitutional protections, and fears about lost government funding—are not cognizable because they are speculative, hypothetical, and remote. What's more, even if Movants could demonstrate Article III injuries, they have separately failed to demonstrate that these injuries are directly traceable to Ben Gamla's actions. That's because Movants' rights are either already separately secured by state law or are wholly contingent on the independent actions of third parties not before this Court.

Similarly, Movants lack any protectable legal interest in this litigation. Their stated interests are too contingent and indirect, so they cannot intervene as of right. And Movants have also failed to demonstrate that they are entitled to permissive intervention.

For these reasons, this Court should deny Movants' motion for intervention.

**FACTUAL BACKGROUND**

In December 2025, Plaintiff Peter Deutsch, a former Democratic congressman from Florida, founded the National Ben Gamla Jewish Charter School Foundation, Inc. ("Ben Gamla") in Oklahoma. Dkt. 1 ¶¶ 55, 63, 65 ("Compl."). Ben Gamla applied to the Oklahoma Statewide Charter School Board to create a charter school where students would

1

receive a rigorous academic education alongside a deep cultural and ethical grounding derived from the Jewish faith, heritage, and tradition. *Id.* ¶¶ 65-77. The Board rejected Ben Gamla's application twice—first in February 2026, and again on March 9 after Ben Gamla amended its application to cure alleged defects not at issue in this lawsuit. *Id.* ¶¶ 83-104. This second time, the Board identified Ben Gamla's religious identity as the sole reason for the denial, citing the Oklahoma Charter Schools Act's ("OCSA") nonsectarian requirement and the Oklahoma Supreme Court's decision in *Drummond ex rel. State v. Oklahoma Statewide Virtual Charter School Board*, 558 P.3d 1 (Okla. 2024). *Id.* ¶¶ 100-04.

Ben Gamla filed this suit against Drummond and the Board on March 24, 2026, and moved for a preliminary injunction three days later.

In response, Drummond filed a motion to dismiss, arguing he has "no role in the administration of the [OCSA], the processing or denial of charter school applications, or the enforcement of the OCSA's nonsectarian requirement." Dkt. 52 at 1. He expressly takes "no position" on this proceeding's "constitutional or statutory questions." *Id.* at 2. Drummond further claims that he "exercises no control over the Board's application decisions," though he simultaneously notes his "authority to represent the interests of the State of Oklahoma and its citizens in matters arising under the Oklahoma Charter Schools Act" and expressly refuses to "waive[ ]" that legal authority. *Id.* at 1 n.1, 3. Separately, Drummond filed a state-court mandamus petition seeking to compel the Board to identify additional, non-constitutional grounds for rejecting Ben Gamla's charter application. Pet. for Writ of Mandamus, *Drummond v. Okla. Statewide Charter Sch. Bd.*, No. CV-2026-649

(Okla. Cnty. Dist. Ct. Mar. 11, 2026); Compl. ¶ 105. But in that petition, Drummond failed to make a substantive defense of the OCSA's nonsectarian requirement.

The Board filed an Answer and admitted to most of Ben Gamla's allegations, agreeing that this Court should enjoin the OCSA's nonsectarian requirement and declare it unconstitutional. Dkt. 59 at 15. Indeed, in its response to Plaintiffs' motion for preliminary injunction, the Board expressly agrees with Plaintiffs' legal arguments, notes that "an injunction is necessary for Board Members to comply with their oath of office," and requests that the Court "grant Plaintiffs' motion for preliminary injunction." Dkt. 63 at 17.

On April 1, a group of seven Oklahoma taxpayers moved to intervene, claiming their status as taxpayers entitled them to participate in this lawsuit. Dkt. 15. Plaintiffs opposed that motion to intervene. Dkt. 77.

On April 24, a different group of five Oklahoma residents also sought intervention. Dkt. 66 ("Mot."). All five Oklahoma residents are parents of children who attend Oklahoma charter schools; four are parents of children who receive disability accommodations under Section 504 of the Rehabilitation Act. *Id.* at 1-2. Together, these Movants state that they "believe that [their] children's ability to have and maintain a Section 504 disability accommodation plan depends on public charter schools remaining public" and that Plaintiffs' litigation may "result in … loss of eligibility for state funding." Dkt. 66-1 ¶ 10; Dkt. 66-2 ¶¶ 10, 12, 16; Dkt. 66-3 ¶¶ 7, 10, 12; Dkt. 66-4 ¶ 6; Dkt. 66-5 ¶¶ 14, 16, 18. They also contend that allowing Plaintiffs to set up a religious charter school would permit their own charter schools to "extinguish" their children's constitutional rights. Dkt. 66-1 ¶ 12; Dkt. 66-2 ¶ 18; Dkt. 66-3 ¶ 14; Dkt. 66-4 ¶ 10; Dkt. 66-5 ¶ 20.

3

Movants also argue that none of the existing Defendants seek the relief necessary to vindicate Movants' alleged interests. *See* Mot. at 5-6, 21-22 (explaining that Drummond seeks to be dismissed as an improper party and that the Board has no objection to Plaintiffs' requested relief). On that basis, they seek to intervene and participate in this litigation.

## LEGAL STANDARD

Intervention as of right is appropriate where, among other things, a third party "claims an interest relating to the property or transaction" at issue that would be "impair[ed] or impede[d]" by the "action" and is not "adequately represent[ed]" by the existing parties. Fed. R. Civ. P. 24(a)(2). Permissive intervention is a matter of the Court's discretion, *City of Stilwell v. Ozarks Rural Elec. Co-op. Corp.*, 79 F.3d 1038, 1043 (10th Cir. 1996), and may be appropriate where the third party "has a claim or defense that shares with the main action a common question of law or fact," Fed. R. Civ. P. 24(b)(1)(B). Additionally, putative intervenors "must demonstrate Article III standing" when they seek "relief that is different from that which is sought by a party with standing." *Town of Chester v. Laroe Ests., Inc.*, 581 U.S. 433, 439-40 (2017).

## ARGUMENT

Movants are not entitled to intervene for multiple reasons. Most fundamentally, because they seek relief that is broader than the relief sought by existing Defendants, they must demonstrate Article III standing. But Movants' alleged interests in defending disability protections, constitutional rights, and government funding do not establish Article III standing. That's because Movants have not suffered a cognizable injury in fact, nor have they demonstrated that any injury is caused or fairly traceable to this litigation involving

4

Ben Gamla. Furthermore, Movants fail to satisfy the requirements for intervention under Rule 24. This Court should thus deny intervention.

## I. Movants lack Article III standing to intervene.

### A. Movants seek different relief so they must establish Article III standing.

Intervenors "must demonstrate Article III standing" when they seek relief that is different from that which is sought by the party with standing. *Rocky Mountain Wild v. Dallas*, 98 F.4th 1263, 1286 n.5 (10th Cir. 2024) (quoting *Town of Chester*, 581 U.S. at 439-40). This requirement to show standing applies to both plaintiff-intervenors and defendant-intervenors. *Kane County v. United States*, 928 F.3d 877, 887 n.12 (10th Cir. 2019) ("*Town of Chester* involved a plaintiff-side intervenor, but we see no reason not to apply that rule to defendant-side intervenors as well."); *accord Safe Streets All. v. Hickenlooper*, 859 F.3d 865, 912 (10th Cir. 2017) ("Article III's requirements apply to *all* intervenors, whether they intervene to assert a claim or defend an interest.").

Here, Movants expressly acknowledge that "[n]o existing party to this case" represents their interests, and they argue that they "are the only parties capable of articulating and protecting" those interests. Mot. at 23. Movants seek a judicial ruling that "charter schools in Oklahoma are, in label and in fact, public schools and state actors." *Id.* at 24. That relief, they concede, is different from the relief sought by the Board and Drummond—who either agree with Ben Gamla on the merits or seek only "to dismiss this action as to [Drummond] on the basis that he is not a proper party" but whose "motion is silent as to the constitutionality of the challenged provision of the [OCSA]." *Id.* at 21-22.

Accordingly, under binding Supreme Court and Tenth Circuit precedent, Movants must show that they have Article III standing to intervene in this case.

**B. Movants do not have Article III standing.**

To show standing, a party must "possess a direct stake in the outcome of the case." *Hollingsworth v. Perry*, 570 U.S. 693, 705 (2013) (cleaned up). "This requires the litigant to prove that he has suffered a concrete and particularized injury that is fairly traceable to the challenged conduct, and is likely to be redressed by a favorable judicial decision." *Id.* at 704 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)). To show an injury in fact, a party "must seek a remedy for a personal and tangible harm." *Id.* And that harm or injury must be "concrete and particularized," as well as "actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560.

A party must also demonstrate traceability, which requires a party to show that his injuries "likely will be caused by the defendant's conduct." *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 382 (2024). "Like the injury in fact requirement, the causation requirement screens out plaintiffs who were not injured by the defendant's action." *Id.* at 383.

For an injury to be "fairly traceable" to the opposing party, it cannot be "the result of the independent action of some third party not before the court." *Nova Health Sys. v. Gandy*, 416 F.3d 1149, 1155-56 (10th Cir. 2005) (quoting *Lujan*, 504 U.S. at 560). If "speculative inferences are necessary to connect [a party's] injury to the challenged action," this burden has not been met. *Id.* at 1157 (quoting *Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 45-46 (1976)).

Movants incorrectly argue that they are "not required to show [that] a particular harm will result, but only [that] it is 'possible.'" Mot. at 7 (internal quotation marks omitted). But "[s]tanding is not an ingenious academic exercise in the conceivable." *Lujan*, 504 U.S. at 566 (internal quotation marks omitted). Rather, a "threatened injury must be *certainly impending*," and "'[a]llegations of *possible* future injury' are not sufficient." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013). Although a harm's traceability "need not rise to the level of proximate causation, Article III does 'require proof of a substantial likelihood'" that the opposing party caused the moving party's injury. *Habecker v. Town of Estes Park*, 518 F.3d 1217, 1225 (10th Cir. 2008).

Here, Movants assert three theories of injury. First, Movants argue that this litigation will harm their children's disability protections under Section 504 of the Rehabilitation Act. Second, they claim that this litigation will lead to the loss of their children's constitutional rights, as they allege their children's charter schools will be free to discriminate in the areas of free speech, religion, and expression. Third, Movants contend that this litigation will lead to lower funding from state and federal sources. None of these theories suffice for standing.

### 1. Movants' claimed interest in disability protections does not establish standing.

Four of the five Movants claim that if charter schools are properly designated as private schools, they "will lose critical anti-discrimination and equal access protections." Mot. at 9. This argument fails both the injury-in-fact and traceability requirements for standing.

First, "[a] 'concrete' injury must be '*de facto*'; that is, it must actually exist." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016). Standing should be denied if "the injury is only hypothetical in the sense that the plaintiff *could* have been injured, but was not." *Doe ex rel. Doe v. Hunter*, 796 Fed. App'x 532, 537 (10th Cir. 2019) (quoting 15 *Moore's Federal Practice* § 101.40(4)(b)(i) (3d ed. 1997)).

Here, Movants' injuries are speculative, hypothetical, and remote. In their declarations, the Movants repeatedly state in boilerplate language that they "believe" their children's Section 504 accommodation plans "depend[ ] on public charter schools remaining public." *See, e.g.*, Dkt. 66-2 ¶¶ 10, 12; Dkt. 66-3 ¶¶ 7, 10; Dkt. 66-4 ¶ 6; Dkt. 66-5 ¶¶ 14, 16. But nowhere in their declarations do Movants say anything about what their charter schools have promised them, whether those schools would continue to offer disability accommodations to their children, and whether those accommodations are guaranteed by Section 504 and nothing else.

In similar circumstances, the Tenth Circuit refused to find standing. In *Doe ex rel. Doe v. Hunter*, Jane Doe, an unborn child acting through her father, sought to challenge the exceptions for legal abortions in the fetal-homicide laws of the United States and Oklahoma. 796 Fed. App'x at 533-34. The district court noted that the complaint repeatedly used the term "could"—that Doe *could* be subjected to an abortion—and that the complaint was "conspicuously silent as to the actual intent of Doe's mother." *Id.* at 535 (cleaned up). Accordingly, the district court dismissed for lack of standing.

The Tenth Circuit affirmed, adopting the district court's reasoning. It explained that allegations that harms that "could" or "can" happen "do not establish a concrete,

8

particularized injury." *Id.* at 536. So too here, as Movants simply repeat statements regarding their "belie[fs]" about losing disability accommodations. Dkt. 66-2 ¶¶ 10, 12; Dkt. 66-3 ¶¶ 7, 10; Dkt. 66-4 ¶ 6; Dkt. 66-5 ¶¶ 14, 16. Without more—especially any information concerning the requirements of the law or the "actual intent" of Movants' charter schools—Movants have only stated a hypothetical and speculative injury. *Hunter*, 796 Fed. App'x at 535, 537 ("[H]ypotheticals do not establish that Doe is subject to any risk, much less a substantial risk[.]").

Second, Movants also fail the traceability requirement. Movants assert that their alleged loss of disability protections is directly traceable to Ben Gamla's litigation. If this Court rules in favor of Ben Gamla and holds that charter schools are private schools, that—Movants contend—will mean the end of their disability accommodations.

But Oklahoma law already independently requires every charter school to comply with federal and state disability law. Section 70-3-136(A)(6) of the OCSA expressly states that "[a] charter school or virtual charter school shall comply with all federal and state laws relating to the education of children with disabilities in the same manner as a school district." Okla. Stat. Ann. tit. 70, § 3-136(A)(6). This requirement applies as a matter of Oklahoma statutory law, not because of the public-private question at issue in this case. Thus, any injury Movants would suffer would not be traceable to this litigation because the disability protections Movants seek to protect are already secured by state law.

When confronted with similar traceability problems, courts have consistently found that parties lack standing. In *FDA v. Alliance for Hippocratic Medicine*, for example, physicians who objected to providing abortion-related treatment sued to enjoin the FDA

9

from relaxing dispensing requirements for abortion-inducing drugs. 602 U.S. at 372-73. The physicians claimed that they could be required—against their consciences—to render treatment to complete abortions. *Id.* at 387. The Supreme Court held that the physicians lacked standing because existing federal conscience laws already protected them. *Id.* at 387. Moreover, the Supreme Court specifically faulted the doctors for failing to provide any evidence that those conscience laws failed to protect them. *Id.* at 388.

Similarly, in *Doe v. Hochul*, 139 F.4th 165 (2d Cir. 2025), the Second Circuit found that an unborn child, Baby Nicholas, lacked standing to challenge a New York statute abolishing the crime of fetal homicide. The plaintiff alleged that because Defendants no longer enforced fetal homicide laws, he was at greater risk of harm from his mother's former partner, who had a history of domestic violence. *Id.* at 187. But the Second Circuit disagreed, finding that existing criminal laws "would surely provide some deterrence to such an act of violence." *Id.* at 188. Citing *Alliance for Hippocratic Medicine*, the Court held that "when another statute would impede the alleged harm from occurring, the 'chain of causation' is broken and traceability is lacking." *Id.*

Those cases are directly applicable here. Like the plaintiffs in *Alliance for Hippocratic Medicine*, Movants have not provided any evidence in their declarations showing that their schools will fail or refuse to accommodate their children and provide disability services consistent with state law. And like the plaintiffs in *Alliance for Hippocratic Medicine* and *Hochul*, Oklahoma law already provides the disability protections that Movants fear will be harmed. Therefore, like the plaintiffs in *Alliance for Hippocratic Medicine* and *Hochul*, "the 'chain of causation' is broken and traceability is lacking." *Hochul*, 139 F.4th at 188.

10

**2. Movants' claimed interest in preserving constitutional rights does not establish standing.**

Movants next argue that they have an interest in "asserting their children's right[s] under the Oklahoma and United States Constitutions." Mot. at 19. But that argument fails for at least two reasons. First, Movants' argument relies on a chain of "speculative inferences … to connect [their] injury to the challenged action." *Habecker*, 518 F.3d at 1225. Second, and relatedly, Movants' argument relies on "the independent action of some third party not before the court." *Nova Health*, 416 F.3d at 1158. In other words, any injury to Movants' claimed constitutional rights would come about only through the hypothetical future actions of some third party—something the Supreme Court has repeatedly said is insufficient to confer standing. *See, e.g.*, *City of Los Angeles v. Lyons*, 461 U.S. 95, 102-07 (1983) (collecting cases); *O'Shea v. Littleton*, 414 U.S. 488, 496 (1974) (no standing where prospect of future constitutional injury rested "on the likelihood that [plaintiffs] will again be arrested for and charged with violations of the criminal law and will again be subjected to bond proceedings, trial, or sentencing before petitioners").

An injury to Movants' claimed constitutional rights would arise only if (1) the Movants' charter schools were actually public, rather than private, entities,[1] (2) the Movants sought to exercise one of their claimed rights, and (3) the Movants' charter schools took some

---

[1]    Movants' argument begs the question in this regard, assuming that their schools are public entities and that Movants presently could assert their hypothetical constitutional claims against their charter schools in the first instance. If, as Ben Gamla argues, charter schools are private entities, then Movants' claimed constitutional rights are merely illusory as the Constitution does not apply to private actors. *See Manhattan Cmty. Access Corp. v. Halleck*, 587 U.S. 802, 808 (2019).

11

independent action that infringed on Movants' claimed rights. Movants' argument thus posits a hypothetical situation where they might someday need to assert one of any number of rights against their school for a not-yet-identified violation of those claimed rights. But Movants have identified nothing to suggest that their schools would do anything to jeopardize their interests, or that the hypothetical future conduct of their schools is in any way attributable to Ben Gamla's efforts to have its rights vindicated. Thus, Movants are worried about a hypothetical injury that might someday be committed by a third party, which cannot confer standing upon them to intervene in this case.

### 3. Movants' claimed interest in public funding does not establish standing.

Finally, Movants' asserted interest in preserving state and federal funding for charter schools likewise fails to establish standing. Movants claim Ben Gamla's litigation risks decreasing public funding for charter schools, but that theory rests on speculation and hinges on a chain of contingencies and the independent actions of third parties not before the Court. Such hypothetical harms fall well short of the "concrete and particularized" and "actual or imminent" injury that Article III requires. *Lujan*, 504 U.S. at 560.

Movants first argue that if charter schools are reclassified as private schools, "all the[ir] school's Title I funds would disappear." Mot. at 15. But Title I funds remain available to private schools under existing law. Rather than receiving funds directly, private schools receive funding through Local Educational Agencies ("LEAs") under a statutorily prescribed framework. *See* 34 C.F.R. § 200.64(a)(1)-(2). Indeed, Movants concede as much. *See* Mot. at 15 (acknowledging the same). Thus, because existing law "would

12

impede the alleged harm from occurring, the 'chain of causation' is broken and traceability is lacking." *Hochul*, 139 F.4th at 188; *see supra* pp. 9-10.

Movants' fallback theory—that this new framework will yield reduced Title I funding—fares no better. It is "pure speculation" to assume that a change in funding mechanism necessarily results in less funding. *Ariz. Christian Sch. Tuition Org. v. Winn*, 563 U.S. 125, 136 (2011). Movants must first demonstrate that LEAs would reduce funding for their specific schools, but they point to no such evidence, let alone that any funding would not be replaced from different sources or funding mechanisms, or that any services or programs for their children would actually be affected. Rather, it is equally likely that schools could maintain their services through alternative allocations or funding. *Cf. id.* at 136 ("When the government expends resources … its budget does not necessarily suffer.").

Indeed, any reduction in funding or services is dependent on (1) an LEA, exercising its independent discretion, allocating fewer resources to Movants' schools based on the private school designation; (2) school administrators, in turn, reducing programming in response to those decisions; and (3) that programming tangibly affecting the educational experience for Movants' children. Such conjectural and contingent harms are insufficient to establish the "concrete and particularized" injury required for Article III standing. *See Clapper*, 568 U.S. at 410-11 (no cognizable injury where plaintiffs can only speculate that a series of contingent events will occur); *Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009) (rejecting standing premised on a similarly speculative chain of possibilities); *Winn*, 563 U.S. at 136 ("economic and political speculation" insufficient to establish standing).

13

Movants' final claim that they have a protectable interest in maintaining state aid for charter schools fails for similar reasons. Here, Movants speculate that a ruling in Ben Gamla's favor would prompt the Oklahoma Legislature to abandon all funding for charter schools, and if that happens, they claim their children's schools would close. Mot. at 17-18. Again, simply claiming that they "could" suffer a future injury means Movants' "injury is only hypothetical" and insufficient to confer Article III standing. *Hunter*, 796 Fed. App'x at 537 (cleaned up); *see also TransUnion LLC v. Ramirez*, 594 U.S. 413, 437-38 (2021) ("mere risk of future harm" is not enough); *Trump v. New York*, 592 U.S. 125, 133 (2020) ("The Government's eventual action will reflect both legal and practical constraints, making any prediction about future injury just that—a prediction.").

And even if Movants could show they would lose public funding for their schools (they cannot), Movants still must show Ben Gamla's conduct "caused [Movants'] injury in fact." *Nova Health*, 416 F.3d at 1156 (collecting cases). But any loss of funding that could happen cannot be traced to Ben Gamla.

Oklahoma's charter schools are already either public or private. All Ben Gamla seeks is approval as a charter school. It is not responsible for the multiple intervening and independent events that would have to take place before Movants experienced any harm. *See supra* pp. 13-14. Each link in this chain is highly speculative, and multiple links depend on an independent actor (typically a government body) taking a particular responsive action. But no LEA, school board, or state legislature is a party in this case. So any independent decision that they may make about funding "breaks the chain of causation." *Habecker*, 518 F.3d at 1226. "Without this link" Movants' asserted financial injury "cannot

14

be said to be fairly traceable" to Ben Gamla and "does not give rise to standing" necessary for Movants to intervene. *Id.*

## II. Movants cannot intervene as of right.

For the same reasons that Movants lack standing, Movants also fail to meet Rule 24(a)'s requirements to intervene: they have failed to allege a sufficient legal interest to warrant intervention. *See Chiles v. Thornburgh*, 865 F.2d 1197, 1212-13 (11th Cir. 1989) (standing cases "are relevant to help define the type of interest that the intervenor must assert").

"Whether an applicant has an interest sufficient to warrant intervention as a matter of right is a highly fact-specific determination." *Coal. of Ariz./N.M. Cntys. for Stable Econ. Growth v. Dep't of Interior*, 100 F.3d 837, 841 (10th Cir. 1996). A prospective intervenor must show that they have a "substantial legal interest" that would be impaired by denial. *WildEarth Guardians v. U.S. Forest Serv.*, 573 F.3d 992, 995 (10th Cir. 2009). An interest that is "too contingent" on future events, "too indirect," or too generalized is insufficient because an "intervenor cannot rely on an interest that is wholly remote and speculative." *San Juan County v. United States*, 503 F.3d 1163, 1202-03 (10th Cir. 2007) (en banc) (emphasis omitted). All of Movants' interests fail this standard.

First, Movants' assertion that they will lose disability benefits is worse than speculative; it's demonstrably wrong. The OCSA already requires all charter schools to provide the same level of benefits for children with disabilities as public schools. *See* Okla. Stat. Ann. tit. 70, § 3-136(A)(6). Even if disability benefits were reliant solely on charter school contractual obligations, Movants have not included any details or allegations about what their schools have promised them, whether the schools would try to refuse granting

15

disability accommodations if they were labeled private schools, and whether Section 504 is the sole reason they provide disability accommodations. *See supra* pp. 8-9. In other words, a long chain of uncertain events (including actions violating state law) would need to take place before any of Movants' children lose benefits. Movants simply state that they "believe" they'll lose disability accommodations, but that is not enough for intervention. *See id*.

Second, Movants' claimed interest in preserving the ability to one day assert constitutional claims against entirely distinct parties over as-yet-unknown conduct that violates an undefined set of rights rests entirely on predictions about the hypothetical conduct of third parties. *See supra* pp. 11-12. It is thus so "wholly remote and speculative" that it cannot support intervention. *San Juan County*, 503 F.3d at 1203.

Finally, Movants' concerns about the loss of federal and state funding similarly rest on speculation about the actions of other government entities. As explained, Title I funding would still be available to private schools, even if the mechanism for distributing that funding is slightly different. *See supra* pp. 12-13. There is no guarantee (or even a substantial likelihood) that Movants' schools will lose their Title I funding. It is similarly speculative to guess at what the Oklahoma Legislature may choose to do with state funding for charter schools in the wake of any ruling from this Court. *See supra* pp. 14-15. If Movants' concerns ever materialize, "Movants may press any legal claims they might have against the Government" at that juncture. *S. Utah Wilderness All. v. Kempthorne*, 525 F.3d 966, 970 (10th Cir. 2008) (affirming denial of motion to intervene).

16

## III. Movants cannot permissively intervene.

"Rule 24(b)(1)(B) governing permissive intervention provides that, on timely motion, the court may permit anyone to intervene who 'has a claim or defense that shares with the main action a common question of law or fact.'" *Tri-State Generation & Transmission Ass'n v. N.M. Pub. Regul. Comm'n*, 787 F.3d 1068, 1074 (10th Cir. 2015).

Movants fail to satisfy the requirements for permissive intervention for the same reasons they fail to satisfy the requirements for intervention as of right. Because they seek relief that is different and broader than the relief sought by existing Defendants, Movants must show independent Article III standing, which they fail to do. *See supra* pp. 5-15; *see City of Herriman v. Bell*, 590 F.3d 1176, 1183-84 (10th Cir. 2010) (holding district court abused its discretion by granting permissive intervention because a political subdivision lacked "independent standing and the authority to bring [an] equal protection claim"); *Washington v. FDA*, 108 F.4th 1163, 1171, 1178 (9th Cir. 2024) (denying intervention both as of right and permissively because movant sought "separate relief" without "independent standing"); *United States v. RaPower-3, LLC*, 341 F.R.D. 311, 313-14, 317 (D. Utah 2022) ("Where Prospective Intervenors have failed to establish their injury will likely be redressed by a favorable decision, they lack standing to intervene of right. For the same reason, Prospective Intervenors lack standing for permissive intervention.") (collecting cases). This Court should thus deny permissive intervention.

### CONCLUSION

This Court should deny Movants' motion to intervene.

17

Dated: May 7, 2026                     Respectfully submitted,

                                       /s/ Eric S. Baxter
Robert G. McCampbell                   Eric S. Baxter
   OBA No. 10390                          DC Bar No. 479221
David A. Herber                        Eric C. Rassbach
   OBA No. 33527                          TX Bar No. 24013375
GABLEGOTWALS                           Daniel L. Chen
499 W. Sheridan Ave., Suite 2200          DC Bar No. 1781783
Oklahoma City, OK 73102                Benjamin A. Fleshman
Tel 405-235-5500                          DC Bar No. 1781280
*RMcCampbell@Gablelaw.com*             Phillip J. Allevato*
*DHerber@Gablelaw.com*                    CA Bar No. 362581
                                       Siena A. Marcelle
                                          DC Bar No. 90043763
                                       THE BECKET FUND FOR RELIGIOUS LIBERTY
                                       1919 Pennsylvania Ave. NW, Ste. 400
                                       Washington, DC 20006
                                       (202) 955-0095
                                       *ebaxter@becketfund.org*

                                       *Not a member of the DC Bar; admitted in
                                       California. Practice limited to cases in
                                       federal court.*

                   *Attorneys for Plaintiffs*

18