## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

THE NATIONAL BEN GAMLA
JEWISH CHARTER SCHOOL
FOUNDATION, INC., *et al.*,

      *Plaintiffs*,

v.

GENTNER DRUMMOND, in his
official capacity as Attorney General of
Oklahoma, *et al.*,

      *Defendants*.

Case No. 5:26-cv-00582-R

## OKLAHOMA STATEWIDE CHARTER SCHOOL BOARD DEFENDANTS' RESPONSE IN OPPOSITION TO MOTION TO INTERVENE

## INTRODUCTION

Movants—parents of children who attend brick-and-mortar or virtual charter schools—raise important concerns to the operation of charter schools. State and federal benefits—via disability services, Title I funding, and eligibility for State Aid—and protecting students' constitutional rights are vital aspects of education administration in Oklahoma.

According to Movants, the availability or provision of these benefits or protections hinges on the classification of charter schools as "public schools" or "private schools." But that distinction is not at issue in this litigation. Here, Ben Gamla asks this Court to determine whether the Oklahoma Charter Schools Act's religious exclusion violates the United States Constitution. To be sure, part of that determination is a narrow analysis of whether a charter school is engaged in state action under 42 U.S.C. § 1983. But a judicial decision that Oklahoma charter school operators are not engaged in state action for the purposes of a First Amendment claim will not immediately or inherently transform charter schools into private educational institutions. Nor will the provision of state and federal benefits or students' constitutional rights be jeopardized by a determination that a severable provision of state statute violates the Constitution. Because Movants' alleged consequences are too speculative to be direct, substantial, or legally protectable interests, and because they lack standing to intervene, this Court should deny the motion.

## BACKGROUND

In December 2025, Ben Gamla Jewish Charter School submitted a formal application for initial virtual charter school authorization to the Oklahoma Statewide

1

Charter School Board.  Compl., ECF No. 1 at ¶ 65.  The application materials indicated that "students will receive instruction in Jewish religion, culture, values, rituals, texts, holidays, and practices" and that the school "seeks to provide outstanding academic and co-curricular programs infused with a Jewish understanding of the human person and grounded in the enduring Jewish values of truth (*emet*), beauty (*yofi*), and goodness (*tov*), as expressed in Jewish thought and tradition."  *Id.* at ¶¶ 72, 75.

In February 2026, the Board denied the application, citing the Oklahoma Supreme Court's decision in *Drummond v. Oklahoma Statewide Virtual Charter School Board*, 558 P.3d 1 (Okla. 2024), and the Oklahoma Charter Schools Act's religious exclusion, Okla. Stat. tit. 70, § 3-136(A)(2).  ECF No. 1-4 at 3.[1]  After the denial, Ben Gamla submitted a revised application.  ECF No. 1-5.  In March 2026, the Board denied Ben Gamla's revised application.  This time, the sole reason for denial of the revised application was Ben Gamla's religious character.  ECF No. 1-6.

Ben Gamla filed the present federal lawsuit challenging the constitutionality of the Act's religious exclusion.  ECF No. 1 at ¶¶ 107–51.  Ben Gamla asserts claims under the Free Exercise and Equal Protection Clauses, arguing that the Board's denial of its revised application violated these constitutional provisions.  *Id.* at ¶¶ 107–51.  Defendants in this action are the Board and the Oklahoma Attorney General.  *Id.* at ¶¶ 14, 15–24.  Movants filed this Motion to join as Intervenor-Defendants.  Mot. to Intervene, ECF No. 66.

---

[1] References to ECF documents are to the ECF-numbered pages.

<u>**ARGUMENT**</u>

**I.    MOVANTS' INTERESTS ARE NOT DIRECT, SUBSTANTIAL, OR LEGALLY PROTECTABLE, NOR INADEQUATELY REPRESENTED.**

Federal Rule of Civil Procedure 24(a)(2) requires a movant seeking intervention as of right to establish "(1) timeliness, (2) an interest relating to the property or transaction that is the subject of the action, (3) the potential impairment of that interest, and (4) inadequate representation by existing parties." *Barnes v. Sec. Life of Denver Ins. Co.*, 945 F.3d 1112, 1121 (10th Cir. 2019) (citation omitted). The Board does not dispute the timeliness of the Motion. But Movants do not prove the remaining elements for intervention as of right.

Movants have the burden to show that they assert a "direct, substantial, and legally protectable" interest relating to the transaction that is the subject of the action. *Id.* at 1118. "A protectable interest is one that would be impeded by the disposition of the action." *Id.* at 1122 (quoting *W. Energy All. v. Zinke*, 877 F.3d 1157, 1165 (10th Cir. 2017)). That interest must be practical and direct, not speculative or contingent on future events. *See San Juan Cnty. v. United States*, 503 F.3d 1163, 1203 (10th Cir. 2007). And while intervention may be based on interests that are "contingent upon the outcome of the litigation," interests that are "*too* contingent, *too* indirect and hardly substantial" do not warrant intervention as of right. *San Juan Cnty.*, 503 F.3d at 1202–03 (citations omitted).

Movants claim that the outcome of this case will result in the loss of federal and state funding for Oklahoma charter schools. ECF No. 66 at 13–23. Specifically, they point to the loss of disability services, Title I, and State Aid funding. *Id*. They also assert an

3

interest in preserving their children's constitutional rights. *Id.* at 24. Movants argue that, currently, charter schools and students only receive these benefits and protections because charter schools are "public schools." *Id.* at 6–9. And that if this Court determines charter schools are private—not state—actors, Oklahoma charter schools and students will lose access to these important benefits. *Id.* at 9. But that is not what at issue in this case.

Here, Ben Gamla only asks this Court to determine whether the Oklahoma Charter Schools Act's religious exclusion, Okla. Stat. tit. 70, § 3-136(A)(2), violates the United States Constitution. ECF No. 1 at ¶¶ 107–51. Certainly, part of that determination involves this Court's narrow analysis of whether a charter school is engaged in state action under 42 U.S.C. § 1983. *Id.* at ¶¶ 121, 130, 141, 150. But the determination of whether a private actor is engaged in state action is different from a determination of whether a school itself if "private" or "public." *See Caviness v. Horizon Cmty. Learning Ctr., Inc.*, 590 F.3d 806, 812 (9th Cir. 2010) (stating that "We therefore begin with the recognition that [the state legislature] has statutorily defined a charter school as a 'public school' . . . However, because the conduct of a private corporation is at issue, our inquiry does not end there" before engaging in a state action analysis); *see also Carson v. Makin*, 596 U.S. 767, 782–86 (2022).

So this Court's decision that Oklahoma charter schools are not engaged in state action for the purposes of the First Amendment will not automatically transform charter schools into private educational institutions. Nor can it.

It's important to note that the Oklahoma Charter Schools Act contains a severability clause. Okla. Stat. tit. 70, § 3-145.10. So even if this Court finds that Oklahoma charter

4

school operators are not state actors, and thus entitled to First Amendment rights, only the challenged provision—§ 3-136(A)(2)—would be void.  The remainder of the Oklahoma Charter Schools Act—and its ample requirements to follow federal and state law—would stay intact and legally enforceable in the future.[2]

So Movants' collateral concerns are too attenuated to justify intervention as of right. *See San Juan Cnty.*, 503 F.3d at 1202.  While Movants may be concerned about hypothetical issues, these issues are not currently, and may never be, before this Court. *United States v. Michigan*, 424 F.3d 438, 444 (6th Cir. 2005) (denying intervention as of right where "the proposed intervenors seem more concerned about what will transpire *in the future"* as a result of a district court's decision).  They are therefore too contingent to justify intervention in this case.

---

[2] Okla. Stat. tit. 70, § 3-132.2(B) ("The State Board of Education shall be responsible for accreditation of charter schools and virtual charter schools and ensure compliance with special education laws and federal laws and programs administered by the State Board of Education."); 3-134(I)(7) (delineating the Board's authority to "[m]onitor, in accordance with charter contract terms, the performance and legal compliance of charter schools and virtual charter schools"); 3-136(A)(1) ("a charter school or virtual charter schools shall comply with all federal regulations and state and local rules and statutes relating to health, safety, civil rights, and insurance"); 3-136(A)(6) ("A charter school or virtual charter school shall comply with all federal and state laws relating to the education of children with disabilities in the same manner as a school district[.]"); 3-136(A)(9) ("A charter school or virtual charter school shall be as equally free and open to all students as traditional public schools and shall not charge tuition or fees[.]"); 3-137(D) ("The sponsor may deny the request for renewal if it determines the charter school or virtual charter school has failed to complete the obligations of the contract or comply with the provisions of the Oklahoma Charter Schools Act."); 3-137(F) ("A sponsor may terminate a contract during the term of the contract for failure to meet the requirements for student performance contained in the contract and performance framework, failure to meet the standards of fiscal management, violations of the law, or other good cause."); 3-167(B) ("School districts shall not be exempted from forming, convening or participating in an advisory council or committee if required by federal law or regulation.").

Even if Movants could establish impairment of a direct, substantial, and legally protectable interest, they fail to show inadequacy of representation. *See Kane Cnty. v. United States*, 928 F.3d 877, 892 (10th Cir. 2019). First, the Board has no intention of arguing that charter schools should become ineligible for state or federal benefits and did not do so in the *Drummond* litigation. Second, when objectives are shared, adequate representation is presumed, even when the party in the case is a government entity. *See Tri-State Generation & Transmission Ass'n, Inc. v. N.M. Pub. Regul. Comm'n*, 787 F.3d 1068, 1074 (10th Cir. 2015). Movants' desired outcome is consistent with Defendant Attorney General Gentner Drummond's previous assertions before the Oklahoma and United States Supreme Courts that charter schools are state actors and "public schools." Br. in Opp'n, Okla. Statewide Charter Sch. Bd. v. Drummond, 605 U.S. 165 (2025) (No. 24-394), 2024 WL 5104000, at *20–21; Br. for Resp't, Okla. Statewide Charter Sch. Bd. v. Drummond, 605 U.S. 165 (2025) (Nos. 24–394, 24–396), 2025 WL 1002809, at *18. Lastly, Movants cannot prove inadequacy by stressing some unique argument that only they will raise. "[R]epresentation is not inadequate simply because the applicant and the representative disagree regarding the facts or law of the case." *Kane Cnty.*, 928 F.3d at 892 (citation omitted). The fact that Movants wish to advance additional policy arguments or employ different litigation tactics does not establish inadequate representation. *See* 7C Fed. Prac. & Proc. Civ. § 1909 (Wright & Miller, 3d ed.). Intervention as of right is improper.

## II.   PERMISSIVE INTERVENTION SHOULD BE DENIED.

This Court should also deny permissive intervention. Denying permissive intervention is appropriate here for several reasons, including the same reasons given above

6

for denying intervention as of right.  Federal Rule of Civil Procedure 24(b) permits permissive intervention when a movant "has a claim or defense that shares with the main action a common question of law or fact."  Whether to grant permissive intervention is discretionary, *City of Stilwell v. Ozarks Rural Electric Cooperative Corporation*, 79 F.3d 1038, 1043 (10th Cir. 1996), and it may be denied for any reason "rationally relevant," *Daggett v. Commission on Government Ethics and Election Practices*, 172 F.3d 104, 113 (1st Cir. 1999).

Courts also question whether "intervention would only clutter the action unnecessarily[.]"  *Arney v. Finney*, 967 F.2d 418, 421 (10th Cir. 1992).  Movants' unique legal theories and factual perspectives about state and federal benefits do not have direct, legal bearing on issue presented to this Court: the constitutionality of the Act's religious exclusion.  Permissive intervention will cause "undue delay and potentially obfuscate the relevant issues in the lawsuit."  *W. Energy All. v. Jewell*, No. CIV 16-0912 WJ/KBM, 2017 WL 3600741, at *8 (D.N.M. Jan. 13, 2017); *see also id.* (allowing Movants to "inject their own agenda into this case . . .  only prejudice[d] the existing parties to this lawsuit trying to resolve the issues that were raised in the Complaint").

Movants' concerns are best addressed through amicus participation.  District courts have "broad discretion in allowing participation of *amicus curiae*."  *Oregon-California Trails Ass'n v. Walsh*, 467 F. Supp. 3d 1007, 1073 (D. Colo. 2020) (citation omitted).  Amicus participation is a well-established and adequate vehicle for presenting policy arguments and broader institutional concerns that extend beyond the immediate parties' interests.  The Board does not oppose Movants' participation as amicus curiae, and this

Court would remain free to consider Movants' briefed arguments. *See Pub. Serv. Co. of New Mexico v. Barboan*, 857 F.3d 1101, 1114 (10th Cir. 2017).

### III.    MOVANTS LACK ARTICLE III STANDING TO INTERVENE.

"[A]n intervenor of right must have Article III standing in order to pursue relief that is different from that which is sought by a party with standing." *Town of Chester v. Laroe Estates, Inc.*, 581 U.S. 433, 440 (2017); *see also Kane Cnty.*, 928 F.3d at 887 n.12 ("*Town of Chester* involved a plaintiff-side intervenor, but we see no reason not to apply that rule to defendant-side intervenors as well."). The Board, in the *Drummond* litigation, argued that charter schools are not state actors. *See* Resp'ts' Br in Opp'n to Pet's. Pet. for Writ of Mandamus & Decl. J., Drummond v. Okla. Statewide Virtual Charter Sch. Bd., No. MA-121694 (Okla. Nov. 21, 2023). Nothing about its litigation position has changed since. *See* Answer, ECF No. 59. And the Oklahoma Attorney General refuses to take a position on the merits. *See* Mot. to Dismiss, ECF No. 52 at 2; Resp. to Mot. for Prelim. Inj., ECF No. 64 at 4 n.4 (taking "no position . . . on the merits of Plaintiffs' constitutional claims"); *cf.* Pet. for Writ of Mandamus, Drummond v. Okla. Statewide Charter Sch. Bd., No. CV-2026-649 (Okla. Cnty. Dist. Ct. Mar. 11, 2026) (taking "**no position** . . . on the constitutional or statutory questions") (emphasis in original). So Movants would be the only party seeking to argue that charter schools are state actors. Therefore, Movants must possess Article III standing to intervene. *Kane Cnty.*, 928 F.3d at 886–87.[3]

---

[3] Movants cannot rely on "piggyback standing" because they are the only party seeking to argue that charter schools are state actors. *Diamond v. Charles*, 476 U.S. 54, 64 (1986) (explaining that piggybacking on "the State's undoubted standing exists only if the State is in fact an appellant before the Court").

Article III standing requires a party to have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Town of Chester*, 581 U.S. at 438 (citation omitted). An injury in fact is one that is concrete and particularized and actual or imminent. *Kan. Nat. Res. Coal. v. U.S. Dep't of Interior*, 971 F.3d 1222, 1231 (10th Cir. 2020).

Movants' stated intention is to "protect their children's access to equal education at public charter schools, their children's access to targeted support services provided to low-income students, their children's opportunity to choose a public charter schools that serves their unique needs, and preserve their children's constitutional rights as public school students." ECF No. 66 at 4. But as shown above, these consequences are speculative and hypothetical to the outcome of this litigation. The Movants have not, and cannot, show that injury is concrete and particularized and actual or imminent.

## CONCLUSION

This Court should deny the Motion to Intervene.

9

Respectfully submitted this 7th day of May, 2026.

/s/ Anthony J. Ferate
Anthony J. Ferate, OBA No. 21171
SPENCER FANE LLP
9400 North Broadway Extension, Suite 600
Oklahoma City, Oklahoma 73114
(405) 844-9900
ajferate@spencerfane.com

Hiram S. Sasser, III, OBA No. 19557
Holly M. Randall,* OBA No. 34763
Erin E. Smith,* OBA No. 35232
FIRST LIBERTY INSTITUTE
2001 W. Plano Parkway, Suite 1600
Plano, Texas 75075
(972) 941-4444
hsasser@firstliberty.org
hrandall@firstliberty.org
esmith@firstliberty.org

*Admitted pro hace vice.

**Attorneys for Oklahoma Statewide Charter School Board Defendants**

10

## CERTIFICATE OF SERVICE

I hereby certify that on May 7, 2026, I electronically submitted this document to the Clerk of Court via the ECF to be served on counsel for Plaintiffs, Defendant, and Proposed Intervenors.

/s/ Anthony J. Ferate
Anthony J. Ferate, OBA No. 21171
SPENCER FANE LLP
9400 North Broadway Extension, Suite 600
Oklahoma City, Oklahoma 73114
(405) 844-9900
ajferate@spencerfane.com

11