**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| THE NATIONAL BEN GAMLA JEWISH CHARTER SCHOOL FOUNDATION, INC., *et al.,* | ) ) ) | |
| Plaintiffs, | ) ) ) | Case No. 5:26-cv-00582-R |
| v. | ) ) | |
| GENTNER DRUMMOND, in his official capacity as Attorney General of Oklahoma, *et al.,* | ) ) ) | |
| Defendants, | ) ) | |

**REPLY BRIEF IN SUPPORT OF MOTION TO INTERVENE BY CRICKET
MOORE, CATHLEEN TICHENOR, DANIEL HENSLEY, LUZ CRUZ,
<u>AND LARISSA PORT</u>**

Dated: May 14, 2026

<div style="margin-left:40%">

Heidi J. Long, OBA #17667
Heather N. Hendricks, OBA #20996
Ryan Leonard, OBA #19155
LEONARD, LONG & CASSIL, PLLC
6301 N. Western, Suite 250
Oklahoma City, OK  73102
(405) 702-9900
hlong@llc-attorneys.com
hhendricks@llc-attorneys.com
rleonard@llc-attorneys.com

*Attorneys for Proposed Intervenor-Defendants
Cricket Moore, Cathleen Tichenor, Daniel
Hensley, Luz Cruz, and Larissa Port*

</div>

## TABLE OF CONTENTS

I.    The Oklahoma Families do not need Article III standing to intervene ................... 1

    A.  The Oklahoma Families seek no "different relief" other than that Plaintiffs' requested relief be denied ....................................................... 1

    B.  To the extent the existing Defendants seek "different relief," it is only because Plaintiffs' lawsuit is currently unopposed, thus strengthening the Oklahoma Families' grounds for intervention ................................................................................................. 2

II.   Regardless, the Oklahoma Families can demonstrate Article III standing ................................................................................................................ 4

    A.  The imminent loss of federal enforcement of their children's disability rights is an injury-in-fact traceable to this litigation ................... 5

    B.  The imminent loss of the Oklahoma Families' constitutional rights is an injury-in-fact traceable to this litigation .................................. 6

    C.  The imminent loss of Title I funding and State Aid is an injury-in-fact traceable to this litigation ................................................................. 7

III.  The Oklahoma Families have met their burden to intervene as a matter of right under Rule 24(a) or, alternatively, permissively under Rule 24(b) ......................................................................................................... 8

Conclusion ......................................................................................................... 10

With no meaningful opposition to their Complaint or Motion for Preliminary Injunction from the existing parties, Plaintiffs ask this Court to contort Oklahoma's public charter school framework and invalidate the Oklahoma Supreme Court's decision in *Drummond v. Oklahoma Statewide Virtual Charter School Board*, 2024 OK 53, 558 P.3d 1. Plaintiffs of course would prefer that the "kumbaya" moment between the presently non-adverse parties not be disrupted by any substantive challenge. In fact, Plaintiffs argue that, because the Oklahoma Families dare ask that Plaintiffs' claims for relief be denied, the Oklahoma Families must be held to a higher standard for intervention than is contemplated by Fed.R.Civ.P. 24 and instead establish Article III standing. Certainly, the Oklahoma Families can demonstrate Article III standing. However, there is no reason they should be required to do so, because the Oklahoma Families meet all requisite criteria to intervene as a matter of right pursuant to Rule 24(a) or permissively under Rule 24(b).

I.    **The Oklahoma Families do not need Article III standing to intervene.**

A.  **The Oklahoma Families seek no "different relief" other than that Plaintiffs' requested relief be denied.**

The Tenth Circuit "has historically taken a liberal approach to intervention and thus favors the granting of motions to intervene*." W. Energy All. v. Zinke*, 877 F.3d 1157, 1164 (10th Cir. 2017). In addition, "the requirements for intervention may be relaxed in cases raising significant public interests." *Kane County v. United States,* 928 F.3d 877, 890 (2019) citing *San Juan County, Utah v. United States*, 503 F.3d 1163, 1201 (10th Cir. 2007). Plaintiffs are correct in stating that under *Town of Chester v. Laroe Estates, Inc.*, 581 U.S. 433 (2017), a prospective intervenor who seeks "different relief" must establish Article III

1

standing sufficient to invoke the Court's jurisdiction. *Id.* Here, however, the Oklahoma Families do not seek "different relief" (such as money damages, equitable, or declaratory relief), they simply oppose the (otherwise unopposed) relief sought by Plaintiffs over which this Court already has jurisdiction.

**B. To the extent the existing Defendants seek "different relief," it is only because Plaintiffs' lawsuit is currently unopposed, thus strengthening the Oklahoma Families' grounds for intervention.**

In arguing against intervention by the Oklahoma Families, Plaintiffs and the Oklahoma Statewide Charter School Board Defendants (the "Board") expose the fatal deficiency of their case, namely, that the litigation in its present posture fails to present an actual case or controversy as required by Article III. Plaintiffs argue that because the existing defendants in this case either agree with Plaintiffs on the merits (i.e., the Board) or have sought dismissal (the Oklahoma Attorney General), the Oklahoma Families should be subject to a *higher* threshold than a standard intervenor under Rule 24. It is apparent, however, that Plaintiffs and the Board seek an impermissible advisory opinion[1], and they wish not to be troubled by the participation of ordinary Oklahomans who will be impacted by their manufactured dispute.

The judicial branch is wary of its authority to adjudicate non-disputes. The Court in *Town of Chester* cautioned that "if a dispute is not a proper case or controversy, the courts have no business deciding it." *Id.* (internal citations omitted). In *Moore v. Charlotte-*

---

[1] "The federal courts established pursuant to Article III of the Constitution do not render advisory opinions." *Golden v. Zwickler*, 394 U.S. 103, 108 (1969).

*Mecklenberg v. Board of Ed.*, 402 U.S. 47 (1971), for example, both parties to the case argued that an anti-busing statute was unconstitutional. The Court dismissed the case, stating, "we are thus confronted with the anomaly that both litigants desire precisely the same result. . .. There is, therefore, no case or controversy within the meaning of Art. III." *Id.* at 47–48. The Supreme Court has acknowledged prudential concerns with non-defended actions. In *United States v. Windsor*, 570 U.S. 744, 759 (2013), the government enforced a statute (taxing a married citizen in a same-sex marriage) but declined to defend its constitutionality when the taxpayer sued. Thus, the plaintiff suffered sufficient injury to confer Article III jurisdiction, but the parties to the case were not adversarial. The Court cautioned that "the Executive's agreement with Windsor's legal argument raises the risk that instead of a 'real, earnest and vital controversy,' the Court faces a 'friendly, non-adversary, proceeding ... [in which] a party beaten in the legislature [seeks to] transfer to the courts an inquiry as to the constitutionality of the legislative act.'" *Id.* at 759-60. "Even when Article III permits the exercise of federal jurisdiction, prudential considerations demand that the Court insist upon 'that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions.'" (internal citations omitted). *Id.* at 760.

In short, the relief sought by the Oklahoma Families simply opposes that sought by Plaintiffs. In addition, the non-adversarial posture of the existing parties raises serious Article III concerns. The mere fact that the Oklahoma Families oppose Plaintiffs' relief does not trigger the requirement for Article III standing.

## II.    Regardless, the Oklahoma Families can demonstrate Article III standing.

Although the Oklahoma Families need not demonstrate Article III standing to intervene, they are nonetheless able to do so. Article III standing requires a litigant show (1) an injury in fact, (2) fairly traceable to the challenged conduct, and (3) redressability. *Kane County v. United States*, 928 F.3d 877, 888 (10th Cir. 2019) citing *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180-181 (2000). Plaintiffs argue the Oklahoma Families fail to establish either injury-in-fact or traceability as required by Article III. [Doc. No. 85, 7]. Plaintiffs contend the Oklahoma Families' alleged injuries are not "de facto" and are "only hypothetical." *Id.* at 8. But Plaintiffs fail to acknowledge an injury need not have already occurred, as "imminence" is sufficient to prove an injury in fact. Imminence is "a somewhat elastic concept," and "allegation of future injury may suffice if … there is a substantial risk that the harm will occur." *Kane County,* at 888. Further, "an injury may be imminent even though it is contingent upon a favorable outcome in litigation." *Id.*

Parental standing to challenge governmental actions that threaten their and their children's constitutional rights has been recognized by the U.S. Supreme Court. In *Parents Involved in Community Schools v. Seattle Sch. Dist. No. 1*, 551 U.S. 701 (2007), the Court rejected arguments that the children's future injuries were speculative or conjectural, holding instead that families had standing to sue regarding a dormant race-based admissions policy (even though it was unclear whether any of their children would be affected by the policy in the future). *Id.* at 702. Likewise, here, the threatened injuries to the Oklahoma Families are not conjectural or hypothetical, but simply the natural

4

consequences that will follow if Plaintiffs are successful in redefining the fundamental character of public charter schools in Oklahoma under state and federal law.

### A. The imminent loss of federal enforcement of their children's disability rights is an injury-in-fact traceable to this litigation.

Federal law does not speak to a "somewhat public" standard for disability accommodations – a school must be either "public" and held to the highest accommodation standards, or it may be "private" and held to minimum accommodation standards, known as "minor adjustments." *See* 34 C.F.R. § 104.39. Plaintiffs contend that, absent evidence that the Oklahoma Families' schools have expressed a particularized intention not to provide disability services, they lack injury-in-fact. [Doc. No. 85, p. 8]. For parents of children with disabilities, however, having the right to enforce their children's legal rights is, in itself, just as significant as having a school's voluntary agreement to accommodate a disability. The Oklahoma Families relied on the ability to exercise those rights when they chose to enroll their children in public charter schools. And those rights of enforcement vanish if charter schools are deemed private.

Plaintiffs further deny that the Oklahoma Families can establish the requisite "traceability" of their injury-in-fact to the outcome of the instant case. To this end, Plaintiffs point to a requirement in the Oklahoma Charter Schools Act ("the Act") that says services must be provided to students "in the same manner as a school district."[2] But as detailed in

---

[2] Plaintiffs' argument in this respect is particularly concerning in light of the fact that this lawsuit seeks to exempt Plaintiffs from the requirement that its programs be non-sectarian, and that in its initial application for charter school status, Plaintiffs expressed compliance with disability laws "to the extent it does not compromise the religious tenets of the school or the instructional model of the school." [Doc. No. 1-2, p. 67].

5

the Oklahoma Families' Motion to Intervene [Doc. No. 66, at 11-12], the Act does not confer any substantive rights to the Oklahoma Families, nor does it provide a mechanism for enforcing them. The fact is, if charter schools are deemed anything other than "public schools," the Oklahoma Families will lose their rights to important disability protections and the loss will be traceable to the relief requested by Plaintiffs in the present litigation.

**B. The imminent loss of the Oklahoma Families' constitutional rights is an injury-in-fact traceable to this litigation.**

Plaintiffs assert the Oklahoma Families do not, in fact, have constitutional rights and thus have enjoyed only the "illusion" of constitutional rights. [Doc. No. 85, p. 11]. As such, they argue, there is no injury in losing them.[3] But the Oklahoma Families' interests are, at present, legally recognized and protected by the holding in *Drummond*. As parents of children in public schools, the Oklahoma Families have protected property and liberty interests in their continued public education and in directing their children's education. As to traceability, an unfavorable ruling in this case would deprive them of those interests and the right to enforce them.

*ACLU v. Tarek ibn Ziyad Academy,* 643 F.3d 1088 (8th Cir. 2011) is an analogous case that analyzed charter school parents' standing to intervene in an Establishment Clause action against the school. The parents in *Tarek* argued that their rights of Free Exercise would be affected if the ACLU prevailed. The ACLU objected to their intervention and argued, as Plaintiffs do here, that the parents could not satisfy the "injury" element required

---

[3] While Plaintiffs argue the Constitution does not apply to private actors such as Ben Gamla [Doc. No. 85, n. 1], the Board contradictorily argues that students' constitutional rights will not be jeopardized. [Doc. No. 86, p. 1].

for standing, because if the ACLU were to prevail, those rights never really existed. But the court rejected that argument, stating "[w]hatever the appeal of this argument, it is directed at the merits," and "although federal standing often turns on the nature and source of the claim asserted, it in no way depends on the merits of the claim*." Id.* at 1092. In other words, whether the Oklahoma Families have real constitutional rights (as they insist) or simply the illusion of them (as Plaintiffs contend), they should be allowed to intervene and argue their case to this Court.

### C. The imminent loss of Title I funding and State Aid is an injury-in-fact traceable to this litigation.

The Oklahoma Families' interest in preserving state and federal funding meets the injury-in-fact or traceability requirements needed to establish Article III standing. In *Liddell v. Special Administrative Board*, 894 F.3d 959 (2018), charter school parents sought to intervene in litigation affecting the school funding formula. In *Liddell*, the court rejected arguments that their assertions of a loss of educational funding and erosion of the quality of schools were conjectural or hypothetical. *Id.* at 965. The court also rejected the argument that charter school parents' allegations asserted only injury to the schools themselves, stating succinctly, "[p]arents have standing to sue when practices and policies of a school threaten their rights and those of their children." *Id.* at 965-66.

Here, Plaintiffs are wrong about the law and mechanics of Title I funding, both of which are detailed in the Oklahoma Families' Motion to Intervene [Doc. No. 66, p. 18]. Specifically, Title I federal funding is tightly restricted to public schools (although there are circumstances where it is permissible for private school *students* to benefit from Title I

7

funding). The Oklahoma Families' schools would no longer be permitted to be "Title I schools" if they are deemed private. Further, the Oklahoma Families' public charter schools are presently designated "LEAs" and thus expend Title I funds in the manner that best suits their students. Private schools, by definition, cannot be LEAs. *See* 34 C.F.R. § 303.23. As such, Plaintiffs' position – that a new or existing LEA would be assigned and funding would continue unabated – requires far more conjecture and contingency than does the Oklahoma Families' position, which is based on a plain reading of the Title I regulations.

At the state level, Plaintiffs' position threatens critical state funding for all Oklahoma charter schools. Oklahoma's public charter schools are a part of Oklahoma's system of free public schools, which the Oklahoma Legislature has a constitutional duty to fund. Okla. Const. Art. I, §5. For this reason, public charter schools share in eligibility for state aid allocation of public education funding. 70 O.S. § 3-142. Private schools in Oklahoma are not eligible to receive this public education funding. Instead, Oklahoma's private "school choice" model is supported with individual tax incentives for parents. Importantly, there is no constitutional mandate that private school tuition be subsidized – or supported – by the State.

### III. The Oklahoma Families have met their burden to intervene as a matter of right under Rule 24(a) or, alternatively, permissively under Rule 24(b).

Each of the Oklahoma Families' enumerated interests is sufficient to demonstrate Article III standing. But the Oklahoma Families are not required to demonstrate Article III standing to intervene under Rule 24(a), which requires only (1) timeliness, (2) an interest relating to the property or transaction that is the subject of the action, and is so situated that

8

disposing of the action may as a practical matter impair or impede the interest, and (3) inadequate representation by the other parties to the litigation. *Berger v. N. Carolina State Conf. of the NAACP*, 597 U.S. 179, 190 (2022). Plaintiffs and the Board argue the Oklahoma Families do not meet the criteria for intervention, but appellate courts have consistently recognized that "[a]ll students and parents, whatever their race, have an interest in a sound educational system and in the operation of that system in accordance with law." *Morgan v. McDonough*, 726 F.2d 11, 13 (1st Cir. 1984); *Johnson v. San Francisco Unified Sch. Dist.,* 500 F.2d 349, 353 (9th Cir. 1974); *United States v. Bd. of Sch. Comm'rs of City of Indianapolis, Ind.*, 466 F.2d 573, 575 (7th Cir. 1972). And "[i]t may also be conceded that this asserted interest might, as a practical matter, be impaired by the disposition of this litigation." *Morgan*, at 13. In *San Juan County*, 503 F.3d at 1164, the same case in which the court explained its rationale for eschewing a strict formulation of the "direct, substantial interest" or "DSL" test advanced by the Board in this case, the Tenth Circuit approvingly cited these parent intervention cases. *Id.* at 1192. Here, the Oklahoma Families have an interest in a sound educational system and in the operation of that system in accordance with the law, and the present litigation seeks to impair those interests. As a practical matter, in selecting a school, parents are entitled to know what recourse is available if their children's disability accommodations are not implemented. They are entitled to know whether their children's school must respect their children's rights to freedom of speech, association, religion, and due process. And, as a practical matter, parents are entitled to know that a school's financial resources are stable, which this case jeopardizes.

In considering the three parental interest cases, *supra*, the courts recognized the parental interests in the litigation. But "[p]arent groups have usually foundered, however, with respect to the third requirement—that the parents' … not be adequately represented by others." See, *Morgan*, 726 F.2d at 13. In those cases, representative entities, such as school boards, were parties to the litigation and thus the elements for intervention as of right were not met. In the Tenth Circuit, "where the purportedly adequate representative of the proposed intervenor's interest is a governmental entity, 'this presumption can be rebutted by the fact that the public interest the government is obligated to represent may differ from the would-be intervenor's interest.'" *Kane County*, 928 F.3d at 892. The burden of establishing that the government does not represent a proposed intervenor's interest is "minimal." *Id.* at 893. In this case, the defendant Board in its Answer actually *agrees with* the relief sought by Plaintiffs. [Doc. No. 59, p. 15]. As a result, the Oklahoma Families' interests are certainly *not* adequately represented by the existing governmental entity defendants, and they should accordingly be permitted to intervene as a matter of right or, alternatively, entitled to permissive intervention.

## Conclusion

Plaintiffs assert that "[a]ll Ben Gamla seeks is approval as a charter school." [Doc. No. 85, p. 19]. But to achieve that, Plaintiffs must redefine what a charter school is, contorting it from its current form (a public school) into another (a publicly-funded private school). Plaintiffs fail to acknowledge the extent to which the relief they seek, on a presently uncontested basis, will upend Oklahoma public charter schools and substantially impair the rights of the Oklahoma Families. Their intervention here is critical.

10