**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKKLAHOMA**

| | | |
|---|---|---|
| THE NATIONAL BEN GAMLA JEWISH CHARTER SCHOOL FOUNDATION, INC., *et al.,* | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 5:26-cv-00582-R |
| REBECCA WILKINSON, in her official capacity as Executive Director of the Statewide Charter School Board, *et al.,* | ) ) ) ) ) | |
| Defendants, | ) ) | |

**BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY
INJUNCTION BY INTERVENORS CRICKET MOORE, CATHLEEN
<u>TICHENOR, DANIEL HENSLEY, AND LARISSA PORT</u>**

Dated: June 17, 2026

SUBMITTED BY:

<u>s/ Heather Hendricks</u>
Ryan Leonard, OBA #19155
Heidi J. Long, OBA #17667
Heather Hendricks, OBA #20996
LEONARD, LONG & CASSIL, PLLC
6301 N. Western, Suite 250
Oklahoma City, OK  73102
(405) 702-9900
rleonard@llc-attorneys.com
hlong@llc-attorneys.com
hhendricks@llc-attorneys.com

*Attorneys for Intervenor-Defendants
Cricket Moore, Cathleen Tichenor, Daniel
Hensley, Luz Cruz and Larissa Port*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................................................iii

INTRODUCTION ................................................................................................................ 1

STANDARD OF REVIEW .................................................................................................. 4

ARGUMENTS AND AUTHORITIES.................................................................................. 4

     I.    Plaintiffs are unlikely to succeed on the merits of their claims ................... 4

          A.  Oklahoma charter schools are "public schools" under *Carson* ......... 5

          B.  Federalism favors substantial deference to Oklahoma's determination of how it will provide public education to its citizens.................................................................................................... 9

          C.  Strict scrutiny does not apply. .......................................................... 14

          D.  Oklahoma's public charter schools are state actors ......................... 14

          E.  Oklahoma's public charter schools are created and controlled by Oklahoma law and are therefore "government entities." ................. 18

     II.   Plaintiffs cannot establish that they will suffer irreparable harm or that the balance of equities and the public interest weigh in their favor ........................................................................................................ 21

CONCLUSION ................................................................................................................. 22

# TABLE OF AUTHORITIES

**U.S. SUPREME COURT CASES**

*Biden v. Nebraska*, 600 U.S. 477 (2023) .......................................................... 19

*Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n*, 531 U.S. 288 (2001)........ 17

*Carson v. Makin*, 596 U.S. 767 (2022)....................................................... passim

*Espinoza v. Mont. Dep't of Revenue*, 591 U.S. 464 (2020) ................................... 2

*Gonzales v. O Centro Espirita Beneficiente Uniao Do Vegetal*, 544 U.S. 973 (2005)...... 21

*Lebron v. Nat'l R.R. Passenger Corp*, 513 U.S. 374 (1995) ......................................... 4, 18

*Mahmoud v. Taylor*, 606 U.S. 522 (2025).............................................................. 4

*Manhattan Cmty. Access Corp. v. Halleck*, 587 U.S. 802 (2019) ...................................... 17

*Masterpiece Cakeshop v. Colorado C.R. Comm'n*, 584 U.S. 617 (2018) ......................... 13

*Missouri v. Jenkins*, 515 U.S. 70, 112-113 (1995) (O'Connor, J., concurring)................. 10

*Nken v. Holder*, 556 U.S. 418 (2009) ............................................................. 22

*Rendell-Baker*, 457 U.S. 830 (1982) ................................................... 4, 15, 16, 18

*Trinity Lutheran Church of Columbia, Inc. v. Comer*, 582 U.S. 449 (2017) ..................... 2

*Univ. of Tex. v. Camenisch*, 451 U.S. 390 (1981)............................................... 21

*U.S. v. Lopez*, 514 U.S. 549 (1995)  .............................................................. 10

*Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7 (2008)............................ 4

**TENTH CIRCUIT COURT OF APPEALS CASES**

*Brammer-Hoelter v. Twin Peaks Charter Acad.*, 602 F.3d 1175 (10th Cir. 2010) ............ 14

*Coleman v. Utah State Charter Sch. Bd.*, 673 F. App'x 822 (10th Cir. 2016) .................. 14

*Milonas v. Williams*, 691 F.2d 931 (10th Cir. 1982)..........................................................14

*O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973 (10th Cir. 2004)...............................................................................................................................21

**FOURTH CIRCUIT COURT CASES**

*Peltier v. Charter Day Sch., Inc.,* 37 F.4th 104 (4th Cir. 2022)...........................................11

**OKLAHOMA CASES**

*Drummond, ex rel. State v. Okla. Statewide Virtual Charter School Bd.*, 2024 OK 53, P.3d 1 ......................................................................................................................passim

*Drummond v. Oklahoma Statewide Virtual Charter School Board*, consolidated with *St. Isidore of Seville v. Drummond*, 605 U.S.165 (2025).........................................................1

*Drummond v. Oklahoma Statewide Virtual Charter School Board,* 605 U.S. 165 (2026)................................................................................................................................1

*Oliver v. Hofmeister*, 2016 OK 15, 368 P.3d 1270 .........................................................2, 13

*Prescott v. Oklahoma Capitol Preservation Commission*, 2015 OK 54............................13

**STATUTES AND RULES**

OAC 777:10-3-3 ...............................................................................................................3, 22

Okla. Const. Art. I, §5.....................................................................................................11, 17

Okla. Const. Art. II, §5 .........................................................................................................13

Okla. Stat. tit. 51 O.S. §151 *et seq* .......................................................................................8

Okla. Stat. tit. 51 O.S. §155(18) ............................................................................................8

Okla. Stat. tit. 70 O.S. § 1-106 ............................................................................................12

Okla. Stat. tit. 70 O.S. § 3-132 .......................................................................................16,19

Okla. Stat. tit. 70 O.S. § 3-132.2 ......................................................................................6, 11

Okla. Stat. tit. 70 §3-134(12).................................................................................................7

Okla. Stat. tit. 70 §3-134(C) .................................................................................................9

Okla. Stat. tit. 70 §3-136 ......................................................................... 17, 20

Okla. Stat. tit. 70 §3-136 (C) ................................................................... 16, 18

Okla. Stat. tit. 70 §3-136(A)(2) ...................................................................... 1

Okla. Stat. tit. 70 §3-136(A)(4) ...................................................................... 7

Okla. Stat. tit. 70 §3-136(A)(9) .................................................................. 7, 8

Okla. Stat. tit. 70 §3-136(A)(11) ................................................................... 9

Okla. Stat. tit. 70 §3-136(A)(12) ................................................................... 8

Okla. Stat. tit. 70 §3-136(A)(13) ................................................................... 7

Okla. Stat. tit. 70 §3-136(A)(14) ................................................................... 8

Okla. Stat. tit. 70 §3-136(A)(15) ................................................................... 8

Okla. Stat. tit. 70 §3-137 ............................................................................. 20

Okla. Stat. tit. 70 §3-139 ............................................................................... 8

Okla. Stat. tit. 70 §3-142 ............................................................................. 15

Okla. Stat. tit. 70 §24-101.3 .......................................................................... 9

Okla. Stat. tit. 70 O.S. § 28-101, *et seq*. ..................................................... 11

## INTRODUCTION

Plaintiffs ask this Court to invalidate the actions of the Oklahoma Legislature and the state Supreme Court by holding a provision of the Oklahoma Charter Schools Act ("OCSA") (specifically 70 O.S. §3-136(A)(2)) violates their right to freely exercise their Jewish faith because it requires public charter schools (like all other public schools everywhere) be non-sectarian. One need not speculate as to the type of educational system Plaintiffs envision as ideal. In an amicus brief to the Supreme Court in *Drummond v. Oklahoma Statewide Virtual Charter School Board*, 605 U.S. 165 (2026), Plaintiff Peter Deutsch wrote admiringly of an era before public school systems existed across this country, where private religious institutions (funded in part by public monies) took a primary role in providing secondary education.[1] But Oklahoma is a sovereign state and owes no deference to Plaintiffs' preferred system of common schools. And no amount of Plaintiffs' wishful thinking can convert Oklahoma's chosen policy of providing free public education through both traditional public schools and public charter schools—subject to the U.S. Constitution's Establishment Clause and other protections—into one in which the OCSA is merely a conduit for public funding of private schools.

Yet that is precisely what Plaintiffs seek to do through their Motion for Preliminary Injunction [Doc. No. 11]. To achieve their desired end of operating a

---

[1] Brief of Amicus Curiae Hon. Peter Deutsch Supporting Petitioners, at pp. 5-18, *Drummond v. Oklahoma Statewide Virtual Charter School Board*, consolidated with *St. Isidore of Seville v. Drummond*, 605 U.S.165 (2025).

publicly funded religious school, Plaintiffs deploy a series of arguments designed to persuade this Court that they are unfairly excluded from a government program in violation of the Free Exercise Clause. Those arguments fail.

Plaintiffs assert that Oklahoma's charter schools are "publicly-funded private charter schools." [Doc. No. 11] at p. 10. But saying so does not permit Plaintiffs to avail themselves of the Supreme Court's recent Free Exercise precedents such as *Carson v. Makin*, 596 U.S. 767 (2022), *Trinity Lutheran Church of Columbia, Inc. v. Comer*, 582 U.S. 449 (2017), and *Espinoza v. Mont. Dep't of Revenue*, 591 U.S. 464 (2020).[2] Charter schools in Oklahoma are *public* schools – not just in "label," but in law and in fact. As a power that is not granted to the United States, the power to provide, define, and regulate public education is reserved to the states and its people. Oklahoma has the right to set up its public schools in any lawful manner it sees fit within its boundaries, and the Oklahoma Supreme Court—consistent with the Oklahoma legislature—has concluded that Oklahoma charter schools are public schools. *Drummond ex rel. State v. Oklahoma Statewide Virtual Charter Sch. Bd.*, 2024 OK 53, 558 P.3d 1.

Oklahoma's considered legislative and judicial determination that its public charter schools are in fact part of Oklahoma's free and open-to-all public school system is enough to dispose of Plaintiffs' Free Exercise Clause argument. That is because, under *Carson* itself, Oklahoma "may provide a strictly secular education in its public

---

[2] Oklahoma private religious schools, which are not public charter schools, have long had the right to benefit from tuition tax credits in the same manner as secular private schools, as upheld by the Oklahoma Supreme Court in *Oliver v. Hofmeister*, 2016 OK 15, 368 P.3d 1270.

schools." 596 U.S. at 785. Like all public schools, public charter schools in Oklahoma are (among other hallmarks) free, open to all, and subject to certain state curriculum requirements, *id.* at 783, and thus are subject to the Establishment Clause. That is true whether viewed as a matter of federalism, "state action" doctrine, or the Supreme Court's "governmental entity" test—all of which reinforce Oklahoma's treatment of charter schools as public schools.

Plaintiffs also claim that they will suffer irreparable harm absent a preliminary injunction because enrollees must make plans for the upcoming Fall semester. This argument is baseless. Oklahoma's state regulations require an application to be submitted between 18 and 24 months prior to a school's opening. *See* OAC 777:10-3-3.

The Oklahoma Families are parents of children who attend brick-and-mortar public charter schools in Oklahoma City and Tulsa, Oklahoma, and other parents whose children attend a virtual charter school remotely from their home. Like most parents, they care deeply about ensuring their children receive the best possible education. The Oklahoma Families intervened in this lawsuit because it is important to them that their public charter schools continue to be recognized as public. As set forth in their Motion to Intervene [Doc. 66], the availability and scope of important disability accommodations and protections under state and federal law, support programs, state funding, and preservation of their constitutional rights in a public school setting are all dependent on their charter schools being public schools.

Contrary to Plaintiffs' assertions, the Oklahoma Families will demonstrate that (1) Oklahoma's charter schools are "public schools" based on the key characteristics outlined in *Carson v. Makin*; (2) Oklahoma's determination that charter schools are public schools should receive substantial deference under principles of federalism; (3) Oklahoma charter schools are "state actors" under existing Tenth Circuit precedent and *Rendell-Baker v. Kohn*, 457 U.S. 830 (1982); and (4) Oklahoma charter schools are "government entities" under *Lebron v. Nat'l R.R. Passenger Corp*, 513 U.S. 374 (1995). The Oklahoma Families also will show that there is no real risk of irreparable harm to Plaintiffs and that neither the equities nor the public interest tip in their favor. Plaintiffs' Motion for Preliminary Injunction [Doc. No. 10] should accordingly be denied.

## STANDARD OF REVIEW

To obtain the "extraordinary" relief of a preliminary injunction, a party must show that they are likely to succeed on the merits, that they are likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in their favor, and that an injunction would be in the public interest. *Mahmoud v. Taylor*, 606 U.S. 522, 546 (2025) citing *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008). In this case, Plaintiffs fail to make any of the requisite showings.

## ARGUMENTS AND AUTHORITIES

### I.     Plaintiffs are unlikely to succeed on the merits of their claims.

Plaintiffs argue this Court should grant preliminary injunctive relief because they are likely to succeed on the merits of their Free Exercise claim. Plaintiffs claim that the denial by the Oklahoma Charter School Board (the "Board") of their charter

4

application runs afoul of *Carson v. Makin*, 596 U.S. 767 (2022), and that Ben Gamla (though denominated under Oklahoma law as a "public charter school") is not a governmental actor subject to the Establishment Clause. These arguments fail.

### A.    Oklahoma charter schools are "public schools" under *Carson*.

Plaintiffs assert that the Board's denial of their charter application on the basis of its intended religious purpose violates the Free Exercise Clause as interpreted by the U.S. Supreme Court in *Carson*. In *Carson*, the state of Maine developed a school choice program in which the state paid tuition with public funds to Maine families' private schools of choice, but Maine refused to allow state-funded tuition payments to be made to religious private schools. *Id.* The U.S. Supreme Court held the denial of a public benefit – the right of a private religious school to receive publicly funded tuition payments in the same manner as any other private school – violated the Free Exercise Clause. *Id.* Maine justified its denial of public funds for religious private schools on the basis the payments were intended to subsidize a "rough equivalent" of a public education and thus only secular schools were eligible for the payments. *Id.* at 777. Maine asserted "the public benefit Maine is offering is a free public education." *Id.* at 782. But the Court rejected Maine's assertion  there was any similarity between public schools and the private schools funded by Maine's tuition assistance programs, stating the statute authorizing the tuition payments to private schools contained "no suggestion that 'the private school' must somehow provide a 'public' education" and "the difference between private schools eligible to receive tuition assistance under Maine's program and a Maine public school are numerous and important." *Id.* at 782- 783.

5

Crucially, however, the Supreme Court made clear that "Maine may provide a strictly secular education in its public schools." *Id.* at 785.

Unlike the private religious schools at issue in *Carson*, Oklahoma's public charter schools are "public" as a matter of law and fact. Under the OCSA, "[a] 'charter school' means: . . . a public school established by contract with a school district board of education, a higher education institution, an institution of higher learning accredited pursuant to Section 4103 of Title 70 of the Oklahoma Statutes, a federally recognized Indian tribe, or the Statewide Charter School Board. . ." 70 O.S. § 3-132.2.

As important as their legal designation, however, is the fact that Oklahoma's charter schools are public in all critical respects. In *Carson*, the U.S. Supreme Court identified five characteristics inherent in public schools and found none of them were applicable to the private schools receiving state tuition assistance in Maine. *Carson,* 596 U.S. at 783-784. Oklahoma's public charter schools, however, exhibit each of the characteristics of a "public school" identified by the Supreme Court in *Carson*.

The first two characteristics considered by the *Carson* court were the Maine private schools' rights to (1) set their own admission standards and (2) charge tuition. "To start with the most obvious, private schools are different by definition because they do not have to accept all students." *Id.* at 783. "Second, the free public education that Maine insists it is providing through the tuition assistance program is often *not free,*" because the stipends provided were often less than the cost of tuition. *Id.* (emphasis in original). In Oklahoma, as in Maine, private schools are free to set their own criteria for admission and tuition. Public charter schools, however, have no such discretion and

6

"shall be as equally free and open to all students as traditional public schools." 70 O.S. §3-136(A)(9).

The third characteristic identified in *Carson* is that, in Maine, private schools' curriculum "need not even resemble that taught in the Maine public schools." *Id.,* at 783. Plaintiffs in this case assert the flexibility encouraged by the OCSA means, as a practical matter, "charter schools need not follow Oklahoma's core curriculum requirements[.]" [Doc. No. 11] at p. 9. Plaintiffs' legal argument would undoubtedly be stronger if that were the case, but it is not. While Oklahoma's public charter schools are afforded some flexibility in their program offerings and emphasis, Oklahoma has <u>not</u> ceded its authority to set state academic standards to individual charter schools. On the contrary, Oklahoma public charter schools' academic programs <u>must</u> align with Oklahoma's state standards. *See* 70 O.S. § 3-134(12). Further, in *Carson*, the Court also pointed to the private schools' exclusion from mandatory annual assessments as evidence the private schools were not in the business of providing public education. Oklahoma's public charter schools, on the other hand, are required to participate in Oklahoma's School Testing Program. *See* 70 O.S. §3-136(A)(4).

The fourth characteristic identified in *Carson* concerns teacher credentialing requirements. While Oklahoma does not require standard state certification of teachers in public charter schools, the OCSA treats charter school teachers—unlike private school teachers—as public educators. For example, public charter school teachers are eligible to participate in the state teacher retirement program (70 O.S. §3-136(A)(13)), and they maintain their seniority and status if they return to teaching in a public school

after teaching in a charter school. 70 O.S. §3-139. Charter schools, in their discretion, may also elect to participate in state health insurance programs. 70 O.S. §3-136(A)(14). Thus, while public charter schools do enjoy some flexibility in employing academic personnel, these personnel are closely integrated into the public school benefits system and protected in their career status.

The final characteristic identified by the Court in *Carson* is Maine private religious schools could, in their discretion, choose to offer single-sex instruction. *Carson,* 596 U.S. at 784. In Oklahoma, however, charter schools are public schools, and they must be open to all students in the same manner as traditional public schools. Oklahoma public schools cannot be single-sex at their discretion. 70 O.S. §3-136(A)(9).

Other characteristics of Oklahoma charter schools, though not expressly considered in *Carson,* reinforce that charter schools are public, not private. For example, Oklahoma's traditional public schools are shielded from liability under Oklahoma's sovereign immunity laws, including the Oklahoma Governmental Tort Claims Act. 51 O.S. §151, *et seq.* Notably, Oklahoma's public charter schools, unlike private schools, are shielded by the same sovereign immunity as traditional public schools.[3] 70 O.S. §3-136(A)(12). Similarly, while private schools are not required to comply with sunshine laws such as Oklahoma's Open Records and Open Meeting Act laws, Oklahoma's public charter schools and traditional public schools are required to abide by these laws. 70 O.S. §3-136(A)(15). Public charter schools and traditional

---

[3] Independent contractors, on the other hand, are expressly excluded from sovereign immunity protections of the State. 51 O.S. §155(18).

public schools are also both bound by Oklahoma's statutory due process protections for students, which require notice and a hearing before a long-term suspension. 70 O.S. §3-136(A)(11) and 70 O.S. §24-101.3. In *Carson*, the Supreme Court held Maine's state tuition payment statute violated the Free Exercise Clause because all private schools could participate in Maine's program, except for religious private schools. That is the opposite of what takes place in Oklahoma, where "[a] private school shall not be eligible to contract for a charter school or virtual charter school under the provisions of the OCSA." 70 O.S. §3-134(C).

Finally, *Carson* expressly rejected the claim that "under our decision today Maine *must* fund religious education." *Carson,* 596 U.S. at 785. The majority observed that Maine retained a number of options for providing secular education: it could increase availability of transportation, provide some combination of tutoring, remote learning, or even operate boarding schools of its own. *Id.* Or, as relevant here, Maine could "expand the reach of its public school system." *Id.* Oklahoma, through the OCSA, has done just that by creating public charter schools that match the characteristics of a public school outlined by the majority in *Carson*, confirming that Oklahoma's nonsectarian requirement does not amount to a Free Exercise violation. Plaintiffs' arguments find no support in *Carson*.

## B. Federalism favors substantial deference to Oklahoma's determination of how it will provide public education to its citizens.

Oklahoma is entitled to deference in structuring its public school system. The education of a state's citizens is not a power granted to the federal government, rather

9

it is reserved to the states and its people. U.S. Const. amend. X. Plaintiffs argue federal courts owe no deference to a state's interpretation of federal law, and they further claim that under federal law Plaintiff Ben Gamla is not a state actor. [Doc. No. 11] at p.17. But the critical question before this Court, as articulated in *Carson*, is whether charter schools in Oklahoma are public schools and thus must comply with the Establishment Clause. This Court should pay substantial deference to the State of Oklahoma's choices (in both form and substance) on that question.[4]

What constitutes a public school has historically been the purview of state governments, as state governments have a "claim" over public education.*Missouri v. Jenkins*, 515 U.S. 70, 112-113 (1995) (O'Connor, J., concurring); *see also U.S. v. Lopez*, 514 U.S. 549, 564 (1995) ("States historically have been sovereign" over education). In light of this sovereignty, federal courts should afford significant weight to a state's views on whether a school is public or not, even for federal constitutional purposes.

Precedent backs that principle. In the context of desegregation, federal courts were "specifically admonished to 'take into account the interests of state and local authorities in managing their own affairs.'" *Jenkins*, 515 U.S. at 112-113 (O'Connor, J., concurring). More recently, the Fourth Circuit declined to "reject[] the state's

---

[4] See, also, The Federal Role in Education, U.S. Department of Education ("Education is primarily a State and local responsibility in the United States.") https://www.ed.gov/about/ed-overview/federal-role-in-education; and National Conference of State Legislatures, FAQ: The Education Department and the Federal Role in Education ("States are granted plenary authority on matters of education by the 10th Amendment to the U.S. Constitution.") https://www.ncsl.org/state-legislatures-news/details/faq-the-education-department-and-the-federal-role-in-education.

designation of [charter] schools as public institutions" because doing so "would infringe on North Carolina's sovereign prerogative, undermining fundamental principles of federalism." *Peltier v. Charter Day Sch., Inc.,* 37 F.4th 104, 121 (4th Cir. 2022). *Peltier* recognized the operation of public-school systems is a function "traditionally and exclusively reserved to the states." *Id.* at 119.

In Oklahoma, the Legislature is constitutionally required to create and maintain a system of nonsectarian free public schools open to all. Okla. Const. Art. I, §5. The State of Oklahoma provides free public schools open to all through traditional local public schools. In 1999, Oklahoma passed the OCSA, which expanded public school options within the State.[5] 70 O.S. §3-132.2. In stark contrast to the view presented by Plaintiffs in this case, Oklahoma has never considered public charter schools to be mere contractors or "publicly funded private charter schools." [Doc. 11] at p. 16. Each charter school in Oklahoma is unique, but each is a public school in all material respects. Differences may be found in the involvement of parents and other community members in planning and oversight and the "loosening of the bureaucratic apron strings" as referenced in *Peltier*, 37 F.4th at 121. And differences may be found in the various foci of the different charter schools. Nonetheless, each charter school is "public" as defined by the Oklahoma School Code: "all free schools supported by public taxation." 70 O.S.

---

[5] Additionally, in 2024, the State of Oklahoma began to afford even more education opportunities by providing tax credits to families who send their children to private schools, even private religious schools.  *See* Okla. Stat. tit. 70, §28-101, *et seq.* Accordingly, there is no reason to question Oklahoma's commitment to protecting free exercise.

11

§1-106. And, as explained in detail *supra*, Oklahoma charter schools are public in character as well as in law.

Oklahoma's classification of charter schools as public schools is not mere window dressing for discrimination against religious private schools or an overly enthusiastic commitment to the Establishment Clause. Longstanding precedents from Oklahoma's Attorneys General highlight Oklahoma's commitment to asserting control over its public charter schools. For example, in 2007, a question arose as to whether the Oklahoma Legislature had unlawfully delegated its legislative authority over public education by enacting the OCSA. Answering in the negative, the Oklahoma Attorney General opined:

> [The OCSA has] specific standards to be followed in creating and operating charter schools that are part of the public school system. Oklahoma's charter schools are under the control of the Legislature, which not only enacted the statutes implementing the Act, but which retains the authority to amend the Act. Through the enactment of the Act, the Legislature has accomplished its mandate of establishing and maintaining a system of free public education. The Legislature retains the ultimate power to provide a free public education. Therefore, to answer your question, the Act does not violate the constitutional requirement that it is the responsibility of the Legislature to provide a free public education to Oklahoma's children, and does not constitute an unlawful delegation of legislative power.

2007 OK AG 23, ¶23.

Later, in 2015, the Oklahoma Attorney General described Oklahoma public charter schools as "a concurrent system" alongside traditional brick and mortar schools. 2015 OK AG 11, ¶1. Most recently, the Oklahoma Supreme Court explicitly held that

12

Oklahoma charter schools are "public schools." *Drummond, ex rel. State v. Okla. Statewide Virtual Charter School Bd.*, 2024 OK 53, ¶22, 558 P.3d 1, 10. Certainly, Oklahoma could have chosen to offer a different public school system to serve the needs of citizens. But Oklahoma did no such thing, and it should not be compelled to do so.

The Free Exercise Clause prohibits government action on the basis of religious animus and bars "even 'subtle departures from neutrality' on matters of religion." *Masterpiece Cakeshop v. Colorado C.R. Comm'n*, 584 U.S. 617, 638 (2018). It may be appropriate for a federal court to question a state's policy if there is evidence that it is tainted by religious animus. There is no such animus toward Ben Gamla here. First, as demonstrated by the defendant Board's reluctance to deny the Plaintiffs' charter application in this case, the current Board is positively inclined toward the religious nature of the school. Second, Oklahoma holds that its separation of church and state doctrines are designed to ensure churches are free from state control – and not the other way around. See *Oliver v. Hofmeister*, 2016 OK 15, ¶20.

In *Drummond*, relying on *Prescott v. Oklahoma Capitol Preservation Commission*, 2015 OK 54, ¶¶17-20, the Oklahoma Supreme Court held that Oklahoma's "no aid" law (Okla. Const. Art. II §5) prohibiting direct public funding of sectarian institutions is not an odious "Blaine Amendment." *Drummond,* 558 P.3d, at 8 ¶11. Hence, Oklahoma's sovereignty and principles of federalism require that Oklahoma be entitled to substantial deference on how it provides a free public education to its citizens—including through public charter schools. After all, as the Supreme

13

Court has recognized, Oklahoma "may provide a strictly secular education in its public schools." *Carson*, 596 U.S. at 785.

### C.      Strict scrutiny does not apply.

Oklahoma charter schools are public schools subject to the Establishment Clause, not the Free Exercise Clause. Therefore, strict scrutiny does not apply.

### D.      Oklahoma's public charter schools are state actors.

Plaintiffs argue that, because Plaintiff Ben Gamla is not a "state actor," "[t]he Free Exercise Clause thus forbids excluding Plaintiff Ben Gamla from Oklahoma's charter school program." [Doc. 11] at p. 19. On the contrary, separate from but consistent with the *Carson* factors and federalism considerations discussed above, *Drummond* correctly holds that Oklahoma charter schools are "state actors" and "government entities" under federal law. *Drummond*, 558 P.3d at 11 ¶26. The *Drummond* decision observes that

> [t]he Tenth Circuit Court of Appeals has also treated charter schools as state actors. *See Coleman v. Utah State Charter Sch. Bd.*, 673 F. App'x 822, 830 (10th Cir. 2016) (noting "charter schools are public schools using public funds to educate school children"); *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 602 F.3d 1175, 1188 (10th Cir. 2010) (holding a charter school was a governmental entity); *Milonas v. Williams*, 691 F.2d 931, 940 (10th Cir. 1982) (holding state funding, contracts with state, and extensive state regulation were some of the facts that demonstrated sufficiently close nexus between state and operators of school).

*Drummond*, 558 P.3d at 19 fn 11.

14

Even though all the Tenth Circuit decisions cited in *Drummond* were decided after *Rendell-Baker v. Kohn,* 457 U.S. 830 (1982), Plaintiffs address none of the Tenth Circuit authorities on point and rely almost exclusively on *Rendell-Baker* for their argument that public charter schools are not state actors. Thus, Plaintiffs are unlikely to prevail on the merits of their argument.

In *Rendell-Baker*, a private school contracted to provide specialized services to maladjusted youth was held not to be a "state actor." Terminated employees complained that their release had been in violation of their First Amendment rights of free speech, and Fifth and Fourteenth Amendment rights of due process. *Id.* at 835. The Court, observing that the contractor could not be liable under §1983 unless some state action had actually taken place, examined the following four factors to determine whether the contractor's actions were attributed to the state: (1) the level of state funding; (2) the extent of state regulation; (3) whether the services were within the exclusive purview of the state, and; (4) whether a "symbiotic relationship" existed between the contractor and the state. *Id.* at 840-842. An examination of the four *Rendell-Baker* factors demonstrates that, unlike the contractor in *Rendell-Baker*, Oklahoma's public charter schools meet the test for state action.

First, Oklahoma's public charter schools receive per-pupil state funding from the same pool of legislatively appropriated tax dollars as any other traditional public school. 70 O.S. §3-142. Second, Oklahoma's public charter schools are heavily regulated by the State. As set forth *supra*, Argument I(A), Oklahoma's public charter schools are not simply private school contractors providing a service – they are subject to the same

15

level of regulation as traditional public schools in all major respects. Third, Oklahoma's public charter schools are engaged in a "public function" that has been "traditionally the exclusive prerogative of the state." *Id.* at 842. Here, too, provision of free education, open to all, has always been within Oklahoma's exclusive purview. In *Rendell-Baker*, the contractor fell short on this point. The Court in *Rendell-Baker* observed that the school in question was an alternative school designed for maladjusted youth. *Id.* Here, the OCSA requires public charter schools to serve the same population of children according to the same set of State standards, albeit with certain permitted (pre-approved) variation in focus and emphasis. Finally, as to the fourth factor, unlike the school contractor in *Rendell-Baker*, a public charter school's relationship with its authorizing entity (in Oklahoma, the authorizer is termed a "sponsor" under the OCSA) is "symbiotic." The "sponsorship" of a charter school denotes a closer connection than simple eligibility for public funding (as is the case with private schools) or outsourcing for the sake of efficiency (as is the case with a contractor). Oklahoma's public charter schools can be established only through sponsorship with an approved entity and cannot exist independently. 70 O.S. §3-132. In fact, Oklahoma's public charter schools cannot admit students or receive public education dollars until they have been sponsored. 70 O.S. §3-136(C). If a public charter school loses its charter, the school does not simply lose an important client – it is extinguished. As such, under *Rendell-Baker*, Oklahoma's public charter schools are state actors.

In *Manhattan Cmty. Access Corp. v. Halleck*, 587 U.S. 802 (2019), also cited by Plaintiffs, the Court held that a private entity qualifies as a state actor under "limited

16

circumstances. *Id.* at 807. But, as set forth in detail *supra* (Section I(A)), Oklahoma's public charter schools are not private entities. Upon formation, they are "public" schools. 70 O.S. §3-136. And, as detailed below (Section I(E)), they are "government entities." Even accepting for the sake of argument that they are private entities, public charter schools are engaged in precisely the type of state action that falls within *Halleck*'s recognized exceptions.

*Halleck* holds that an entity may qualify as a state actor if the State is "entwined in [its] management or control." *See Halleck*, 587 U.S. at 809, citing *Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 296 (2001). And if a State has "outsourced a constitutional function," the private entity may be a state actor. *Halleck,* 587 U.S. at FN 1, citing *West v. Atkins*, 487 U.S. 42, 56 (1988) Here, both exceptions noted in *Halleck* apply. First and foremost, Oklahoma's public charter schools serve as a component of the Legislature's duty to establish and maintain a system of free public schools under Okla. Const. Art I, §5. *Drummond,* 558 P.3d 9 ¶13; *see also*, 2007 OK AG 23. Oklahoma's public charter schools are funded directly through state aid funding and are recognized as "LEAs" -local education authorities – entitled to direct access to public education dollars.[6] They are required to serve children with disabilities who would not be entitled to receive services in private schools. 70 O.S. §3-136(C). And in recognition that public charter schools are engaged in state

---

[6] An LEA is defined in federal law as "a public board of education or other <u>public authority</u> legally constituted within a State for either administrative control or direction of [public elementary or secondary schools]." 34 C.F.R. §303.23.

action, Oklahoma extends the State's sovereign immunity protections to its public charter schools. 70 O.S. §3-136(A)(12). All of these characteristics demonstrate that Oklahoma's public charter schools are both "entwined" in the State's management and control and carrying out the State's constitutional function.

In sum, the Tenth Circuit has recognized charter schools as "state actors" even after *Rendell-Baker* was decided and Oklahoma's public charter schools otherwise meet the criteria as "state actors" under *Rendell-Baker* and *Halleck*. Plaintiffs therefore cannot avail themselves of the Free Exercise Clause.

### E. Oklahoma's public charter schools are created and controlled by Oklahoma law and are therefore "government entities."

The Oklahoma Supreme Court concluded that charter schools are not only "state actors," but also "government entities" under Oklahoma law. *Drummond*, 558 P.3d at 10, ¶20. Under *Lebron v. Nat'l R.R. Passenger Corp.*, 513 U.S. 374 (1995) and *Biden v. Nebraska*, 600 U.S. 477, 493 (2023), charter schools are also government entities as a matter of federal law, because they are both created and controlled by the state.[7]

In *Lebron*, a plaintiff sued Amtrak for violating his First Amendment rights. *Id.* at 377. Amtrak argued that it was not a governmental entity – indeed, while the entity was established by an act of Congress, its charter specifically stated that Amtrak was not a government agency. *Id.* at 392. The U.S. Supreme Court rejected Amtrak's

---

[7] For a detailed comparison with other states and public charter school characteristic of state action and control, see National Alliance for Public Charter Schools: Government Entities for Federal Constitutional Purposes (June 9, 2026), available at http://publiccharters.org.

defense, holding that entities that are "created and controlled" by the government are part of the government itself. *Id.* at 397. As explained by the Court, "[t]hat Government-created and -controlled corporations are (for many purposes at least) part of the Government itself has a strong basis, not merely in past practice and understanding, but in reason itself." *Id.* "It surely cannot be that government, state or federal, is able to evade the most solemn obligations imposed in the Constitution by simply resorting to the corporate form." *Id.* More recently, in *Biden v. Nebraska*, 600 U.S. 477 (2023) the U.S. Supreme Court considered whether Missouri's student loan authority ("MOHELA") was a government entity and concluded it was. *Id.* at 491.

Here, if approved, Plaintiffs' proposed charter school would be a governmental entity created and controlled by the State. The OCSA is a component of the Oklahoma's system of free public schools. *Drummond*, 558 P.3d at 9, ¶¶13-14. Ben Gamla's charter school cannot be established except upon securing a sponsorship. 70 O.S. §3-132. And while it is true that Plaintiffs may be free to name a governance board (subject to requirements of the OCSA), Ben Gamla must secure prior approval of its proposed: educational program to be offered, participation in statewide testing, compliance with reporting requirements, financial audits, and audit procedures, compliance with disability laws, residency and conflicts of interest requirements for board members, school calendar, due process for student suspensions, employee benefits, personnel policies, and protocol for reporting of adverse incidents. 70 O.S. 3-136. All of these critical requirements must be memorialized in the charter contract. *Id.*

Once approved, the charter contract cannot be modified without approval. 70 O.S. §3-136. The charter contract must also set forth the State's responsibilities for oversight of the public charter school, including setting a performance framework and setting of performance indicators for: student academic proficiency, academic growth, achievement gaps, student attendance, recurrent enrollment methodology, graduation rates, postsecondary readiness, financial performance, audit findings, accreditation, governing board performance and stewardship, legal compliance, and student mobility. *Id.* The sponsor must evaluate whether the indicators demand a performance improvement plan, and monitor compliance if so. 70 O.S. §3-137. It is clear that the State's responsibilities are not only in the initial establishment of a public charter school, but also extend to include ongoing and continuous monitoring, supervision, and oversight. A charter may also be dissolved by its sponsor. *Id.* Upon termination of a charter, property purchased with state funds is returned to the sponsor. *Id.* In sum, Oklahoma charter schools are government entities under Oklahoma and federal law, created and controlled by their sponsors, and Plaintiffs are unlikely to prevail on the merits of their claims.

II.     **Plaintiffs cannot establish that they will suffer irreparable harm or that the balance of equities and the public interest weigh in their favor.**

Plaintiffs argue that because they have raised a Free Exercise claim, they should be favored in their request for preliminary injunction. But the limited purpose of such an extraordinary remedy "is merely to preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981).

20

The Tenth Circuit has identified a preliminary injunction that alters the status quo as a disfavored injunction. *O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 977 (10th Cir. 2004) (en banc), cert. granted sub nom on other grounds, *Gonzales v. O Centro Espirita Beneficiente Uniao Do Vegetal*, 544 U.S. 973 (2005).

Here, Plaintiffs seek such disfavored injunction. Plaintiffs seek to preclude the Board from following Oklahoma law, a law that was upheld as constitutional by the Oklahoma Supreme Court in *Drummond*. In so doing, Plaintiffs are asking this Court to sanction the first ever religious charter school in the United States. Under no circumstance can Plaintiffs' claims be construed as seeking to maintain the "status quo." Such disfavored injunctions "must be more closely scrutinized to assure that the exigencies of the case support the granting of a remedy that is extraordinary even in the normal course." *O Centro*, 389 F.3d at 975.

Plaintiffs fail to demonstrate that they will be irreparably harmed if they are denied injunctive relief. Plaintiffs primarily rely on their desire to open their school in Fall of 2026 and allow prospective families to make enrollment plans. [Doc. No. 11] at p. 15. But even if this Court were to grant Plaintiffs' Motion, and even if the Board were to ultimately approve Plaintiffs' charter school application, by law Ben Gamla cannot open its doors in Fall 2026. Under Oklahoma law, an application for a charter school must be submitted between 18 and 24 months prior to the July of the expected opening. OAC 777:10-3-3. Plaintiffs submitted the application that is the subject of this lawsuit on February 27, 2026. [Doc. No. 11] at p. 15. Thus, at the earliest, Plaintiffs could not open their school until the Fall of 2027. Further, even if Plaintiffs were to prevail on

21

their theory that they are not public schools, it is unclear how their school would be funded (as Oklahoma presently funds charter schools on the basis that they are part of the state's public school system[8]).

Finally, the balancing of the equities and public interest do not tip in Plaintiffs' favor in this case. Relying upon *Nken v. Holder*, 556 U.S. 418, 435 (2009), Plaintiffs argue that "it is always in the public interest to prevent the violation of a party's constitutional rights." Yet, in this case, the Oklahoma Families seek to uphold Oklahoma law and preserve their constitutional rights and the rights of 30,000 other Oklahoma public charter school students. Plaintiffs, on the other hand, ask this Court for a sea change that risks a violation of the Establishment Clause. The countervailing constitutional and equitable interests of the Oklahoma Families and other Oklahoma citizens are at least as strong.

## CONCLUSION

The Motion for Preliminary Injunction should be denied.

Respectfully submitted,

/s/ Heather Hendricks
Heidi J. Long, OBA #17667
Ryan Leonard, OBA #19155
LEONARD, LONG & CASSIL, PLLC
6301 N. Western, Suite 250
Oklahoma City, OK  73118
(405) 702-9900
rleonard@llc-attorneys.com
hlong@llc-attorneys.com

---

[8] See 70 O.S. §3-142.

22

hhendricks@llc-attorneys.com

**Attorney for the Intervenors,**
**The Oklahoma Families**

## CERTIFICATE OF SERVICE

I hereby certify that on June 17, 2026, I electronically transmitted the attached document to the Clerk of Court using the Electronic Case Filing System for filing. Based on the records currently on file in this case, the Clerk of Court will transmit a Notice of Electronic Filing to those registered participants of the ECF System.

/s/ Heather Hendricks