# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

THE NATIONAL BEN GAMLA JEWISH
CHARTER SCHOOL FOUNDATION, INC.,
*et al.*,

          *Plaintiffs*,

     v.

BRIAN T. SHELLEM, in his official capacity as
Chairman of the Oklahoma Statewide Charter
School Board, *et al.*,

          *Defendants*,

RABBI DANIEL KAIMAN, *et al.*,

          *Defendant-Intervenors,*

CRICKET MOORE, *et al.*,

          *Defendant-Intervenors.*

Case No. 5:26-cv-00582-R

**PLAINTIFFS' REPLY TO
TAXPAYER INTERVENORS'
OPPOSITION TO PLAINTIFFS'
MOTION FOR PRELIMINARY
INJUNCTION**

Robert G. McCampbell
  OBA No. 10390
David A. Herber
  OBA No. 33527
GABLEGOTWALS
499 W. Sheridan Ave., Ste. 2200
Oklahoma City, OK 73102
(405) 235-5500
*RMcCampbell@Gablelaw.com*
*DHerber@Gablelaw.com*

Eric S. Baxter
  DC Bar No. 479221
Eric C. Rassbach
  TX Bar No. 24013375
Daniel L. Chen
  DC Bar No. 1781783
Benjamin A. Fleshman
  DC Bar No. 1781280
Phillip J. Allevato*
  CA Bar No. 362581
Siena A. Marcelle
  DC Bar No. 90043763
THE BECKET FUND FOR RELIGIOUS LIBERTY
1919 Pennsylvania Ave. NW, Ste. 400
Washington, DC 20006
(202) 955-0095
*ebaxter@becketfund.org*

*\*Not a member of the DC Bar; admitted in
California. Practice limited to cases in
federal court.*

*Attorneys for Plaintiffs*

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................ iii

INTRODUCTION ........................................................................................................... 1

ARGUMENT ................................................................................................................. 1

    I.  Plaintiffs possess Article III standing. ................................................................ 1

    II.  Plaintiffs' claims are ripe. ................................................................................... 5

    III. Plaintiffs are likely to succeed on their Free Exercise claims. ............................ 6

CONCLUSION ............................................................................................................. 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Awad v. Ziriax,*
   670 F.3d 1111 (10th Cir. 2012) ...................................................................... 5

*Biden v. Nebraska,*
   600 U.S. 477 (2023) ....................................................................................... 8

*Brammer-Hoelter v. Twin Peaks Charter Acad.,*
   602 F.3d 1175 (10th Cir. 2010) ...................................................................... 9

*Carson v. Makin,*
   979 F.3d 21 (1st Cir. 2020) ............................................................................ 4

*Coleman v. Utah State Charter Sch. Bd.,*
   673 F. App'x 822 (10th Cir. 2016) ................................................................. 9

*Day v. Bond,*
   500 F.3d 1127 (10th Cir. 2007) ...................................................................... 3

*Dep't of Transp. v. Ass'n of Am. R.Rs.,*
   575 U.S. 43 (2015) .......................................................................................... 8

*Dillon v. Twin Peaks Charter Acad.,*
   241 F. App'x 490 (10th Cir. 2007) ................................................................. 9

*First Nat'l City Bank v. Banco Para el Comercio Exterior de Cuba,*
   462 U.S. 611 (1983) ........................................................................................ 6

*Fourth Corner Credit Union v. Fed. Rsrv. Bank of Kan. City,*
   861 F.3d 1052 (10th Cir. 2017) ...................................................................... 6

*Fulton v. Philadelphia,*
   593 U.S. 522 (2021) ...................................................................................... 10

*Johnson v. Rodrigues,*
   293 F.3d 1196 (10th Cir. 2002) .................................................................... 10

*Klunder v. Brown Univ.,*
   778 F.3d 24 (1st Cir. 2015) ............................................................................ 9

*Lebron v. National Railroad Passenger Corp.*,
513 U.S. 374 (1995) ............................................................................................... 8

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
572 U.S. 118 (2014) ............................................................................................... 5

*Loffman v. Cal. Dep't of Educ.*,
119 F.4th 1147 (9th Cir. 2024) .............................................................................. 4

*Logiodice v. Trs. of Maine Cent. Inst.*,
296 F.3d 22 (1st Cir. 2002) .................................................................................... 9

*Macias v. N.M. Dep't of Labor*,
21 F.3d 366 (10th Cir. 1994) ................................................................................. 2

*Manhattan Cmty. Access Corp. v. Halleck*,
587 U.S. 802 (2019) ............................................................................................. 10

*Mount Olivet Cemetery Ass'n v. Salt Lake City*,
164 F.3d 480 (10th Cir. 1998) ............................................................................... 7

*Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. Jacksonville*,
508 U.S. 656 (1993) ............................................................................................... 2

*Peck v. McCann*,
43 F.4th 1116 (10th Cir. 2022) .............................................................................. 5

*Powe v. Miles*,
407 F.2d 73 (2d Cir. 1968) ..................................................................................... 9

*Rendell-Baker v. Kohn*,
457 U.S. 830 (1982) ............................................................................................... 9

*Roe No. 2 v. Ogden*,
253 F.3d 1225 (10th Cir. 2001) ............................................................................. 3

*S.F. Arts & Athls., Inc. v. U.S. Olympic Comm.*,
483 U.S. 522 (1987) ............................................................................................... 7

*United States v. Ackerman*,
831 F.3d 1292 (10th Cir. 2016) ............................................................................. 6

*Utah v. DOI*,
535 F.3d 1184 (10th Cir. 2008) ............................................................................. 6

iv

*West v. Atkins*,
    487 U.S. 42 (1988)...............................................................................................10

*Wilson v. Glenwood Intermountain Properties, Inc.*,
    98 F.3d 590 (10th Cir. 1996) ...............................................................................3

*Wittner v. Banner Health*,
    720 F.3d 770 (10th Cir. 2013) .............................................................................10

**Statutes**

Okla. Stat Ann. tit. 70, § 3-134.........................................................................6, 7

Okla. Stat Ann. tit. 70, § 3-136.............................................................................7

Okla. Stat. Ann. tit. 70, § 3-137............................................................................8

**INTRODUCTION**

Oklahoma Taxpayers intervened in this case to defend the OCSA's nonsectarian requirement. But Taxpayer Intervenors now claim that Plaintiffs lack standing based on perceived problems in Ben Gamla's application, an assertion that directly contradicts the record evidence and prevailing law. They also claim this case is unripe, but again, the law says otherwise. This lawsuit involves pure legal questions concerning the state action doctrine and the Free Exercise Clause, and the Board has already taken concrete action against Ben Gamla, denying its application solely because of Ben Gamla's religious character.

On the merits, Taxpayer Intervenors insist that Ben Gamla is part of the State and therefore without any Free Exercise rights. But that novel argument runs headlong into Supreme Court precedent, which demonstrates that Ben Gamla is not a governmental entity because it was not created by the State and is not controlled by the State. And finally, Taxpayer Intervenors fail to show that Ben Gamla is engaged in state action. For these reasons, this Court should grant Plaintiffs' motion for a preliminary injunction.

**ARGUMENT**

**I. Plaintiffs possess Article III standing.**

Taxpayer Intervenors argue that Ben Gamla lacks standing to challenge the nonsectarian requirement. They claim that Ben Gamla's application contained material deficiencies that would independently disqualify it from being chartered. *See* Dkt. 62-1 ("Opp.") at 5-6. Taxpayer Intervenors are wrong on both the facts and the law.

First, the facts. While the Board initially identified some minor deficiencies with Ben

Gamla's initial application, Ben Gamla's second application resolved all issues except the requirement to be nonsectarian. Deutsch Decl. ¶¶ 40-42; Dkt. 11 at 9. Indeed, the Board noted that Ben Gamla's religious character was the sole reason for its denial. Deutsch Decl. ¶ 43; *id.*, Ex. 2-D.

Despite the Board's satisfaction with all other aspects of Ben Gamla's application, Taxpayer Intervenors point to deficiencies that *they* perceive in the application. *See* Opp. at 5-6. But federal courts "give deference to a state administrative agency's interpretation and application of a state statute which it is charged with administering." *Macias v. N.M. Dep't of Lab.*, 21 F.3d 366, 369 (10th Cir. 1994). Taxpayer Intervenors cite no law suggesting that their views of Ben Gamla's application should trump the Board's clear finding that Ben Gamla satisfied all statutory requirements aside from being nonsectarian.[1]

Second, Taxpayer Intervenors misinterpret the law for standing. "To establish standing," a party "need only demonstrate that it is able and ready to" apply for a program "and that a discriminatory policy prevents it from doing so on an equal basis." *Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. Jacksonville*, 508 U.S. 656, 666 (1993). Indeed, the Supreme Court's cases make clear that a plaintiff challenging a discriminatory barrier to obtaining a benefit "need not allege that he would have obtained the benefit but for the barrier in order to establish standing." *Id.* The injury in fact "is the denial of equal treatment resulting from the imposition of the barrier, not the ultimate inability to obtain

---

[1] Taxpayer Intervenors refer to "various other material deficiencies" that "Drummond considers disqualifying." Opp. at 6. But the Board—not Drummond—is responsible for interpreting and applying the OCSA's requirements. *See* Dkt. 90 at 8 (dismissing Drummond on this basis). The Board's actions thus control.

2

the benefit." *Id*. And "[i]t follows from [the] definition of 'injury in fact,' that … [the law] is the 'cause' of [the] injury and that a judicial decree directing the [Board] to discontinue its program would 'redress' the injury." *Id*. at 666 n.5.

This is thus an *a fortiori* case. Here, Ben Gamla has alleged—and the Board agrees—that the nonsectarian provision alone prevented Ben Gamla from becoming a charter school. And even if that were not true, Ben Gamla's injury is not just the denial of its application but the discriminatory barrier and uneven playing field. *See id.* at 666.

Taxpayer Intervenors argue otherwise, invoking *Wilson v. Glenwood Intermountain Properties, Inc.*, 98 F.3d 590 (10th Cir. 1996), and *Day v. Bond*, 500 F.3d 1127 (10th Cir. 2007). Opp. at 5-6. But those cases impose no additional standing requirements; they simply apply the "ready and able" standard to materially distinguishable facts.

In *Wilson*, the Tenth Circuit held that the plaintiffs could not sue a housing complex reserved for BYU students that allegedly discriminated based on sex "[b]ecause plaintiffs were not BYU students" to begin with. 98 F.3d at 594. Similarly, in *Day*, the plaintiffs were independently incapable of being injured by an allegedly discriminatory requirement because "none attended Kansas high schools" for the required amount of time. 500 F.3d at 1135. In other words, none of the plaintiffs in those cases were ready and able to apply for the relevant benefits because "nondiscriminatory *classifications* would disqualify [them] from eligibility"—not otherwise curable defects with an application. *Id.* (emphasis added); *see Roe No. 2 v. Ogden*, 253 F.3d 1225, 1230 (10th Cir. 2001) (distinguishing *Wilson* on these grounds).

3

In contrast, Taxpayer Intervenors do not assert that Ben Gamla belongs to the wrong class of persons to apply for a charter (*i.e.*, that Ben Gamla is a soup kitchen, not a school). Nor do they suggest that Ben Gamla is categorically incapable of curing any supposed issues. They simply disagree with the Board about whether Ben Gamla has done so.

But even if Ben Gamla did not satisfy other requirements, other courts have held that plaintiffs still have standing to challenge nonsectarian school funding requirements under similar circumstances. In *Carson v. Makin*, Maine argued that the plaintiffs challenging a nonsectarian requirement lacked standing because the schools they sought to attend had policies that allegedly violated antidiscrimination requirements and thus the schools could not qualify for funding. 979 F.3d 21, 30 (1st Cir. 2020), *rev'd on other grounds* 596 U.S. 767 (2022). But the First Circuit rejected that argument because "the invalidation of [the] 'nonsectarian' requirement would restore the plaintiffs' now non-existent opportunity" to participate in the program. *Id.* at 31. Although Maine repeated its standing arguments to the Supreme Court, *see* Br. of Resp't at 51-54, *Carson v. Makin*, 596 U.S. 767 (2022) (No. 20-1088), the Court did not question the plaintiffs' standing there.

Similarly, in *Loffman v. California Department of Education*, California prohibited religious schools from operating nonpublic schools to educate students with disabilities. 119 F.4th 1147 (9th Cir. 2024). Defendants argued that students challenging this rule lacked standing because they couldn't demonstrate they would meet all the requirements for being placed in nonpublic schools. *See id.* at 1163. But the Ninth Circuit disagreed, holding that the relevant law "block[ed] religious schools from ever qualifying" such that

4

students "could not, under any circumstances, be placed in a religiously affiliated" nonpublic school. *Id*. Thus, the students had standing. *Id*.

The same is true here. Ben Gamla is ready and able to apply now. In fact, it has already applied and been rejected *solely* based on its religious identity. Removing the nonsectarian barrier to Ben Gamla's application would thus remedy its constitutional injury.

## II. Plaintiffs' claims are ripe.

Courts have a "virtually unflagging" obligation to decide cases within their jurisdiction. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 126 (2014). Thus, where, as here, Plaintiffs have standing, a case is typically ripe. *Peck v. McCann*, 43 F.4th 1116, 1133-34 (10th Cir. 2022). In any event, this case satisfies both ripeness factors.

First, Plaintiffs' case is fit for a judicial decision. Taxpayer Intervenors claim that "uncertainty" regarding the denial of Ben Gamla's application renders this case unripe. Opp. at 7. But when a case raises "strictly legal issues," this factor is satisfied. *Awad v. Ziriax*, 670 F.3d 1111, 1124 (10th Cir. 2012). Here, Ben Gamla challenges the constitutionality of the nonsectarian requirement under the Free Exercise Clause. This sort of "facial constitutional challenge is a purely legal question," meaning it is "an ideal fit for judicial review." *Peck*, 43 F.4th at 1134. Likewise, whether Oklahoma charter schools are state actors or engaged in state action presents a similar legal question turning on the proper characterization of the statutory charter-school framework. *See Awad*, 670 F.3d at 1124-25 (holding a question is legal when it doesn't depend on the "specific factual context"). Plaintiffs' case thus presents "strictly legal issues" fit for judicial review. *Id.* at 1124.

Second, Plaintiffs satisfy the hardship requirement, which asks "whether the challenged

action creates a direct and immediate dilemma for the parties." *Id.* at 1125. That standard is easily met where the government has already taken some "*concrete action*" against Plaintiffs. *Utah v. DOI*, 535 F.3d 1184, 1198 (10th Cir. 2008). Here, the Board's concrete denial of Ben Gamla's application prevents it from operating a charter school—precisely the type of hardship that supports ripeness. *See Ogden*, 253 F.3d at 1231 (finding hardship where delayed review would postpone plaintiffs' professional plans). Moreover, Plaintiffs remain effectively "paralyzed" and "unable to litigate the[ir] right" to open a charter school. *Fourth Corner Credit Union v. Fed. Rsrv. Bank of Kan. City*, 861 F.3d 1052, 1053 n.1, 1080 (10th Cir. 2017) (opinions of Bacharach & Moritz, JJ.). A dismissal on ripeness grounds "would [only] magnify the hardship" Plaintiffs already face. *Id.* at 1080.

## III.    Plaintiffs are likely to succeed on their Free Exercise claims.

Taxpayer Intervenors argue that Plaintiffs' Free Exercise claims fail because Oklahoma charter schools are either governmental entities or engaged in state action. Neither is true.

***Governmental entity.*** The core characteristics of a governmental entity are (1) "creat[ion] by an enabling statute," (2) "manage[ment] by a board selected by the government," and (3) the level of government control over the entity. *First Nat'l City Bank v. Banco Para el Comercio Exterior de Cuba*, 462 U.S. 611, 624 (1983); *United States v. Ackerman*, 831 F.3d 1292, 1297 (10th Cir. 2016). None of these factors applies here.

First, charter schools in Oklahoma are private entities and not created by the State. Ben Gamla was founded by private actors. Deutsch Decl. ¶¶ 23-26. And the Board does not create charter schools; it simply grants or denies their application to receive a charter. *See* Okla. Stat Ann. tit. 70, § 3-134(C). Granting a charter, like granting any other operating

6

license, does not create a governmental entity. *See S.F. Arts & Athletics, Inc. v. U.S. Olympic Comm.*, 483 U.S. 522, 544 (1987) (granting corporate charter does not render an actor a governmental entity).

Second, charter schools are governed by private boards, not government officials. Okla. Stat Ann. tit. 70, § 3-136(A)(7). In fact, upon the Board's urging, Ben Gamla specifically amended its charter application to more closely align with the Board's standards for an independent and private school board. Deutsch Decl., Ex. 2-C. This insulation from the State makes charter schools private, not governmental, entities. *See Mount Olivet Cemetery Ass'n v. Salt Lake City*, 164 F.3d 480, 487 (10th Cir. 1998) (rejecting argument that a nonprofit corporation with its own board was a government entity).

Third, the State does not exert significant control over charter school operations. Private chartering organizations create and control nearly all aspects of a charter school, including "education program[s]," Okla. Stat Ann. tit. 70, § 3-136(A)(3), curriculum, *id.*, disciplinary procedures, *id.* § 3-134(B)(18), enrollment policies, *id.* § 3-134(B)(17), and more. The State simply approves a school's application, but does not make edits, control the content, or dictate what charter schools may teach. *Id.* § 3-134(E)(3). In fact, Oklahoma charter schools are exempt from the vast majority of public-school regulations, except for certain requirements related to facility safety and physical wellbeing of students. *Id.* § 3-136(A)(1).

Taxpayer Intervenors claim the Board's ability to terminate a charter contract is proof of governmental control. Opp. at 9-10. But the Board may terminate a charter contract only for failure of "student performance," "fiscal management, violations of the law, or other

7

good cause." Okla. Stat. Ann. tit. 70, § 3-137(F). Charter schools are entitled to both an informal and a formal hearing before termination, *id.* § 3-137(F), (J), may unilaterally let their contracts expire, *id.* § 3-137(C), and may reapply for a state charter if the Board chooses not to renew, *id.* § 3-137(K). In other words, the Board does not have unfettered, unilateral authority to terminate a charter, as they would for a true government entity.

Taxpayer Intervenors cite *Lebron v. National Railroad Passenger Corporation*, 513 U.S. 374 (1995), and *Biden v. Nebraska*, 600 U.S. 477 (2023). Both cases are entirely different. In *Lebron*, Amtrak was specifically "created by a special statute," 513 U.S. at 397, and Congress "mandated certain aspects of Amtrak's day-to-day operations." *Dep't of Transp. v. Ass'n of Am. Railroads*, 575 U.S. 43, 53 (2015) (discussing *Lebron*). Amtrak's board was also selected by government officials. *Lebron*, 513 U.S. at 385. Likewise, in *Biden*, Missouri's legislature created MOHELA by name through special legislation, declaring it "a body politic." 600 U.S. at 493. Additionally, MOHELA's board members were "state officials" or "appointed by the Governor and approved by the Senate." *Id.* at 490; *see also* Okla. Stat Ann. tit. 70, § 3-137(F).  None of that is true of charter schools in Oklahoma.

***State action.*** Taxpayer Intervenors next assert that Ben Gamla is a state actor because (1) it performs traditional and exclusive public functions, (2) the State delegated its obligation to provide free public education, and (3) Oklahoma is entwined in Ben Gamla's management and control. Opp. at 15-19. These arguments all fail.

First, Taxpayer Intervenors attempt to redefine the government function as providing "education that is free and open to all." Opp. at 15. But multiple courts have rejected

attempts "to narrow and refine the category as that of providing a publicly funded education available to all students generally." *Logiodice v. Trs. of Maine Cent. Inst.*, 296 F.3d 22, 27 (1st Cir. 2002); Dkt. 11 at 19-21. Indeed, in *Rendell-Baker v. Kohn*, the education provided was both free and at public expense, yet the Supreme Court never incorporated those features into its definition of the relevant function. 457 U.S. 830, 842 (1982). Thus, the appropriate government function is providing an education, *see* Dkt. 11 at 16, 19, which "is not, and never has been, exclusively maintained by the state." *Klunder v. Brown Univ.*, 778 F.3d 24, 32 (1st Cir. 2015); *accord Powe v. Miles*, 407 F.2d 73, 80 (2d Cir. 1968).

Taxpayer Intervenors include string cites of cases from the Tenth Circuit they claim hold that charter schools are state actors. But each case suffers from significant defects. *Brammer-Hoelter v. Twin Peaks Charter Academy* simply assumes charter schools are public without analysis. 602 F.3d 1175, 1188 (10th Cir. 2010). *Dillon v. Twin Peaks Charter Academy* makes the same analysis-free assumption, and it is unpublished. 241 F. App'x 490, 496-97 (10th Cir. 2007). And *Coleman v. Utah State Charter School Board* is both unpublished and explicitly recognizes the tension in charter schools' identity, holding that although charter schools are "public," charter school employees "are not, strictly speaking, government officials." 673 F. App'x 822, 830 (10th Cir. 2016).[2]

Second, Oklahoma has not outsourced its obligation to provide a public education, as Oklahoma still maintains its own traditional, government-run public schools. Taxpayer Intervenors attempt to liken this case to *West v. Atkins*, but the two cases are nothing alike.

---

[2]    Taxpayer Intervenors raise other cases in a footnote. Opp. at 20 n.4. None are binding, and many perform no state-action analysis or rely merely on statutory labels.

The delegation in *West* was total and the plaintiff had no alternatives. 487 U.S. 42, 44, 55 (1988). Though the State employed and contracted with other physicians, that did not change the fact that the plaintiff's injury was "caused, in the sense relevant for state-action inquiry, by the State's exercise of its right to punish West by incarceration and to deny him a venue independent of the State to obtain needed medical care." *Id.* at 55. Indeed, if Taxpayer Intervenors' broad delegation theory were accepted, it would revolutionize state-action doctrine, including by transforming faith-based foster agencies into state actors. That is not the law. *See Fulton v. Philadelphia*, 593 U.S. 522, 535-36 (2021).

Third, *Brentwood*'s entwinement doctrine does not apply here. To find entwinement, there must be a "heavily interdependent relationship" between the private party and the state. *Wittner v. Banner Health*, 720 F.3d 770, 779 (10th Cir. 2013). "Extensive state regulation, the receipt of substantial state funds, and the performance of important public functions do not necessarily establish the kind of symbiotic relationship" required for state action. *Johnson v. Rodrigues*, 293 F.3d 1196, 1204 (10th Cir. 2002). But that's all that Taxpayer Intervenors point to in arguing entwinement. Opp. at 19. Granting a charter "is analogous to a government license, a government contract, or a government-granted monopoly." *Manhattan Cmty. Access Corp. v. Halleck*, 587 U.S. 802, 814 (2019). Such grants do "not convert the private entity into a state actor—unless the private entity is performing a traditional, exclusive public function." *Id.* Nor do the regulations governing charter schools create the entwinement necessary for state action. *See id.* at 815.

## CONCLUSION

This Court should grant Plaintiffs' motion for a preliminary injunction.

10

Dated: June 30, 2026

Robert G. McCampbell
  OBA No. 10390
David A. Herber
  OBA No. 33527
GABLEGOTWALS
499 W. Sheridan Ave., Ste. 2200
Oklahoma City, OK 73102
(405) 235-5500
*RMcCampbell@Gablelaw.com*
*DHerber@Gablelaw.com*

Respectfully submitted,

/s/ Eric S. Baxter

Eric S. Baxter
  DC Bar No. 479221
Eric C. Rassbach
  TX Bar No. 24013375
Daniel L. Chen
  DC Bar No. 1781783
Benjamin A. Fleshman
  DC Bar No. 1781280
Phillip J. Allevato*
  CA Bar No. 362581
Siena A. Marcelle
  DC Bar No. 90043763
THE BECKET FUND FOR RELIGIOUS LIBERTY
1919 Pennsylvania Ave. NW, Ste. 400
Washington, DC 20006
(202) 955-0095
*ebaxter@becketfund.org*

*\*Not a member of the DC Bar; admitted in California. Practice limited to cases in federal court.*

*Attorneys for Plaintiffs*

11