# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

THE NATIONAL BEN GAMLA JEWISH
CHARTER SCHOOL FOUNDATION, INC.,
*et al.*,

         *Plaintiffs,*

     v.

BRIAN T. SHELLEM, in his official capacity as
Chairman of the Oklahoma Statewide Charter
School Board, *et al.*,

         *Defendants,*

RABBI DANIEL KAIMAN, *et al.*,

         *Defendant-Intervenors*,

CRICKET MOORE, *et al.*,

         *Defendant-Intervenors.*

Case No. 5:26-cv-00582-R

**PLAINTIFFS' REPLY TO
MOORE INTERVENORS'
OPPOSITION TO PLAINTIFFS'
MOTION FOR PRELIMINARY
INJUNCTION**

Robert G. McCampbell
  OBA No. 10390
David A. Herber
  OBA No. 33527
GABLEGOTWALS
499 W. Sheridan Ave., Ste. 2200
Oklahoma City, OK 73102
(405) 235-5500
*RMcCampbell@Gablelaw.com*
*DHerber@Gablelaw.com*

Eric S. Baxter
  DC Bar No. 479221
Eric C. Rassbach
  TX Bar No. 24013375
Daniel L. Chen
  DC Bar No. 1781783
Benjamin A. Fleshman
  DC Bar No. 1781280
Phillip J. Allevato*
  CA Bar No. 362581
Siena A. Marcelle
  DC Bar No. 90043763
THE BECKET FUND FOR RELIGIOUS LIBERTY
1919 Pennsylvania Ave. NW, Ste. 400
Washington, DC 20006
(202) 955-0095
*ebaxter@becketfund.org*

*\*Not a member of the DC Bar; admitted in
California. Practice limited to cases in
federal court.*

*Attorneys for Plaintiffs*

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................ iii

INTRODUCTION ............................................................................................................... 1

ARGUMENT ....................................................................................................................... 1

    I.   *Carson* supports Plaintiffs. .................................................................................... 1

    II.  Federalism does not require deference to Oklahoma
         on whether its charter schools are state actors. ..................................................... 4

    III. Moore Intervenors' remaining arguments fail. ...................................................... 6

CONCLUSION .................................................................................................................. 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Awad v. Ziriax*,
  670 F.3d 1111 (10th Cir. 2012) ........................................................................ 10

*Barrios-Velazquez v. Asociacion de Empleados*,
  84 F.3d 487 (1st Cir. 1996) ................................................................................ 9

*Biden v. Nebraska*,
  600 U.S. 477 (2023) ........................................................................................ 7, 8

*Carson v. Makin*,
  596 U.S. 767 (2022) ........................................................................................ 1, 2

*Caviness v. Horizon Cmty. Learning Ctr., Inc.*,
  590 F.3d 806 (9th Cir. 2010) ............................................................................. 4

*Dep't of Transp. v. Ass'n of Am. Railroads*,
  575 U.S. 43 (2015) ............................................................................................. 8

*Does 1-11 v. Bd. of Regents of Univ. of Colo.*,
  100 F.4th 1251 (10th Cir. 2024) ...................................................................... 10

*Jackson Cnty. Emergency Med. Serv. Dist. v. Kirkland*,
  543 P.3d 1219 (Okla. 2024) ............................................................................... 3

*Kerpen v. Metro. Wash. Airport Auth.*,
  907 F.3d 152 (4th Cir. 2018) ............................................................................. 9

*Lebron v. Nat'l R.R. Passenger Corp.*,
  513 U.S. 374 (1995) ................................................................................... *passim*

*Manhattan Cmty. Access Corp. v. Halleck*,
  587 U.S. 802 (2019) ........................................................................................... 4

*Meridian Invs., Inc. v. Fed. Home Loan Mortg. Corp.*,
  855 F.3d 573 (4th Cir. 2017) ............................................................................. 9

*Milonas v. Williams*,
  691 F.2d 931 (10th Cir. 1982) ........................................................................... 6

*Peltier v. Charter Day Sch., Inc.*,
   37 F.4th 104 (4th Cir. 2022) ................................................................................ 5

*Rendell-Baker v. Kohn*,
   457 U.S. 830 (1982) ............................................................................................. 7

*Robert S. v. Stetson Sch., Inc.*,
   256 F.3d 159 (3d Cir. 2001) ................................................................................. 7

*S.F. Arts & Athletics, Inc. v. U.S. Olympic Comm.*,
   483 U.S. 522 (1987) ............................................................................................. 8

*Drummond ex rel. State v. Okla. Statewide Virtual Charter Sch. Bd.*,
   558 P.3d 1 (Okla. 2024) ....................................................................................... 5

*TMJ Implants, Inc. v. Aetna, Inc.*,
   498 F.3d 1175 (10th Cir. 2007) ........................................................................... 5

*Wittner v. Banner Health*,
   720 F.3d 770 (10th Cir. 2013) ............................................................................. 7

## Statutes

Okla. Stat. Ann. tit. 51, § 152 .................................................................................. 3

Okla. Stat. Ann. tit. 51, § 152.2 ............................................................................... 3

Okla. Stat. Ann. tit. 70, § 3-131 ............................................................................... 5

Okla. Stat. Ann. tit. 70, § 3-132.2 ............................................................................ 3

Okla. Stat. Ann. tit. 70, § 3-134 ........................................................................... 8, 9

Okla. Stat. Ann. tit. 70, § 3-136 .......................................................................*passim*

**INTRODUCTION**

Moore Intervenors oppose Ben Gamla's Motion for Preliminary Injunction, Dkt. 94 ("Opp."), on three bases: that (1) *Carson v. Makin* established a definitive legal test for public schools, (2) notions of federalism require federal courts to defer to Oklahoma law even on matters concerning the *federal* Constitution, and (3) Oklahoma charter schools are either state actors or governmental entities. Each argument is as flawed as the next.

First, *Carson* did not provide a one-size-fits-all constitutional definition of public schools, and Moore Intervenors' novel test seeks to evade established precedents concerning state action and governmental entities. Second, federalism provides no shield to Oklahoma's blatant religious discrimination. And third, Intervenors' state-actor and governmental-entity arguments misconstrue precedents and are meritless. This Court should grant Plaintiffs' request for a preliminary injunction.

**ARGUMENT**

**I. *Carson* supports Plaintiffs.**

*Carson v. Makin* prohibits Oklahoma from opening a public-funding program and then categorically denying religious schools access to that program. 596 U.S. 767, 789 (2022). Yet Moore Intervenors attempt to argue that *Carson* supports them, asserting that there, the Supreme Court constitutionalized the definition of a "public school." Opp. at 4-6. *Carson* did no such thing.

To make their case, Moore Intervenors seize upon dicta from *Carson*. They rely heavily on the line that "Maine may provide a strictly secular education in its public schools," *Carson*, 596 U.S. at 785, to argue that Oklahoma charter schools must be nonsectarian.

1

Opp. at 5-6. But the use of the possessive "its" makes clear that the Court was discussing Maine's own government-run schools. *Carson*, 596 U.S. at 785. Nothing in the opinion suggests that the Court was discussing *privately* run charter schools as opposed to some common characteristics of prototypical government-run public schools.

Next, Moore Intervenors cobble together a five-factor test purportedly based on *Carson*. *See* Opp. at 6-8 (admission standards, free of charge, curriculum standards, teacher credentialing requirements, and single-sex admissions). It's not difficult to see why Moore Intervenors prefer this test. They cannot show that Oklahoma charter schools meet the stringent state-action and government-entities tests. *See infra*, Part III. So they seek to circumvent those standards and water them down.

*Carson* provides no justification for doing so. *Carson* merely noted certain factual distinctions between Maine's traditional public schools and the private schools participating in the tuition-assistance program. 596 U.S. at 783. The Court didn't mention many other characteristics of public schools, much less constitutionalize a universal public-school definition.

Indeed, Moore Intervenors' novel test conveniently ignores the central feature of public schools: government operation. But Ben Gamla will not be government operated. It will instead be run by a private board, made up entirely of private individuals, as required by statute. Okla. Stat. Ann. tit. 70 § 3-136(A)(7). And, as a charter school it is exempt from teacher-certification requirements, and other "statutes and rules" governing public schools. *Id.* § 3-136(A)(1). If Moore Intervenors' legal test cannot account for that salient characteristic, it is of little value.

2

Moreover, though Moore Intervenors purport to anchor their test in *Carson*, they add four additional factors absent from *Carson*: statutory labels, state tort immunity, compliance with sunshine laws, and due process regulations. Even assuming these factors are relevant, none render Ben Gamla a public school.

First, Moore Intervenors rest on the OCSA's statutory label. Opp. at 6 (citing Okla. Stat. Ann. tit. 70, § 3-132.2). But again, a legislative "label" is not determinative and does not alter "what the Constitution regards as the Government." *Lebron v. Nat'l R.R. Passenger Corp.*, 513 U.S. 374, 392-93 (1995); Dkt. 11 at 17-18 ("Mot.").

Second, simply sharing state tort immunity is not enough to transform charter schools into public schools or state actors. Many other undisputably private actors similarly possess such immunity. *E.g.*, Okla. Stat. Ann. tit. 51, § 152.2(A)(3) ("charitable health care provider[s]"); *id.* § 152(12)(f) ("water supply and sewage disposal facilities"); *id.* § 152(12)(j) ("volunteer … fire department[s]"); *id.* § 152(12)(o) ("youth services agenc[ies]"); *id.* § 152(12)(q) ("child-placing agenc[ies]"). The Oklahoma Supreme Court has held that the Oklahoma Tort Claims Act applies to a nonpublic "emergency medical district" "organized by … private citizen[s]," "governed by its own board," and performing functions unrelated to "the administration of government." *Jackson Cnty. Emergency Med. Serv. Dist. v. Kirkland*, 543 P.3d 1219, 1225, 1227 (Okla. 2024). Thus, state tort immunity is insufficient to render Ben Gamla a public school.

Third, compliance with the Open Meeting Act does not make Ben Gamla a public school. Oklahoma Attorney General Opinions affirm that nonpublic entities may still be required to comply with the Open Meeting Act. *See, e.g.*, 2020 OK AG 2 ¶¶ 6-9; 2002 OK

3

AG 37 ¶ 2. Private entities "supported in whole or in part by public funds or entrusted with the expending of public funds," may well be subject to the Open Meeting Act, and any private entity may also enter a contract that "contain[s] a provision which makes a private organization subject to [Oklahoma's Open Meeting Act]." 2002 OK AG 37 ¶ 19. And indeed, the Ninth Circuit held that Arizona charter schools are not state actors, even though they were "subject to [the State's] Open Meetings Act." *Caviness v. Horizon Cmty. Learning Ctr., Inc.*, 590 F.3d 806, 809, 813-14 (9th Cir. 2010).

Finally, due process regulations for students are similarly irrelevant. Again, "being regulated by the State does not make one a state actor." *Manhattan Cmty. Access Corp. v. Halleck*, 587 U.S. 802, 816 (2019). And this is especially true as Oklahoma charter schools are largely exempted "from all statutes and rules" that apply to traditional public schools. Okla. Stat. Ann. tit. 70, § 3-136(A)(1).

In short, neither *Carson* nor Moore Intervenors' grab-bag of arguments supports their position that Oklahoma charter schools are public schools.

## II.  Federalism does not require deference to Oklahoma on whether its charter schools are state actors.

Moore Intervenors' argument that "Oklahoma is entitled to deference in structuring its public school system," Opp. at 9, begs the question. Plaintiffs do not dispute that states have primary authority over public schools. The question here is whether charter schools are public in the first place. Intervenors have no real argument beyond Oklahoma's say-so. Opp. at 11-12, 13. That is not enough. *Lebron*, 513 U.S. at 392.

Moore Intervenors rely on *Peltier v. Charter Day School, Inc.*, Opp. at 10-11, but *Peltier* was wrongly decided. 37 F.4th 104, 137 (4th Cir. 2022) (Quattlebaum, Richardson, Rushing, Wilkinson, Niemeyer, & Agee, JJ., dissenting). It turned private schools public only by breaking with every other circuit court having addressed the issue and by "misconstruing and ignoring the principles provided by the Supreme Court." *Id*. at 145. But even if *Peltier* were right, it's distinguishable. *Peltier* held that "educational philosophy" was the aspect of North Carolina charters that remained public. *Id*. at 120, 121-22. But in Oklahoma, the OCSA explicitly grants charter schools authority to provide "additional academic choices for parents and students," including via "a curriculum which emphasizes a specific learning philosophy or style or certain subject areas." Okla. Stat. Ann. tit. 70, §§ 3-131, 3-136(A)(3).

Moore Intervenors also point to the Oklahoma Supreme Court's decision in *Drummond ex rel. State v. Oklahoma Statewide Virtual Charter School Board*, 558 P.3d 1 (Okla. 2024), and ask for deference. Opp. at 13. But *Drummond* is wrong, *see* Mot. at 13-19, and "[a] federal court … owes no deference to state-court interpretation of the United States Constitution." *TMJ Implants, Inc. v. Aetna, Inc.*, 498 F.3d 1175, 1181 (10th Cir. 2007).

Moore Intervenors also cite Oklahoma Attorney General Opinions, Opp. at 12, but a passing comment that charter schools are "part of the public school system" also deserves no deference, especially where a subsequent Attorney General directly addressed the question at issue here and concluded that *Rendell-Baker* "counsel[s] strongly toward … finding that Oklahoma charter schools are not state actors." Dkt. 63-1, Ex. 1-A at 13; *see id.* at 14 ("The State cannot enlist private organizations to 'promote a diversity

5

of educational choices' and then decide that … religion is the wrong kind of diversity.").[1]

Nor is it relevant that Attorney General Pruitt described charter schools as a "concurrent system" to public schools, *see* 2015 OK AG 11 ¶ 1, when he filed multiple amicus briefs supporting St. Isidore and the Board at the Supreme Court. *See, e.g.*, Brief of Amici Curiae Former Oklahoma Attorneys General in Support of Petitioners, *Okla. Statewide Charter Sch. Bd. v. Drummond*, No. 24-394 (U.S. Mar. 12, 2025), 2025 WL 836651. In short, federalism provides no reason to withhold injunctive relief.

### III. Moore Intervenors' remaining arguments fail.

Moore Intervenors insist that Ben Gamla is either a state actor or a governmental entity and that Ben Gamla cannot satisfy the remaining injunctive factors. They're wrong.

***Charter schools are not state actors.*** Moore Intervenors largely rehash the same arguments as Taxpayer Intervenors. *See* Opp. at 14-18; Dkt. 62-1 at 15-19. They fail for the same reasons. *See* Dkt. 99 at 8-10; Mot. at 15-17.

Moore Intervenors' other state-action arguments are meritless. They claim that the Tenth Circuit has already established that charter schools are state actors. Opp. at 14-15. As previously explained, all those cases suffer from significant defects. Dkt. 99 at 9. *Milonas v. Williams*, the only case not previously discussed, is easily distinguishable, as the so-called school there was also a "correctional and detention facility" where many students "were placed at the school involuntarily by juvenile courts and other state agencies." 691 F.2d 931, 935, 940 (10th Cir. 1982). Indeed, the Tenth Circuit and other

---

[1]  Though this Attorney General Opinion was withdrawn by Attorney General Drummond, that simply means that no deference is warranted to any state position.

courts have distinguished *Milonas* on this basis. *See, e.g.*, *Wittner v. Banner Health*, 720 F.3d 770, 779 (10th Cir. 2013); *Robert S. v. Stetson Sch., Inc.*, 256 F.3d 159, 168 (3d Cir. 2001). Here, *Milonas* doesn't apply, as no student is involuntarily placed in Ben Gamla and no government actor encourages Ben Gamla's religious exercise. Mot. at 15-16.

Moore Intervenors also assert that *Rendell-Baker v. Kohn* shows that Ben Gamla is a state actor. Opp. at 15-16. But that is an odd claim, as the Supreme Court made clear that a private school does not morph into a state actor even if it receives 99% of its funding from public sources, operates under "extensive regulation," and performs the "public function" of education. *Rendell-Baker v. Kohn*, 457 U.S. 830, 832, 840-42 (1982). Rather, the school there was a "private institution … operated by a board of directors, none of whom [were] public officials or [were] chosen by public officials." *Id.* at 832. That describes Ben Gamla too. Mot. at 13-14.

***Charter schools are not governmental entities.*** Oklahoma charter schools also possess none of the hallmarks of government entities. *See* Dkt. 99 at 6-8.

Like Taxpayer Intervenors, Moore Intervenors rely heavily on *Lebron v. National Railroad Passenger Corp.*, 513 U.S. 374 (1995) and *Biden v. Nebraska*, 600 U.S. 477 (2023). But those cases only underscore how far off the mark Moore Intervenors' arguments are.

For example, contrast the creation of the entities in *Lebron* and *Biden* with the creation of a charter school. In *Lebron*, Amtrak was specifically "created by a special statute." 513 U.S. at 397. In *Biden*, "Missouri created MOHELA as a nonprofit government corporation" through its own special statute. 600 U.S. at 489. But no Oklahoma statute *creates* a charter

school *ab initio*. Instead, private entities form, staff, and operate the school. Deutsch Decl. ¶¶ 23-26. Private actors appoint the governing board. State law then gives the Board authority to grant or deny a charter application. *See* Okla. Stat. Ann. tit. 70, § 3-134(C).

Moore Intervenors acknowledge all this, yet they argue that the need to obtain a charter is synonymous with government creation. *See* Opp. at 19. That would mean that any entity that requires government approval is somehow "created" by the state. But the Supreme Court rejected that argument in *San Francisco Arts & Athletics, Inc. v. U.S. Olympic Committee*, explaining that the "fact that Congress granted [the U.S. Olympic Committee] a corporate charter does not render the USOC a Government agent. All corporations act under charters granted by a government, usually by a State. They do not thereby lose their essentially private character." 483 U.S. 522, 543-44 (1987). The same is true here: Oklahoma does not *create* a school simply by approving its charter.

Moore Intervenors fare no better on their argument that Oklahoma controls charter schools. Here, too, *Lebron* and *Biden* illustrate what is lacking. In *Lebron*, the government exerted control both by direct control of the board—six of the nine members of the governing board were "appointed directly by the President of the United States," 513 U.S. at 385—and by statutorily "specify[ing] many of [Amtrak's] day-to-day operations," *Dep't of Transp. v. Ass'n of Am. Railroads*, 575 U.S. 43, 55 (2015). The same was true in *Biden*. Missouri maintained control over MOHELA because its board members were "state officials" or "appointed by the Governor and approved by the Senate." *Biden*, 600 U.S. at 490.

Unlike in *Lebron* and *Biden*, charter schools are governed by private boards of their own choosing, not government officials appointed by the government. Okla. Stat. Ann. tit. 70, § 3-136(A)(7). Multiple courts have held that *Lebron* does not apply where the governing board is not directly appointed or controlled by the government. *See, e.g.*, *Barrios-Velazquez v. Asociacion de Empleados*, 84 F.3d 487, 492 (1st Cir. 1996); *Meridian Invs., Inc. v. Fed. Home Loan Mortg. Corp.*, 855 F.3d 573, 579 (4th Cir. 2017).

Moore Intervenors concede that charter school boards are privately selected, but they insist that Oklahoma controls charter schools anyway. Opp. at 19. Yet they point to no statute dictating any aspect of charter school's day-to-day operations. Instead, they gesture at a list of general regulatory requirements—such as reporting and minimum performance requirements—that charter schools must comply with. *Id.* at 19-20. But simple regulatory "influence is not sufficient; to satisfy this prong[,] the … government must be the 'policymaker' for the entity, rather than simply an influential stakeholder." *Kerpen v. Metro. Wash. Airport Auth.*, 907 F.3d 152, 158 (4th Cir. 2018) (quoting *Lebron*, 513 U.S. at 399). Otherwise, all regulated entities would qualify as governmental actors.

Even if general regulation were enough, Moore Intervenors' argument would still fail because charter schools in Oklahoma are exempt from the vast majority of public-school regulations. *See* Okla. Stat Ann. tit. 70, § 3-136(A)(1). Indeed, private chartering organizations control the actual "education program[s]," curriculum, disciplinary procedures, enrollment policies, and many other aspects of a charter school's daily operations. *See* Okla. Stat Ann. tit. 70, §§ 3-136(A)(3), 3-134(B)(17)-(18). In other words, charter schools have far more autonomy in their operations than public schools do—and

9

far more than the entities in *Lebron* and *Biden* had. Ben Gamla is therefore not a governmental entity.

***Ben Gamla satisfies the remaining injunction factors.*** Even if this Court holds that Plaintiffs seek an injunction that "alters the status quo," Opp. at 21, they have met that standard. Ben Gamla is a private actor and not engaged in state action, so the nonsectarian requirement violates its constitutional rights, and the other injunction factors automatically favor relief. *Awad v. Ziriax*, 670 F.3d 1111, 1131 (10th Cir. 2012). In any event, "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Does 1-11 v. Bd. of Regents of Univ. of Colo.*, 100 F.4th 1251, 1274 (10th Cir. 2024). And the harm is also irreparable because Ben Gamla is prevented from educating children and advancing its religious mission. Mot. at 22-23.

The balance of equities and the public interest also favor an injunction, as "it is always in the public interest to prevent the violation of a party's constitutional rights." *Awad*, 670 F.3d at 1132 (10th Cir. 2012). Moore Intervenors' alleged rights are no reason to withhold relief. They identify at most an indirect (and unlikely) impact on some school accommodations that may be remediable through other means. That contingent interest is thus not comparable to the direct burden on Ben Gamla's exercise of religion. Moreover, those rights exist only if the charter schools are indeed state actors, so if this Court rules in Plaintiffs' favor, then Plaintiffs' rights must necessarily prevail over Moore Intervenors'.

## CONCLUSION

This Court should grant Plaintiffs' motion for a preliminary injunction.

Dated: July 1, 2026

Robert G. McCampbell
    OBA No. 10390
David A. Herber
    OBA No. 33527
GABLEGOTWALS
499 W. Sheridan Ave., Ste. 2200
Oklahoma City, OK 73102
(405) 235-5500
*RMcCampbell@Gablelaw.com*
*DHerber@Gablelaw.com*

Respectfully submitted,

/s/ Eric S. Baxter
Eric S. Baxter
    DC Bar No. 479221
Eric C. Rassbach
    TX Bar No. 24013375
Daniel L. Chen
    DC Bar No. 1781783
Benjamin A. Fleshman
    DC Bar No. 1781280
Phillip J. Allevato*
    CA Bar No. 362581
Siena A. Marcelle
    DC Bar No. 90043763
THE BECKET FUND FOR RELIGIOUS LIBERTY
1919 Pennsylvania Ave. NW, Ste. 400
Washington, DC 20006
(202) 955-0095
*ebaxter@becketfund.org*

*\*Not a member of the DC Bar; admitted in California. Practice limited to cases in federal court.*

*Attorneys for Plaintiffs*

11