## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

THE NATIONAL BEN GAMLA JEWISH
CHARTER SCHOOL FOUNDATION, INC.,
*et al.*,

        *Plaintiffs*,

    v.

BRIAN T. SHELLEM, in his official capacity as
Chairman of the Oklahoma Statewide Charter
School Board, *et al.*,

        *Defendants*,

RABBI DANIEL KAIMAN, *et al.*,

        *Defendant-Intervenors*,

CRICKET MOORE, *et al.*,

        *Defendant-Intervenors.*

Case No. 5:26-cv-00582-R

**PLAINTIFFS' MOTION TO
STAY DISCOVERY AND
BRIEF IN SUPPORT**

Robert G. McCampbell
  OBA No. 10390
David A. Herber
  OBA No. 33527
GABLEGOTWALS
499 W. Sheridan Ave., Ste. 2200
Oklahoma City, OK 73102
(405) 235-5500
*RMcCampbell@Gablelaw.com*
*DHerber@Gablelaw.com*

Daniel L. Chen
  DC Bar No. 1781783
Eric S. Baxter
  DC Bar No. 479221
Eric C. Rassbach
  TX Bar No. 24013375
Benjamin A. Fleshman
  DC Bar No. 1781280
Phillip J. Allevato*
  CA Bar No. 362581
Siena A. Marcelle
  DC Bar No. 90043763
THE BECKET FUND FOR RELIGIOUS LIBERTY
1919 Pennsylvania Ave. NW, Ste. 400
Washington, DC 20006
(202) 955-0095
*ebaxter@becketfund.org*

**Not a member of the DC Bar; admitted in
California. Practice limited to cases in
federal court.*

*Attorneys for Plaintiffs*

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................. ii

INTRODUCTION ............................................................................................................... 1

FACTUAL BACKGROUND .............................................................................................. 2

LEGAL STANDARD ......................................................................................................... 4

ARGUMENT ...................................................................................................................... 5

I.   No discovery is needed to resolve the purely legal issue in this case ........................... 5

II.  At minimum, this Court for efficiency reasons should stay discovery
     pending resolution of Plaintiffs' motion for preliminary injunction. ......................... 11

CONCLUSION ................................................................................................................. 14

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Alzheimer's Inst. of Am. v. Comentis, Inc.*,
   No. 09-cv-1366, 2010 WL 11508734 (W.D. Okla. Dec. 17, 2010) ........................ 5, 11

*Ams. for Prosperity Found. v. Bonta*,
   594 U.S. 595 (2021) ...................................................................................................... 13

*Arapahoe Cnty. Public Airport Auth. v. FAA*,
   242 F.3d 1213 (10th Cir. 2001) ................................................................................. 9, 10

*Brentwood Acad. v. Tennessee Secondary Sch. Athl. Ass'n*,
   531 U.S. 288 (2001) .......................................................................................................... 6

*Central Kansas Credit Union v. Mutual Guar. Corp.*,
   102 F.3d 1097 (10th Cir. 1996) ........................................................................................ 9

*Drummond v. Okla. Statewide Charter Sch. Bd.*,
   No. CV-2026-649 (Okla. Cnty. Dist. Ct. Mar. 11, 2026) ............................................. 10

*Evergreen Holdings, Inc. v. Sequoia Global, Inc.*,
   No. 08-cv-776, 2008 WL 4723008 (W.D. Okla. Oct. 23, 2008) ................................... 11

*First Choice Women's Res. Ctrs., Inc. v. Davenport*,
   146 S. Ct. 1114 (2026) .................................................................................................... 13

*Freeman v. Cmty. Strategies, Inc.*,
   No. 25-cv-170, 2025 WL 2345090 (W.D. Okla. July 7, 2025) ...................................... 4

*Graham v. Gray*,
   827 F.2d 679 (10th Cir. 1987) .......................................................................................... 4

*Hollingsworth v. Perry*,
   570 U.S. 693 (2013) ........................................................................................................ 12

*Hutchinson v. Pfeil*,
   211 F.3d 515 (10th Cir. 2000) ........................................................................................ 11

*Landis v. N. Am. Co.*,
   299 U.S. 248 (1936) ....................................................................................................... 4-5

*Lebron v. Nat'l R.R. Passenger Corp.*,
    513 U.S. 374 (1995) ............................................................................................... 6

*Lugar v. Edmondson Oil Co.*,
    457 U.S. 922 (1982) ............................................................................................... 5

*Macias v. N.M. Dep't of Lab.*,
    21 F.3d 366 (10th Cir. 1994) ................................................................................ 9

*Mahmoud v. Taylor*,
    606 U.S. 522 (2025) ............................................................................................. 14

*Manhattan Cmty. Access Corp. v. Halleck*,
    587 U.S. 802 (2019) ............................................................................................... 6

*Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. Jacksonville*,
    508 U.S. 656 (1993) ............................................................................................... 8

*OKPLAC, Inc. v. Statewide Virtual Charter Sch. Bd.*,
    No. CV-2023-1857 (Okla. Cnty. Dist. Ct. Jan. 18, 2024) ................................... 10

*Petrus v. Bowen*,
    833 F.2d 581 (5th Cir. 1987) ............................................................................... 11

*Rendell-Baker v. Kohn*,
    457 U.S. 830 (1982) ............................................................................................... 5

*Roe No. 2 v. Ogden*,
    253 F.3d 1225 (10th Cir. 2001) ............................................................................ 8

*Samuels v. Baldwin*,
    No. 14-cv-2588, 2015 WL 232121 (D. Colo. Jan. 16, 2015) .............................. 11

**Statutes**

Okla. Stat. Ann. tit. 70 § 3-136 ................................................................................. 6

**Other Authorities**

Okla. Admin. Code § 777:10-3-3 ......................................................................... 7, 8

**INTRODUCTION**

This case is about whether charter schools are state actors—a purely legal question. Plaintiffs and the Charter Board Defendants thus agree that no discovery is needed for this lawsuit at all. And the Moore Intervenors concur that, even if discovery is needed, it should be stayed pending resolution of Plaintiffs' motion for preliminary injunction. Yet the Taxpayer Intervenors want to force extensive discovery on matters entirely irrelevant to the sole issue in this case: whether charter schools are state actors.

Taxpayer Intervenors' argument for discovery is paper thin. They concede that discovery is not needed for the merits of the preliminary injunction. Their opposition brief makes legal arguments only and identifies no issues of fact. Instead, Taxpayer Intervenors contend discovery is relevant to standing. They argue that information about Ben Gamla's corporate documents and donors, its admission, discipline, and hiring policies, its class syllabi and curricula, and its religious views on marriage and sexuality will somehow disclose that Plaintiffs are not, in fact, "able and ready" to establish a charter school.

That argument is a nonstarter for several reasons. First, Taxpayer Intervenors are wrong on the law. The Oklahoma Charter School Act's (OCSA) absolute bar against Plaintiffs because of their religion is alone sufficient for standing. Second, even if that weren't true, only the Charter Board can decide whether Plaintiffs are qualified for a charter under the OCSA. This Court cannot second guess that state-law decision, and Taxpayer Intervenors are barred from expanding this lawsuit to challenge it.

Moreover, granting discovery will open a flood of motion practice, unnecessarily burdening this Court's and the parties' resources. Plaintiffs have extensive constitutional

1

and proportionality objections to Taxpayer Intervenors' discovery requests—including their requests seeking disclosure of Plaintiffs' donors and probing their religious practices, which are irrelevant to standing. Even the requests for Plaintiffs' school curricula and policies are improper as they are considered by the Board at a later stage of the proceeding—a stage to which Plaintiffs can never progress due to the OCSA's religious bar.

For all these reasons, discovery is irrelevant, prejudicial, and unduly burdensome. This Court should accordingly stay all discovery or—at minimum—stay it pending resolution of Plaintiffs' motion for preliminary injunction, including any appeals.

## FACTUAL BACKGROUND

In December 2025, Plaintiffs submitted to the Board an application for authorization to establish the Ben Gamla Jewish Charter School. *See generally* Dkt. 1-2. Ben Gamla's purpose is to provide interested Oklahoma students a stellar education with a cultural and ethical grounding in the Jewish faith, heritage, and tradition. *Id.* at 5. Plaintiffs believe that because G-d created the universe and orders all within it, a Jewish perspective should permeate all subjects and unify all knowledge. *Id.* at 4. Thus, as part of Ben Gamla's distinctive mission, students will receive instruction in Jewish religion, culture, values, rituals, texts, holidays, and practices. *Id.* at 5.

Initially, the Board voted unanimously to reject Plaintiffs' application for a variety of reasons, including Ben Gamla's religious identity. Dkt. 1-4 at 2-3. In response, Plaintiffs submitted an addendum, addressing all the Board concerns, except Ben Gamla's religious nature. *See generally* Dkt. 1-5. Upon reviewing the addendum, the Board concluded that

Plaintiffs had adequately resolved all substantive concerns, yet again unanimously denied the application. Dkt. 1-6. Citing the OCSA and the Oklahoma Supreme Court's decision in *Drummond*, the Board concluded that, "[u]nder Oklahoma law, a charter school is a public school and, as such, must be nonsectarian." *Id.*

Plaintiffs sued. Dkt. 1. Contending that the OCSA's religious bar violates the U.S. Constitution's Free Exercise and Equal Protection Clauses, Plaintiffs also moved for a preliminary injunction. Dkts. 10-11. Taxpayer Intervenors then sought intervention to defend the OCSA's nonsectarian requirement. The Moore Intervenors followed with a motion to intervene of their own.

After this Court granted both motions to intervene, Taxpayer Intervenors immediately pushed for a Rule 26(f) discovery conference. At that conference, Plaintiffs, the Board, and the Moore Intervenors all agreed that discovery and any proposed scheduling were premature. But the Taxpayer Intervenors forged ahead. Within two days, they had served expansive discovery requests on both Plaintiffs and the Board, including demands for the personal contact information of all former and current board members of Plaintiff National Ben Gamla Jewish Charter School Foundation, Inc. (not just the Oklahoma school); all persons involved in the decision to create Ben Gamla; and all donors who have or intend to provide more than $5,000 to Ben Gamla. They also seek information about Plaintiffs' religious beliefs and practices and Ben Gamla's operational policies. Dkt. 107 at 8-9. At Taxpayer Intervenors' continued insistence, the parties filed a Joint Status Report on July 14. *Id.* at 1-12. In the Joint Status Report, Plaintiffs opposed discovery entirely and the Board—which had previously opposed discovery—abstained from the Report in light of

3

the Court having scheduled a status conference. *Id.* at 1, 2. The Moore Intervenors explained that they were not challenging standing and suggested that discovery was unnecessary at this time. *Id.* at 3, 7. Despite this, Taxpayer Intervenors indicated that they would still need discovery, including expert reports, with an estimated nine months to complete. *Id.* at 7; Taxpayer Intervenors Proposed Scheduling Order at 2-3 (July 15, 2026).

At the status conference held on July 16, the Court discussed the need for a preliminary-injunction hearing and heard arguments as to whether discovery should be stayed. As a result, the Court requested that Plaintiffs and the Board file a motion to stay discovery.[1] Plaintiffs' motion for preliminary injunction remains pending, with a hearing scheduled for August 5.

## LEGAL STANDARD

"[A] trial court's decision to allow or deny discovery is discretionary." *Graham v. Gray*, 827 F.2d 679, 681 (10th Cir. 1987). Courts "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including … specifying terms, including time and place … for the disclosure or discovery[.]" Fed. R. Civ. P. 26(c)(1). A district court may "stay proceedings pending before it and to control its docket for the purpose of 'economy of time and effort for itself, for counsel, and for litigants.'" *Freeman v. Cmty. Strategies, Inc.*, No. 25-cv-170, 2025 WL 2345090, at *1 (W.D. Okla. July 7, 2025) (citing *Landis v. N. Am. Co.*, 299 U.S. 248,

---

[1]   Although Plaintiffs do not believe that any discovery is warranted in this case, Plaintiffs reserve all rights to object to specific discovery requests including, but not limited to, their scope, breadth, and relevance.

254 (1936)). In deciding to stay discovery, a court considers "(1) whether a stay would promote judicial economy; (2) whether a stay would avoid confusion and inconsistent results; and (3) whether a stay would unduly prejudice the parties or create undue hardship." *Id.* (*quoting Alzheimer's Inst. of Am. v. Comentis, Inc.*, No. 09-cv-1366, 2010 WL 11508734, at *2 (W.D. Okla. Dec. 17, 2010)).

## ARGUMENT

### I.  No discovery is needed to resolve the purely legal issue in this case.

The facts regarding the submission and denial of Plaintiffs' charter application are undisputed. No party contests that Plaintiffs submitted a charter application to the Board. No party contests that the Board denied the application. And no party contests that the Board's sole reason for denying the application was Plaintiffs' failure to meet the OCSA's nonsectarian requirement.

What *is* in dispute is the legal status of Oklahoma charter schools. Intervenors insist that charter schools are governmental entities or state actors. *See* Dkt. 62-1. Plaintiffs assert that charter schools are private. *See* Dkts. 11, 99, 100. If Intervenors are correct, then Plaintiffs' have no First Amendment claims. But if Plaintiffs are correct, the Free Exercise Clause forbids Oklahoma from excluding religious schools from the charter-school program. Either way, the only thing in dispute is whether charter schools are state actors.

Resolving that question does not turn on any unknown facts. It turns on various legal tests that assess whether charter schools' actions are "fairly attributable to the State." *Rendell-Baker v. Kohn*, 457 U.S. 830, 838 (1982) (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982)). For example, the state actor analysis asks whether a charter

5

school "performs a traditional, exclusive public function." *Manhattan Cmty. Access Corp. v. Halleck*, 587 U.S. 802, 809 (2019). The question is simply whether the function charter schools perform has traditionally and exclusively been the State's prerogative—a legal question on which Taxpayer Intervenors' discovery will have no bearing.

The state actor analysis also asks whether an entity is so heavily regulated and controlled by the government that it is "entwine[d]" with the government, *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 303 (2001), or "compel[ed]" by the government "to take a particular action," *Halleck*, 587 U.S. at 809. Again, here the Court need only look at Oklahoma's charter-school regulations to determine whether they meet the governing standards for government entwinement or compulsion.

Another test—the governmental entity test—similarly requires no factual development. This test asks whether the government created the private entity (here, Ben Gamla) "by a special statute." *Lebron v. Nat'l R.R. Passenger Corp.*, 513 U.S. 374, 397 (1995). The Court need only look at the Oklahoma Charter School Act to see there is no such "special statute" creating any charter school. No discovery is needed.

Additionally, like the state actor test, the governmental entity test asks about governmental control over the entity—specifically, whether the governing board is created or controlled by the government. *See id.* at 385. But here, it is undisputed that Oklahoma Law requires charter schools to appoint their own independent governing board. *See* Okla. Stat. Ann. tit. 70, § 3-136(A)(7). In short, all of the facts necessary to resolve the central legal issue in this case are undisputed and already before the Court.

Indeed, Taxpayer Intervenors have raised no facts relevant to whether Oklahoma charter schools are state actors. Instead, they suggest discovery is necessary to evaluate Plaintiffs' standing. They claim Plaintiffs cannot challenge the OCSA's religious bar because, in their view, Plaintiffs might not be able to satisfy other statutory requirements regarding school bylaws, personnel, or curricular choices. Dkt. 62-1 at 5-6. Taxpayer Intervenors are wrong.

For one thing, Taxpayer Intervenors' desired information is irrelevant to Ben Gamla's denial at the outset of Oklahoma's multi-step charter school application process. Under the newest regulations (and the ones Plaintiffs were subject to), there are three steps to the process: (1) the Pre-application Phase, (2) the Phase 1 charter application, and (3) the Phase 2 ready-to-open application. In the Pre-application Phase, the applicant submits a letter of intent laying out its vision and mission, educational model, community engagement efforts, and governing board. *See* Okla. Admin. Code § 777:10-3-3(a)(3). In Phase 1, the school's application contains additional descriptions of the school's governing board and founding team, its educational model, and implementation plan. *See id.* § 777:10-3-3(b). But that phase necessarily only involves a preliminary assessment and results only in initial approval of the application. Afterwards, the parties must still negotiate and execute a charter contract. Only then does an applicant enter Phase 2 of the process, where the Board and applicant work to make sure the school is ready to open by developing specific plans regarding finances, academic offerings, and organizational capacity. *See id.* § 777:10-3-3(c). Final approval for a school opening is dependent on successfully fulfilling these Phase

2 ready-to-open requirements. *Id.* ("The Ready-to-Open requirements must be fulfilled to attain final approval for school opening.").

Plaintiffs' application was rejected during *Phase 1* because of its religious identity; but the information Taxpayer Intervenors claim is necessary to establish standing is not addressed until *Phase 2* of the process, where the Board and applicant develop specific operation plans. The discovery Taxpayer Intervenors seek thus has no bearing on whether Plaintiffs can challenge the Board's religiously discriminatory rejection of their application in Phase 1.

Even if the information Taxpayer Intervenors seek were related to the correct phase of the application process, their theory of standing misreads Tenth Circuit and Supreme Court caselaw. As Plaintiffs have already explained, Dkt. 99 at 2-5, Plaintiffs only need show that they (1) belong to the correct class of entities that can apply for Charter schools (which they do), *Roe # 2 v. Ogden*, 253 F.3d 1225, 1230 (10th Cir. 2001), (2) that they are "able and ready to" apply (which they are—and have already done), and (3) "that a discriminatory policy prevents [them] from doing so on an equal basis" (which is true). *Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. Jacksonville*, 508 U.S. 656, 666 (1993). Having already been rejected based on religion, their standing is easily established. *Id.* (standing established by "denial of equal treatment resulting from the imposition of the barrier, not the ultimate inability to obtain the benefit").

But even if Taxpayer Intervenors' theory of standing were correct, they would not be entitled to discovery beyond what is already in the administrative record. To the extent Taxpayer Intervenors believe that the evidence before the Board establishes Plaintiffs'

8

inability to meet OCSA criteria, *see* Dkt. 62-1 at 5-6 (identifying record evidence Taxpayer Intervenors believe defeats Plaintiffs' standing), that conflicts with the Board's own determination, *see* Dkt. 11 (describing Board's reasoning and citing record evidence). And this Court must "give deference to a state administrative agency's interpretation and application of a state statute which it is charged with administering." *Macias v. N.M. Dep't of Lab.*, 21 F.3d 366, 369 (10th Cir. 1994); *see also Cent. Kan. Credit Union v. Mut. Guar. Corp.*, 102 F.3d 1097, 1105 (10th Cir. 1996) (applying this "presumption of validity" to application of Kansas statute). That includes the Board's assessment of whether Plaintiffs met the statutory requirements based on the facts that were before it.

Such deference is especially warranted here, as denying standing would preclude Plaintiffs and every other proponent of a religious charter school from ever challenging the OCSA's religious exclusion. Plaintiffs' application has already been denied, and the additional showings demanded by Taxpayer Intervenors can be made to the Board only in Phase 2, a phase religious applicants can never reach because of the religious ban in Phase 1. But even if this Court did not give any deference to the Board's assessment of the record, no additional discovery would be needed because the record already contains the information that was before the Board when it made its decision.

Taxpayer Intervenors try to get around this by suggesting that evidence that was never before the Board in the first place *might* show that the Board was wrong in its assessment. This is an entirely theoretical position that would drastically expand the scope of this case, which an intervenor is not allowed to do. *See, e.g., Arapahoe Cnty. Pub. Airport Auth. v. FAA*, 242 F.3d 1213, 1217 n.4 (10th Cir. 2001) ("[A]s an intervening party, the City may

9

join issue only on matters brought before the court by the [plaintiff].”). Plaintiffs have challenged only the OCSA's religious exclusion as a violation of the Free Exercise and Equal Protection Clauses. But Taxpayer Intervenors' arguments "as a whole, are directed toward [Plaintiffs'] standing"—an issue that is not an "'essential predicate[]' or substantively connected to the issues [Plaintiffs] presented in" their case. *Id.* Taxpayer Intervenors' theoretical concerns over Plaintiffs' ability to satisfy statutory criteria would go far afield from the core legal issues presented in this case: whether Oklahoma charter schools are state actors.

Indeed, Taxpayer Intervenors' concerns more closely align with the state-court action brought by Attorney General Drummond seeking to force the Board to apply the Act as he thinks it should be applied. *See Drummond v. Okla. Statewide Charter Sch. Bd.*, No. CV-2026-649 (Okla. Cnty. Dist. Ct. Mar. 11, 2026). If Taxpayer Intervenors are concerned with the way the Board applied the Act here, then they should have brought their own lawsuit,[2] or pleaded a cross-claim against the Board, or even sought to join Attorney General Drummond's case. They did none of that. Instead, they dove into this case *to defend the OCSA's religious exclusion. See* Dkt. 15. Taxpayer Intervenors offer no legitimate basis for going well beyond the limits of that issue and seeking expansive and intrusive discovery into Plaintiffs' standing. This Court should accordingly hold that no

---

[2]    Indeed, counsel for Taxpayer Intervenors *did* bring a state-law mandamus action during the litigation over St. Isidore, rather than intervene in the proceedings there. *See OKPLAC, Inc. v. Statewide Virtual Charter Sch. Bd.*, No. CV-2023-1857 (Okla. Cnty. Dist. Ct. July 31, 2023).

discovery beyond what is already in the administrative record (i.e., what was actually before the Board when it made its decision) is appropriate in this case.

## II. At minimum, this Court for efficiency reasons should stay discovery pending resolution of Plaintiffs' motion for preliminary injunction.

Courts stay discovery when a stay would (1) "promote judicial economy"; (2) "avoid confusion and inconsistent results"; and (3) "unduly prejudice the parties or create undue hardship." *Alzheimer's Inst. of Am.*, 2010 WL 11508734, at *2 (citing *Evergreen Holdings, Inc. v. Sequoia Global, Inc.,* No. 08-cv-776, 2008 WL 4723008, at *2 (W.D. Okla. Oct. 23, 2008)). Such a stay is warranted here.

*Staying discovery promotes judicial economy.* Trial courts have "broad discretion and inherent power to stay discovery until preliminary questions that may dispose of the case are determined." *Petrus v. Bowen*, 833 F.2d 581, 583 (5th Cir. 1987). Indeed, courts regularly look to the "*probability* that both judicial and attorney resources will be conserved by clarifying and resolving disputed legal issues" before engaging in discovery. *Samuels v. Baldwin*, No. 14-cv-2588, 2015 WL 232121, at *3 (D. Colo. Jan. 16, 2015). Staying discovery now will promote judicial economy by allowing the Court to resolve at least two preliminary legal issues, thereby narrowing the scope of discovery (and discovery related motions) over the course of the case.

First, Taxpayer Intervenors' argument that discovery must proceed *now* rests on their theory that Plaintiffs lack standing. Standing is a "threshold issue," and its absence is "fatal" to any claim. *Hutchinson v. Pfeil*, 211 F.3d 515, 523 (10th Cir. 2000). And if the

11

Court determines that Plaintiffs do, indeed, lack standing, then it would simply dismiss this case, making all discovery conducted up to that point a waste of time and resources.

Second, the Court can resolve the question concerning the legal status of Oklahoma charter schools. If the Court determines that Oklahoma charter schools are state actors or governmental entities, then Plaintiffs' claims would fail—again rendering discovery a complete waste.

Contrary to Taxpayer Intervenors' newest position,[3] neither of these issues requires discovery to be conducted prior to deciding the motion for preliminary injunction. All of the evidence that Plaintiffs believe supports their claims is already in the administrative record and before this Court. Taxpayer Intervenors identified no factual gaps in the record when responding to Plaintiffs' motion. Thus, delaying a resolution of those legal issues to conduct discovery would only delay the relief Plaintiffs seek—or else a prompt resolution of this case under either of Taxpayer Intervenors' theories.

*Staying discovery avoids confusion and inconsistent results.* Both Plaintiffs and the Board oppose the scope of discovery from the outset. Just the first of Taxpayer Intervenors' requests for production include demands for the personal contact information for: all of Plaintiff National Ben Gamla Jewish Charter School Foundation's past and current board

---

[3]    Taxpayer Intervenors never made a request for pre-hearing discovery when they filed their response to Plaintiffs' initial preliminary injunction motion. In their response they raised standing, but did not argue that discovery was necessary at this stage. Dkt. 62. It's clear why: if they had, they would have been expanding the scope of litigation beyond its original issues, and would have had to justify their *own* standing under *Hollingsworth v. Perry*, 570 U.S. 693, 707-08 (2013).

members (not just those of the Ben Gamla school); all persons involved in the decision to create Ben Gamla; and all donors who have or intend to provide more than $5,000 to Ben Gamla. For each of these individuals, Taxpayer Intervenors demand last known home and business mailing addresses, personal and business email addresses, and home, business, and mobile telephone numbers.

These requests for production expand the scope of the case by embroiling the Court in an effort to second-guess a state agency's decision via new documents that were not before the agency when that decision was made. *See supra* pp. 8-10. Additionally, Taxpayer Intervenors' requests for donor lists and internal communications raise serious First Amendment concerns. *First Choice Women's Res. Ctrs., Inc. v. Davenport*, 146 S. Ct. 1114, 1122-24 (2026) (forcing disclosure of nonprofit's donor information is a First Amendment injury); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595, 611 (2021) (forced disclosure of nonprofit's donor information is "facially unconstitutional"). And bringing to the fore irrelevant information risks confusing the dispositive legal issue of whether Oklahoma charter schools are state actors. The proposed discovery is not warranted at all, and certainly not at this stage in the litigation.

*Staying discovery does not prejudice or cause undue hardship to any parties.* No party would be harmed by a brief stay of discovery. Indeed, the stay will benefit the parties by narrowing the scope (and thus the burdens and cost) of discovery. The only parties pushing for immediate discovery—Taxpayer Intervenors—haven't identified any way in which a stay would burden them. Indeed, in opposing Plaintiffs' motion for preliminary injunction, Taxpayer Intervenors never even suggested that discovery into standing was necessary to

13

decide that question. The Court does not need any additional discovery before the preliminary injunction is decided, and—even if discovery were somehow relevant—all of the information Taxpayer Intervenors seek will still be available after the preliminary injunction motion is resolved. There is no reason that Taxpayer Intervenors need immediate and sweeping discovery.

Plaintiffs and the Board, on the other hand, would be prejudiced by being required to begin immediate discovery, particularly if the Court were to delay the resolution of Plaintiffs' motion for a preliminary injunction. The drag-out nine-month discovery window that Taxpayer Intervenors suggest obliterates Plaintiffs' goal of actually opening a charter school within a reasonable time frame. *See Mahmoud v. Taylor*, 606 U.S. 522, 569 (2025) ("Loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.").

The Court can spare the parties this hardship, at the very least, until it decides the motion for preliminary injunction, while along the way conserving judicial economy, avoiding confusing the issues, and preventing undue hardship to the parties.

## CONCLUSION

The Court should hold that no discovery is necessary or, in the alternative, stay discovery in this case pending the resolution of Plaintiffs' motion for a preliminary injunction and any related interlocutory appeals.

Dated: July 24, 2026                    Respectfully submitted,

                                        */s/ Daniel L. Chen*
Robert G. McCampbell                    Daniel L. Chen
  OBA No. 10390                            DC Bar No. 1781783
David A. Herber                         Eric S. Baxter
  OBA No. 33527                            DC Bar No. 479221
GABLEGOTWALS                            Eric C. Rassbach
499 W. Sheridan Ave., Suite 2200          TX Bar No. 24013375
Oklahoma City, OK 73102                 Benjamin A. Fleshman
Tel 405-235-5500                           DC Bar No. 1781280
*RMcCampbell@Gablelaw.com*              Phillip J. Allevato*
                                           CA Bar No. 362581
                                        Siena A. Marcelle
                                           DC Bar No. 90043763
                                        THE BECKET FUND FOR RELIGIOUS LIBERTY
                                        1919 Pennsylvania Ave. NW, Ste. 400
                                        Washington, DC 20006
                                        (202) 955-0095
                                        *ebaxter@becketfund.org*

                                        *Not a member of the DC Bar; admitted in
                                        California. Practice limited to cases in
                                        federal court.*

                    *Attorneys for Plaintiffs*

15