# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF OKLAHOMA

----------------------------------------------------------    :

THE NATIONAL BEN GAMLA JEWISH
CHARTER SCHOOL FOUNDATION, INC.,
et al.,

              *Plaintiffs*,

      -against-

BRIAN T. SHELLEM, in his official capacity
as Chairman of the Statewide Charter School
Board, et al.,

              *Defendants*,

----------------------------------------------------------

RABBI DANIEL KAIMAN, et al.,

              *Intervenors.*

----------------------------------------------------------

CRICKET MOORE, et al.,

              *Intervenors.*

----------------------------------------------------------

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

Case No. 5:26-cv-00582-R

# BRIEF IN OPPOSITION
# BY INTERVENORS RABBI DANIEL KAIMAN, ET AL.,
# TO PLAINTIFFS' AND STATEWIDE CHARTER SCHOOL BOARD
# DEFENDANTS' MOTIONS TO STAY DISCOVERY

**TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................... 1

LEGAL STANDARD ............................................................................................... 2

ARGUMENT............................................................................................................. 3

    I.      Discovery is needed and relevant in this important constitutional
case ................................................................................................................ 3

            A.      This case raises important constitutional questions that
warrant a fully developed record............................................................ 3

            B.      Kaiman Intervenors need discovery relevant to both
jurisdictional and merits issues ............................................................ 5

            C.      Plaintiffs wrongly cast this case as presenting one sterile legal
question ................................................................................................... 7

            D.      Plaintiffs and the Charter Board rely on inapplicable
administrative-law doctrines ............................................................... 10

    II.     The Court should not stay discovery until resolution of Plaintiffs'
motion for a preliminary injunction and any appeal thereof...................... 14

    III.   Plaintiffs' and the Charter Board's concerns about particular
discovery requests do not support a stay of all discovery......................... 17

    IV.   The Charter Board's concern about attorneys' fees should not affect
the scope of discovery ................................................................................ 18

CONCLUSION ....................................................................................................... 19

i

**TABLE OF AUTHORITIES**

**Cases**

*Alvarado v. J.C. Penney Co.*,
997 F.2d 803 (10th Cir. 1993) ................................................................................ 12

*Arapahoe Cnty. Pub. Airport Auth. v. FAA*,
242 F.3d 1213 (10th Cir. 2001) .............................................................................. 12

*Bender v. Williamsport Area Sch. Dist.*,
475 U.S. 534 (1986)........................................................................................ 3, 4, 8, 13

*Bigby v. City of Chicago*,
927 F.2d 1426 (7th Cir. 1991) ................................................................................ 19

*Binta B. ex rel. S.A. v. Gordon*,
710 F.3d 608 (6th Cir. 2013) .................................................................................. 19

*Brat v. Personhuballah*,
883 F.3d 475 (4th Cir. 2018) .................................................................................. 19

*Cath. Charities Bureau, Inc. v. Wis. Lab. & Indus. Rev. Comm'n*,
605 U.S. 238 (2025)................................................................................................... 7

*Cent. Kan. Credit Union v. Mut. Guar. Corp.*,
102 F.3d 1097 (10th Cir. 1996) .............................................................................. 10

*Century Martial Art Supply, L.L.C. v. Dynamics World, Inc.*,
No. CIV-17-1194-M, 2018 WL 4390752 (W.D. Okla. Sept. 14, 2018)........................ 2

*Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*,
467 U.S. 837 (1984)................................................................................................. 10

*Clinton v. Jones*,
520 U.S. 681 (1997)................................................................................................... 2

*Columbus-Am. Discovery Grp. v. Atl. Mut. Ins. Co.*,
974 F.2d 450 (4th Cir. 1992) .................................................................................. 13

*Commodity Futures Trading Comm'n v. Chilcott Portfolio Mgmt., Inc.*,
713 F.2d 1477 (10th Cir. 1983) ................................................................................ 2

*Day v. Bond*,
    500 F.3d 1127 (10th Cir. 2007) ....................................................................... 9

*De Baca v. United States*,
    403 F. Supp. 3d 1098 (D.N.M. 2019) ............................................................. 2

*Democratic Party of Wash. State v. Reed*,
    388 F.3d 1281 (9th Cir. 2004) ...................................................................... 19

*Free Speech v. Fed. Election Comm'n*,
    720 F.3d 788 (10th Cir. 2013) ...................................................................... 16

*Fulton v. City of Philadelphia*,
    593 U.S. 522 (2021) ...................................................................................... 15

*Grill v. Quinn*,
    No. CIV S-10-0757 GEB, 2012 WL 174873 (E.D. Cal. Jan. 20, 2012) ...................... 11

*Hopwood v. Texas*,
    236 F.3d 256 (5th Cir. 2000) ....................................................................... 19

*In re Church of Jesus Christ of Latter-Day Saints Tithing Litig.*,
    No. 2:24-MD-03102-RJS-DAO, 2024 WL 4349160
    (D. Utah Sept. 30, 2024) ................................................................................ 2

*Indep. Fed. of Flight Attendants v. Zipes*,
    491 U.S. 754 (1989) ...................................................................................... 19

*Kane County v. United States*,
    94 F.4th 1017 (10th Cir. 2024) ..................................................................... 12

*Kennedy v. Bremerton Sch. Dist.*,
    597 U.S. 507 (2022) ........................................................................................ 7

*Lemon v. Kurtzman*,
    403 U.S. 602 (1971) ........................................................................................ 7

*Loper Bright Enter. v. Raimondo*,
    603 U.S. 369 (2024) ...................................................................................... 10

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992) ........................................................................................ 8

*Macias v. N.M. Dep't of Lab.*,
    21 F.3d 366 (10th Cir. 1994) ................................................................. 10, 11

*Mahmoud v. Taylor*,
  606 U.S. 522 (2025)................................................................................................ 7, 15

*Marshall v. Bramer*,
  828 F.2d 355 (6th Cir. 1987) ...................................................................................... 18

*Mfrs. All. Ins. Co. v. Baker*,
  No. CIV-23-1007-SLP, 2024 WL 4112782 (W.D. Okla. Sept. 6, 2024) ...................... 3

*Miccosukee Tribe of Indians of Fla. v. United States*,
  No. 08-23001-CIV, 2010 WL 337653 (S.D. Fla. Jan. 22, 2010)................................. 11

*N.M. Pharm. Ass'n v. State*,
  738 P.2d 1318 (N.M. 1987) ......................................................................................... 10

*Okla. Statewide Charter Sch. Bd. v. Drummond*,
  605 U.S. 165 (2025)....................................................................................................... 3

*Phila. Indem. Ins. Co. v. Chi. Title Ins. Co.*,
  771 F.3d 391 (7th Cir. 2014) ....................................................................................... 14

*Ross v. Bernhard*,
  396 U.S. 531 (1970)...................................................................................................... 12

*Rum Creek Coal Sales, Inc. v. Caperton*,
  31 F.3d 169 (4th Cir. 1994) ......................................................................................... 19

*Rydeen v. Quigg*,
  748 F. Supp. 900 (D.D.C. 1990), *aff'd*, 937 F.2d 623 (Fed. Cir. 1991) ...................... 11

*Santa Fe All. for Pub. Health & Safety v. City of Santa Fe*,
  993 F.3d 802 (10th Cir. 2021) ................................................................................. 4, 14

*Scott v. Allen*,
  153 F.4th 1088 (10th Cir. 2025) .................................................................................... 4

*Soc'y of Separationists v. Pleasant Grove City*,
  416 F.3d 1239 (10th Cir. 2005) ..................................................................................... 7

*Spangler v. United States*,
  415 F.2d 1242 (9th Cir. 1969) ..................................................................................... 13

*Stewart-Warner Corp. v. Westinghouse Elec. Corp.*,
  325 F.2d 822 (2d Cir. 1963)......................................................................................... 13

iv

*Tandon v. Newsom*,
   593 U.S. 61 (2021) ........................................................................................ 15

*Trump v. Hawaii*,
   585 U.S. 667 (2018) ...................................................................................... 15

*United States v. Windsor*,
   570 U.S. 744 (2013) ...................................................................................... 13

*Vinson v. Wash. Gas Light Co.*,
   321 U.S. 489 (1944) ...................................................................................... 12

*Voter Reference Found., LLC v. Torrez*,
   160 F.4th 1068 (10th Cir. 2025) ................................................................... 13

*W. Refin. Sw., Inc. v. U.S. Dep't of Interior*,
   No. 16-442 JH/GBW, 2016 WL 9447761 (D.N.M. Nov. 29, 2016) ........................... 12

*Webster v. Doe*,
   486 U.S. 592 (1988) ...................................................................................... 11

*Wilson v. Glenwood Intermountain Props., Inc.*,
   98 F.3d 590 (10th Cir. 1996) .......................................................................... 9

**Statutes**

Okla. Stat. tit. 70, § 3-134 ............................................................................... 5, 9

Okla. Stat. tit. 75, § 318 .................................................................................... 10

**Regulations**

43 Okla. Reg. 2369 (July 15, 2026) ...................................................................... 8

Okla. Admin. Code § 777:10-3-3 ...................................................................... 9, 16

**Other Authorities**

4 Moore's Federal Practice, Par. 24.16(4) (2d ed. 1968) ..................................... 13

7C Wright & Miller's Federal Practice & Procedure § 1920 (3d ed. 1998) .................. 13

Interview with Peter Deutsch, *Should the Supreme Court Permit Public
   Funding for Jewish Charter Schools? Yes*, Moment (Apr. 8, 2026),
   https://perma.cc/V5UK-9TW5 ........................................................................ 3–4

Mark Walsh, *Religious Charter Schools Push New Cases Toward Supreme Court*, EducationWeek (Feb. 6, 2026), https://perma.cc/U897-W84Z.......................... 4

## INTRODUCTION

In a high-stakes constitutional case like this one, a fully developed factual record is critical. Courts have an obligation to ensure that constitutional questions are only answered in the context of an actual case or controversy, with all relevant facts on the table. Plaintiffs and the Statewide Charter School Board have made clear that this case is a candidate for U.S. Supreme Court review. It could set nationwide precedent that would drastically change the nature of public education in this country. But there are serious, fact-based reasons to doubt Plaintiffs' standing in this case, and the merits raise factual questions too. So the Court should decline Plaintiffs' and the Charter Board's invitations to treat this potentially high-impact case as a merely academic matter.

Discovery now would develop a helpful, relevant factual record without improperly expanding the scope of the case. Kaiman Intervenors are full parties and have the right to raise defenses not raised by others. A rule to the contrary would be absurd: When the original defendant raises no defense, the intervenor-defendant must sit idly by and hope for the best? Such a rule would be particularly problematic with respect to standing issues, because courts *must* satisfy themselves of standing before moving on to the merits.

Staying discovery—even temporarily until resolution of Plaintiffs' preliminary-injunction motion—would hinder this Court's (and appellate courts') ability to properly resolve the issues presented. Allowing discovery to proceed would aid resolution of the preliminary-injunction motion by providing the Court with information relevant to whether Plaintiffs have standing, as well as facts that go to whether they are likely to

1

succeed on the merits.  Proceeding with discovery now will also help ensure a timely final resolution of the case.  And any concerns about specific discovery requests do not warrant a stay of all discovery and can be resolved in due course.

The Court should therefore deny the motions to stay.

## LEGAL STANDARD

"The party seeking a [discovery] stay generally faces a difficult burden." *De Baca v. United States*, 403 F. Supp. 3d 1098, 1112 (D.N.M. 2019) (citing *Clinton v. Jones*, 520 U.S. 681, 708 (1997)).  Discovery stays "are not routinely granted by courts," and "'[t]he underlying principle clearly is that the right to proceed in court should not be denied except under the most extreme circumstances.'"  *Century Martial Art Supply, L.L.C. v. Dynamics World, Inc.*, No. CIV-17-1194-M, 2018 WL 4390752, at *1 (W.D. Okla. Sept. 14, 2018) (quoting *Commodity Futures Trading Comm'n v. Chilcott Portfolio Mgmt., Inc.*, 713 F.2d 1477, 1484 (10th Cir. 1983)).

To obtain a discovery stay, "the movant must make out a clear case of hardship or inequity in being required to go forward." *Id.* at *1 (citing *Chilcott*, 713 F.2d at 1484). The Charter Board cites *In re Church of Jesus Christ of Latter-Day Saints Tithing Litigation*, No. 2:24-MD-03102-RJS-DAO, 2024 WL 4349160, at *2 n.23 (D. Utah Sept. 30, 2024), for the opposite proposition.  (Charter Bd.'s Mot. Stay Disc. 3–4, ECF No. 110.)  But that case's discussion of the issue is far from clear, and the court there did conclude that the parties seeking a stay faced significant hardship from discovery before it granted the stay.  *See In re Church of Jesus Christ of Latter-Day Saints*, 2024 WL 4349160, at *2–3 & n.23.

2

Additional factors sometimes considered by courts in this district include: "(1) the interest of the non-moving party in proceeding expeditiously with discovery and the potential prejudice to the party of a delay; (2) the burden on the moving party of proceeding with discovery; (3) the convenience to the court of staying discovery; (4) the interests of nonparties in either staying or proceeding with discovery; and (5) the public interest in proceeding with discovery." *Mfrs. All. Ins. Co. v. Baker*, No. CIV-23-1007-SLP, 2024 WL 4112782, at *1 (W.D. Okla. Sept. 6, 2024) (citation modified).

## ARGUMENT

### I.  Discovery is needed and relevant in this important constitutional case.

#### A.  This case raises important constitutional questions that warrant a fully developed record.

The Supreme Court has "frequently recognized the importance of the facts and the factfinding process" in high-stakes constitutional cases. *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 542 n.5 (1986).  This is certainly such a case.  Plaintiffs' lawsuit seeks to establish high-level federal-court precedent that would drastically change the nature of this country's public-school system.  Indeed, Plaintiffs seek to legalize something that no court or legislature has ever allowed: a religious public charter school. Plaintiffs' complaint emphasizes the 4–4 U.S. Supreme Court split on this issue in *Oklahoma Statewide Charter School Board v. Drummond*, 605 U.S. 165 (2025) (Compl. ¶ 51, ECF No. 1), and it is clear from Plaintiffs' public statements that this case is aimed at returning the issue to the Supreme Court (Interview with Peter Deutsch, *Should the Supreme Court Permit Public Funding for Jewish Charter Schools? Yes*, Moment (Apr.

8, 2026), https://perma.cc/V5UK-9TW5; Mark Walsh, *Religious Charter Schools Push New Cases Toward Supreme Court*, EducationWeek (Feb. 6, 2026), https://perma.cc/U897-W84Z).  Defendant Charter Board Chair Shellem has likewise stated that "he hopes the issue makes it back to the U.S. Supreme Court."  (ECF No. 1-3 at 3.)  Given the stakes, a fully developed record is of the utmost importance.

Developing a factual record is particularly critical to determining whether this Court (and any appellate court to which this case may be taken) has jurisdiction.  A "district court . . . *must*" address standing before it can turn to the merits.  *Scott v. Allen*, 153 F.4th 1088, 1093 (10th Cir. 2025); *accord Santa Fe All. for Pub. Health & Safety v. City of Santa Fe*, 993 F.3d 802, 813 n.5 (10th Cir. 2021).  And the "obligation to notice defects in a [court's] subject-matter jurisdiction assumes a special importance when a constitutional question is presented.  In such cases [courts] have strictly adhered to the standing requirements to ensure that [their] deliberations will have the benefit of adversary presentation and a full development of the relevant facts." *Bender*, 475 U.S. at 541–42.

The discovery sought by Kaiman Intervenors is thus in the interests of both the Court and the public.  Discovery would ensure that this Court—and any higher courts that may consider the case—have a developed record on both the merits and whether there is jurisdiction.

### B. Kaiman Intervenors need discovery relevant to both jurisdictional and merits issues.

With respect to standing and ripeness, discovery is necessary to develop a record on whether Ben Gamla intends to and can satisfy legal requirements—that are separate from the statute that Plaintiffs challenge—for operating a charter school. The existing record casts serious doubt on Ben Gamla's ability and intent to do so. Statements in Ben Gamla's charter-school application indicate that the school plans to follow discriminatory policies and practices that would violate the Oklahoma Charter Schools Act. (*See* Kaiman Intervenors' Br. Opp. Prelim. Inj. 3–4, 6, ECF No. 62-1.) These include discriminatory admissions practices, practices that discriminate based on sexual orientation and gender identity, failure to adequately serve students with disabilities, and discrimination in employment. (*See id.* at 3, 6 (citing ECF No. 1-2 at 3, 38, 53, 59, 63).) Ben Gamla's application also did not include proposed governing bylaws or documentation showing completion of the Charter Board's pre-application training (ECF No. 1-2; ECF No. 62-2), both of which are required by the Charter Schools Act (Okla. Stat. tit. 70, § 3-134(A), (B)(9), (B)(22)).

Kaiman Intervenors argue that the foregoing deficiencies make it unlawful for Ben Gamla to operate a charter school and that Plaintiffs therefore cannot show an injury that would be redressed by a favorable decision. (Kaiman Opp. Prelim. Inj. 5–7.) Plaintiffs disagree and contend that their "second application resolved all issues except the requirement to be nonsectarian" or that they are not "incapable of curing any supposed

issues." (Pls.' Reply Taxpayer Intervenors' Opp. Prelim. Inj. 2, 4, ECF No. 99.)  This disagreement presents a factual dispute that calls for discovery.

Therefore, Kaiman Intervenors seek discovery on whether Ben Gamla would discriminate in student admissions, student discipline, or employment based on religion, sexual orientation, gender identity, or other protected grounds; whether Ben Gamla would adequately serve students with disabilities; and whether Ben Gamla has complied or will comply with various other requirements for applying for charter-school authorization and operating a charter school.  Kaiman Intervenors also seek other discovery relating to standing, including on whether Ben Gamla has sufficient financial capacity to commence operation of a public charter school; whether Ben Gamla would have sufficient enrollment to render operating the school viable (as Ben Gamla's application materials contained substantial discrepancies in enrollment projections (Kaiman Opp. Prelim. Inj. 4) and a Charter Board member expressed concern about a lack of community interest in the proposed school (ECF No. 15-1 at 4)); and whether the Charter Board treated various deficiencies in Ben Gamla's application the same way that it treated similar deficiencies in past applications (which would undermine any argument that the deficiencies in Ben Gamla's application are immaterial).  (Kaiman Intervenors' Discovery Requests, Exs. 1–5 hereto.)

With respect to the merits, Kaiman Intervenors seek discovery on the nature of Ben Gamla's planned curriculum and noncurricular requirements and activities, including how religiously coercive the school's programming will be.  (Exs. 1–2.)  These requests are relevant to Kaiman Intervenors' Establishment Clause defense (Kaiman Opp. Prelim.

Inj. 22–24), in part because religious coercion is "among the foremost hallmarks of religious establishments the framers sought to prohibit when they adopted the First Amendment" (*Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 537 (2022)).  In addition, Kaiman Intervenors seek discovery on the extent to which the Charter Board's evaluation of charter-school applications involves discretion.  (Exs. 3–4.)  These requests are relevant to determining whether allowing religious charter schools would pose risks of governmental favoritism toward particular religions, which is also prohibited by the Establishment Clause.  *See Cath. Charities Bureau, Inc. v. Wis. Lab. & Indus. Rev. Comm'n*, 605 U.S. 238, 247–48 (2025).

####    C.  **Plaintiffs wrongly cast this case as presenting one sterile legal question.**

Plaintiffs contend that the only issue in this case is whether charter schools are governmental entities or other state actors.  (Pls.' Mot. Stay Disc. 5, ECF No. 111.)  While that is certainly an important issue here, it is not the only one.  Kaiman Intervenors argue that operation of Ben Gamla as a religious public charter school would violate the Establishment Clause even if charter schools were *not* state actors.  (Kaiman Opp. Prelim. Inj. 23–24.)  Establishment Clause analysis has long been particularly fact-sensitive.  *See, e.g.*, *Soc'y of Separationists v. Pleasant Grove City*, 416 F.3d 1239, 1240–41 (10th Cir. 2005).  And the past decade has seen substantial changes to the Supreme Court's Religion Clause jurisprudence that have increased the need to develop a detailed factual record in church-state cases.  *See, e.g.*, *Kennedy*, 597 U.S. at 534 (abandoning *Lemon* [*v. Kurtzman*, 403 U.S. 602 (1971)] and endorsement tests previously used to decide Establishment Clause cases); *Mahmoud v. Taylor*, 606 U.S. 522, 593 (2025) (Sotomayor,

J., dissenting) (Court's decision "[c]ast[] aside longstanding precedent"). This landscape, together with the potential for this case to set high-level precedent, further heightens "the importance of the facts and the factfinding process" inherent in constitutional litigation. *Bender*, 475 U.S. at 542 n.5.

Plaintiffs also argue that the standing-related discovery sought by Kaiman Intervenors pertains only to "Phase 2" of the charter-application process, which Ben Gamla has not yet reached, and that the discovery is therefore irrelevant. (Pls.' Mot. Stay Disc. 7.) They are wrong. As an initial matter, standing is determined by examining the facts that existed when the complaint was filed (*Lujan v. Defs. of Wildlife*, 504 U.S. 555, 569 n.4 (1992)), but the "newest regulations" that divided the application process into "Phase 1" and "Phase 2" were not "the ones Plaintiffs were subject to" (Pls.' Mot. Stay Disc. 7) when they filed the case but rather were approved by the legislature on May 20, 2026, and formally took effect on July 25, 2026 (43 Okla. Reg. 2369–70 (July 15, 2026)). Furthermore, even under the new regulations, most of the discovery would relate to what Plaintiffs describe as "Phase 1." During this initial phase, the applicant must submit detailed information about various topics, including "[c]omplete and attainable plans for the execution of the proposed school's implementation process"; the proposed school's "educational model"; its "governing board and founding team"; "the importance of the educational model to the community and its support"; the school's "financial plan," which must cover "the resources, fiscal planning and expertise necessary to carry out effective budgeting, financial management, and oversight"; its "contingency plan," which must "ensure[] and include[] services to *all students*"; its "organizational design," which

8

must "support[] the fulfillment of the commitments and responsibilities of a public school"; and the school's commitment to follow applicable laws, including antidiscrimination laws. Okla. Admin. Code § 777:10-3-3(b) (emphasis added). These regulations reflect mandatory application requirements specified by the Charter Schools Act. *See* Okla. Stat. tit. 70, § 3-134(B). And Phase 2 is not an opportunity for mulligans, because the Charter Board "shall . . . [d]ecline to approve weak or inadequate charter applications" in Phase 1. *Id.* § 3-134(I)(4).

So if, for example, Ben Gamla does not plan to follow antidiscrimination laws or fully serve students with disabilities, its application cannot lawfully proceed past Phase 1. And if Ben Gamla cannot demonstrate financial capacity or that it would have sufficient enrollment, it likewise cannot survive Phase 1. But even if some discovery were only relevant to Phase 2, it would still be relevant to standing—if Plaintiffs will inevitably be rejected at Phase 2, a favorable ruling from this Court would not redress Plaintiffs' alleged injury.

Nor are Plaintiffs correct in contending (Pls.' Mot. Stay Disc. 8) that they would have standing even if discovery shows that Ben Gamla cannot satisfy religion-neutral requirements for operating a charter school. As Kaiman Intervenors explained in their opposition to Plaintiffs' preliminary-injunction motion (ECF No. 62-1 at 5), "a person who fails to satisfy lawful, nondiscriminatory requirements or qualifications for [a] benefit lacks standing to raise claims of discrimination in the denial of the benefit" (*Wilson v. Glenwood Intermountain Props., Inc.*, 98 F.3d 590, 593 (10th Cir. 1996); *accord Day v. Bond*, 500 F.3d 1127, 1135 (10th Cir. 2007)).

9

### D. Plaintiffs and the Charter Board rely on inapplicable administrative-law doctrines.

Relying on *Macias v. New Mexico Department of Labor*, 21 F.3d 366, 369 (10th Cir. 1994), and *Central Kansas Credit Union v. Mutual Guaranty Corp.*, 102 F.3d 1097, 1105 (10th Cir. 1996), Plaintiffs assert that this Court must defer to the Charter Board's failure to find any reasons for denying Ben Gamla's application other than the school's religious nature, and that the Court therefore cannot consider any evidence that may be obtained through discovery of other defects in Ben Gamla's application. (Pls.' Mot. Stay Disc. 8–9.) But *Macias* is no longer good law, and *Central Kansas Credit Union*'s relevant language was drawn exclusively from *Macias*. *Macias* relied in part (*see* 21 F.3d at 369) on the administrative-deference doctrine of *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 844–45 (1984), which the Supreme Court overruled in *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 411–12 (2024). *Macias* also relied on New Mexico's version of *Chevron* deference, from which it drew the rule that "the interpretation of a state statute by a state agency charged with the administration of a statute is persuasive and should not be overturned unless 'clearly incorrect.'" 21 F.3d at 369–70 (quoting *N.M. Pharm. Ass'n v. State*, 738 P.2d 1318, 1320 (N.M. 1987)). But Oklahoma recently enacted a statute that nullified the state's prior *Chevron*-like administrative-deference doctrine and essentially codified *Loper Bright*. *See* Okla. Stat. tit. 75, § 318(E).

Even if any aspect of *Macias* survives, the case does not apply because there is no evidence that the Charter Board was actually "interpret[ing] . . . a state statute" (21 F.3d

10

at 369) as opposed to simply ignoring violations of the law.  And even under *Macias*'s rule, the Charter Board was "clearly incorrect" (*id.*) to disregard the many deficiencies in Ben Gamla's application materials that are unrelated to the school's religious curriculum.

Plaintiffs assert that declining to defer to the Charter Board here "would preclude Plaintiffs and every other proponent of a religious charter school from ever challenging the OCSA's religious exclusion." (Pls.' Mot. Stay Disc. 9.)  Not so.  A proposed religious charter school that did not plan to violate other provisions of the Charter Schools Act could have standing to challenge the Act's prohibition on religious charter schools.

Relatedly, Plaintiffs contend that it would be improper for the Court to consider evidence that was not part of the administrative record before the Charter Board and that discovery aimed at unearthing such evidence should thus be disallowed.  (Pls.' Mot. Stay Disc. 8–9.)  While that would generally be the case in an action brought under the Administrative Procedure Act (or Oklahoma's version of the APA), this rule does not apply in lawsuits brought under the Constitution, as this case was.  *See Rydeen v. Quigg*, 748 F. Supp. 900, 904, 906 (D.D.C. 1990), *aff'd*, 937 F.2d 623 (Fed. Cir. 1991). Discovery about matters outside the administrative record is therefore permissible in constitutional challenges, including ones involving administrative agencies.  *See Webster v. Doe*, 486 U.S. 592, 604 (1988); *Grill v. Quinn*, No. CIV S-10-0757 GEB, 2012 WL 174873, at *2 (E.D. Cal. Jan. 20, 2012); *Miccosukee Tribe of Indians of Fla. v. United States*, No. 08-23001-CIV, 2010 WL 337653, at *2 (S.D. Fla. Jan. 22, 2010).

11

Plaintiffs and the Charter Board further argue that the discovery sought by Kaiman Intervenors would improperly "expand the scope of this case, which," they assert, "an intervenor is not allowed to do." (Pls.' Mot. Stay Disc. 9; *accord* Charter Bd.'s Mot. Stay Disc. 7.) But the cases Plaintiffs and the Charter Board cite for this proposition were all appeals from administrative proceedings, which are governed by the Federal Rules of Appellate Procedure (even when brought in district court). *See Vinson v. Wash. Gas Light Co.*, 321 U.S. 489, 491 (1944); *Arapahoe Cnty. Pub. Airport Auth. v. FAA*, 242 F.3d 1213, 1216–17 (10th Cir. 2001); *W. Refin. Sw., Inc. v. U.S. Dep't of Interior*, No. 16-442 JH/GBW, 2016 WL 9447761, at *1–3 (D.N.M. Nov. 29, 2016). It is true that, when a party intervenes in an administrative appeal under Federal Rule of Appellate Procedure 15, they must confine their arguments to the issues already on appeal. *Arapahoe Cnty.*, 242 F.3d at 1217 & n.4. But when a party intervenes in an ordinary district-court case under Federal Rule of Civil Procedure 24(a)(2), "it becomes a full participant in the lawsuit and is treated just as if it were an original party." *Kane County v. United States*, 94 F.4th 1017, 1022 n.4 (10th Cir. 2024) (citation modified).

Thus, "where [an] intervenor claims an interest adverse to both plaintiff and defendant he or she is entitled to have the issues raised thereby tried and determined." *Alvarado v. J.C. Penney Co.*, 997 F.2d 803, 805 (10th Cir. 1993) (citation modified); *see also Ross v. Bernhard*, 396 U.S. 531, 541 n.15 (1970) ("[W]hen intervention is permitted generally, the intervenor has a right to a jury trial on any legal issues he presents."). After all, "[i]t would be meaningless to give [an intervenor of right] an absolute right to intervene in order to protect his interests, if once in the proceedings he was barred from

12

raising questions necessary for his own protection." *Spangler v. United States*, 415 F.2d 1242, 1245 (9th Cir. 1969) (quoting 4 Moore's Federal Practice, Par. 24.16(4), p. 117 (2d ed. 1968)); *see also Stewart-Warner Corp. v. Westinghouse Elec. Corp.*, 325 F.2d 822, 827 (2d Cir. 1963) ("The whole tenor and framework of the Rules of Civil Procedure preclude application of a standard which strictly limits the intervenor to those defenses . . . which the original defendant could himself have interposed."). Consider the implications for cases like this one: If defendant-intervenors were not allowed to raise defenses in cases in which the original defendants do not raise any defenses of their own, courts would be deprived of the adversarial presentation of issues that is necessary in constitutional cases. *See United States v. Windsor*, 570 U.S. 744, 760 (2013); *Bender*, 475 U.S. at 541–42.

It follows, then, that intervenors must be allowed to seek discovery to support their defenses, even if no other party raises those defenses. *See, e.g.*, *Columbus-Am. Discovery Grp. v. Atl. Mut. Ins. Co.*, 974 F.2d 450, 470 (4th Cir. 1992). This is especially true with respect to standing arguments. *See* 7C Wright & Miller's Federal Practice & Procedure § 1920 (3d ed. 1998). For "[s]tanding is a prerequisite to a federal court's subject matter jurisdiction, and thus *any party*, including the court sua sponte, can raise the issue of standing for the first time at any stage of the litigation, including on appeal." *Voter Reference Found., LLC v. Torrez*, 160 F.4th 1068, 1077 (10th Cir. 2025) (emphasis added) (citation modified).

Contrary to what Plaintiffs argue (Pls.' Mot. Stay Disc. 10), to challenge Plaintiffs' standing, Kaiman Intervenors need not bring a separate lawsuit or a cross-

claim or intervene in Attorney General Drummond's state-court lawsuit (which, at any rate, does *not* raise most of the grounds on which Kaiman Intervenors attack Plaintiffs' standing (*see* Pet. Writ Mand., *Drummond v. Okla. Statewide Charter Sch. Bd.*, No. CV-2026-649 (Okla. Dist. Ct. Mar. 11, 2026), https://perma.cc/769E-AQBP)). That's because Kaiman Intervenors' standing argument—like all of their other defenses—does not seek any affirmative relief but rather seeks the denial of any relief to Plaintiffs. *See, e.g.*, *Phila. Indem. Ins. Co. v. Chi. Title Ins. Co.*, 771 F.3d 391, 401 (7th Cir. 2014) ("A counterclaim is used when seeking affirmative relief, while an answer or affirmative defense seeks to defeat a plaintiff's claim." (citation modified)); *cf. Santa Fe All.*, 993 F.3d at 813 n.5 (holding that an appellee need not file a cross-appeal to raise standing arguments, which courts are obligated to address and may be raised at any time).

## II. The Court should not stay discovery until resolution of Plaintiffs' motion for a preliminary injunction and any appeal thereof.

Plaintiffs request that, as an alternative to permanently prohibiting discovery, the Court stay discovery until resolution of Plaintiffs' preliminary-injunction motion and any appeals thereof. (Pls.' Mot. Stay Disc. 2; *accord* Charter Bd.'s Mot. Stay. Disc. 1.) This request should be denied as well. Discovery would aid resolution of Plaintiffs' preliminary-injunction motion. As discussed above, discovery would help the Court decide whether Plaintiffs have standing. A fuller record on standing would also benefit any appellate court(s) that may hear any preliminary-injunction appeal in this case. In addition, the merits discovery that Kaiman Intervenors seek would inform this Court's (or a higher court's) merits analysis at the preliminary-injunction stage should this Court (or

14

a higher court) conclude that standing exists.  And it is especially important to allow discovery at the preliminary-injunction stage in a case such as this one because the Supreme Court has regularly issued major precedential decisions in church-state cases on appeals of preliminary-injunction decisions in recent years.  *See, e.g.*, *Mahmoud*, 606 U.S. at 530, 544; *Fulton v. City of Philadelphia*, 593 U.S. 522, 531–32 (2021); *Tandon v. Newsom*, 593 U.S. 61, 62 (2021); *Trump v. Hawaii*, 585 U.S. 667, 711 (2018).

What's more, Kaiman Intervenors have acted diligently in seeking discovery that could be relevant to the preliminary-injunction motion.  Kaiman Intervenors served their discovery requests just one week after Plaintiffs submitted their proposed preliminary-injunction reply—which made clear that there was a factual dispute concerning standing (*see* ECF No. 96-1 at 2, 4)—and just two days after the Rule 26(f) conference that allowed discovery to proceed.  (Joint Status Report & Disc. Plan 1, 6, 8, ECF No. 107.) And these requests were served before the Court set a hearing on the preliminary-injunction motion.  (Order, ECF No. 106.)

Plaintiffs' past representations to the Court belie their contention (Pls.' Mot. Stay Disc. 14) that allowing discovery before a decision on the preliminary-injunction motion would delay the possible opening of their school.  Plaintiffs initially sought a ruling on their preliminary-injunction motion by May 22, 2026, representing that a ruling by that date would have permitted Ben Gamla to open for the 2026–27 schoolyear.  (Pls.' Mot. Prelim. Inj. 1, ECF No. 10.)  But Plaintiffs apparently did not realize that Ben Gamla could not legally open before July 2027, because it submitted its charter-school application in December 2025 (Compl. ¶ 65), and a Charter Board regulation prohibits

15

schools from opening less than eighteen months after application submission (Okla. Admin. Code § 777:10-3-3(a)(4)). Plaintiffs' own view of how little time they would need to open their school upon obtaining a preliminary injunction establishes that there is plenty of time to conduct discovery and decide the preliminary-injunction motion in time to permit Ben Gamla to open in July 2027 if the school prevails.

In all events, delaying discovery now would only delay the ultimate resolution of this case. Even if this Court decides the preliminary-injunction motion prior to receiving the results of discovery, a full record would still be necessary for a final decision on the merits, whether by this Court or by an appellate court. Nor would a preliminary-injunction ruling conclusively answer legal issues pertinent to what may be relevant in discovery. The ruling would not be binding on appellate courts (or indeed on this Court at a later litigation stage). And higher courts could view the relevance of particular facts differently than this Court does.

Plaintiffs' arguments seem to assume that this entire case should and will be stayed in the event of a preliminary-injunction appeal. But it is premature to decide whether to issue a stay pending appeal. For one thing, doing so would assume that there *will* be an appeal. For another, district courts can and do proceed on the merits of cases during the pendency of preliminary-injunction appeals. *E.g.*, *Free Speech v. Fed. Election Comm'n*, 720 F.3d 788, 791 (10th Cir. 2013). Indeed, if there is an appeal, Kaiman Intervenors would urge the Court *not* to stay the case so that a full record can be developed to inform any ultimate appellate decision.

The Charter Board's discussion (Charter Bd.'s Mot. Stay Disc. 8–10) of an agreement by some of Kaiman Intervenors' counsel to a stay of an entire case in the St. Isidore litigation is wholly irrelevant.  In that case, counsel agreed to a stay of a state trial-court case challenging the approval of a proposed religious charter school only after the Oklahoma Supreme Court blocked the school from opening in a separate case that was ahead of the trial-court case and was likely to control its ultimate resolution.  Moreover, counsel only agreed to the stay in exchange for agreements to further delay opening of the school long enough to enable completion of discovery and a decision on a preliminary-injunction motion before school opening.  *See* Agreed Order to Stay Litigation, *OKPLAC, Inc. v. Statewide Virtual Charter Sch. Bd.*, No. CV-2023-1857 (Okla. Cnty. Dist. Ct. June 27, 2024), https://perma.cc/8LWN-XVWB; Agreed Order Extending Stay of Litigation, *OKPLAC, Inc.*, No. CV-2023-1857 (Feb. 20, 2025), https://perma.cc/E5DZ-9W2T.  Here, there is no case that is ahead of this one and likely to control it, and nothing would stop Ben Gamla from opening soon after a ruling by this Court or by an appellate court granting the school injunctive relief.

## III.  Plaintiffs' and the Charter Board's concerns about particular discovery requests do not support a stay of all discovery.

Plaintiffs raise specific concerns about a small portion of Kaiman Intervenors' desired discovery, but those concerns can be resolved through the meet-and-confer process.  For example, Plaintiffs complain about requests for the contact information of certain individuals with knowledge pertinent to the case, including donors to the school.  (Pls.' Mot. Stay Disc. 12–13.)  But such concerns could be addressed through a protective

17

order or an attorney-negotiated agreement to narrow the scope of the requests.  *See, e.g.*, *Marshall v. Bramer*, 828 F.2d 355, 360 (6th Cir. 1987).

Plaintiffs also complain about a discovery request that allegedly "prob[es] their religious practices" (Pls.' Mot. Stay Disc. 2), but the request they seemingly refer to (Ex. 1, at 5, Request No. 9) is aimed at obtaining clarity about a Ben Gamla policy that Ben Gamla's own application states will incorporate certain religious teachings (ECF No. 1-2 at 38).  Again, Kaiman Intervenors are willing to work with Plaintiffs in good faith to attempt to reach an amicable resolution of Plaintiffs' concerns about this request.

The Charter Board notes that some Board documents are available online. (Charter Bd.'s Mot. Stay Disc. 8.)  But Kaiman Intervenors' discovery requests seek information that is *not* available online—for example, Board member communications and internal policies and reports.  (Ex. 3, at 4–5.)  Indeed, the requests specifically exclude certain information that is available online.  (*Id.* at 4, Request No. 5.)  And to the extent that the requests may be unclear on this point, Kaiman Intervenors agree that the Charter Board need not produce anything that is available on its website or YouTube channel.

## IV. The Charter Board's concern about attorneys' fees should not affect the scope of discovery.

Finally, the Charter Board's concern about attorneys' fees (Charter Bd.'s Mot. Stay Disc. 4–5) is misplaced because the Board is unlikely to be liable for fees that Plaintiffs incur as a result of actions by intervenors.  Most courts to consider the issue have determined that a defendant is not liable for fees that a plaintiff incurs as a result of

intervention—at least where the defendant does not support the intervenor's position—and that plaintiffs cannot recover those fees.  *See Brat v. Personhuballah*, 883 F.3d 475, 484 (4th Cir. 2018); *Binta B. ex rel. S.A. v. Gordon*, 710 F.3d 608, 635 (6th Cir. 2013); *Rum Creek Coal Sales, Inc. v. Caperton*, 31 F.3d 169, 178 (4th Cir. 1994); *Bigby v. City of Chicago*, 927 F.2d 1426, 1428–29 (7th Cir. 1991); *Hopwood v. Texas*, 236 F.3d 256, 280 (5th Cir. 2000).[1]  In addition, the Board's concern is speculative: it assumes that Plaintiffs will win, that they will move for fees, and that they will request fees for work done in response to intervenors' actions.

## CONCLUSION

For the foregoing reasons, the motions to stay discovery should be denied.

---

[1] Losing intervenors are not subject to attorneys' fees under 42 U.S.C. § 1988 when the intervenors did not commit the challenged constitutional violation.  *See Indep. Fed. of Flight Attendants v. Zipes*, 491 U.S. 754, 758 n.2, 763 (1989); *Brat*, 883 F.3d at 482; *Democratic Party of Wash. State v. Reed*, 388 F.3d 1281, 1288 (9th Cir. 2004).

Respectfully submitted on July 31, 2026.

<div style="display: flex;">
<div>

Brent Rowland, OBA No. 13415
Morgan Bandy, WI Bar No. 1130673*
Oklahoma Appleseed Center for
Law & Justice
624 S. Denver Ave., Suite 400
Tulsa, OK 74119
Telephone: (918) 519-5750
brent@okappleseed.org /
morgan@okappleseed.org

Daniel Mach, DC Bar No. 461652*
Heather L. Weaver, DC Bar No. 495582*
American Civil Liberties Union
Foundation
915 15th Street, NW, Suite 600
Washington, DC 20005
Telephone: (202) 675-2330
dmach@aclu.org / hweaver@aclu.org

Nancy A. Noet, WI Bar No. 1023106*
Samuel T. Grover, WI Bar No. 1096047*
Freedom From Religion Foundation
PO Box 750
Madison, WI 53701
Telephone: (608) 256-8900
noetn@ffrf.org / sgrover@ffrf.org

</div>
<div>

s/ Alex J. Luchenitser
Alex J. Luchenitser,
DC Bar No. 473393*
Luke Anderson, DC Bar No. 90042004*
Americans United for Separation of
Church and State
1310 L Street NW, Suite 200
Washington, DC 20005
Telephone: (202) 466-7306 /
(202) 898-2134
luchenitser@au.org / anderson@au.org

Jessica Levin, CA Bar No. 338240*
Wendy Lecker, NY Bar No. 2283125*
Patrick Cremin, CA Bar No. 345406*
Katrina Reichert, CA Bar No. 357984*
Education Law Center
60 Park Place, Suite 300
Newark, NJ 07102
Telephone: (973) 624-1815
JLevin@edlawcenter.org /
WLecker@edlawcenter.org /
PCremin@edlawcenter.org /
KReichert@edlawcenter.org

</div>
</div>

*Attorneys for Proposed Intervenors*
* Admitted *pro hac vice*.

20