# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

THE NATIONAL BEN GAMLA JEWISH
CHARTER SCHOOL FOUNDATION, INC.,
*et al.*,

          *Plaintiffs*,

    v.

BRIAN T. SHELLEM, in his official capacity as
Chairman of the Oklahoma Statewide Charter
School Board, *et al.*,

          *Defendants*,

RABBI DANIEL KAIMAN, *et al.*,

          *Defendant-Intervenors*,

CRICKET MOORE, *et al.*,

          *Defendant-Intervenors.*

Case No. 5:26-cv-00582-R

**PLAINTIFFS' REPLY IN
SUPPORT OF MOTION TO
STAY DISCOVERY**

Robert G. McCampbell
  OBA No. 10390
David A. Herber
  OBA No. 33527
GABLEGOTWALS
499 W. Sheridan Ave., Ste. 2200
Oklahoma City, OK 73102
(405) 235-5500
*RMcCampbell@Gablelaw.com*
*DHerber@Gablelaw.com*

Daniel L. Chen
  DC Bar No. 1781783
Eric S. Baxter
  DC Bar No. 479221
Eric C. Rassbach
  TX Bar No. 24013375
Benjamin A. Fleshman
  DC Bar No. 1781280
Siena A. Marcelle
  DC Bar No. 90043763
THE BECKET FUND FOR RELIGIOUS LIBERTY
1919 Pennsylvania Ave. NW, Ste. 400
Washington, DC 20006
(202) 955-0095
*dchen@becketfund.org*

*Attorneys for Plaintiffs*

## INTRODUCTION

In this free exercise case about the legality of excluding Ben Gamla from Oklahoma's charter school program, Taxpayers seek discovery opposed by both Plaintiffs and Defendants that would expand the scope—and the timeline—of the litigation significantly. But the vague theories Taxpayers propose are all foreclosed by legal arguments that can be decided without further discovery. None of the questions of fact that Taxpayers raise undermine Plaintiffs' standing to challenge their exclusion from the charter school program on the basis of their faith or prevent the Court from deciding the merits of the preliminary injunction. And none of the factual theories Taxpayers propose justify the hardship of delaying Ben Gamla's participation in the charter school program for another year. Discovery should be denied, or at least postponed.

## ARGUMENT

### I. Discovery is unnecessary.

#### A. Discovery is not needed for standing.

Taxpayers' claimed need for discovery on standing misses the point. Standing is satisfied as a matter of law when the government excludes program applicants on constitutionally protected grounds such as religion. *See Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 657 (1993); *Regents of Univ. of Cal. v. Bakke*, 438 U.S. 265, 281 n.14 (1978). Moreover, there is "ordinarily little question" that standing is met when plaintiffs are the direct object of the challenged agency action. *Skull Valley Band of Goshute Indians v. Nielson*, 376 F.3d 1223, 1235 (10th Cir.

1

2004). Thus, as here, where an agency has already rejected a program applicant for constitutionally suspect reasons, standing is met. Discovery would be meaningless.

Taxpayers respond by citing *Wilson v. Glenwood Intermountain Props.*, 98 F.3d 590 (10th Cir. 1996), and *Day v. Bond*, 500 F.3d 1127 (10th Cir. 2007). But in both cases, the Tenth Circuit confirmed the rule from *City of Jacksonville*. *See Wilson*, 98 F.3d at 593 (plaintiffs "need not show they would have obtained the benefit"; "it is enough to show the discrimination deprived them of the ability to compete"); *Day*, 500 F.3d at 1135 (plaintiffs must show only that they "*could*" obtain the benefit). Standing was denied in those cases only because the plaintiffs could not overcome an independent, nondiscriminatory bar.

The *Wilson* plaintiffs, for example, brought a sex discrimination claim challenging sex-segregated student housing available only to BYU students. *Wilson*, 98 F.3d at 592. The Court agreed that a sex-based exclusion could create standing under *City of Jacksonsville*. *Id.* at 593. But the plaintiffs were not BYU students. *Id.* at 592, 594. *City of Jacksonville* thus did not apply because the plaintiffs were already "disqualified from competing for other, legitimate reasons." *Id.* at 593. Similarly, the *Day* plaintiffs sought to challenge a Kansas law that allowed "certain illegal aliens to qualify for in-state tuition rates." *Day*, 500 F.3d at 1130. Again, the court affirmed the rule from *City of Jacksonville*. *Id.* at 1135. Standing was denied only because the plaintiffs would not have qualified for in-state tuition "even if the allegedly discriminatory test … favoring illegal aliens were stricken." *Id.* That is because none of the plaintiffs had "attended Kansas high schools for at least three years"—an independent statutory requirement. *Id.* The plaintiffs' injuries were thus "not

caused by the statute's allegedly discriminatory operation" and could not "be redressed by a decision striking [it] down." *Id.*

Here, in contrast, there is no independent bar that keeps Plaintiffs from competing on equal footing for a charter. Even if discovery disclosed that Plaintiffs were tight on funding, lacked adequate experience, or promoted unlawful policies, that might mean they could be denied a charter later, but it would not independently bar them from competing entirely, as does the OSCA's categorical religious ban. Taxpayers' reading of *Wilson* and *Day* would eviscerate *City of Jacksonville*, precluding standing any time a defendant could persuade a judge that the plaintiffs might be denied the program benefits they seek. But Plaintiffs were barred from competing *at all*, solely because of their faith. That is sufficient to establish standing—no discovery needed.

### B. Discovery is not needed for the merits.

Taxpayers' claimed need for discovery on the merits is equally unfounded. Notably, none of the discovery Taxpayers seek is relevant to the sole question at issue on the motion for preliminary injunction: whether schools like Ben Gamla become part of the government upon receiving a state charter. Indeed, the Court will search Taxpayers' preliminary injunction brief in vain for any explanation as to how the discovery they seek is relevant to that question. Thus, at minimum, no discovery is necessary for this Court's resolution of Plaintiffs' motion for preliminary injunction.

Instead, Taxpayers now admit they are seeking discovery to attempt showing that Plaintiffs are not sufficiently qualified to run a school. Dkt. 113 at 8-9 ("Opp."). That argument is absurd on its face—Plaintiffs have been running some of the most successful

charter schools in Florida for nearly two decades. *See* Fla. Dep't of Educ., *2025-26 School Grades* at 7, 13, 38, https://perma.cc/3899-A5WS. But more importantly, that discovery would entangle the Court in a morass of irrelevant and problematic issues.

For example, in seeking discovery into the merits, Taxpayers are inviting the Court to second-guess the Board's initial determination that Plaintiffs are sufficiently qualified to move forward with the chartering process, defenestrating the deference this Court owes such state-law determinations. *See* Br.9. Taxpayers respond that the Supreme Court's *Loper Bright* decision eliminated judicial deference to agencies. But *Loper Bright* only addressed the deference courts give agencies in interpreting the law, not in making factual determinations. Indeed, *Loper Bright* itself emphasized that "judicial review of agency … factfinding" remains "deferential." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 392, 413 (2024); *see also Tista-Ruiz de Ajualip v. Garland*, 114 F.4th 487, 495 (6th Cir. 2024) (upholding deference as to "factbound determinations"); *Amos v. Meink*, No. 24-cv-42, 2025 WL 2659886, at *4 n.5 (D. Md. 2025) ("*Loper Bright* changed the level of deference courts apply to agency construction of ambiguous statutes, not the level of deference applied to an agency's factual determinations."). Such deference is especially warranted here, considering the Board's expertise in its own subject matter.[1] And it is further warranted considering that it is in Phase 2, not the application phase, that the Board fully reviews Plaintiffs' curriculum, policies, bylaws, and other qualifications. Allowing

---

[1]    Taxpayers' reference to an Oklahoma statute that they claim "nullified the state's prior *Chevron*-like administrative-deference doctrine," Opp.10, is irrelevant for the same reason. That provision addresses the interpretation of law, not fact. *See* Okla. Stat. tit. 75, § 318(E).

discovery and rushing to judgment before the Board completes its process would not just be putting the cart before the horse, but shooting the horse and absconding with the cart.[2]

Permitting Taxpayers to prematurely challenge the Board's factual determinations is even more problematic because it skips the Federal Rules' jurisdictional checkpoints. The only claims actually before the Court are Plaintiffs' claims challenging the OSCA's religious exclusion. Taxpayers intervened to defend the statutory exclusion on behalf of the Board. But now they seek to *attack* the Board on distinct matters without ever filing the appropriate pleadings or asserting counterclaims. There are no allegations, for example, to measure whether Taxpayers have sufficiently stated a claim for Plaintiffs' supposed lack of qualifications. Instead, Taxpayers claim an unfettered right to explore every aspect of Plaintiffs' charter application in *hope* of finding some deficiency. *See Koch v. Koch Indus.*, 203 F.3d 1202, 1238 (10th Cir. 2000) (disapproving "fishing expedition[s]").

By asserting only ghost claims, Taxpayers also deprive Plaintiffs and other parties of the ability to ensure that Taxpayers themselves possess standing to raise those claims. Taxpayers respond that, having been granted intervention, they have become "a full participant in the lawsuit" and must be "treated just as if [they] were an original party." Opp.12 (quoting *Kane County v. United States*, 94 F.4th 1017, 1022 n.4 (10th Cir. 2024)). True enough, but "original" parties don't get to litigate claims that haven't been pleaded

---

[2]   Taxpayers protest that the "Phase 1" and "Phase 2" regulations have only recently been finalized. Opp.8. But the Board was not bound to wait for finalization before applying its processes. And Taxpayers cannot dispute that the Board has, in fact, told Ben Gamla that it still has to proceed through Phase 2.

and for which they have not established standing. *See Arapahoe Cnty. Pub. Airport Auth. v. FAA*, 242 F.3d 1213, 1217 n.4 (10th Cir. 2001) (intervenor "may join issue only on matters brought before the court *by the [plaintiff]*") (emphasis added); *see also Nat'l Ass'n of Regul. Util. Comm'rs v. ICC*, 41 F.3d 721, 729 (D.C. Cir. 1994) ("Intervenors … simply lack standing to expand the scope of the case to matters not addressed by the petitioners[.]"); 7C Wright & Miller, *Federal Practice and Procedure* § 1920 (3d ed. 2016) (intervenor "cannot change the issues framed between the original parties"). Taxpayers' own citations show that intervenors who seek to pursue their own claims must—at minimum—first plead those claims and meet the typical pleading standards. *See Stewart-Warner Corp. v. Westinghouse Elec. Corp.*, 325 F.2d 822, 825, 827 (2d Cir. 1963) (intervenor's answer "added allegations of additional acts" and asserted additional "counterclaims … for unfair competition") (cited at Opp.13); *Spangler v. United States*, 415 F.2d 1242, 1243 (9th Cir. 1969) (intervenor filed its own complaint, adding allegations and claims against other parties) (cited at Opp.13). Otherwise, an intervenor could completely subvert the litigation to its own ends without ever having to satisfy basic jurisdictional and pleading requirements. If Taxpayers want to assert their own claims against the Board, they must—at minimum—"raise a counterclaim" and establish "an independent basis of jurisdiction." 7C Wright & Miller, *Federal Practice and Procedure* § 1921 (3d ed. 2016). Until they do, discovery on their ghost claims must be denied.

Taxpayers seek to justify their efforts to evade standard pleading requirements by claiming this is a "high stakes" constitutional case that will "drastically change the nature of this country's public school system." Opp.3. But hyperbole is not the law. If what

Taxpayers claim is true, that only reinforces the importance of following the rules. And a win for Plaintiffs would do nothing more than allow private religious schools to compete for charters on equal footing with private secular schools—hardly a cataclysmic event.

Taxpayers also suggest that, because this case could go to the U.S. Supreme Court, a full factual record is a must. That's false. While the Supreme Court may prefer a robust factual record where facts are important to the case, it routinely decides cases at the preliminary injunction stage where no discovery has taken place—including the *St. Isidore* case that addressed the exact same legal question as at issue here. *See Drummond v. Okla. Statewide Virtual Charter Sch. Bd.*, 558 P.3d 1, 6 (Okla. 2024) (noting original action in Oklahoma Supreme Court, thus no opportunity for discovery); *see also Mahmoud v. Taylor*, 606 U.S. 522 (2025) (ruling on preliminary injunction with no discovery and a stay pending appeal); *see also* Order Staying Dist. Ct. Procs., *Mahmoud v. McKnight*, No. 23-cv-1380 (D. Md. Sep. 5, 2023), Dkt. No. 68; *Chiles v. Salazar*, 146 S. Ct. 1010 (2026) (ruling on preliminary injunction); *Chiles v. Salazar*, 116 F.4th 1178, 1194 (10th Cir. 2024) (noting no discovery taken before appeal).

Taxpayers next contend they need discovery for their argument that operating "Ben Gamla as a religious public charter school would violate the Establishment Clause even if charter schools were *not* state actors." Opp.7. Yet for this argument Taxpayers have not identified any necessary facts they do not already have. Instead, they reference a general "need to develop a detailed factual record in church-state cases." Opp.7. But their Establishment Clause argument needs no further factual development. It is undisputed that Ben Gamla will be a religious school and will engage in religious instruction and activity.

Thus, under Taxpayers' Establishment Clause theory, the undisputed fact that Ben Gamla will engage in religious activity is all they need to make their case. Information about Ben Gamla's donors, curriculum, and admission policies is irrelevant.[3]

Finally, Taxpayers assert that they can seek extensive discovery, even in a case arising out of a state administrative agency's decision, because this case involves constitutional questions. Opp.11. But even in the primary case Taxpayers cite, the evidence permitted on the constitutional claim was limited to two additional affidavits beyond the administrative record. *See Rydeen v. Quigg*, 748 F. Supp. 900, 906 (D.D.C. 1990). That's "a far cry from what [Taxpayers] seek here—fairly broad discovery, as a matter of course, into," among other things, all of Plaintiffs' finances, donors, supporters, and First Amendment activity. *Chiayu Chang v. USCIS*, 254 F. Supp. 3d 160, 162 (D.D.C. 2017) (distinguishing *Rydeen* on this basis). Even the cases Taxpayers cite agree that "wide-ranging discovery is not blindly authorized at a stage in which an administrative record is being reviewed." *Grill v. Quinn*, No. CIV S-10-757, 2012 WL 174873, at *2 (E.D. Cal. Jan. 20, 2012). The extensive discovery Taxpayers seek is both unnecessary and inappropriate in this case, particularly where they have identified no need for any facts that are not already in the record to make out a constitutional defense.

---

[3]  Notably, Taxpayers' Establishment Clause theory is also wrong on the law. The Supreme Court has "repeatedly held that the Establishment Clause is not offended when religious observers and organizations benefit from neutral government programs." *Espinoza v. Mont. Dep't of Revenue*, 591 U.S. 464, 474 (2020); *see also Zelman v. Simmons-Harris*, 536 U.S. 369 (2002) (public vouchers used at religious schools do not violate the Establishment Clause when neutral toward religion and directed by private choice). Taxpayers have no theory for how discovery would overcome those rulings.

## II. At a minimum, discovery should be stayed pending resolution of Plaintiffs' motion for preliminary injunction and significantly limited.

Should Taxpayers successfully expand this litigation, the Court should still stay discovery until after the Motion for Preliminary Injunction has been decided and appealed. Taxpayers offer no reason why discovery must proceed now, or why their requests overcome the hardship that Plaintiffs and the Board would suffer from simultaneously litigating the legal issues in the preliminary injunction and Taxpayers' factual issues.

Taxpayers do not even respond to Plaintiffs' argument that deciding the preliminary injunction first will be more efficient because it will potentially narrow the scope of the case. Dkt. 111 at 11-13. Rather, they suggest that discovery could somehow aid in the resolution of the standing issues in the preliminary injunction motion. Opp.14. Not so. If Taxpayers' theory of standing were correct, then Ben Gamla's case would simply be dismissed for lack of jurisdiction—negating the need for discovery. But if Taxpayers' theory of standing is incorrect (and it is), then all the discovery they seek is irrelevant to whether Ben Gamla suffered an injury by being denied a charter on a discriminatory basis. Nothing they seek is necessary to the resolution of that question.

Accepting Taxpayers' position would further prejudice Plaintiffs by resulting in at least a nine-month delay in deciding Plaintiffs' preliminary injunction. While Plaintiffs would work quickly with the Board to open as soon as possible, a delay in entering a preliminary injunction will make it practically impossible to open the school by fall 2027. *Contra* Opp.15-16. Because parents typically register their children for school in the spring, Ben Gamla would need to be able to complete Phase 2 of the application process before spring

9

2027. But after a nine-month delay for discovery—not to mention the time spent on supplemental briefing, argument, and actually deciding the preliminary injunction—it will be far too late for Plaintiffs to even begin, let alone finish, the necessary steps to open in time. Plaintiffs need an injunction now to stand any chance of opening in 2027.

Finally, Intervenors argue that any stay should not extend to an appeal arising out of the Court's order. Opp.16; Dkt. 114. But courts regularly stay discovery when a case goes up on interlocutory appeal—particularly where the resolution of legal issues "could clarify the appropriate parameters for future discovery and motion practice … thereby streamlining the course of this litigation." *Beltronics USA v. Midwest Inventory Distrib.*, 545 F.Supp.2d 1188, 1190 (D. Kan. 2008); *see also, e.g.*, *Atl. Richfield Co. v. NL Indus.*, No. 20-cv-234, 2023 WL 5333756, at *12 (D. Colo. Aug. 18, 2023) (staying discovery pending interlocutory appeal because resolution of legal issues "will likely have a substantial impact on this case" and collecting cases); *Schmidt v. Navistar*, No. 18-cv-321, 2019 WL 2233832, at *2 (D.N.M. May 23, 2019) (staying discovery for interlocutory appeal, even though "[i]mmediate appeal will not resolve this case" fully). That's the case here. *See* Dkt. 111 at 11-13. Discovery should thus be stayed at the very least until this Court, and any appellate courts, have resolved the relevant legal issues.

## CONCLUSION

The Motion to Stay Discovery should be granted.

Dated: August 3, 2026

Respectfully submitted,

/s/ *Daniel L. Chen*

Robert G. McCampbell
  OBA No. 10390
David A. Herber
  OBA No. 33527
GABLEGOTWALS
499 W. Sheridan Ave., Suite 2200
Oklahoma City, OK 73102
Tel 405-235-5500
*RMcCampbell@Gablelaw.com*
*DHerber@Gablelaw.com*

Daniel L. Chen
  DC Bar No. 1781783
Eric S. Baxter
  DC Bar No. 479221
Eric C. Rassbach
  TX Bar No. 24013375
Benjamin A. Fleshman
  DC Bar No. 1781280
Siena A. Marcelle
  DC Bar No. 90043763
THE BECKET FUND FOR RELIGIOUS LIBERTY
1919 Pennsylvania Ave. NW, Ste. 400
Washington, DC 20006
(202) 955-0095
*dchen@becketfund.org*

*Attorneys for Plaintiffs*

11