APPEAL,MAXFIELD,_JMW
Email All Attys
Email All Attys and Secondary Emails

# U.S. District Court
# Western District of Oklahoma[LIVE] (Oklahoma City)
# CIVIL DOCKET FOR CASE #: 5:26−cv−00582−R

The National Ben Gamla Jewish Charter School Foundation Inc et al v. Drummond et al
Assigned to: Judge David L. Russell
Cause: 42:1983 Civil Rights Act

Date Filed: 03/24/2026
Jury Demand: Plaintiff
Nature of Suit: 440 Civil Rights: Other
Jurisdiction: Federal Question

**Plaintiff**

**The National Ben Gamla Jewish Charter School Foundation Inc**

represented by

**Benjamin A. Fleshman**
The Becket Fund for Religious Liberty
1919 Pennsylvania Ave NW
Suite 400
Washington, DC 20006
202−955−0095
Email: bfleshman@becketfund.org
Email: bfleshman@becketfund.org
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Daniel Chen**
The Becket Fund for Religious Liberty
1919 Pennsylvania Ave., NW
Suite 400
Washington, DC 20006
202−955−0095
Email: dchen@becketfund.org
Email: dchen@becketfund.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**David R Herber**
GableGotwals
BOK Park Plaza
499 W. Sheridan
Suite 2200
Oklahoma City, OK 73102
405−235−5500
Email: dherber@gablelaw.com
Email: dherber@gablelaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Eric S Baxter**
The Becket Fund for Religious Liberty

1919 Pennsylvania Ave., NW
Suite 400
Washington, DC 20006
202−955−0095
Email: ebaxter@becketfund.org
Email: ebaxter@becketfund.org
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Eric Rassbach**
The Becket Fund for Religious Liberty
1919 Pennsylvania Ave., NW
Suite 400
Washington, DC 20006
202−349−7214
Email: erassbach@becketfund.org
Email: erassbach@becketfund.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Phillip J. Allevato**
The Becket Fund for Religious Liberty
1919 Pennsylvania Ave. NW
Suite 400
Washington, DC 20006
202−955−0095
Email: pallevato@becketfund.org
Email: pallevato@becketfund.org
*TERMINATED: 08/19/2026*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Robert G McCampbell**
Gable & Gotwals−OKC
499 W Sheridan Ave
BOK Park Plaza
Suite 2200
Oklahoma City, OK 73102
405−235−5500
Fax: 405−235−2875
Email: RMcCampbell@Gablelaw.com
Email: RMcCampbell@Gablelaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Siena A. Marcelle**
The Becket Fund for Religious Liberty
1919 Pennsylvania Ave. NW
Suite 400
Washington, DC 20006

202−955−0095
Email: smarcelle@becketfund.org
Email: smarcelle@becketfund.org
*TERMINATED: 10/02/2026*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Peter Deutsch** represented by **Benjamin A. Fleshman**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Daniel Chen**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**David R Herber**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Eric S Baxter**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Eric Rassbach**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Phillip J. Allevato**
(See above for address)
*TERMINATED: 08/19/2026*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Robert G McCampbell**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Siena A. Marcelle**
(See above for address)
*TERMINATED: 10/02/2026*
*LEAD ATTORNEY*

*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Gentner Drummond**
*in his official capacity as Attorney General of Oklahoma*
*TERMINATED: 06/09/2026*

represented by

**Garry M Gaskins , II**
Drummond Law PLLC
1500 S Utica Ave
Suite 400
Tulsa, OK 74104
918−749−7378
Fax: 918−749−7869
Email: garry.gaskins@oag.ok.gov
Email: garry.gaskins@oag.ok.gov
*TERMINATED: 06/09/2026*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Rebecca Wilkinson**
*in her official capacity as Executive Director*

represented by

**Anthony J Ferate**
Spencer Fane LLP − OKC
9400 N Broadway Extension
Suite 600
Oklahoma City, OK 73114−7423
405−753−5939
Email: aj@ferate.us
Email: aj@ferate.us
*ATTORNEY TO BE NOTICED*

**Defendant**

**Brian T Shellem**
*in his official capacity as Chairman*

represented by

**Erin Smith**
First Liberty Institute
2001 W. Plano Parkway
Suite 1600
Plano, TX 73105
469−440−7564
Email: esmith@firstliberty.org
Email: esmith@firstliberty.org
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Holly Mischelle Randall**
First Liberty Institute
2001 W. Plano Parkway
Suite 1600
Plano, TX 73105
972−941−4444
Email: HRandall@firstliberty.org
Email: HRandall@firstliberty.org

*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Anthony J Ferate**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Hiram S Sasser , III**
Liberty Institute
2001 W Plano Parkway
Suite 1600
Plano, TX 75075
972−941−4447
Email: hsasser@firstliberty.org
Email: hsasser@firstliberty.org
*ATTORNEY TO BE NOTICED*

**Defendant**

**Amber Hidy**
*in her official capacity as member of the Statewide Charter School Board*

represented by

**Erin Smith**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Holly Mischelle Randall**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Anthony J Ferate**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Hiram S Sasser , III**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Britni Tomcho**
*in her official capacity as member of the Statewide Charter School Board*

represented by

**Erin Smith**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Holly Mischelle Randall**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Anthony J Ferate**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Hiram S Sasser , III**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Damon Gardenhire**
*in his official capacity as member of the Statewide Charter School Board*

represented by **Erin Smith**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Holly Mischelle Randall**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Anthony J Ferate**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Hiram S Sasser , III**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**David Rutkauskas**
*in his official capacity as member of the Statewide Charter School Board*

represented by **Erin Smith**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Holly Mischelle Randall**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Anthony J Ferate**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Hiram S Sasser , III**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Dr Kitty Campbell**
*in her official capacity as member of the Statewide Charter School Board*

represented by **Erin Smith**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Holly Mischelle Randall**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Anthony J Ferate**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Hiram S Sasser , III**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Jared Buswell**
*in his official capacity as member of the Statewide Charter School Board*

represented by **Erin Smith**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Holly Mischelle Randall**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Anthony J Ferate**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Hiram S Sasser , III**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Lindel Fields**
*in his official capacity as member of the Statewide Charter School Board*

represented by **Erin Smith**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Holly Mischelle Randall**
(See above for address)

*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Anthony J Ferate**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Hiram S Sasser , III**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**William Pearson**
*in his official capacity as member of the Statewide Charter School Board*

represented by **Erin Smith**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Holly Mischelle Randall**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Anthony J Ferate**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Hiram S Sasser , III**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Skyler H Lusnia**
*in his official capacity as Director of School Performance for the Statewide Charter School Board*

represented by **Anthony J Ferate**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Intervenor Defendant**

**Daniel Kaiman**

represented by **Alexander Joseph Luchenister**
Americans United for Separation of Church and State
1310 L Street NW
Suite 200
Washington, DC 20005
202−466−7306
Fax: 202−717−3783

Email:
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Anna Katrina Reichert**
Education Law Center
60 Park Place
Suite 300
Newark, NJ 07102
973−624−1815
Email: kreichert@edlawcenter.org
Email: kreichert@edlawcenter.org
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Daniel Mach**
American Civil Liberties Union − DC
915 15th Street NW
6th Floor
Washington, DC 20005
202−548−6604
Fax: 202−546−0738
Email: dmach@aclu.org
Email: dmach@aclu.org
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Heather L Weaver**
American Civil Liberties Union − DC
915 15th Street NW
6th Floof
Washington, DC 20005
202−675−2330
Email: hweaver@aclu.org
Email: hweaver@aclu.org
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jessica Levin**
Education Law Center
60 Park Place
Suite 300
Newark, NJ 07102
973−624−1815
Email: jlevin@edlawcenter.org
Email: jlevin@edlawcenter.org
*LEAD ATTORNEY*
*PRO HAC VICE*

*ATTORNEY TO BE NOTICED*

**Luke Anderson**
Americans United for Separation of Church and State
1310 L Street NW
Suite 200
Washington, DC 20005
763−438−3425
Email: anderson@au.org
Email: anderson@au.org
*TERMINATED: 09/02/2026*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Morgan Nicole Bandy**
Oklahoma Appleseed Center for Law and Justice
624 S. Denver Ave
Suite 400
Tulsa, OK 74120
918−635−0919
Email: morgan@okappleseed.org
Email: morgan@okappleseed.org
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Nancy Anne Noet**
Freedom From Religion Foundation
PO Box 750
Madison, WI 53701
608−256−8900
Email: noetn@ffrf.org
Email: noetn@ffrf.org
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Patrick Cremin**
Education Law Center
60 Park Place
Suite 300
Newark, NJ 07102
925−984−8219
Email: pcremin@edlawcenter.org
Email: pcremin@edlawcenter.org
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Samuel Troxell Grover**
Freedom From Religion Foundation
PO Box 750
Madison, WI 53701
608−256−8900
Email: sgrover@ffrf.org
Email: sgrover@ffrf.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Wendy Lecker**
Education Law Center
60 Park Place
Suite 300
Newark, NJ 07102
203−536−7567
Email: wlecker@edlawcenter.org
Email: wlecker@edlawcenter.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Alex Luchenitser**
Americans United for Separation of Church and State
1310 L Street NW
Suite 200
Washington, DC 20005
202−466−7306
Fax: 202−217−3783
Email: luchenitser@au.org
Email: luchenitser@au.org
*ATTORNEY TO BE NOTICED*

**Brent Rowland**
Oklahoma Appleseed Center for Law and Justice
624 S. Denver Ave.
Ste 400
74120
Tulsa, OK 74119
918−906−1527
Email: brent@okappleseed.org
Email: brent@okappleseed.org
*ATTORNEY TO BE NOTICED*

**Intervenor Defendant**

**Bradley Archer** represented by **Alexander Joseph Luchenister**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Anna Katrina Reichert**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Daniel Mach**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Heather L Weaver**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jessica Levin**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Luke Anderson**
(See above for address)
*TERMINATED: 09/02/2026*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Morgan Nicole Bandy**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Nancy Anne Noet**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Patrick Cremin**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Samuel Troxell Grover**
(See above for address)
*LEAD ATTORNEY*

*ATTORNEY TO BE NOTICED*

**Wendy Lecker**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Alex Luchenitser**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Brent Rowland**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Intervenor Defendant**

**Erika DuBose** represented by **Alexander Joseph Luchenister**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Anna Katrina Reichert**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Daniel Mach**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Heather L Weaver**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jessica Levin**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Luke Anderson**
(See above for address)
*TERMINATED: 09/02/2026*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Morgan Nicole Bandy**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Nancy Anne Noet**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Patrick Cremin**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Samuel Troxell Grover**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Wendy Lecker**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Alex Luchenitser**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Brent Rowland**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Intervenor Defendant**

**Sydney Gebhardt** represented by **Alexander Joseph Luchenister**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Anna Katrina Reichert**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Daniel Mach**
(See above for address)

*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Heather L Weaver**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jessica Levin**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Luke Anderson**
(See above for address)
*TERMINATED: 09/02/2026*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Morgan Nicole Bandy**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Nancy Anne Noet**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Patrick Cremin**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Samuel Troxell Grover**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Wendy Lecker**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Alex Luchenitser**

(See above for address)
*ATTORNEY TO BE NOTICED*

**Brent Rowland**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Intervenor Defendant**

**Kara Joy McKee** represented by **Alexander Joseph Luchenister**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Anna Katrina Reichert**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Daniel Mach**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Heather L Weaver**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jessica Levin**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Luke Anderson**
(See above for address)
*TERMINATED: 09/02/2026*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Morgan Nicole Bandy**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Nancy Anne Noet**

(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Patrick Cremin**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Samuel Troxell Grover**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Wendy Lecker**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Alex Luchenitser**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Brent Rowland**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Intervenor Defendant**

**Michele Medley** represented by **Alexander Joseph Luchenister**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Anna Katrina Reichert**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Daniel Mach**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Heather L Weaver**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*

*ATTORNEY TO BE NOTICED*

**Jessica Levin**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Luke Anderson**
(See above for address)
*TERMINATED: 09/02/2026*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Morgan Nicole Bandy**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Nancy Anne Noet**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Patrick Cremin**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Samuel Troxell Grover**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Wendy Lecker**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Alex Luchenitser**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Brent Rowland**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Intervenor Defendant**

**Gene Perry** represented by **Alexander Joseph Luchenister**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Anna Katrina Reichert**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Daniel Mach**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Heather L Weaver**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jessica Levin**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Luke Anderson**
(See above for address)
*TERMINATED: 09/02/2026*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Morgan Nicole Bandy**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Nancy Anne Noet**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Patrick Cremin**
(See above for address)
*LEAD ATTORNEY*

*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Samuel Troxell Grover**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Wendy Lecker**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Alex Luchenitser**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Brent Rowland**
(See above for address)
*ATTORNEY TO BE NOTICED*

**<u>Intervenor Defendant</u>**

**Cricket Moore** represented by

**Heather N Hendricks**
Leonard Long & Cassil
6301 N. Western Ave., Ste. 250
Oklahoma City, OK 73118
405−702−9900
Email: hhendricks@llc−attorneys.com
Email: hhendricks@llc−attorneys.com
*ATTORNEY TO BE NOTICED*

**Heidi J Long**
Leonard, Long & Cassil, PLLC
6301 North Western Ave
Ste 250
Oklahoma City, OK 73118
405−803−8343
Fax: 405−605−8381
Email: hlong@llc−attorneys.com
Email: hlong@llc−attorneys.com
*ATTORNEY TO BE NOTICED*

**Ryan T Leonard**
Leonard, Long & Cassil, PLLC
6301 North Western Ave
Ste 250
Oklahoma City, OK 73118
405−702−9900
Email: rleonard@llc−attorneys.com
Email: rleonard@llc−attorneys.com
*ATTORNEY TO BE NOTICED*

**Intervenor Defendant**

| | | |
|---|---|---|
| **Cathleen Tichenor** | represented by | **Heather N Hendricks**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED*<br><br>**Heidi J Long**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED*<br><br>**Ryan T Leonard**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |

**Intervenor Defendant**

| | | |
|---|---|---|
| **Daniel Hensley** | represented by | **Heather N Hendricks**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED*<br><br>**Heidi J Long**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED*<br><br>**Ryan T Leonard**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |

**Intervenor Defendant**

| | | |
|---|---|---|
| **Luz Cruz** | represented by | **Heather N Hendricks**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED*<br><br>**Heidi J Long**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED*<br><br>**Ryan T Leonard**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |

**Intervenor Defendant**

| | | |
|---|---|---|
| **Larissa Port** | represented by | **Heather N Hendricks**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED*<br><br>**Heidi J Long**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED*<br><br>**Ryan T Leonard**<br>(See above for address) |

*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 03/24/2026 | 1 | COMPLAINT against Jared Buswell, Kitty Campbell, Gentner Drummond, Lindel Fields, Damon Gardenhire, Amber Hidy, Skyler H Lusnia, William Pearson, David Rutkauskas, Brian T Shellem, Britni Tomcho, Rebecca Wilkinson filed by Peter Deutsch, The National Ben Gamla Jewish Charter School Foundation Inc. (Attachments: # 1 Exhibit 1 − Drummond remarks on St. Isidore, # 2 Exhibit 2 − Ben Gamla Full App Text, # 3 Exhibit 3 − SCSB Press Release 2.9.26, # 4 Exhibit 4 − BG Letter−Notice of Rejection−final, # 5 Exhibit 5 − Ben Gamla Addendum, # 6 Exhibit 6 − BG Letter−Notice of Rejection−2, # 7 Civil Cover Sheet)(alw) (Entered: 03/24/2026) |
| 03/24/2026 | 2 | Summons Issued Electronically as to Jared Buswell, Kitty Campbell, Gentner Drummond, Lindel Fields, Damon Gardenhire, Amber Hidy, Skyler H Lusnia, William Pearson, David Rutkauskas, Brian T Shellem, Britni Tomcho, Rebecca Wilkinson. (alw) (Entered: 03/24/2026) |
| 03/24/2026 | | PAYMENT FOR A CIVIL CASE Filing fee $ 405, receipt number AOKWDC−4953531. (McCampbell, Robert) (Entered: 03/24/2026) |
| 03/24/2026 | 3 | ENTRY of Appearance by Eric S Baxter on behalf of All Plaintiffs (Baxter, Eric) (Entered: 03/24/2026) |
| 03/24/2026 | 4 | ENTRY of Appearance by Daniel Chen on behalf of All Plaintiffs (Chen, Daniel) (Entered: 03/24/2026) |
| 03/24/2026 | 5 | ENTRY of Appearance by Eric Rassbach on behalf of All Plaintiffs (Rassbach, Eric) (Entered: 03/24/2026) |
| 03/24/2026 | 6 | ENTRY of Appearance by David R Herber on behalf of All Plaintiffs (Herber, David) (Entered: 03/24/2026) |
| 03/24/2026 | 7 | ENTRY of Appearance by Robert G McCampbell on behalf of All Plaintiffs (McCampbell, Robert) (Entered: 03/24/2026) |
| 03/26/2026 | 8 | MOTION for Leave to Appear Pro Hac Vice Filing fee $ 100, receipt number AOKWDC−4957216 by All Plaintiffs. (Attachments: # 1 Exhibit 1−Request for Admission Pro Hac Vice)(Herber, David) (Entered: 03/26/2026) |
| 03/26/2026 | 9 | AMENDED MOTION for Leave to Appear Pro Hac Vice Filing fee $ 100, receipt number AOKWDC−4957431 by All Plaintiffs. (Attachments: # 1 Exhibit 1−Request for Admission Pro Hac Vice)(Herber, David) (Entered: 03/26/2026) |
| 03/27/2026 | 10 | MOTION for Preliminary Injunction by Peter Deutsch, The National Ben Gamla Jewish Charter School Foundation Inc. (Baxter, Eric) (Entered: 03/27/2026) |
| 03/27/2026 | 11 | MOTION for Preliminary Injunction *Brief in Support* by Peter Deutsch, The National Ben Gamla Jewish Charter School Foundation Inc. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2)(Baxter, Eric) (Entered: 03/27/2026) |
| 03/31/2026 | 12 | CERTIFICATE *Amended Certificate of Service*. (Baxter, Eric) (Entered: 03/31/2026) |
| 03/31/2026 | 13 | **ORDER** granting 8 Motion to Appear Pro Hac Vice. Phillip J. Allevato permitted to appear as counsel for Plaintiffs. Signed by Judge David L. Russell on 3/31/2026. (tb) |

| | | |
|---|---|---|
| | | (Entered: 03/31/2026) |
| 04/01/2026 | 14 | ENTRY of Appearance by Brent Rowland on behalf of Daniel Kaiman, Bradley Archer, Erika DuBose, Sydney Gebhardt, Kara Joy McKee, Michele Medley, Gene Perry (Rowland, Brent) (Entered: 04/01/2026) |
| 04/01/2026 | 15 | MOTION to Intervene *and Brief in Support* by Bradley Archer, Erika DuBose, Sydney Gebhardt, Daniel Kaiman, Kara Joy McKee, Michele Medley, Gene Perry. (Attachments: # 1 Exhibit 1 − Feb. 9 Board Meeting Transcript, # 2 Exhibit 2 − Mar. 9 Board Meeting Transcript, # 3 Exhibit 3 − May 2025 First Liberty Press Release, # 4 Exhibit 4 − March 2026 First Liberty Press Release, # 5 Exhibit 5 − Ben Gamla Five−Year Budget, # 6 Exhibit 6 − Kaiman Declaration, # 7 Exhibit 7 − Archer Declaration, # 8 Exhibit 8 − DuBose Declaration, # 9 Exhibit 9 − Gebhardt Declaration, # 10 Exhibit 10 − McKee Declaration, # 11 Exhibit 11 − Perry Declaration, # 12 Exhibit 12 − Medley Declaration, # 13 Exhibit 13 − Anderson Declaration, # 14 Attachment Intervenors' Answer)(Rowland, Brent) (Entered: 04/01/2026) |
| 04/01/2026 | 16 | MOTION for Leave to Appear Pro Hac Vice *of Luke Anderson* Filing fee $ 100, receipt number AOKWDC−4963841 by Bradley Archer, Erika DuBose, Sydney Gebhardt, Daniel Kaiman, Kara Joy McKee, Michele Medley, Gene Perry. (Attachments: # 1 Attachment 1 − Anderson Request for Admission Pro Hac Vice form)(Rowland, Brent) (Entered: 04/01/2026) |
| 04/01/2026 | 17 | MOTION for Leave to Appear Pro Hac Vice *of Alex J. Luchenitser* Filing fee $ 100, receipt number AOKWDC−4963870 by Bradley Archer, Erika DuBose, Sydney Gebhardt, Daniel Kaiman, Kara Joy McKee, Michele Medley, Gene Perry. (Attachments: # 1 Attachment 1 − Luchenitser Request for Admission Pro Hac Vice form)(Rowland, Brent) (Entered: 04/01/2026) |
| 04/01/2026 | 18 | MOTION for Leave to Appear Pro Hac Vice *of Daniel Mach* Filing fee $ 100, receipt number AOKWDC−4963879 by Bradley Archer, Erika DuBose, Sydney Gebhardt, Daniel Kaiman, Kara Joy McKee, Michele Medley, Gene Perry. (Attachments: # 1 Attachment 1 − Mach Request for Admission Pro Hac Vice form)(Rowland, Brent) (Entered: 04/01/2026) |
| 04/01/2026 | 19 | MOTION for Leave to Appear Pro Hac Vice *of Heather L. Weaver* Filing fee $ 100, receipt number AOKWDC−4963891 by Bradley Archer, Erika DuBose, Sydney Gebhardt, Daniel Kaiman, Kara Joy McKee, Michele Medley, Gene Perry. (Attachments: # 1 Attachment 1 − Weaver Request for Admission Pro Hac Vice form)(Rowland, Brent) (Entered: 04/01/2026) |
| 04/01/2026 | 20 | MOTION for Leave to Appear Pro Hac Vice *of Nancy A. Noet* Filing fee $ 100, receipt number AOKWDC−4963899 by Bradley Archer, Erika DuBose, Sydney Gebhardt, Daniel Kaiman, Kara Joy McKee, Michele Medley, Gene Perry. (Attachments: # 1 Attachment 1 − Noet Request for Admission Pro Hac Vice form)(Rowland, Brent) (Entered: 04/01/2026) |
| 04/01/2026 | 21 | MOTION for Leave to Appear Pro Hac Vice *of Samuel T. Grover* Filing fee $ 100, receipt number AOKWDC−4963903 by Bradley Archer, Erika DuBose, Sydney Gebhardt, Daniel Kaiman, Kara Joy McKee, Michele Medley, Gene Perry. (Attachments: # 1 Attachment 1 − Grover Request for Admission Pro Hac Vice form)(Rowland, Brent) (Entered: 04/01/2026) |
| 04/01/2026 | 22 | |

| | | |
|---|---|---|
| | | MOTION for Leave to Appear Pro Hac Vice *of Jessica Levin* Filing fee $ 100, receipt number AOKWDC−4963910 by Bradley Archer, Erika DuBose, Sydney Gebhardt, Daniel Kaiman, Kara Joy McKee, Michele Medley, Gene Perry. (Attachments: # 1 Attachment 1 − Levin Request for Admission Pro Hac Vice form)(Rowland, Brent) (Entered: 04/01/2026) |
| 04/01/2026 | 23 | MOTION for Leave to Appear Pro Hac Vice *of Wendy Lecker* Filing fee $ 100, receipt number AOKWDC−4963914 by Bradley Archer, Erika DuBose, Sydney Gebhardt, Daniel Kaiman, Kara Joy McKee, Michele Medley, Gene Perry. (Attachments: # 1 Attachment 1 − Lecker Request for Admission Pro Hac Vice form)(Rowland, Brent) (Entered: 04/01/2026) |
| 04/01/2026 | 24 | MOTION for Leave to Appear Pro Hac Vice *of Patrick Cremin* Filing fee $ 100, receipt number AOKWDC−4963925 by Bradley Archer, Erika DuBose, Sydney Gebhardt, Daniel Kaiman, Kara Joy McKee, Michele Medley, Gene Perry. (Attachments: # 1 Attachment 1 − Cremin Request for Admission Pro Hac Vice form)(Rowland, Brent) (Entered: 04/01/2026) |
| 04/01/2026 | 25 | MOTION for Leave to Appear Pro Hac Vice *of Katrina Reichert* Filing fee $ 100, receipt number AOKWDC−4963931 by Bradley Archer, Erika DuBose, Sydney Gebhardt, Daniel Kaiman, Kara Joy McKee, Michele Medley, Gene Perry. (Attachments: # 1 Attachment 1 − Reichert Request for Admission Pro Hac Vice form)(Rowland, Brent) (Entered: 04/01/2026) |
| 04/01/2026 | 26 | MOTION for Leave to Appear Pro Hac Vice *of Morgan Bandy* Filing fee $ 100, receipt number AOKWDC−4964073 by Bradley Archer, Erika DuBose, Sydney Gebhardt, Daniel Kaiman, Kara Joy McKee, Michele Medley, Gene Perry. (Attachments: # 1 Attachment 1 − Bandy Request for Admission Pro Hac Vice form)(Rowland, Brent) (Entered: 04/01/2026) |
| 04/02/2026 | 27 | SUMMONS Returned Executed by Peter Deutsch. Gentner Drummond served on 3/26/2026. (McCampbell, Robert) (Entered: 04/02/2026) |
| 04/02/2026 | 28 | SUMMONS Returned Executed by Peter Deutsch, The National Ben Gamla Jewish Charter School Foundation Inc. Damon Gardenhire served on 3/26/2026. (McCampbell, Robert) (Entered: 04/02/2026) |
| 04/02/2026 | 29 | SUMMONS Returned Executed by Peter Deutsch, The National Ben Gamla Jewish Charter School Foundation Inc. Rebecca Wilkinson served on 3/26/2026. (McCampbell, Robert) (Entered: 04/02/2026) |
| 04/02/2026 | 30 | SUMMONS Returned Executed by Peter Deutsch, The National Ben Gamla Jewish Charter School Foundation Inc. Brian T Shellem served on 3/26/2026. (McCampbell, Robert) (Entered: 04/02/2026) |
| 04/02/2026 | 31 | SUMMONS Returned Executed by Peter Deutsch, The National Ben Gamla Jewish Charter School Foundation Inc. Britni Tomcho served on 3/26/2026. (McCampbell, Robert) (Entered: 04/02/2026) |
| 04/02/2026 | 32 | SUMMONS Returned Executed by Peter Deutsch, The National Ben Gamla Jewish Charter School Foundation Inc. Amber Hidy served on 3/26/2026. (McCampbell, Robert) (Entered: 04/02/2026) |
| 04/02/2026 | 33 | SUMMONS Returned Executed by Peter Deutsch, The National Ben Gamla Jewish Charter School Foundation Inc. William Pearson served on 3/26/2026. (McCampbell, Robert) (Entered: 04/02/2026) |

| | | |
|---|---|---|
| 04/02/2026 | 34 | SUMMONS Returned Executed by Peter Deutsch, The National Ben Gamla Jewish Charter School Foundation Inc. Jared Buswell served on 3/26/2026. (McCampbell, Robert) (Entered: 04/02/2026) |
| 04/02/2026 | 35 | SUMMONS Returned Executed by Peter Deutsch, The National Ben Gamla Jewish Charter School Foundation Inc. David Rutkauskas served on 3/26/2026. (McCampbell, Robert) (Entered: 04/02/2026) |
| 04/02/2026 | 36 | SUMMONS Returned Executed by Peter Deutsch, The National Ben Gamla Jewish Charter School Foundation Inc. Lindel Fields served on 3/26/2026. (McCampbell, Robert) (Entered: 04/02/2026) |
| 04/02/2026 | 37 | SUMMONS Returned Executed by Peter Deutsch, The National Ben Gamla Jewish Charter School Foundation Inc. Kitty Campbell served on 3/26/2026. (McCampbell, Robert) (Entered: 04/02/2026) |
| 04/02/2026 | 38 | SUMMONS Returned Executed by Peter Deutsch, The National Ben Gamla Jewish Charter School Foundation Inc. Skyler H Lusnia served on 3/26/2026. (McCampbell, Robert) (Entered: 04/02/2026) |
| 04/02/2026 | 39 | SUMMONS Returned Executed by The National Ben Gamla Jewish Charter School Foundation Inc. (McCampbell, Robert) (Entered: 04/02/2026) |
| 04/07/2026 | 40 | **ORDER** granting 16 17 18 19 20 21 22 23 24 25 and 26 Motions to Appear Pro Hac Vice. Luke Anderson, Alex J. Luchenitser, Daniel Mach, Heather L. Weaver, Nancy A. Noet, Samuel T. Grover, Jessica Levin, Wendy Lecker, Patrick Cremin, Katrina Reichert and Morgan Bandy are hereby admitted as counsel for proposed intervenors in this matter. Signed by Judge David L. Russell on 4/7/2026. (tb) (Entered: 04/07/2026) |
| 04/09/2026 | 41 | ENTRY of Appearance by Wendy Lecker on behalf of Bradley Archer, Erika DuBose, Sydney Gebhardt, Daniel Kaiman, Kara Joy McKee, Michele Medley, Gene Perry (Lecker, Wendy) (Entered: 04/09/2026) |
| 04/09/2026 | 42 | ENTRY of Appearance by Luke Anderson on behalf of Bradley Archer, Erika DuBose, Sydney Gebhardt, Daniel Kaiman, Kara Joy McKee, Michele Medley, Gene Perry (Anderson, Luke) (Entered: 04/09/2026) |
| 04/10/2026 | 43 | ENTRY of Appearance by Daniel Mach on behalf of Bradley Archer, Erika DuBose, Sydney Gebhardt, Daniel Kaiman, Kara Joy McKee, Michele Medley, Gene Perry (Mach, Daniel) (Entered: 04/10/2026) |
| 04/10/2026 | 44 | ENTRY of Appearance by Heather L Weaver on behalf of Bradley Archer, Erika DuBose, Sydney Gebhardt, Daniel Kaiman, Kara Joy McKee, Michele Medley, Gene Perry (Weaver, Heather) (Entered: 04/10/2026) |
| 04/10/2026 | 45 | ENTRY of Appearance by Wendy Lecker on behalf of Bradley Archer, Erika DuBose, Sydney Gebhardt, Daniel Kaiman, Kara Joy McKee, Michele Medley, Gene Perry (Lecker, Wendy) (Entered: 04/10/2026) |
| 04/13/2026 | 46 | ENTRY of Appearance by Alex Luchenitser on behalf of Bradley Archer, Erika DuBose, Sydney Gebhardt, Daniel Kaiman, Kara Joy McKee, Michele Medley, Gene Perry (Luchenitser, Alex) (Entered: 04/13/2026) |
| 04/13/2026 | 47 | ENTRY of Appearance by Patrick Cremin on behalf of Bradley Archer, Erika DuBose, Sydney Gebhardt, Daniel Kaiman, Kara Joy McKee, Michele Medley, Gene |

| | | |
|---|---|---|
| | | Perry (Cremin, Patrick) (Entered: 04/13/2026) |
| 04/13/2026 | 48 | ENTRY of Appearance by Anna Katrina Reichert on behalf of Bradley Archer, Erika DuBose, Sydney Gebhardt, Daniel Kaiman, Kara Joy McKee, Michele Medley, Gene Perry (Reichert, Anna) (Entered: 04/13/2026) |
| 04/13/2026 | 49 | ENTRY of Appearance by Jessica Levin on behalf of Bradley Archer, Erika DuBose, Sydney Gebhardt, Daniel Kaiman, Kara Joy McKee, Michele Medley, Gene Perry (Levin, Jessica) (Entered: 04/13/2026) |
| 04/14/2026 | 50 | ENTRY of Appearance by Samuel Troxell Grover on behalf of Bradley Archer, Erika DuBose, Sydney Gebhardt, Daniel Kaiman, Kara Joy McKee, Michele Medley, Gene Perry (Grover, Samuel) (Entered: 04/14/2026) |
| 04/14/2026 | 51 | ENTRY of Appearance by Garry M Gaskins, II on behalf of Gentner Drummond (Gaskins, Garry) (Entered: 04/14/2026) |
| 04/14/2026 | 52 | MOTION to Dismiss , *with Brief in Support* by Gentner Drummond. (Gaskins, Garry) (Entered: 04/14/2026) |
| 04/15/2026 | 53 | ENTRY of Appearance by Nancy Anne Noet on behalf of Bradley Archer, Erika DuBose, Sydney Gebhardt, Daniel Kaiman, Kara Joy McKee, Michele Medley, Gene Perry (Noet, Nancy) (Entered: 04/15/2026) |
| 04/15/2026 | 54 | ENTRY of Appearance by Anthony J Ferate on behalf of Jared Buswell, Kitty Campbell, Lindel Fields, Damon Gardenhire, Amber Hidy, Skyler H Lusnia, William Pearson, David Rutkauskas, Brian T Shellem, Britni Tomcho, Rebecca Wilkinson (Attachments: # 1 Exhibit List of clients represented)(Ferate, Anthony) (Entered: 04/15/2026) |
| 04/15/2026 | 55 | ENTRY of Appearance by Phillip J. Allevato on behalf of Peter Deutsch, The National Ben Gamla Jewish Charter School Foundation Inc (Allevato, Phillip) (Entered: 04/15/2026) |
| 04/15/2026 | 56 | NOTICE of Voluntary Dismissal by Peter Deutsch, The National Ben Gamla Jewish Charter School Foundation Inc (Baxter, Eric) (Entered: 04/15/2026) |
| 04/16/2026 | 57 | MOTION for Leave to Appear Pro Hac Vice Filing fee $ 100, receipt number AOKWDC−4983174 by All Plaintiffs. (Attachments: # 1 Exhibit 1−Request for Admission Pro Hac Vice)(Herber, David) (Entered: 04/16/2026) |
| 04/16/2026 | 58 | ENTRY of Appearance by Hiram S Sasser, III on behalf of Jared Buswell, Kitty Campbell, Lindel Fields, Damon Gardenhire, Amber Hidy, William Pearson, David Rutkauskas, Brian T Shellem, Britni Tomcho (Attachments: # 1 Exhibit)(Sasser, Hiram) (Entered: 04/16/2026) |
| 04/16/2026 | 59 | ANSWER to Complaint by Jared Buswell, Kitty Campbell, Lindel Fields, Damon Gardenhire, Amber Hidy, William Pearson, David Rutkauskas, Brian T Shellem, Britni Tomcho.(Ferate, Anthony) (Entered: 04/16/2026) |
| 04/16/2026 | 60 | MOTION for Leave to Appear Pro Hac Vice *by Holly Randall* by Jared Buswell, Kitty Campbell, Lindel Fields, Damon Gardenhire, Amber Hidy, William Pearson, David Rutkauskas, Brian T Shellem, Britni Tomcho. (Attachments: # 1 Exhibit Request for Admission PHV)(Ferate, Anthony) (Entered: 04/16/2026) |
| 04/16/2026 | 61 | MOTION for Leave to Appear Pro Hac Vice *by Erin Smith* by Jared Buswell, Kitty Campbell, Lindel Fields, Damon Gardenhire, Amber Hidy, William Pearson, David |

| | | |
|---|---|---|
| | | Rutkauskas, Brian T Shellem, Britni Tomcho. (Attachments: # 1 Exhibit Request for Admission PHV)(Ferate, Anthony) (Entered: 04/16/2026) |
| 04/17/2026 | 62 | MOTION for Leave *to File Brief in Opposition to Plaintiffs' Motion for Preliminary Injunction* by Bradley Archer, Erika DuBose, Sydney Gebhardt, Daniel Kaiman, Kara Joy McKee, Michele Medley, Gene Perry. (Attachments: # 1 Attachment Proposed Brief in Opposition to Plaintiffs' Motion for Preliminary Injunction, # 2 Exhibit 1 to Proposed Opposition (document concerning training certificate), # 3 Exhibit 2 to Proposed Opposition (enrollment projections), # 4 Exhibit 3 to Proposed Opposition (declaration of Luke Anderson))(Luchenitser, Alex) (Entered: 04/17/2026) |
| 04/17/2026 | 63 | RESPONSE to Motion re 11 MOTION for Preliminary Injunction *Brief in Support* filed by Jared Buswell, Kitty Campbell, Lindel Fields, Damon Gardenhire, Amber Hidy, William Pearson, David Rutkauskas, Brian T Shellem, Britni Tomcho. (Attachments: # 1 Exhibit Declaration of Hiram S. Sasser III)(Ferate, Anthony) (Entered: 04/17/2026) |
| 04/17/2026 | 64 | RESPONSE in Opposition re 10 MOTION for Preliminary Injunction , 11 MOTION for Preliminary Injunction *Brief in Support* filed by Gentner Drummond. (Gaskins, Garry) (Entered: 04/17/2026) |
| 04/17/2026 | 65 | ENTRY of Appearance by Heidi J Long on behalf of Cricket Moore, Cathleen Tichenor, Daniel Hensley, Luz Cruz, Larissa Port (Long, Heidi) (Entered: 04/17/2026) |
| 04/17/2026 | 66 | MOTION to Intervene *and Brief in Support* by Luz Cruz, Daniel Hensley, Cricket Moore, Larissa Port, Cathleen Tichenor. (Attachments: # 1 Exhibit 1 − Declaration of Cricket Moore, # 2 Exhibit 2 − Declaration of Cathleen Tichenor, # 3 Exhibit 3 − Declaration of Daniel Hensley, # 4 Exhibit 4 − Declaration of Luz Cruz, # 5 Exhibit 5 − Declaration of Larissa Port, # 6 Attachment Proposed Answer)(Long, Heidi) (Entered: 04/17/2026) |
| 04/20/2026 | 67 | **ORDER** granting 60 Motion to Appear Pro Hac Vice. Holly M. Randall admitted to serve as counsel for Defendants Brian T. Shellem, in his official capacity as Chairman, Amber Hidy, Britni Tomcho, Damon Gardenhire, David Rutkauskas, Dr. Kitty Campbell, Jared Buswell, Lindel Fields, and William Pearson. Signed by Judge David L. Russell on 4/20/2026. (tb) (Entered: 04/20/2026) |
| 04/20/2026 | 68 | **ORDER** granting 61 Motion to Appear Pro Hac Vice. Erin E. Smith admitted to serve as counsel for Defendants Brian T. Shellem, in his official capacity as Chairman, Amber Hidy, Britni Tomcho, Damon Gardenhire, David Rutkauskas, Dr. Kitty Campbell, Jared Buswell, Lindel Fields, and William Pearson. Signed by Judge David L. Russell on 4/20/2026. (tb) (Entered: 04/20/2026) |
| 04/20/2026 | 69 | **ORDER** granting 57 Motion to Appear Pro Hac Vice. Siena A. Marcelle admitted as counsel for Plaintiffs in this matter. Signed by Judge David L. Russell on 4/20/2026. (tb) (Entered: 04/20/2026) |
| 04/20/2026 | 70 | ENTRY of Appearance by Heather N Hendricks on behalf of Luz Cruz, Daniel Hensley, Cricket Moore, Larissa Port, Cathleen Tichenor (Hendricks, Heather) (Entered: 04/20/2026) |
| 04/20/2026 | 72 | Receipt for Money Received from Jared Buswell, Kitty Campbell, Lindel Fields, Damon Gardenhire, Amber Hidy, William Pearson, David Rutkauskas, Brian T Shellem, Britni Tomcho in the amount of $100, receipt number 500017181 regarding |

| | | |
|---|---|---|
| | | 60 MOTION for Leave to Appear Pro Hac Vice *by Holly Randall* (llr) (Entered: 04/21/2026) |
| 04/20/2026 | 73 | Receipt for Money Received from Jared Buswell, Kitty Campbell, Lindel Fields, Damon Gardenhire, Amber Hidy, William Pearson, David Rutkauskas, Brian T Shellem, Britni Tomcho in the amount of $100, receipt number 500017182 regarding 61 MOTION for Leave to Appear Pro Hac Vice *by Erin Smith* (llr) (Entered: 04/21/2026) |
| 04/21/2026 | 71 | ENTRY of Appearance by Ryan T Leonard on behalf of Luz Cruz, Daniel Hensley, Cricket Moore, Larissa Port, Cathleen Tichenor (Leonard, Ryan) (Entered: 04/21/2026) |
| 04/21/2026 | 74 | ENTRY of Appearance by Holly Mischelle Randall on behalf of Jared Buswell, Kitty Campbell, Lindel Fields, Damon Gardenhire, Amber Hidy, William Pearson, David Rutkauskas, Brian T Shellem, Britni Tomcho (Attachments: # 1 Exhibit Def Exhibit 1)(Randall, Holly) (Entered: 04/21/2026) |
| 04/21/2026 | 75 | ENTRY of Appearance by Erin Smith on behalf of Jared Buswell, Kitty Campbell, Lindel Fields, Damon Gardenhire, Amber Hidy, William Pearson, David Rutkauskas, Brian T Shellem, Britni Tomcho (Attachments: # 1 Exhibit Def Exhibit 1)(Smith, Erin) (Entered: 04/21/2026) |
| 04/22/2026 | 76 | RESPONSE in Opposition re 15 MOTION to Intervene *and Brief in Support* filed by Jared Buswell, Kitty Campbell, Lindel Fields, Damon Gardenhire, Amber Hidy, William Pearson, David Rutkauskas, Brian T Shellem, Britni Tomcho. (Ferate, Anthony) (Entered: 04/22/2026) |
| 04/22/2026 | 77 | RESPONSE in Opposition re 15 MOTION to Intervene *and Brief in Support* filed by Peter Deutsch, The National Ben Gamla Jewish Charter School Foundation Inc. (Baxter, Eric) (Entered: 04/22/2026) |
| 04/23/2026 | 78 | ENTRY of Appearance by Siena A. Marcelle on behalf of All Plaintiffs (Marcelle, Siena) (Entered: 04/23/2026) |
| 04/24/2026 | 79 | REPLY by Plaintiffs Peter Deutsch, The National Ben Gamla Jewish Charter School Foundation Inc re 10 MOTION for Preliminary Injunction filed by Peter Deutsch, The National Ben Gamla Jewish Charter School Foundation Inc. (Baxter, Eric) (Entered: 04/24/2026) |
| 04/29/2026 | 80 | REPLY to Response to Motion re 15 MOTION to Intervene *and Brief in Support* filed by Bradley Archer, Erika DuBose, Sydney Gebhardt, Daniel Kaiman, Kara Joy McKee, Michele Medley, Gene Perry. (Luchenitser, Alex) (Entered: 04/29/2026) |
| 05/01/2026 | 81 | RESPONSE in Opposition re 52 MOTION to Dismiss *, with Brief in Support* filed by All Plaintiffs. (Baxter, Eric) (Entered: 05/01/2026) |
| 05/05/2026 | 82 | MOTION for Leave to Appear Pro Hac Vice Filing fee $ 100, receipt number AOKWDC−5008246 by All Plaintiffs. (Attachments: # 1 Exhibit Request for Admission Pro Hac Vice)(Herber, David) (Entered: 05/05/2026) |
| 05/06/2026 | 83 | **ORDER** granting 82 Motion to Appear Pro Hac Vice. Benjamin A. Fleshman admitted as counsel for Plaintiffs. Signed by Judge David L. Russell on 5/6/2026. (tb) (Entered: 05/06/2026) |
| 05/07/2026 | 84 | |

| | | |
|---|---|---|
| | | ENTRY of Appearance by Benjamin A. Fleshman on behalf of Peter Deutsch, The National Ben Gamla Jewish Charter School Foundation Inc (Fleshman, Benjamin) (Entered: 05/07/2026) |
| 05/07/2026 | 85 | RESPONSE in Opposition re 66 MOTION to Intervene *and Brief in Support* filed by All Plaintiffs. (Baxter, Eric) (Entered: 05/07/2026) |
| 05/07/2026 | 86 | RESPONSE in Opposition re 66 MOTION to Intervene *and Brief in Support* filed by Jared Buswell, Kitty Campbell, Lindel Fields, Damon Gardenhire, Amber Hidy, William Pearson, David Rutkauskas, Brian T Shellem, Britni Tomcho. (Ferate, Anthony) (Entered: 05/07/2026) |
| 05/08/2026 | 87 | REPLY to Response to Motion re 52 MOTION to Dismiss , *with Brief in Support* filed by Gentner Drummond. (Gaskins, Garry) (Entered: 05/08/2026) |
| 05/14/2026 | 88 | REPLY to Response to Motion re 66 MOTION to Intervene *and Brief in Support* filed by Luz Cruz, Daniel Hensley, Cricket Moore, Larissa Port, Cathleen Tichenor. (Long, Heidi) (Entered: 05/14/2026) |
| 06/03/2026 | 89 | **ORDER** granting 15 MOTION to Intervene *and Brief in Support* filed by Gene Perry, Michele Medley, Sydney Gebhardt, Erika DuBose, Bradley Archer, Daniel Kaiman, Kara Joy McKee; and granting 66 MOTION to Intervene *and Brief in Support* filed by Larissa Port, Daniel Hensley, Cathleen Tichenor, Luz Cruz, Cricket Moore. The defendant−intervenors shall file their responsive pleadings within 14 days of the date of this order. Signed by Judge David L. Russell on 6/3/2026. (tb) (Entered: 06/03/2026) |
| 06/09/2026 | 90 | **ORDER** granting 52 MOTION to Dismiss , *with Brief in Support* filed by Gentner Drummond. Gentner Drummond (in his official capacity as Attorney General of Oklahoma) will be removed from this case. Signed by Judge David L. Russell on 6/9/2026. (tb) (Entered: 06/09/2026) |
| 06/09/2026 | 91 | ANSWER to Complaint by Bradley Archer, Erika DuBose, Sydney Gebhardt, Daniel Kaiman, Kara Joy McKee, Michele Medley, Gene Perry.(Luchenitser, Alex) (Entered: 06/09/2026) |
| 06/11/2026 | 92 | MOTION to Modify Caption by Brian T Shellem. (Ferate, Anthony) (Entered: 06/11/2026) |
| 06/17/2026 | 93 | ANSWER to Complaint by Luz Cruz, Daniel Hensley, Cricket Moore, Larissa Port, Cathleen Tichenor.(Hendricks, Heather) (Entered: 06/17/2026) |
| 06/17/2026 | 94 | RESPONSE in Opposition re 10 MOTION for Preliminary Injunction filed by Luz Cruz, Daniel Hensley, Cricket Moore, Larissa Port, Cathleen Tichenor. (Hendricks, Heather) (Entered: 06/17/2026) |
| 06/18/2026 | 95 | UNOPPOSED MOTION for Extension of Time to File Response/Reply as to 94 Response in Opposition to Motion by Peter Deutsch, The National Ben Gamla Jewish Charter School Foundation Inc. (Baxter, Eric) (Entered: 06/18/2026) |
| 06/18/2026 | 96 | UNOPPOSED MOTION for Leave to File Reply *to Taxpayer Intervenors' Opposition to Plaintiffs' Motion for Preliminary Injunction* by Peter Deutsch, The National Ben Gamla Jewish Charter School Foundation Inc. (Attachments: # 1 Attachment Plaintiffs' Reply to Taxpayer Intervenors' Opposition to Plaintiffs' Motion for Preliminary Injunction)(Baxter, Eric) (Entered: 06/18/2026) |

| | | |
|---|---|---|
| 06/29/2026 | 97 | **ORDER** granting 95 Plaintiffs' Unopposed Motion for 7−Day Extension of Time to File Reply in Response to Moore Intervenors' Opposition Brief. Plaintiffs shall file their reply on or before July 1, 2026. Signed by District Judge David L Russell on 6/29/2026. (tb) (Entered: 06/29/2026) |
| 06/29/2026 | 98 | **ORDER** granting 96 Plaintiffs' Unopposed Motion for Leave to File Reply to Taxpayer Intervenors' Opposition to Plaintiffs' Motion for Preliminary Injunction. Plaintiffs shall file their reply within seven (7) days of this Order. Signed by District Judge David L Russell on 6/29/2026. (tb) (Entered: 06/29/2026) |
| 06/30/2026 | 99 | REPLY to Response to Motion re 10 MOTION for Preliminary Injunction filed by Peter Deutsch, The National Ben Gamla Jewish Charter School Foundation Inc. (Baxter, Eric) (Entered: 06/30/2026) |
| 07/01/2026 | 100 | REPLY to Response to Motion re 10 MOTION for Preliminary Injunction filed by Peter Deutsch, The National Ben Gamla Jewish Charter School Foundation Inc. (Baxter, Eric) (Entered: 07/01/2026) |
| 07/02/2026 | 101 | UNOPPOSED MOTION for oral argument *regarding Motion for Preliminary Injunction* by All Plaintiffs. (Baxter, Eric) (Entered: 07/02/2026) |
| 07/06/2026 | 102 | MOTION Status Conference by Jared Buswell, Kitty Campbell, Lindel Fields, Damon Gardenhire, Amber Hidy, William Pearson, David Rutkauskas, Brian T Shellem, Britni Tomcho. (Ferate, Anthony) (Entered: 07/06/2026) |
| 07/07/2026 | 103 | **ORDER** granting 62 Motion for Leave to file Brief in opposition to Plaintiff's Motion for Preliminary Injunction. The brief in opposition filed at Doc. No. 62−1 and its corresponding exhibits are deemed filed. Signed by Judge David L. Russell on 7/7/2026. (tb) (Entered: 07/07/2026) |
| 07/07/2026 | 104 | **ORDER** granting 92 Motion to Modify Caption. The caption shall identify Brian T. Shellem, in his official as Chairman of the Statewide School Board, as the proper defendant. Signed by Judge David L. Russell on 7/7/2026. (tb) (Entered: 07/07/2026) |
| 07/07/2026 | 105 | **ORDER** granting 102 MOTION for Status Conference filed by Damon Gardenhire, Britni Tomcho, Lindel Fields, Brian T Shellem, Jared Buswell, David Rutkauskas, William Pearson, Amber Hidy, Kitty Campbell. Status Conference set for 7/16/2026 at 09:00 AM via teleconference before Judge David L. Russell. Signed by Judge David L. Russell on 7/7/2026. (tb) (Entered: 07/07/2026) |
| 07/07/2026 | 106 | **ORDER** granting 101 UNOPPOSED MOTION for Oral Argument filed by Peter Deutsch, The National Ben Gamla Jewish Charter School Foundation Inc. Hearing set for 8/5/2026 at 09:00 AM in Courtroom 302 Judge David L. Russell. Signed by Judge David L. Russell on 7/7/2026. (tb) (Entered: 07/07/2026) |
| 07/14/2026 | 107 | JOINT STATUS REPORT AND DISCOVERY PLAN by Plaintiffs Peter Deutsch, The National Ben Gamla Jewish Charter School Foundation Inc. (Chen, Daniel) (Entered: 07/14/2026) |
| 07/16/2026 | 108 | **Minute Entry:** Proceedings held before Judge David L. Russell: Status Conference held on 7/16/2026. (Court Reporter Christy Clark.) (tb) (Entered: 07/16/2026) |
| 07/16/2026 | 109 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings held on 7/16/2026 before Judge Russell. Court Reporter: Christina L. Clark, Telephone number 4056095123. Transcript of: Status Conference Volume: I of I Transcript may be viewed at the court public terminal or purchased through the Court |

| | | |
|---|---|---|
| | | Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 8/6/2026. Redacted Transcript Deadline set for 8/17/2026. Release of Transcript Restriction set for 10/14/2026. (cc) (Main Document 109 replaced on 7/17/2026 to correct misspelled name on title page) (ss). (Entered: 07/16/2026) |
| 07/24/2026 | 110 | MOTION to Temporarily Stay All Discovery by Brian T Shellem. (Ferate, Anthony) (Entered: 07/24/2026) |
| 07/24/2026 | 111 | MOTION to Stay Discovery by All Plaintiffs. (Chen, Daniel) (Entered: 07/24/2026) |
| 07/30/2026 | 112 | MOTION to Withdraw as Attorney by All Plaintiffs. (Allevato, Phillip) (Entered: 07/30/2026) |
| 07/31/2026 | 113 | RESPONSE in Opposition re 110 MOTION to Temporarily Stay All Discovery , 111 MOTION to Stay Discovery filed by Bradley Archer, Erika DuBose, Sydney Gebhardt, Daniel Kaiman, Kara Joy McKee, Michele Medley, Gene Perry. (Attachments: # 1 Exhibit Requests for Production of Documents to Plaintiffs, # 2 Exhibit Interrogatories to Plaintiffs, # 3 Exhibit Requests for Production of Documents to Charter School Board Defendants, # 4 Exhibit Interrogatories to Charter School Board Defendants, # 5 Exhibit Subpoena for Production of Documents to Charter School Board and its Executive Director)(Luchenitser, Alex) (Entered: 07/31/2026) |
| 07/31/2026 | 114 | RESPONSE to Motion re 111 MOTION to Stay Discovery , 110 MOTION to Temporarily Stay All Discovery filed by Luz Cruz, Daniel Hensley, Cricket Moore, Larissa Port, Cathleen Tichenor. (Long, Heidi) (Entered: 07/31/2026) |
| 08/03/2026 | 115 | REPLY to Response to Motion re 111 MOTION to Stay Discovery filed by All Plaintiffs. (Chen, Daniel) (Entered: 08/03/2026) |
| 08/05/2026 | 116 | **Minute Entry:** Proceedings held before Judge David L. Russell: Oral Argument Hearing held on 8/5/2026. (Court Reporter Emily Cripe.) (tb) (Entered: 08/05/2026) |
| 08/14/2026 | 117 | NOTICE of Change of Address by Anthony J Ferate (Ferate, Anthony) (Entered: 08/14/2026) |
| 08/19/2026 | 118 | **ORDER** granting 112 Motion to Withdraw as Attorney. Attorney Phillip J. Allevato withdrawn as counsel in this matter. Signed by Judge David L. Russell on 8/19/2026. (tb) (Entered: 08/19/2026) |
| 08/21/2026 | 119 | MOTION to Withdraw as Attorney by Bradley Archer, Erika DuBose, Sydney Gebhardt, Daniel Kaiman, Kara Joy McKee, Michele Medley, Gene Perry. (Anderson, Luke) (Entered: 08/21/2026) |
| 09/02/2026 | 120 | **ORDER** granting 119 Motion to Withdraw as Attorney. Attorney Luke Anderson withdrawn as counsel in this matter. Signed by Judge David L. Russell on 9/2/2026. (tb) (Entered: 09/02/2026) |
| 09/24/2026 | 121 | **ORDER:** The Plaintiffs' Motions for Preliminary Injunction [Doc. Nos. 10, 11] are GRANTED and the Motions to Stay Discovery [Doc. No. 110, 111] are GRANTED. Signed by Judge David L. Russell on 9/24/2026. (tb) (Entered: 09/24/2026) |
| 09/29/2026 | 122 | MOTION to Withdraw as Attorney by All Plaintiffs. (Marcelle, Siena) (Entered: 09/29/2026) |
| 09/30/2026 | 123 | |

| | | |
|---|---|---|
| | | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings held on 8/5/2026 before Judge David L. Russell. Court Reporter: Emily Cripe, Telephone number 4056095094. Transcript of: Motion Hearing Volume: I of I Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 10/21/2026. Redacted Transcript Deadline set for 11/2/2026. Release of Transcript Restriction set for 12/29/2026. (ec) (Entered: 09/30/2026) |
| 10/02/2026 | 124 | **ORDER** granting 122 Motion to Withdraw as Attorney. Attorney Siena A. Marcelle withdrawn as counsel in this matter. Signed by Judge David L. Russell on 10/2/2026. (tb) (Entered: 10/02/2026) |
| 10/23/2026 | 125 | NOTICE OF APPEAL as to 121 Order, Terminate Motions by Jared Buswell, Kitty Campbell, Lindel Fields, Damon Gardenhire, Amber Hidy, William Pearson, David Rutkauskas, Brian T Shellem, Britni Tomcho. (Ferate, Anthony) (Entered: 10/23/2026) |

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF OKLAHOMA**

**THE NATIONAL BEN GAMLA JEWISH )**
**CHARTER SCHOOL FOUNDATION, )**
**INC., et al., )**
**)**
**Plaintiff, )**
**)**
**v. ) Case No. CIV-26-582-R**
**)**
**BRIAN T. SHELLEM, in his official )**
**capacity as Chairman of the Oklahoma )**
**Statewide Charter School Board, et al., )**
**)**
**Defendants. )**

**<u>ORDER</u>**

Now pending for resolution is Plaintiffs' Motion for Preliminary Injunction [Doc. Nos. 10, 11] seeking to prohibit the Oklahoma Statewide Charter School Board from enforcing a provision of the Oklahoma Charter Schools Act that requires a charter school to be "nonsectarian." Plaintiffs allege the nonsectarian requirement violates their rights under the Free Exercise Clause of the First Amendment. Also before the Court are two Motions to Stay Discovery [Doc. Nos. 110, 111] filed by Plaintiffs and the Oklahoma Statewide Charter School Board seeking to stay discovery pending resolution of the Motion for Preliminary Injunction and any related appeals. Each motion is fully briefed [Doc. Nos. 62, 63, 64, 79, 94, 99, 100, 113, 114, 115] and a hearing was held on August 5, 2026 where the parties presented oral argument [Doc. No. 116].

### *Introduction*

This case concerns the interplay between the Establishment Clause and the Free Exercise Clause of the First Amendment. These provisions, applicable to the states through the Fourteenth Amendment, provide that the legislature "shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." Although these provisions can sometimes "exert conflicting pressures," they in fact "express complementary values," *Cutter v. Wilkinson*, 544 U.S. 709, 719 (2005), working together "to promote and assure the fullest possible scope of religious liberty and tolerance for all." *Sch. Dist. of Abington Twp., Pa. v. Schempp*, 374 U.S. 203, 305 (1963) (Goldberg, J. concurring). Still, in practice, delineating "the boundaries of permissible government activity in this sensitive area" can be a demanding task. *Tilton v. Richardson*, 403 U.S. 672, 678 (1971). That is particularly true in this case, which not only involves the relationship between religion and schools, but also whether a charter school is engaged in state action.[1]

Mindful of the significant issues raised in this case, the Court will first set out the relevant factual and procedural background. Next, the Court will determine whether Plaintiffs have standing to proceed and whether their claim is ripe for review. Last, the Court will address whether Plaintiffs have established that they are entitled to a preliminary injunction.

---

[1] *See Schempp*, 374 U.S. at 230 (1963) (Brennan, J. concurring) (noting that there are "few issues more intricate or more demanding than that of the relationship between religion and the public schools"); *Mitchell v. Helms*, 530 U.S. 793, 807 (2000) (plurality) (acknowledging that "we have consistently struggled to apply these simple words in the context of governmental aid to religious schools"); *Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001) (explaining that the criteria for finding state action "lack[s] rigid simplicity").

### ***Background***

The Oklahoma Charter Schools Act, Okla. Stat. tit. 70, § 3-130 et seq., governs the establishment and operation of charter schools in Oklahoma. For purposes of the Act, a charter school means "a public school established by contract" with a school district board of education, an accredited public or private institution of higher education, a federally recognized Indian tribe, or the Statewide Charter School Board. Okla. Stat. tit. 70, §§ 3-132(A); 3-132.2(C)(1)(b); 3-134(D). Any of these "sponsor" entities may contract with a "board of education of a public school district, public body, public or private college or university, private person, or private organization" to establish a charter school. *Id.* at § 3-134(C).[2] For a virtual charter school, like the one involved here, the Statewide Charter School Board has the sole authority to act as the sponsor. *Id.* at § 3-132.1(I). An applicant seeking to establish a charter school submits a detailed application to the proposed sponsor, who then accepts or rejects the application. *Id.* at § 3-134. If accepted, the governing board of the charter school and the sponsor enter a written charter contract. *Id.* at § 3-136. Put more plainly, the OCSA provides a means by which public or private parties may contract with a public or private sponsor for the establishment and operation of a "public charter school." *See id.* at § 3-134(I).

Charter schools resemble traditional public schools in several ways. Chief among these is that charter schools are supported by public taxation and are "as equally free and open to all students as traditional public schools." *Id.* at §§ 3-136(A)(9); 3-142; 1-106

---

[2] Private schools are not eligible to contract for a charter school. Okla. Stat. tit. 70 § 3-134(C).

("The public schools of Oklahoma shall consist of all free schools supported by public taxation…."). Charter schools are also subject to many of the same rules and requirements as public schools. For example, charter schools must comply with the same financial audits, student testing requirements, and state sunshine laws as a school district. *Id.* at §§ 3-136(A)(4), 3-136(A)(5), 3-136(A)(15).[3] Further, the sponsoring entity retains some measure of oversight and control over the charter school, including the authority to terminate a charter contract for good cause. *Id.* at § 3-137(F).[4]

But a charter school differs from a traditional public school in a few key respects. Perhaps most significantly, a charter school, unlike a traditional public school, may be "established by contract" with a private person or organization. Rather than being subject to the local school board, a charter school has its own governing board which is "responsible for the policies and operational decisions of the charter school[.]" *Id.* at § 3-136(A)(7). A charter school is granted additional flexibility and authority in the development of its curriculum, personnel policies, and school governance. *Id.* at §§ 3-136(A)(3); 3-136(C). And, subject to some of the exceptions noted above, charter schools

---

[3] *See also* Okla. Stat. tit. 70 § 3-136(A)(1) (requiring compliance "with all federal regulations and state and local rules and statutes relating to health, safety, civil rights, and insurance"); § 3-136(A)(6) (requiring compliance with "with all federal and state laws relating to the education of children with disabilities in the same manner as a school district"); § 3-136(A)(7) (subjecting governing board to same conflict of interest and continuing education requirements as a school district board); § 3-136(A)(11) (requiring compliance with student suspension requirements); § 136(A)(12) (treating charter schools as a school district for purposes of tort liability under The Governmental Tort Claims Act); § 3-136(A)(13)-(14) (allowing employees to participate in the retirement, health, and insurance programs offered to employees of a public school district).

[4] *See also* Okla. Stat. tit 70, § 3-134(I) (empowering sponsor to exercise oversight over school operations, approve or deny certain contracts, and monitor the performance and legal compliance of the charter school); § 3-136(A)(17) (requiring charter schools to provide financial statements in compliance with State Board of Education rules); § 3-136(A)(18) (requiring sponsor to annually evaluate charter school based on specific performance framework); § 3-136(D) (requiring sponsor to approve any amendments to a school's charter).

are "exempt from all statutes and rules relating to schools, boards of education, and school districts." *Id.* § 3-136(A)(1).

Overall, the OCSA grants the charter school's governing board significant autonomy in its day-to-day operations. This structure makes sense in light of the Act's purposes, which include encouraging the use of different and innovative teaching methods, increasing learning opportunities for students, providing additional academic choices, and creating new professional opportunities for teachers. *Id*. at § 3-131(A)(4). However, the OCSA categorically excludes charter schools that are religious in character or affiliation:

> A charter school shall be nonsectarian in its programs, admission policies, employment practices, and all other operations. A sponsor may not authorize a charter school or program that is affiliated with a nonpublic sectarian school or religious institution[.]

*Id.* § 3-136(A)(2).

The constitutionality of this nonsectarian requirement was recently challenged in *Drummond ex rel. State v. Oklahoma Statewide Virtual Charter Sch. Bd*., 558 P.3d 1 (Okla. 2024). In *Drummond,* the Oklahoma Supreme Court considered whether a contract with a religious institution to establish a religious virtual charter school violated state and federal law. *Id.* at 6. Highly summarized, the Oklahoma Supreme Court concluded that the establishment of a religious charter school violates the Oklahoma Constitution, state law, and the Establishment Clause of the First Amendment. *Id.* at 7-10. The Oklahoma Supreme Court further concluded that the Free Exercise Clause of the First Amendment is not implicated because a charter school is a governmental entity and state actor. *Id.* at 14-15.[5]

[5] *Drummond* was affirmed on appeal by an equally divided Supreme Court. *See Oklahoma Statewide Charter Sch. Bd. v. Drummond*, 605 U.S. 165 (2025). However, "[a]n unexplained affirmance by an equally

Now, to the specific dispute in this case. Plaintiffs are the National Ben Gamla Jewish Charter School Foundation, Inc. and its founder, Peter Deutsch. In December 2025, Ben Gamla submitted an application to the Oklahoma Statewide Charter School Board to sponsor the establishment of a virtual religious charter school called The Ben Gamla Jewish Charter School. Compl. [Doc. No. 1] ¶ 65. As Plaintiffs describe it, the proposed charter school would provide a "rigorous academic education" alongside "instruction in Jewish religion, culture, values, rituals, texts, holidays, and practices." *Id.* ¶¶ 66, 75. They readily acknowledge that "the transmission of Jewish religious beliefs and practices to children is a core aspect of Ben Gamla's religious mission." *Id.* ¶ 71. The Statewide Charter School Board, relying on *Drummond* and the nonsectarian requirement, denied Ben Gamla's application based on the proposed school's religious character. *See id.* at Ex. 6 [Doc. No. 1-6]; Answer [Doc. No. 59] ¶ 103.

This action followed. In their present motion, Plaintiffs contend that the nonsectarian requirement violates the Free Exercise Clause of the First Amendment by discriminating against religious institutions. They further contend that the Establishment Clause is not implicated because a charter school is a privately-run entity and not a state actor. They seek a preliminary injunction preventing the Statewide Charter School Board

divided court is not entitled to any precedential weight." *Martin v. Franklin Cap. Corp.*, 251 F.3d 1284, 1294 n.9 (10th Cir. 2001), abrogated on other grounds by *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81 (2014).

from enforcing the nonsectarian requirement or otherwise denying Ben Gamla the ability to participate in the charter school program because of its religious identity.[6]

Notably, the Statewide Charter School Board does not oppose Plaintiffs' requested relief.[7] But two separate groups, who were previously permitted to intervene as defendants, do. *See* Order of June 3, 2026 [Doc. No. 89]. The Kaiman Intervenors (a group of taxpayers attending or with children attending public schools) contend that Oklahoma charter schools are state actors that may not assert a Free Exercise challenge and, even if they could, the Establishment Clause prohibits charter schools from promoting religion. The Moore Intervenors (a group of families with children attending charter schools) reiterate these arguments while emphasizing that charter schools are, in law and fact, public schools that may not promote religion.

## *Discussion*

### A. Preliminary Injunction Standard

Plaintiffs seek the "extraordinary remedy" of a preliminary injunction and their right to relief must therefore "be clear and unequivocal." *Dominion Video Satellite, Inc. v. EchoStar Satellite Corp.*, 269 F.3d 1149, 1154 (10th Cir. 2001).[8] To obtain a preliminary

---

[6] Plaintiffs' Complaint also includes a separate claim under the Equal Protection Clause of the Fourteenth Amendment. However, their request for a preliminary injunction is premised only on their First Amendment claim.

[7] Although the Board does not oppose Plaintiffs' request, its refusal to grant Ben Gamla's application suffices to preserve a justiciable dispute. *See United States v. Windsor*, 570 U.S. 744, 756 (2013) ("The Government's position—agreeing with Windsor's legal contention but refusing to give it effect—meant that there was a justiciable controversy between the parties[.]").

[8] Defendant-intervenors suggest that Plaintiffs are seeking a disfavored preliminary injunction that requires a heightened showing. *See Schrier v. Univ. Of Co.*, 427 F.3d 1253, 1259 (10th Cir. 2005) (identifying three types of disfavored injunctions). The Court need not resolve which standard might apply because Plaintiffs have met their burden even under the heightened standard.

injunction, the movant must generally establish four factors: "(1) a substantial likelihood of success on the merits; (2) irreparable injury to the movant if the injunction is denied; (3) the threatened injury to the movant outweighs the injury to the party opposing the preliminary injunction; and (4) the injunction would not be adverse to the public interest." *Id.* "[I]n First Amendment cases, the likelihood of success on the merits will often be the determinative factor." *Hobby Lobby Stores, Inc. v. Sebelius*, 723 F.3d 1114, 1145 (10th Cir. 2013) (internal quotation marks and citation omitted).

**B. Standing and Ripeness**

Initially, the Kaimon Intervenors argue that there is no need to reach the merits of the constitutional issues because the claims are not justiciable. "To satisfy Article III's justiciability requirements, (1) a plaintiff must have standing, (2) their claims must not have become moot, and (3) their case must be ripe for review." *Rocky Mountain Gun Owners v. Polis*, 121 F.4th 96, 108 (10th Cir. 2024). The Kaimon Intervenors challenge the first and third requirements, contending that Plaintiffs lacks standing because Ben Gamla's charter school application contains several disqualifying deficiencies apart from its religious character and the claims are not ripe because there are ongoing disputes over the reasons for rejecting the application. Neither the factual record nor the governing legal standard supports these arguments.

Start with standing. To establish standing, the

> party seeking to invoke a federal court's jurisdiction must demonstrate three things: (1) injury in fact, by which we mean an invasion of a legally protected interest that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical, (2) a causal relationship between the injury and the challenged conduct, by which we mean that the injury fairly can be traced

> to the challenged action of the defendant, and has not resulted from the independent action of some third party not before the court, and (3) a likelihood that the injury will be redressed by a favorable decision, by which we mean that the prospect of obtaining relief from the injury as a result of a favorable ruling is not too speculative.

*Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 663–64 (1993) (internal quotation marks and citations omitted). At the preliminary injunction stage, "the plaintiff must make a clear showing that she is likely to establish each element of standing." *Murthy v. Missouri*, 603 U.S. 43, 58 (2024) (internal quotation marks omitted).

Plaintiffs have made that showing here. The Statewide Charter School Board indisputably denied Ben Gamla's charter school application based on the proposed school's religious character. *See* Compl., Ex. 6; Answer ¶ 103. The denial of Ben Gamla's application suffices to establish a concrete, particularized, and actual injury. The cause of the injury is the nonsectarian requirement, and it necessarily follows that a judicial decree precluding the enforcement of the nonsectarian requirement would redress this injury. *See Northeastern Florida,* 508 U.S. at 666 n. 5.

The Kaimon Intervenors disagree, arguing that Plaintiffs cannot establish causation or redressability because their application contains other, material deficiencies that disqualify the proposed school from obtaining a charter contract. But this misconstrues the underlying injury in fact. "Plaintiffs claiming discrimination in the denial of a benefit need not show they would have obtained the benefit in the absence of the discrimination to establish standing; it is enough to show the discrimination deprived them of the ability to compete for the benefit on an equal footing." *Wilson v. Glenwood Intermountain Props.,*

*Inc*., 98 F.3d 590, 593 (10th Cir. 1996) (citing *Northeastern Florida*, 508 U.S. at 666–68). In other words, "[t]he 'injury in fact' in an equal protection case of this variety is the denial of equal treatment resulting from the imposition of the barrier, not the ultimate inability to obtain the benefit." *Northeastern Florida*, 508 U.S. at 666.

Here, Ben Gamla is "able and ready" to apply for a charter school contract – indeed, it has already gone through the process of submitting and revising its application – but Ben Gamla is categorically denied the opportunity to obtain a contract based on the nonsectarian requirement. That is sufficient for standing purposes. *Id.* at 666; *see also Carson v. Makin,* 596 U.S. 767, 781 fn. (2022) (explaining that the state "rightly does not attempt to defend" its law by pointing to other reasons not to extend the benefit "because the law rigidly excludes any and all sectarian schools regardless of particular characteristics"); *Trinity Lutheran Church of Columbia, Inc. v. Comer*, 582 U.S. 449, 463 (2017) ("The express discrimination against religious exercise here is not the denial of a grant, but rather the refusal to allow the Church—solely because it is a church—to compete with secular organizations for a grant."). Although the Kaimon Intervenors identify other, alleged deficiencies in Ben Gamla's application, they have not identified any noncurable conditions or nondiscriminatory eligibility criteria that entirely disqualify Ben Gamla from receiving a charter contract. *Day v. Bond*, 500 F.3d 1127, 1134 n.5 (10th Cir. 2007).

Next, the Kaimon Intervenors contend the claims are not ripe for review because Plaintiffs have not completed every application step and there are ongoing disputes over the reasons for rejecting the application. "The ripeness doctrine aims to prevent courts from entangling themselves in abstract disagreements by avoiding premature adjudication."

*Awad v. Ziriax*, 670 F.3d 1111, 1124 (10th Cir. 2012) (internal quotation marks omitted). "If a threatened injury is sufficiently imminent to establish standing, the constitutional requirements of the ripeness doctrine will necessarily be satisfied." *Id.* (quotation marks and brackets omitted). But prudential limitations may still advise against judicial review. *Id.* Prudential ripeness analyzes both the fitness of the issues raised, i.e. "whether determination of the merits turns upon strictly legal issues or requires facts that may not yet be sufficiently developed[,]" and the hardship to the parties from withholding review. *Id.* (quotation marks and citations omitted).

Here, Ben Gamla's application has already been denied based on the proposed school's religious character. The disputed issues – the facial constitutionality of the nonsectarian requirement and the presence or absence of state action – turns primarily on legal questions that do not, at this stage, require further factual development. *See id.* Moreover, Defendant-intervenors have not shown that they would face any hardship from withholding review. On the contrary, both Plaintiffs and the Statewide Charter School Board seek a prompt judicial determination as to the constitutionality of the nonsectarian requirement.

**C. Likelihood of Success on the Merits**

Turning to the merits, Plaintiffs argue that Ben Gamla's exclusion from the charter school program on the basis of its religious character violates their rights under the Free Exercise Clause of the First Amendment. A long line of Supreme Court precedent supports Plaintiffs' position.

"The Free Exercise Clause protects religious observers against unequal treatment and subjects to the strictest scrutiny laws that target the religious for special disabilities based on their religious status." *Trinity Lutheran*, 582 U.S. at 458 (internal quotation marks and brackets omitted). "Applying that basic principle," *id.*, the Supreme Court has "repeatedly held that a State violates the Free Exercise Clause when it excludes religious observers from otherwise available public benefits." *Carson*, 596 U.S. at 778. This principle applies with equal force to state benefit programs that subsidize or support education. *See, e.g., Everson v. Board of Education of Ewing*, 330 U.S. 1 (1947) (upholding a state law that reimbursed parents for the bus fare associated with sending their children to public and private schools, including religious schools); *Zelman v. Simmons-Harris*, 536 U.S. 639 (2002) (upholding a state program that provided tuition assistance to attend public or private schools, including religious schools); *Espinoza v. Montana Dep't of Revenue*, 591 U.S. 464 (2020) (holding that a state scholarship program that expressly prohibited aid from going to religious schools violated the First Amendment).

The leading case is *Carson*, 596 U.S. at 767, which involved a Free Exercise challenge to Maine's tuition assistance program. The Maine program was implemented because, although the state constitution mandates the opportunity to receive a public education, a majority of the local school districts do not operate public secondary schools. *Id.* at 773. To account for that gap, families without access to a public secondary school may designate the public or private school they would like their child to attend, and the school district will transmit tuition payments to the designated school. *Id.* at 772-73. However, "[t]o be 'approved' to receive these payments, a private school must meet certain

basic requirements under Maine's compulsory education law" and it must be "a nonsectarian school." *Id.* at 774.

Two families that lived in school districts without their own secondary school challenged the nonsectarian requirement as violating the Free Exercise Clause. *Id.* at 775-76. The Supreme Court agreed the law was unconstitutional. The Supreme Court first explained that "Maine offers its citizens a benefit: tuition assistance payments for any family whose school district does not provide a public secondary school." *Id.* at 780. The nonsectarian requirement, by disqualifying an otherwise eligible recipient on the basis of its religious character, "'effectively penalizes the free exercise' of religion[,]" and subjects the law to strict scrutiny. *Id.* (quoting *Trinity Lutheran*, 582 U.S. at 459). And this, the Supreme Court went on, was not one of the "rare cases" where a law that facially targets religious conduct for distinctive treatment would survive strict scrutiny. *Id.* at 781 (quotation marks omitted). That is because "[a] State's antiestablishment interest does not justify enactments that exclude some members of the community from an otherwise generally available public benefit because of their religious exercise." *Id.*

Here, like in *Carson*, the state created a generally available benefit: the opportunity to apply for and contract with a sponsor to establish a charter school. But the state categorically excludes religious institutions from participating. As *Carson* plainly stated, "[t]hat is discrimination against religion." *Carson*, 596 U.S. at 781. The nonsectarian requirement "expressly discriminates against otherwise eligible recipients by disqualifying them from a public benefit solely because of their religious character" and in doing so, violates the Free Exercise Clause of the First Amendment. *Trinity Lutheran*, 582 U.S. at

462. Oklahoma's purported interest in a "greater separation of church and State than is already ensured under" the federal constitution "cannot qualify as compelling" in the face of a free exercise violation. *Id.* at 466 (quotation marks omitted).

The Defendant-intervenors have a rejoinder to *Carson* and its forerunners. They argue that this line of authority does not apply because charter schools are either governmental entities, engaged in state action, and/or public schools, and it would plainly violate the Establishment Clause for a state actor or public school to promote religion. These arguments are not without force.[9] But a district court is obliged to follow Supreme Court precedent and the Court is persuaded that the relevant cases support Plaintiffs' position.

Defendant-intervenors first argue that a charter school, like a traditional public school, is a governmental entity that cannot assert a Free Exercise claim. "The problem of drawing a line between public and private entities is an old and difficult one." *United States v. Ackerman*, 831 F.3d 1292, 1295 (10th Cir. 2016). Fortunately, the Supreme Court has identified several relevant factors that guide the inquiry. *See Mount Olivet Cemetery Ass'n v. Salt Lake City*, 164 F.3d 480, 486 (10th Cir. 1998) (collecting cases). Distilled to its

---

[9] The circuit courts that have confronted these issues are not in agreement. In *Caviness v. Horizon Cmty. Learning Ctr., Inc.*, 590 F.3d 806 (9th Cir. 2010), the Ninth Circuit concluded that a plaintiff had not plausibly alleged that a private non-profit corporation that runs an Arizona charter school was functioning as state actor when it terminated a teacher. More recently, in *Peltier v. Charter Day Sch., Inc.*, 37 F.4th 104 (4th Cir. 2022), the Fourth Circuit, sitting en banc and over multiple dissents, concluded that a North Carolina charter school was functioning as a state actor when it implemented a dress code that was a central component of its educational philosophy and mission. Although not dealing specifically with charter schools, the First Circuit and the Third Circuit have both concluded that private schools that received state funding and provided educational services for the state were not engaged in state action in their treatment of students. *Logiodice v. Trs. of Maine Cent. Inst.*, 296 F.3d 22, 25 (1st Cir. 2002); *Robert S. v. Stetson Sch., Inc.*, 256 F.3d 159, 166 (3d Cir. 2001).

essence, the inquiry considers whether the entity "was created by the Government, is controlled by the Government, and operates for the Government's benefit." *Dep't of Transp. v. Ass'n of Am. Railroads*, 575 U.S. 43, 53 (2015). *See also Lebron v. Nat'l R.R. Passenger Corp*., 513 U.S. 374, 399 (1995) ("We hold that where, as here, the Government creates a corporation by special law, for the furtherance of governmental objectives, and retains for itself permanent authority to appoint a majority of the directors of that corporation, the corporation is part of the Government for purposes of the First Amendment."). These key factors are absent from Plaintiffs' proposed school.

When the Supreme Court has found government creation, the entity was typically named and established through special legislation. *See id.* at 397 ("Amtrak was created by a special statute"); *Biden v. Nebraska*, 600 U.S. 477, 489 (2023) ("Missouri created MOHELA as a nonprofit government corporation to participate in the student loan market."). Here, in contrast, the Oklahoma Charter Schools Act does not create any specific charter school. Instead, a charter school only comes into existence because a private actor (or other applicant) initiates the process. Although the OCSA authorizes the Statewide Charter School Board (or another sponsor) to approve an application, an otherwise private actor is not transformed into a government entity merely because it has been awarded a government contract, received a license, or granted some specific authority by state law. *See San Francisco Arts & Athletics, Inc. v. U.S. Olympic Comm.,* 483 U.S. 522, 542-43 (1987) (concluding that United States Olympic Committee was a not a government agent even though it was "established under Federal law," granted a corporate charter by a specific legislative act, subject to specific government regulation and oversight, and

permitted to receive government funding) (quotation marks omitted); *Manhattan Cmty. Access Corp. v. Halleck*, 587 U.S. 802, 814-15 (2019) (explaining that obtaining a government license, government contract, or government-granted monopoly does not transform a private entity into a state actor); *Jackson v. Metro. Edison Co*., 419 U.S. 345, 357 (1974) ("Respondent's exercise of the choice allowed by state law where the initiative comes from it and not from the State, does not make its action in doing so 'state action' for purposes of the Fourteenth Amendment.").

Government control is also lacking. A charter school is controlled by a governing board and, critically, the board is comprised of private individuals rather than government appointees or government officials.[10] *Compare Lebron*, 513 U.S. at 397-98 (noting that six of the nine board members are appointed directly by the President); *Biden*, 600 U.S. at 490-91 (noting that the board consists of two state officials and five members appointed by the governor); *Ackerman*, 831 F.3d at 1298 (noting that government officials or agencies "enjoy a sizeable presence on its board").

Further, and contrary to Defendant-intervenor's description, the state does not have unfettered discretion to close a charter school and does not exercise "'day-to-day' statutory control" over a charter school's operations. *Id.* at 1298. True, the sponsor is statutorily empowered to exercise "oversight" and monitor the "performance" of the charter school.

[10] In arguing otherwise, Defendant-intervenors cite to an Oklahoma Judicial Ethics advisory opinion that considered whether a sitting judge could serve on the board of a charter school. Jud. Ethics Opinion 2023-3, 538 P.3d 572 (Okla. Jud. Eth. 2023). Relying solely on the Oklahoma Charter Schools Act's definition of a charter school as a "public school established by contract[,]" the opinion summarily concluded that service on the board would be considered appointment to a "governmental committee." *Id.* Suffice it to say that this advisory opinion, which contains no analysis, is not binding on this Court.

But the OCSA explicitly provides that the charter school's governing board – not the state – is "responsible for the policies and operational decisions" of the school. Okla. Stat. tit. 70, § 3-136(A)(7). The Act also grants a charter school the authority to develop a specialized curriculum, generally exempts it from the regulations that apply to traditional public schools, and details specific circumstances under which a charter school can be closed, including the requirement that the charter school be given notice and an opportunity to challenge the closure. *Id*. at §§ 3-136(A)(1); 3-136(A)(3); 3-136(C); 3-137. If anything, these statutory provisions suggest a desire to eschew government control of the charter school's day-to-day operations, not maintain it. Although a charter school is undoubtedly subject to government regulation, "the mere existence of a regulatory scheme—even if extensive and detailed—[does] not" render an otherwise private entity a state actor. *Halleck*, 587 U.S. at 815 (quotation marks omitted).

The remaining considerations do not alter the conclusion. Defendant-intervenors emphasize that charter schools serve important state objectives and they are almost entirely funded via the same State Aid allocation used for public schools. They also rely heavily on the fact that charter schools are defined as public schools and considered to be a local education agency as a matter of state law. *See* Okla. Stat. tit. 70 §§ 1-106; 3-142(D); *Drummond*, 558 P.3d at 10-11. While these may be relevant to the analysis, they are not enough, in the absence of government creation and control, to qualify a charter school as a governmental entity.

As to the fact that a charter school is publicly funded, the Supreme Court has repeatedly held that "[t]he Government may subsidize private entities without assuming

constitutional responsibility for their actions." *U.S. Olympic Comm.*, 483 U.S. at 544. *See also Rendell-Baker v. Kohn*, 457 U.S. 830, 841 (1982) ("Acts of such private contractors do not become acts of the government by reason of their significant or even total engagement in performing public contracts."); *Blum*, 457 U.S. 991, 1011 (1982) ("That programs undertaken by the State result in substantial funding of the activities of a private entity is no more persuasive than the fact of regulation of such an entity in demonstrating that the State is responsible for decisions made by the entity in the course of its business.").

As to a charter school being defined in state law as a "public school established by contract," simply labeling something as "public" does not necessarily mean that it is created, operated, or controlled by the government. *See Lindke v. Freed,* 601 U.S. 187, 197 (2024) ("The distinction between private conduct and state action turns on substance, not labels[.]"); *Lebron*, 513 U.S. at 392 ("But it is not for Congress to make the final determination of Amtrak's status as a Government entity for purposes of determining the constitutional rights of citizens affected by its actions."); *Halleck*, 587 U.S. at 818-89 (private entity that operates "public access channels" is not a state actor); *Polk Cnty. v. Dodson*, 454 U.S. 312, 319 (1981) ("Public defender" was not acting under color of state law when representing client). In a similar vein, the Oklahoma Supreme Court's conclusion that charter schools are public schools as a matter of state law is not dispositive of whether a charter school is a governmental entity or state actor as a matter of federal law.[11] *See TMJ*

[11] Although this Court has come to a different conclusion than the Oklahoma Supreme Court, the key issues are exceedingly close, as evidenced by the Supreme Court's 4-4 split in *Oklahoma Statewide Charter Sch. Bd. v. Drummond*, 605 U.S. 165.

*Implants, Inc. v. Aetna, Inc.*, 498 F.3d 1175, 1181 (10th Cir. 2007) (a federal court "owes no deference to state-court interpretation of the United States Constitution"); *Bd. of Educ., Island Trees Union Free Sch. Dist. No. 26 v. Pico*, 457 U.S. 853, 864 (1982) ("[T]he discretion of the States and local school boards in matters of education must be exercised in a manner that comports with the transcendent imperatives of the First Amendment.").

Unable to establish that charter schools are governmental entities, Defendant-intervenors next argue that charter schools are nevertheless engaged in state action.[12] This concept recognizes that "state action may be found if, though only if, there is such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'" *Brentwood Acad. v. Tennessee Secondary Sch.*, 531 U.S. 288, 295 (2001) (quoting *Jackson*, 419 U.S. at 351). There is a "range of circumstances that could point toward" state action and "no one fact" is necessarily sufficient. *Id.* at 295-96. Even so, the Supreme Court has articulated several circumstances under which "acts by a nominally private entity may comprise state action" and these doctrines provide the "framework for the analysis." *Logiodice v. Trs. of Maine Cent. Inst.*, 296 F.3d 22, 26 (1st Cir. 2002). Defendant-intervenors invoke three of these doctrines here – performing an exclusive public function, performing an outsourced constitutional obligation, and entwinement. Each is addressed in turn.

[12] The Supreme Court has "frequently emphasized that the state-action doctrine demands a fact-intensive inquiry." *Lindke*, 601 U.S. at 197. Although the Court is not persuaded that an Oklahoma charter school is necessarily engaged in state action, other charter school programs with different facts may warrant a different outcome.

The exclusive public function doctrine recognizes that state action can be "present in the exercise by a private entity of powers traditionally exclusively reserved to the State." *Jackson*, 419 U.S. at 352. Very few functions meet this demanding standard:

> It is not enough that the federal, state, or local government exercised the function in the past, or still does. And it is not enough that the function serves the public good or the public interest in some way. Rather, to qualify as a traditional, exclusive public function within the meaning of our state-action precedents, the government must have traditionally *and* exclusively performed the function.

*Halleck*, 587 U.S. at 809.

"Obviously, education is not and never has been a function reserved to the state." *Logiodice*, 296 F.3d at 26. Wise to this impediment, Defendant-intervenors attempt to narrowly define the function at issue as the provision of a free public education rather than simply the provision of an education. The Supreme Court rejected a similar tactic in *Carson.* There, Maine argued that the nonsectarian requirement in its tuition assistance program was constitutional because the benefit was properly viewed "as funding for the rough equivalent of the public school education that Maine may permissibly require to be secular." *Carson*, 569 U.S. 782 (internal quotation marks omitted). The Supreme Court disagreed with this narrow framing:

> Saying that Maine offers a benefit limited to private secular education is just another way of saying that Maine does not extend tuition assistance payments to parents who choose to educate their children at religious schools. But "the definition of a particular program can always be manipulated to subsume the challenged condition," and to allow States to "recast a condition on funding" in this manner would be to see "the First Amendment ... reduced to a simple semantic exercise."

*Id.* at 784 (quoting *Agency for Int'l Development v. Alliance for Open Society Int'l, Inc*., 570 U.S. 205, 215 (2013).

Similarly, here, the state cannot avoid the First Amendment's free exercise protections by defining the benefit offered as limited to the provision of a "public" or "secular" education. *See Carson*, 596 U.S. at 784-85. The benefit here is the ability to contract with a sponsor, specifically the Statewide Charter School Board, for the establishment of a virtual charter school. But the operation of a school, even one that provides a free education, is not a function that has been "traditionally the exclusive prerogative of the State." *Jackson*, 419 U.S. at 353; *see also Rendell-Baker,* 457 U.S. at 842 (explaining that a "legislative policy choice" to provide educational services for certain students at public expense "in no way makes these services the exclusive province of the State"); *Caviness*, 590 F.3d at 816 (concluding that the "provision of educational services is not a function that is traditionally and exclusively the prerogative of the state, and therefore is not a basis for holding that [an Arizona charter school] acted under color of state law in taking the alleged actions relating to Caviness's employment"); *Logiodice*, 296 F.3d at 26-27 (private school that contracted with state, received public funds, and was the only public high school option in that district was not performing an exclusive public function).

Next, the Supreme Court "has recognized that a private entity may, under certain circumstances, be deemed a state actor when the government has outsourced one of its constitutional obligations to a private entity." *Halleck*, 587 U.S. at 810 n.1. This doctrine has its genesis in *West v. Atkins*, 487 U.S. 42 (1988), which involved a § 1983 claim

asserted by a state prisoner against a physician that contracted with the state to provide medical services. Although the physician was employed pursuant to a contract, rather than as a member of the state's prison staff, the Supreme Court concluded that the physician's "delivery of medical treatment to West was state action fairly attributable to the State." *Id.* at 55-57. In reaching this conclusion, the Supreme Court explained that "the State has a constitutional obligation, under the Eighth Amendment, to provide adequate medical care to those whom it has incarcerated[,]" the state fulfills this obligation by contracting with physicians, and "the only medical care West could receive for his injury was that provided by the State." *Id.* at 54-55. Ultimately, "[t]he State bore an affirmative obligation to provide adequate medical care to West" and it could not avoid that constitutional duty by contracting out its prison medical care. *Id.* at 56.

Defendant-intervenors argue that *West* controls here because the Oklahoma Constitution obligates the state to provide free education to all students and charter schools were created to fulfill that obligation. But the critical features present in *West* are simply not present here. To start, Defendant-intervenors have not identified any federal constitutional obligation to provide an education. *See Logiodice*, 296 F.3d at 29. Further, Oklahoma continues to fulfill its state constitutional duty to provide free, universal education by operating its own traditional public schools. The charter school program provides "[i]ncrease[d] learning opportunity[ies] for students" and "additional academic choices[,]" but it does not displace the traditional public school system. Okla. Stat. tit. 70 § 3-131(A). Last, and in stark contrast to the prisoner in *West*, students have the option of

attending a charter school but are not required to do so. For all these reasons, *West* does not suggest that an Oklahoma charter school is a state actor.

That leaves the entwinement doctrine. In *Brentwood Acad*, 531 U.S. at 299, the Supreme Court held that the "nominally private character" of an entity may be "overborne by the pervasive entwinement of public institutions and public officials in its composition and workings[.]" Such entwinement was present in *Brentwood* because the defendant athletic association was "overwhelmingly composed of public school officials who select representatives (all of them public officials at the time in question here), who in turn adopt and enforce the rules that make the system work" and "who do not merely control but overwhelmingly perform all but the purely ministerial acts by which the Association exists and functions in practical terms." *Id.* at 299-300. Moreover, members of a state board were assigned to serve in the association and the association's ministerial employees were "treated as state employees to the extent of being eligible for membership in the state retirement system." *Id.* at 300.

Other than permitting charter school employees to participate in the state retirement system, the pervasive entwinement described in *Brentwood* is not present here. Unlike the athletic association in *Brentwood*, a governing board, selected by and composed of private individuals, is responsible for a charter school's policies and operational decisions.

Of course, there is a connection between a charter school and the state. Under the OCSA, a charter school is subject to certain regulations, the sponsor entity must approve the charter contract, and the sponsor entity retains oversight of charter school operations. A similar connection exists between many private entities that contract with the

government, receive public funding, or are subject to state regulation. But government oversight, financial audits, compliance monitoring, detailed regulations, or the need to seek governmental approval of certain practices does not transform a private entity's conduct into state action. *See Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 54 (1999) (State's "role in creating, supervising, and setting standards" for insurance review scheme and requirement that private insurers obtain "authorization" from state agency before withholding certain payments is not state action); *Jackson,* 419 U.S. at 357 (state regulatory scheme that requires utility to obtain approval from state commission before instituting certain practices does not amount to state action); *Rendell-Baker*, 457 U.S. at 843 (private school's "fiscal relationship with the State is not different from that of many contractors performing services for the governments"). Were it otherwise, a host of private contractors and regulated entities would become state actors, a move that would "significantly endanger individual liberty and private enterprise." *Halleck*, 587 U.S. at 816.

Ultimately, the three doctrines Defendant-intervenors rely on to show state action are not met. But before moving on from the state action analysis, one final point. The Supreme Court has consistently emphasized that the state's exercise of coercive power over a private entity, although not necessarily a prerequisite to finding state action, is often a significant factor in the analysis. *See Rendell-Baker,* 457 U.S. at 841; *Blum*, 457 U.S. at 1004. But that factor, too, is absent. The operational and pedagogical choices of the charter school are made by the charter school's governing board, not compelled, coerced, or even encouraged by the state. And to the extent the state can be said to have "approved" of those choices by approving a charter school contract, it has long been the case that "[m]ere

approval of or acquiescence in the initiatives of a private party is not sufficient to justify holding the State responsible for those initiatives[.]" *Blum*, 457 U.S. at 1004-05. Additionally, and importantly, the state in no way compels or coerces any student to attend a charter school.[13] Charter schools are intended to provide families with an additional academic choice, and their public funding is largely contingent on the number of students that choose to enroll in the school.[14]

Perhaps recognizing that the government entity tests and state action doctrines do not map neatly onto the present circumstances, Defendant-intervenors make one additional argument. They contend that charter schools are public schools in all the ways that matter and if the Establishment Clause means anything, it surely means that a public school cannot evangelize religion. As support for this argument, Defendant-intervenors' turn to *Carson*, 596 U.S. at 789, where, as previously explained, the Supreme Court struck down the nonsectarian requirement in Maine's tuition assistance program as violating the Free Exercise Clause of the First Amendment. In rejecting Maine's attempt to recharacterize the benefit being offered as a "free public education," the Court stated that "Maine may provide a strictly secular education in its public schools" and "[t]he differences between private schools eligible to receive tuition assistance under Maine's program and a Maine public

[13] This fact distinguishes this case from *Milonas v. Williams*, 691 F.2d 931 (10th Cir. 1982). In *Milonas*, the Tenth Circuit concluded that a private school that operated as a detention, mental health, and educational facility for boys with special needs was acting under color of state law when it instituted certain "behavioral modification" practices, such as placing boys in isolation or using physical force. In reaching this conclusion, the Tenth Circuit found it significant that many class members were "involuntarily placed in the school by state officials who were aware of, and approved of, certain of the practices[.]" *Id.* at 940.

[14] The OCSA provides that "[a] charter school shall receive the State Aid allocation, federal funds to which it is eligible and qualifies for, and any other state-appropriated revenue generated by its students for the applicable year." Okla. Stat. tit. 70, § 3-142(A). The State Aid allocation is tied to the number of students enrolled at the school. *See* Okla. Stat. tit. 70, § 18-200.1, § 18-201.1.

school are numerous and important." *Id.* at 782-85. The Court then noted some of those differences, such as the fact that the private schools did not have to accept all students, the private school education was not always free, the private schools were exempt from certain curricular and testing requirements, the private schools did not need to hire state-certified teachers, and private schools could be single-sex. *Id.*

Defendant-intervenors contend that, unlike the private schools in *Carson*, Oklahoma charter schools have all the key characteristics of a public school. This argument has some initial appeal but upon closer inspection, there are several flaws. Most obviously, *Carson* did not purport to conclusively define a public school or create a constitutional standard for determining when a school is offering a public education. Additionally, the factors identified in *Carson* do not unequivocally support Defendant-intervenors' position. For example, charter schools, unlike public schools, do not need to employ standard state certified teachers. Further, although charter schools participate in state assessments and comply with certain academic standards, they are given leeway to fashion certain aspects of their curriculum and are exempt from numerous regulations that apply to public schools.

At first blush, the remaining features appear to support Defendant-intervenors' argument. After all, no one disputes that charter schools, like traditional public schools, are free, publicly funded, and open to all. But the Supreme Court's decision in *Rendall-Baker*, 457 U.S. at 830, suggests that sharing these particular characteristics does not necessarily mean that a school is part of the public school system.

The issue in *Rendall-Baker* was whether a private school that specialized in educating children with special needs was acting under color of state law when it

discharged certain employees. *Id*. at 831. Several critical facts in *Rendall-Baker* resemble those presented here. A state statute provided "that all students with special needs are entitled to a suitable publicly funded education under the supervision of the state and local governments." *Id.* at 845 (Marshall, J., dissenting). To satisfy this requirement, the local school committees were empowered to contract with private schools and refer children to those schools. *Id.* When children were placed at a private school, the school committee paid all expenses associated with the placement. *Id.* The specific school involved in *Rendall-Baker* was a private institution, operated by a board of directors, that had an agreement with the local school committee and a state agency to provide special education for students. *Id.* at 832. The students placed in the school did not pay tuition, the school was almost entirely publicly funded, and the school was subject to "detailed regulations concerning matters ranging from recordkeeping to student-teacher ratios." *Id.* at 832-833.

Although the school in *Rendall-Baker* offered a free, publicly funded education, pursuant to a contract with the government, and as a means of fulfilling the state's statutory duty to provide a public education, the school was not considered to be a state actor with respect to its personnel decisions and no one so much as suggested that it was part of the public school system. Similarly, here, the fact that a charter school, in accordance with its charter contract, offers a free, publicly funded education does not necessarily suffice to show that a charter school is a public school.

As *Carson* acknowledged, Oklahoma may provide a strictly secular education in its public schools. This ruling is in complete agreement with that statement. But charter

schools are not the equivalent of a traditional public school. [15] There are critical differences that cannot be overlooked, namely that a charter school is established by contract and, much like the private school in *Rendall-Baker*, is "founded as a private institution and is operated by a board of directors, none of whom are public officials or are chosen by public officials." *Rendall-Baker*, 457 U.S. at 832.[16]

Oklahoma has opted to establish a program where private applicants can contract with a sponsor to establish a publicly funded charter school. Oklahoma is not required to have such a program, but having done so, Oklahoma cannot then "'expressly discriminate[] against otherwise eligible recipients by disqualifying them from a public benefit solely because of their religious character.'" *Carson*, 596 U.S. at 779 (quoting *Trinity Lutheran*, 582 U.S. at 462). Because the nonsectarian provision in the Oklahoma Charter Schools Act

[15] Defendant-intervenors cite three Tenth Circuit cases in support of their assertion that charter schools are public schools. First, *Coleman v. Utah State Charter Sch. Bd.*, 673 F. App'x 822, 833 (10th Cir. 2016), where the Tenth Circuit observed that "charter schools are public schools using public funds to educate school children." The Tenth Circuit made this statement in the context of considering whether a state board member made a defamatory statement by sharing findings from an investigation with the school's governing board. The Tenth Circuit concluded that the findings had not been "published" because "[m]eetings between government officials and those who oversee a charter school, especially concerning the application and enforcement of the regulations that bind the two groups together, retain the fundamental character of intra-governmental meetings." *Id.* at 830. Second, *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 602 F.3d 1175, 1188 (10th Cir. 2010), where the Tenth Circuit stated that "principles of municipal liability apply" to a charter school "[b]ecause it is a public charter school" and a "local government entity[.]" Last, *Dillon v. Twin Peaks Charter Acad.*, 241 F. App'x 490 (10th Cir. 2007), which involved a § 1983 claim against a charter school. For several reasons, these cases are not dispositive of the issues here. Two of the cases are unpublished, none deal specifically with Oklahoma's charter school system, and, most significantly, the cases largely assumed that charter schools are public without squarely addressing whether they are governmental entities or engaged in state action.

[16] Defendant-intervenors also stress that charter schools will suffer negative financial and legal consequences if they lose their status as public schools. The Court is not convinced that rejecting a charter school's status as a governmental entity or state actor for the purposes of resolving Plaintiffs' First Amendment claim will necessarily jeopardize a charter school's status as a public school for purposes of federal or state funding.

Case 5:26-cv-00582-R Document 126-1 Filed 09/24/26 Page 61 of 67

expressly discriminates against otherwise eligible recipients solely because of their religious character, it violates the Free Exercise Clause of the First Amendment.

Further, neutrally administering the charter school program, to neither favor nor disfavor religion, does not offend the Establishment Clause. The First Amendment "requires the state to be a neutral in its relations with groups of religious believers and non-believers; it does not require the state to be their adversary." *Everson*, 330 U.S. at 18. Additionally, the link between the state and the public funds that flow to a charter school is primarily the result of private choices by both the applicant and the families that choose to enroll their children at a charter school. *See Espinoza*, 591 U.S. at 485 ("As noted, this Court has repeatedly upheld government programs that spend taxpayer funds on equal aid to religious observers and organizations, particularly when the link between government and religion is attenuated by private choices."); *Mitchell*, 530 U.S. at 829 ("In short, nothing in the Establishment Clause requires the exclusion of pervasively sectarian schools from otherwise permissible aid programs, and other doctrines of this Court bar it.").

The Court therefore concludes that Plaintiffs are likely to succeed on the merits of their Free Exercise claim.

**D. Remaining Preliminary Injunction Factors**

The remaining preliminary injunction factors also weigh in favor of granting Plaintiffs' request for a preliminary injunction. The Statewide Charter School Board's enforcement of the nonsectarian requirement likely violates Plaintiffs' Free Exercise rights, and "the loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Mahmoud v. Taylor*, 606 U.S. 522, 569

(2025) (internal quotation marks and citations omitted). Further, when a law is likely unconstitutional, the movant's interest in protecting its constitutional rights generally outweighs the interests of the party opposing preliminary relief. *See Awad*, 670 F.3d at 1131-32. Last, "it is always in the public interest to prevent the violation of a party's constitutional rights." *Id.* (internal quotation marks omitted).

Accordingly, Plaintiffs are entitled to a preliminary injunction precluding the Oklahoma Statewide Charter School Board from enforcing the nonsectarian requirement or otherwise excluding Plaintiffs from participating in the charter school program on account of their religious character.

**E. Stay of Discovery**

One final item remains for resolution. Plaintiffs and the Statewide Charter School Board request a stay of all discovery because the case raises purely legal issues that do not require further factual development. The Kaiman Intervenors object, contending that discovery is necessary and relevant to jurisdictional and merits issues. The Moore Intervenors state they do not need immediate discovery for resolution of the preliminary injunction motion but likely will in the future.

"The district court has the power to stay proceedings pending before it and to control its docket for the purpose of 'economy of time and effort for itself, for counsel, and for litigants.'" *Alzheimer's Inst. of Am. v. Comentis, Inc.*, No. CIV-09-1366-F, 2010 WL 11508734, at *2 (W.D. Okla. Dec. 17, 2010) (quoting *Landis v. North American Co.*, 299 U.S. 248, 254 (1936)). In particular, district courts enjoy "broad discretion and authority in controlling and managing pretrial discovery matters to ensure that cases move to a timely

and orderly conclusion." *J White, L.C. v. Wiseman*, No. 2:16-CV-01179-CW-JCB, 2020 WL 3667493, at *2 (D. Utah July 6, 2020) (citing *Smith v. Ford Motor Co*., 626 F.2d 784, 794 (10th Cir. 1980)). Still, a stay of discovery is generally disfavored and the moving party bears the burden of showing that the circumstances justify a stay. *Alzheimer's Inst*. 2010 WL 11508734, at *2.

Movants have met that burden here. As the preceding discussion makes clear, the issues presented for resolution are largely legal in nature and do not require any further factual development at this stage. Staying discovery will ensure that the significant issues raised in this case are resolved in an expeditious and efficient manner. Further, there is no prejudice to the intervenors given that the pertinent facts are either not in dispute or already available to the parties. *See Columbian Fin. Corp. v. Bowman*, 768 F. App'x 847, 853-54 (10th Cir. 2019) (unpublished) (affirming district court's decision to stay "because the facts that Plaintiff sought to develop in discovery were not essential to answering" the question presented and "[d]iscovery would not have altered the district court's analysis").

For those reasons, a stay of discovery pending the resolution of any appeal of this order is warranted. If an appeal is not taken, the Court sees no reason why discovery, subject to the usual limits on relevance and proportionality, cannot proceed in the ordinary course.

### *Conclusion*

The Court again emphasizes that by this opinion it does not express a judgment on the wisdom of the State of Oklahoma opening up its coffers to charter schools of disparate

philosophical or educational persuasions.[17] However, having done so, it cannot, pursuant to the Free Exercise Clause, single out religious schools for exclusion solely because of their religious character.

As set out above, Plaintiffs' Motion for Preliminary Injunction [Doc. Nos. 10, 11] is GRANTED and the Motions to Stay Discovery [Doc. No. 110, 111] are GRANTED.

IT IS SO ORDERED this 24th day of September, 2026.

**DAVID L. RUSSELL**
**UNITED STATES DISTRICT JUDGE**

[17] *See Espinoza*, 591 U.S. at 484 ("The protections of the Free Exercise Clause do not depend on a 'judgment-by-judgment analysis' regarding whether discrimination against religious adherents would somehow serve ill-defined interests.")

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| THE NATIONAL BEN GAMLA JEWISH CHARTER SCHOOL FOUNDATION, INC., *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>BRIAN T. SHELLEM, in his official capacity as Chairman of the Oklahoma Statewide Charter School Board, *et al.*,<br><br>*Defendants*. | Case No. 5:26-cv-00582-R |

**NOTICE OF APPEAL**

Please take notice that the Oklahoma Statewide Charter School Board Defendants appeal to the United States Court of Appeals for the Tenth Circuit from the order granting Plaintiffs' request for a preliminary injunction entered on September 24, 2026. ECF No. 121.

Respectfully submitted this 23rd day of October, 2026.

/s/ Anthony J. Ferate
Anthony J. Ferate, OBA No. 21171
FERATE PLLC
4308 Echohollow Trail
Edmond, Oklahoma 73025
(202) 486-7211
aj@ferate.us

Hiram S. Sasser, III, OBA No. 19557
Holly M. Randall,* OBA No. 34763
Erin E. Smith,* OBA No. 35232

FIRST LIBERTY INSTITUTE
2001 W. Plano Parkway, Suite 1600
Plano, Texas 75075
(972) 941-4444
hsasser@firstliberty.org
hrandall@firstliberty.org
esmith@firstliberty.org

**Admitted PHV.*

***Attorneys for Oklahoma Statewide Charter School Board Defendants***

**CERTIFICATE OF SERVICE**

I hereby certify that on this 23rd day of October, 2026, I electronically submitted this document to the Clerk of Court via the ECF to be served on counsel for Plaintiffs, Defendant, and Proposed Intervenors.

*/s/ Anthony J. Ferate*
Anthony J. Ferate, OBA No. 21171
FERATE PLLC
4308 Echohollow Trail
Edmond, Oklahoma 73025
(202) 486-7211
aj@ferate.us